Peter C. Renn (Admitted *Pro Hac Vice*)
prenn@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
4221 Wilshire Blvd., Suite 280
Los Angeles, CA 90010
Telephone:     (213) 382-7600
Facsimile:     (213) 351-6050

Kara N. Ingelhart (Admitted *Pro Hac Vice*)
kingelhart@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
105 W. Adams St., 26th Fl.
Chicago, IL 60603
Telephone:     (312) 663-4413
Facsimile:     (312) 663-4307

Monica G. Cockerille (ISB No. 5532)
monicacockerille@me.com
Cockerille Law Office, PLLC
2291 N. 31st St.
Boise, ID 83703
Telephone:     (208) 343-7676
Facsimile:     (866) 226-2499

Attorneys for Plaintiffs F.V. and Dani Martin

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| F.V. and DANI MARTIN, | No. 1:17-cv-00170-CWD |
| *Plaintiffs*, | **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare; ELKE SHAW-TULLOCH, in her official capacity as Administrator of the Division of Public Health for the Idaho Department of Health and Welfare; and JAMES AYDELOTTE, in his official capacity as State Registrar and Chief of the Bureau of Vital Records and Health Statistics, | |

*Defendants.*

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### NATURE OF ACTION

1.     This action is brought by transgender individuals who wish to correct their Idaho birth certificate to accurately reflect their gender identity.  Although Plaintiffs were assigned the sex of male at birth, that assigned sex does not match their gender identity, which is female.

2.     Accurate identity documents are essential to one's ability to navigate through life. Access to employment, education, housing, health care, banking, travel, and government services often depend on having accurate documentation that reflects an individual's true identity.  A birth certificate is a critical and ubiquitous identity document routinely used for many purposes, including to obtain other essential identity documents.

3.     While others born in Idaho have access to an accurate birth certificate matching their gender identity, transgender individuals alone are barred from obtaining an accurate birth certificate matching their gender identity.  Idaho's refusal to issue such birth certificates erects a barrier to the full recognition, participation, and inclusion of transgender people in society and subjects them to discrimination, privacy invasions, harassment, humiliation, stigma, and even violence.

4.     The State of Idaho categorically refuses to change the gender markers on transgender individuals' birth certificates to match their gender identity, regardless of what steps such individuals have taken to transition in order to live in a manner consistent with their gender identity.  That categorical bar stands in sharp contrast to the approach of nearly all other states and the District of Columbia, which generally have established processes by which transgender individuals can change the gender markers on their birth certificates.  Indeed, this categorical bar

2

is also inconsistent with Idaho's own practice of permitting transgender individuals to change to the gender markers on their driver's licenses to match their gender identity.

5.      Idaho's practice, which each Defendant enforces, violates federal constitutional guarantees, including the rights to equal protection, due process, and freedom from compelled speech.  As confirmed by the practices adopted by other states, as well as Idaho's own practice in changing the gender marker on the driver's licenses issued by the state, there is no government justification to support Idaho's refusal to provide transgender individuals with accurate birth certificates matching their gender identity.

## PARTIES

**Plaintiffs**

6.      Plaintiff F.V. ("F.V.") is a transgender woman who was born in Idaho and who currently resides in Hawai'i.  F.V. wishes to correct her Idaho birth certificate, which currently indicates that her sex is male, to accurately reflect her sex as female, consistent with her female gender identity.

7.      Plaintiff Dani Martin ("Ms. Martin") is a transgender woman who was born in Idaho and who currently resides in Idaho.  Ms. Martin wishes to correct her Idaho birth certificate, which currently indicates that her sex is male, to accurately reflect her sex as female, consistent with her female gender identity.

**Defendants**

8.      Richard Armstrong ("Mr. Armstrong") is the Director of the Idaho Department of Health and Welfare ("IDHW").  Mr. Armstrong supervises the activities of the Department and enforces Idaho's vital statistics laws.  Mr. Armstrong's administration and enforcement of the vital statistics laws are actions under color of state law.

9.      Elke Shaw-Tulloch ("Ms. Shaw-Tulloch") is the Administrator of IDHW's Division of Public Health (the "Division of Public Health"), which includes the Bureau of Vital Records and Health Statistics.  Ms. Shaw-Tulloch supervises the activities of the Division of Public Health, which includes enforcement of Idaho's vital statistics laws.  Ms. Shaw-Tulloch's administration and enforcement of the vital statistics laws are actions under color of state law.

10.     James Aydelotte ("Mr. Aydelotte") is the State Registrar and Bureau Chief of the Bureau of Vital Records and Health Statistics ("State Registrar") within IDHW.  In his role as the State Registrar, Mr. Aydelotte is the official custodian of the vital records of the state, and he also enforces Idaho's vital statistics laws.  Mr. Aydelotte exercises authority over the issuance and alteration of Idaho birth certificates.  Mr. Aydelotte's administration and enforcement of the vital statistics laws are actions under color of state law.

## JURISDICTION AND VENUE

11.     Subject matter jurisdiction exists under 28 U.S.C. §§ 1331 and 1343 because this action seeks to redress the deprivation, under color of state law, of rights secured by the United States Constitution through 42 U.S.C. § 1983.

12.     Venue is proper in the District of Idaho under 28 U.S.C. § 1391(b)(1) and (2) because each of the Defendants resides in the district and because a substantial part of the events or omissions giving rise to the claims occurred in the district.

13.     This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

14.     This Court has personal jurisdiction over Defendants because they are domiciled in Idaho and because their refusal to provide Plaintiffs with accurate birth certificates matching their gender identity occurred within Idaho.

## FACTUAL ALLEGATIONS

**Background Information Regarding Transgender Individuals**

15.     Gender identity is a well-established medical and psychological term that refers to a person's fundamental, internal sense of belonging to a particular gender.  It is a core characteristic of human identity that everyone possesses.  Gender identity is innate, biologically rooted, and fixed at an early age.

16.     Although the majority of people possess a gender identity that matches their sex assigned at birth, that is not the case for transgender people, who are defined as transgender because their gender identity does not match their sex assigned at birth.

17.     An individual's sex is generally assigned at birth based on external genitalia. However, other sex-related characteristics can include chromosomes, hormone levels, internal reproductive organs, and gender identity.

18.     Where an individual's sex-related characteristics are not in typical alignment with each other, gender identity is the critical determinant of sex.  Attempts to change an individual's gender identity in order to bring it into alignment with the individual's birth-assigned sex are not only unsuccessful but also dangerous, risking psychological harm and even suicide.

19.     The discordance between one's gender identity and birth-assigned sex can be associated with clinically significant distress, which is known as gender dysphoria.  Gender dysphoria is a serious medical condition that, if improperly treated, can have serious health consequences.  Treatment for gender dysphoria is governed by internationally recognized

standards of care.

20.     Living in a manner consistent with one's gender identity is critical to the health and well-being of all transgender people and is a key aspect of treatment for gender dysphoria. The process by which transgender individuals come to live in a manner consistent with their gender identity, rather than their birth-assigned sex, is known as transition.  The refusal to treat an individual in a manner consistent with their gender identity is harmful to that individual's transition and overall health.

21.     The steps that transgender individuals take to transition are not identical, but they generally include one or more of the following components:  (1) social transition, (2) hormone therapy, and/or (3) gender confirmation surgery.

22.     Social transition entails the adoption of a gender role matching one's gender identity.  For example, for a woman who is transgender, social transition can include changing one's first name to one typically used by women, changing identity documents to indicate a female gender, and otherwise living as a woman in all aspects of life.

23.     Hormone therapy involves taking hormones typically associated with one's gender identity.  Hormone therapy can have significant masculinizing or feminizing effects on one's physical appearance and perceived sex.

24.     Gender confirmation surgery includes various surgical procedures that transgender individuals may take to bring their body or appearance into alignment with their gender identity, such as genital surgery or chest surgery.  Whether surgery is medically necessary or even appropriate, however, depends on the needs of the individual.  One's ability to access gender confirmation surgery may also be limited by financial resources, insurance coverage, provider availability, and other barriers to health care access.

25.     These various components associated with transition—social transition, hormone therapy, and gender confirmation surgery—do not change an individual's gender, which is already determined by gender identity, but instead bring the individual's physical appearance and social presentation into better alignment with their gender.

26.     Depriving transgender individuals of birth certificates matching their gender identity harms their health and well-being.  It also interferes with medical treatment for gender dysphoria by impeding a transgender individual's ability to live in a manner consistent with that individual's gender identity.

**The Need for Accurate Birth Certificates Matching One's Gender Identity**

27.     A birth certificate is more than a piece of paper.  It reflects government recognition of one's gender—just as a marriage certificate reflects government recognition of one's relationship.  The government's refusal to provide transgender individuals with birth certificates matching their gender identity is a stigmatizing refusal to acknowledge their gender that deprives them of their equal dignity.

28.     A birth certificate is an essential government-issued document that individuals use to prove their identity and the information conveyed on the birth certificate.  That is why the government makes a copy of a birth certificate available to the individual reflected on the birth certificate, rather than merely reserving it for the government's own use.

29.     Birth certificates are commonly used in a wide variety of contexts, such as determining eligibility for employment, obtaining other identity documents (such as driver's licenses, social security cards, passports, and other state and federal identification documents), establishing school records, proving age, and enrolling in government programs.

30.     All people need access to an accurate birth certificate that they can use to prove

7

their identity.  For transgender people, however, the gender marker on their birth certificate can undermine that purpose.  A woman born in Idaho who is transgender, for example, has a birth certificate designating her as male, which can visibly conflict with her gender identity.

31.     A perceived mismatch between one's gender identity and the information on one's birth certificate subjects transgender people to harm, including an invasion of privacy. Such a mismatch effectively discloses the fact that an individual is transgender, which constitutes deeply personal information over which a transgender individual has a reasonable expectation of privacy as well as information that can jeopardize an individual's safety and risk bodily harm upon disclosure.

32.     Denying transgender individuals a birth certificate that matches their gender identity can disclose private information in contexts where it would otherwise remain undisclosed (e.g., at a social security office), regardless of whether an individual's transgender status may otherwise be known by others (e.g., to friends or family).  Transgender individuals denied an accurate birth certificate are also deprived of significant control over the circumstances surrounding disclosure of their transgender status, including when, where, how, and to whom their transgender status is disclosed.

33.     According to the 2015 U.S. Transgender Survey, nearly one in three transgender individuals who showed an identity document with a name or gender that did not match their perceived gender were verbally harassed, denied benefits or service, asked to leave, or assaulted.

34.     More generally, transgender people experience substantial discrimination and harassment in a wide variety of settings, including in employment, public accommodations, health care, and interactions with the government, including law enforcement.  Transgender individuals are also disproportionately targeted for hate crimes.  These realities make the

involuntary disclosure of an individual's transgender status particularly harmful and dangerous.

35.     Furthermore, denying transgender individuals a birth certificate that matches their gender identity deprives them of an identity document that aids accurate identity verification. The contents of an uncorrected birth certificate generally undermines rather than serves the purpose of verifying that a transgender individual is, in fact, the same individual reflected on his or her birth certificate.  For example, a woman who is transgender and who has taken steps to bring her appearance into alignment with her gender identity may be perceived as female by others; but a birth certificate with a male gender marker visibly conflicts with her gender identity, causing others to question whether she is the same individual reflected on the birth certificate.

**Idaho's Birth Certificate Policy**

36.     The Idaho Bureau of Vital Records and Health Statistics exercises responsibility for issuing and changing Idaho birth certificates.  Each of the Defendants enforces a policy and practice that categorically refuses to change the gender markers on transgender individuals' birth certificates to match their gender identity (the "Birth Certificate Policy").  Even where transgender individuals have taken clinically appropriate treatment for gender transition, Defendants nevertheless refuse to provide Idaho birth certificates consistent with their gender identity.  The Birth Certificate Policy challenged here also includes a refusal to provide a birth certificate matching a transgender individual's gender identity without the inclusion of revision history—such as preserving the legibility of one's former name with a single strike-out line rather than issuing a new certificate—that reasonably discloses one's transgender status.

37.     There is no statute or regulation specifically prohibiting Defendants from changing the gender marker on a transgender individual's birth certificate.  Upon information

and belief, however, Defendants assert that they lack legal authority to make such a change because there is no statute specifically allowing such a change.

38.     Despite Defendants' assertion, Idaho Code Section 39-250 provides that any certificate may be changed pursuant to promulgated rules.  Idaho Department of Health and Welfare Rule 16.02.08.201 permits changes not specified by statute, such as changes to correct obvious errors, fix transposition of letters, and make "other amendments" based upon the objectives of the vital statistics statutes and the best interests of the public.  Providing transgender individuals with accurate birth certificates matching their gender identity would serve the objectives of the vital statistics statutes and be in the best interests of the public.  For example, a corrected birth certificate would better allow a woman who is transgender to demonstrate that she is, in fact, the same individual reflected on her birth certificate, thereby aiding the objective of, and public interest in, accurate identity verification.

39.     The Birth Certificate Policy stands in sharp contrast to the approach taken in at least 46 states, which permit transgender individuals to change the gender markers on their birth certificates to match their gender identity.  For example, every other state within the Ninth Circuit (Alaska, Arizona, California, Hawai'i, Montana, Nevada, Oregon, and Washington)— with the exception of Idaho—has a process by which transgender individuals can change the gender markers on their birth certificates.

40.     Similarly, the U.S. Department of State permits changes to the gender marker on an individual's passport where a doctor certifies that the individual has had appropriate clinical treatment for gender transition.  Other federal agencies, such as the Social Security Administration, have similar standards for changing an individual's gender in their records.

41.     Idaho's categorical bar with respect to changing gender markers on the birth

certificates of transgender individuals is contrary to even its own practice with respect to driver's licenses.  The Idaho Department of Transportation allows transgender individuals to change the gender markers on their driver's licenses to reflect their gender identity.   It also does not require that transgender individuals have any particular form of medical procedure, such as surgery, in order to do so.  That practice is consistent with mainstream medical organizations, which oppose requiring surgery in order for transgender individuals to change their identity documents.

42.     Idaho also includes revision history that can reasonably disclose one's transgender status when changing the name on an individual's birth certificate following a name change.  For example, where a transgender woman who has changed her name from John to Jane wishes to update the name on her birth certificate, Defendants draw a single line through "John" without obliterating its legibility, add "Jane" next to the crossed-out text, and mark the birth certificate as amended—thereby disclosing the woman's transgender status.

43.     The Birth Certificate Policy is not supported by any compelling, substantial, or even legitimate government interest.

44.     The Birth Certificate Policy lacks any narrowly-tailored, substantial, or even rational relationship to a valid government interest, and it is not the least restrictive means of achieving a valid government interest.

45.     The Birth Certificate Policy is maintained and motivated by animus toward transgender individuals, including to the extent that it rests upon any actual or asserted statutory barriers to providing transgender individuals with birth certificates matching their gender identity.

**Plaintiff F.V.**

46.     Plaintiff F.V. is a 28-year-old woman who was born in Boise, Idaho, raised in

Eastern Washington, and currently resides in Hawai'i.

47.     F.V. is transgender.  She was assigned the sex of male at birth.  However, she knew from early on, at approximately six years of age, that she was female.

48.     F.V. began living openly as female when she was approximately 15 years of age and has lived openly as a woman since then.

49.     Since beginning her transition to live openly as female, F.V. has taken steps to bring her body and her gender expression into conformity with her female gender identity, including through clinically appropriate treatment undertaken in consultation with health care professionals.  She also changed her name from a traditionally male one to a traditionally female one and changed her name on her driver's license and passport and in her social security records.

50.     F.V. has also changed the gender marker on her driver's license with the Hawai'i Department of Transportation and in her records with her state health insurance provider and the Social Security Administration.

51.     As a result of the Birth Certificate Policy, however, F.V.'s birth certificate fails to reflect her gender identity, which is female.  Defendants' refusal to issue a birth certificate reflecting F.V.'s gender is a persistent and stigmatizing reminder that the State of Idaho does not recognize her as a woman.  That refusal also imposes a barrier on her ability to function successfully as the woman that she is in all aspects of her life, including any time when she presents her birth certificate to others.  Further, presenting an identity document that identifies her as male is not only humiliating but also dangerous, putting her at risk of violence.

52.     F.V. is aware of the high incidence of harassment, discrimination, and violence directed at transgender individuals.  Indeed, F.V. has personally encountered physical violence based on her transgender status.  In one incident in high school, for example, she was physically

assaulted by another student after she began to live openly as female.  On another occasion, a student boasted about his plan to "beat up this faggot."

53.     Possessing a birth certificate that is incongruent with F.V.'s gender identity and expression increases her exposure to harassment, discrimination, and violence.  F.V. has experienced first-hand the hostility that transgender individuals often experience when presenting identification that conflicts with their lived gender.

54.     The incorrect gender on F.V.'s birth certificate has exposed her to hostility when she visited the social security office, for example.  After seeing her birth certificate, staff at the office referred to her as a "tranny," a derogatory term that disclosed F.V.'s transgender status to others in the waiting area.  One of these individuals then called F.V. a "faggot" as she was leaving the office.

55.     On another occasion before F.V. changed the gender marker on her driver's license, she presented her driver's license to a cashier at a store, thereby disclosing her transgender status to the cashier.  A man, who witnessed the cashier's reaction, then stalked F.V. and made sexual comments to her as she was leaving the parking lot at night, causing F.V. to fear for her personal safety.

56.     F.V. has also presented her birth certificate in other contexts and will continue to do so, such as when applying for and periodically renewing her state health insurance.

57.     On March 21, 2017, F.V. contacted Idaho's Bureau of Vital Records and Health Statistics to inquire if she could change the gender marker on her birth certificate.  She was informed by staff that she could not do so.

**Plaintiff Dani Martin**

58.     Plaintiff Dani Martin is a 31-year-old woman who was born at Mountain Home

Air Force Base in Idaho and currently resides in Meridian, Idaho with her wife and two children. Ms. Martin works as a correctional officer for the State of Idaho.

59.     Ms. Martin is transgender.  She was assigned the sex of male at birth.  However, she knew from a young age that she was female.

60.     Ms. Martin began living openly as female when she was approximately 28 years of age and has lived openly as a woman since then.

61.     Since beginning her transition to live openly as female, Ms. Martin has taken steps to bring her body and her gender expression into conformity with her female gender identity, including through clinically appropriate treatment undertaken in consultation with health care professionals.  She also changed her name from a traditionally male one to a traditionally female one, changed her name on her driver's license and in her social security records, and is in the process of changing it on her passport.

62.     Ms. Martin has also changed the gender marker on her driver's license with the Idaho Transportation Department and changed the gender marker in records kept by the Social Security Administration.

63.     As a result of the Birth Certificate Policy, however, Ms. Martin's birth certificate fails to reflect her gender identity, which is female.  Defendants' refusal to issue a birth certificate reflecting Ms. Martin's gender is a persistent and stigmatizing reminder that the State of Idaho does not recognize her as a woman.  That refusal also imposes a barrier on her ability to function successfully as the woman that she is in all aspects of her life, including any time when she presents her birth certificate to others.  Further, presenting an identity document that identifies her as male is not only humiliating but also dangerous, putting her at risk of violence.

64.     Ms. Martin is aware of the high incidence of harassment, discrimination, and

violence directed at transgender individuals.  Indeed, Ms. Martin has personally encountered harassment based on her transgender status.  In high school, for example, after she disclosed that she might be transgender to some friends, they began to bully her, using derogatory terms like "fag" to taunt her, and excluded her from social activities.  At her workplace, Ms. Martin's coworkers have, in the past, referred to her as "tranny," "she-male," and "gay-fucker" and intentionally used incorrect male gender pronouns to refer to her.  That harassment was particularly concerning to Ms. Martin because, as a correctional officer, she relies on the support of her coworkers for her personal safety.

65.    Possessing a birth certificate that is incongruent with Ms. Martin's gender identity and expression increases her exposure to harassment, discrimination, and violence.  Ms. Martin has experienced first-hand the hostility that transgender individuals often experience when presenting identification that conflicts with their lived gender.

66.    The incorrect gender on Ms. Martin's birth certificate has exposed her to hostility, including when she visited the Idaho Department of Motor Vehicles.  When Ms. Martin requested a gender marker change on her driver's license, the clerk insisted that Ms. Martin would need to present her birth certificate for inspection and erroneously indicated that the gender marker on one's driver's license would need to match the gender marker on one's birth certificate.  This refusal required the intervention of a supervisor and resulted in a discussion of Ms. Martin's transgender status that could be heard by others waiting in line.  Although the supervisor ultimately instructed the clerk to process the request, it was humiliating for Ms. Martin to have to defend that she was a woman, and entitled to treatment as such, against a government official's insistence to the contrary, because her birth certificate did not reflect that she is female.

67.     On another occasion, Ms. Martin attempted to change information regarding her name and gender with her credit card company, so that her account information would properly reflect her female gender.  The company refused to process her request unless she could produce a birth certificate reflecting her female gender and current name.  As a result, Ms. Martin's credit card information has not been updated.

68.     Ms. Martin has also been required to present her birth certificate in other contexts and will continue to have to do so.

## CAUSES OF ACTION PURSUANT TO 42 U.S.C. § 1983

### FIRST CAUSE OF ACTION
### EQUAL PROTECTION VIOLATION

69.     Plaintiffs incorporate paragraphs 1 through 68 as though fully set forth herein.

70.     The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

71.     The Birth Certificate Policy facially and intentionally discriminates against transgender individuals based on sex-related considerations.  The sex that the government lists on an individual's birth certificate is literally a government classification of an individual's sex.  In the case of transgender individuals, however, this classification reflects a sex contrary to their gender identity, causing harm as a result.  Discrimination based on sex-related considerations also includes, but is not limited to, discrimination based on gender nonconformity, gender identity, transgender status, and gender transition.

72.     The Birth Certificate Policy facially and intentionally discriminates on the basis of transgender status by depriving transgender people who were born in Idaho—and them alone—of a birth certificate that accurately reflects their gender identity.  Non-transgender individuals are not deprived of a birth certificate that accurately reflects their gender identity.

16

73.     Discrimination because an individual is transgender is both discrimination based on a sex-related consideration, which requires courts to apply intermediate scrutiny in evaluating the constitutionality of the government's discrimination at a minimum, and discrimination based on transgender status, which requires courts to apply strict scrutiny to such discrimination.

74.     Government discrimination against transgender individuals bears all the indicia of a suspect classification requiring strict scrutiny by the courts.

a.      Transgender people have suffered a long history of extreme discrimination and continue to suffer such discrimination to this day.

b.      Transgender people are a discrete and insular group and lack the political power to protect their rights through the legislative process.  Transgender people have largely been unable to secure express federal, state, and local protections specifically protecting them against discrimination, and have been and continue to be regularly targeted by anti-transgender legislation, regulations, bills, and other government action.

c.      A person's gender identity or transgender status bears no relation to a person's ability to contribute to society.

d.      Gender identity is a core, defining trait and is so fundamental to one's identity and conscience that a person cannot be required to abandon it as a condition of equal treatment.  Gender identity is also generally fixed at an early age and highly resistant to voluntary change.

75.     The Birth Certificate Policy deprives transgender individuals born in Idaho like F.V. and Ms. Martin of their right to equal dignity and stigmatizes them as second-class citizens in violation of the Equal Protection Clause.

17

## SECOND CAUSE OF ACTION
## DUE PROCESS VIOLATION

76.     Plaintiffs incorporate paragraphs 1 through 68 as though fully set forth herein.

77.     The Due Process Clause of the Fourteenth Amendment places limitations on state action that deprives individuals of life, liberty, or property.

78.     The substantive protections of the Due Process Clause, as well as other constitutional provisions giving rise to a right to privacy, protect information that is highly personal and intimate as well as information that could lead to bodily harm upon disclosure. Government infringement of these protections requires the courts to apply strict scrutiny to such government action.

79.     The fact that an individual is transgender constitutes highly personal and intimate information.  A reasonable individual would find the involuntary disclosure of one's transgender status to be deeply intrusive.

80.     The involuntary disclosure of one's transgender status can also cause significant harm, including placing one's personal safety and bodily integrity in jeopardy.  This harm burdens and interferes with the ability of transgender individuals to live in a manner consistent with their gender identity in all aspects of life, including where doing so is medically necessary.

81.     The Birth Certificate Policy violates transgender individuals' right to privacy by causing disclosures of their transgender status and depriving them of significant control over the circumstances around such disclosure.

82.     There are no adequate safeguards to prevent the harm caused by the involuntary disclosure of one's transgender status.  For example, an individual may need to disclose his or her birth certificate directly to third parties, without any of the privacy safeguards that may exist where the government discloses information to third parties.

83.     There is no compelling, important, or even legitimate interest in the government causing transgender individuals to involuntarily disclose their transgender status any time third parties see their birth certificate.

84.     There is no express statutory mandate, articulated public policy, or other recognizable public interest in causing transgender individuals to disclose their transgender status to third parties where they would not otherwise do so.

85.     The Birth Certificate Policy also burdens the right to define and express one's gender identity, including a right not to be treated in a manner contrary to one's gender by the government.  A woman has a right to be treated as a woman, rather than a man, by her government; and the fact that she is a woman who is transgender does not change that right.  The constitutional protections that shelter individual and bodily autonomy, dignity, and personhood prohibit the government from interfering with the right to live in accordance with one's gender identity.

## THIRD CAUSE OF ACTION
## FIRST AMENDMENT VIOLATION

86.     Plaintiffs incorporate paragraphs 1 through 68 as though fully set forth herein.

87.     The First Amendment to the United States Constitution provides that a state "shall make no law . . . abridging the freedom of speech."

88.     The First Amendment protects both the right to speak and the right to refrain from speaking.

89.     The Birth Certificate Policy violates the First Amendment rights of transgender individuals to refrain from speaking by forcing them to disclose their transgender status and to identify with a gender that conflicts with who they are.  It also prevents transgender individuals from accurately expressing their gender.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.      Issue a judgment, pursuant to 28 U.S.C. §§ 2201-02, declaring the Birth

Certificate Policy unconstitutional on its face and as applied for the reasons set forth above;

B.      Permanently enjoin Defendants, their agents, employees, representatives,

successors, and any other person acting directly or indirectly in concert with them from

enforcing the Birth Certificate Policy, including from refusing to provide birth certificates to

transgender individuals like Plaintiffs that accurately reflect their sex, consistent with their

gender identity, and without the inclusion of information that would reasonably disclose an

individual's transgender status on the face of the birth certificate;

C.      Award Plaintiffs costs, expenses, and reasonable attorneys' fees pursuant to 42

U.S.C. § 1988 and any other applicable laws; and

D.      Grant any injunctive or other relief that this Court deems just, equitable, and

proper.


DATED: June 1, 2017          By:     /s/ Monica G. Cockerille

                                     Monica G. Cockerille (ISB No. 5532)
                                     monicacockerille@me.com
                                     Cockerille Law Office, PLLC
                                     2291 N. 31st St.
                                     Boise, ID 83703
                                     Telephone:     (208) 343-7676
                                     Facsimile:     (866) 226-2499

                                     Peter C. Renn*
                                     prenn@lambdalegal.org
                                     Lambda Legal Defense and Education Fund, Inc.
                                     4221 Wilshire Blvd., Suite 280
                                     Los Angeles, CA 90010
                                     Telephone:     (213) 382-7600
                                     Facsimile:     (213) 351-6050

Kara Ingelhart*
kingelhart@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
105 W. Adams St., 26th Fl.
Chicago, IL 60603
Telephone:     (312) 663-4413
Facsimile:      (312) 663-4307

*Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 1st day of June, 2017, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Richard Armstrong
Office of the Director
Idaho Department of Health and Welfare
10th Floor, Pete T. Cenarrusa Building
450 W. State Street
Boise, ID 83720-0036

Elke Shaw-Tulloch
Administrator, Division of Public Health
Idaho Department of Health and Welfare
4th Floor, Pete T. Cenarrusa Building
450 W. State Street
Boise, ID 83720-0036

James Aydelotte
Chief and State Registrar
Bureau of Vital Records and Health Statistics
1st Floor, Pete T. Cenarrusa Building
450 West State Street
Boise, ID 83720-0036

/s/ Monica G. Cockerille
Monica G. Cockerille
Attorney for Plaintiffs