# MODEL STATE VITAL STATISTICS ACT

# and

# MODEL STATE VITAL STATISTICS REGULATIONS

## 2011 Revision

DEPARTMENT OF HEALTH AND HUMAN SERVICES
Centers for Disease Control and Prevention
National Center for Health Statistics
Hyattsville, Maryland 20782

*PENDING DEPARTMENT OF HEALTH AND HUMAN SERVICES APPROVAL*

Endorsed by the National Association for Public Health Statistics and Information Systems by resolution.

.

This revision replaces the 1992 Revision of the Model State Vital Statistics Act and Model State Vital Statistics Regulations (PHS 95-1115).

2011 Revision- September 7, 2011

### *WORKING GROUP TO REVISE THE MODEL STATE VITAL STATISTICS ACT AND MODEL STATE VITAL STATISTICS REGULATIONS*

*Chairperson*
Alvin T. Onaka, Ph.D.
State Registrar and Chief
Office of Health Status Monitoring
Hawaii Department of Health

*Members*
Catherine Molchan Donald
State Registrar and Director
Center for Health Statistics
Alabama Department of Public Health

Linette T. Scott, M.D., M.P.H.
State Registrar and Deputy Director
Health Information and Strategic Planning
California Department of Public Health

Ronald Hyman
State Registrar and
Director of Vital Records, CHEIS
Colorado Department of Public Health and
   Environment

Steven Schwartz, Ph.D.
New York City Registrar
Director, Office of the Registrar
New York City Department of Health
   and Mental Hygiene

Karen R. Hampton, J.D.
Manager, Oregon Vital Events
   Registry System
Oregon Department of Human Services

Patricia W. Potrzebowski, Ph.D.
Former Director, Bureau of Health Statistics
   and Research,  Pennsylvania Department of Health
Executive Director, National Association for Public Health Statistics  and Information Systems

Wilfredo Lopez. J.D.
Former General Counsel, New York City Department of Health and Mental Hygiene
General Counsel Emeritus, New York City Department of Health and Mental Hygiene

*Centers for Disease Control*
2011 Revision- September 7, 2011

2

*and Prevention*
**National Center for Health Statistics**
**Division of Vital Statistics**
**Registration Methods Program**
**Hyattsville, Maryland**

Julia L. Kowaleski
Chief, Registration Methods Program

Judy M. Barnes
Registration Methods Specialist

Dewey H. LaRochelle
Project Specialist

George C. Tolson
Statistician

2011 Revision- September 7, 2011

## Preface

The Model State Vital Statistics Act and Regulations were developed to serve as models for States in preparing their own laws and regulations.  The Model Law has been designed to improve the quality and uniformity of State data by establishing standard reporting requirements, definitions, and procedures for registering vital events.  The Model Law has an impact on how vital statistics data are reported and tabulated at the State level, which in turn impacts on national vital statistics.

The U.S. vital registration and statistics system exemplifies cooperation between the Federal and State Governments at its best. Although the legal responsibility for the registration of vital events rests with the individual States, the States and the National Center for Health Statistics (the Federal partner) work together to build and maintain a cooperative system that produces records that satisfy the legal requirements of individuals and their families while protecting the security of the records and preventing fraudulent uses.  In addition, the information is used for administrative and public health purpose and meets statistical and research needs at the local, State, and national levels. These cooperative efforts include the development and promotion of standards for electronic systems, certificates of live birth, death, and report of fetal death, training and quality control programs, and model legislation.

This is the sixth revision of the Model State Vital Statistics Act (the first was in 1907) and the third revision of the Model State Vital Statistics Regulations (the first was in 1977). The Model Act and Regulations provide detailed guidance to State registrars of vital statistics and State legislators to guide them in updating their State vital statistics laws and regulations. The Model Act and Regulations serve to promote uniformity among States in authorities, definitions, security, registration and issuance practices, preservation, disclosure, fees, penalties and other functions that comprise a State system of vital statistics.  A State may wish to adopt this revision in total or may wish to adopt various sections of the Model Act and Regulations.

Major goals of this revision of the Model Act and Regulations are to provide guidance for vital event registration, issuance, security and fraud prevention, and protection of confidential information in an electronic environment.

 New terminology has been introduced.   A vital report is submitted and becomes a vital record when accepted for registration by the State Registrar. In addition, certification (either paper or electronic) is used instead of certified copy.  Other laws or common usage may use the old terminology, (birth certificate or death certificate), instead of the new terminology used in this this revision (birth certification or death certification).  Changes were made because of moving from paper to electronic systems. (See Appendix I)

In developing this revision, input was sought not only from State vital records and statistics offices but also from other persons and organizations, including Federal agencies, with an interest in the  vital statistics system as a source of legal records, statistical data, or for public health or administrative purposes.  Comments from these interested persons and organizations provided invaluable assistance in developing the revision and should help guarantee that the vital statistics system continues to serve the interests of its many users.

2011 Revision- September 7, 2011

# Contents

Page

Working Group to Revise the Model State Vital Statistics Act and

Model State Vital Statistics Regulations ........................................................................

Preface ..........................................................................................................................

Section 1.   Short Title..................................................................................................

Section 2.   Definitions ................................................................................................

Section 3.   Office of Vital Statistics and Statewide System of Vital Statistics..............

Section 4.   Regulations ...............................................................................................

Section 5.   Appointment of State Registrar of Vital Statistics ......................................

Section 6.   Duties of State Registrar ...........................................................................

Regulation 6.   Duties of State Registrar ......................................................................
                 (Authorization:  Section 6 of Model Act)
Section 7.   Security of Vital Statistics System…………………………………………….

Regulation 7.   Security of Vital Statistics System.........................................................
                 (Authorization:  Section 7 of Model Act)
Section 8.   Persons Required to Keep Records ...........................................................

Regulation 8.   Persons Required to Keep Records ......................................................
                 (Authorization:  Section 8 of Model Act) .............................................

Section 9.   Duties to Furnish Information .....................................................................

Section 10.  Content of Vital Records and Vital Reports ................................................

Section 11.  Live Birth Registration ..............................................................................

Regulation 11.Live Birth Registration – Out-of-Institution Live Birth – Documentary Evidence
                 ...........................................................................................................
                 (Authorization:  Section 11 of Model Act)

Section 12.  Infants of Unknown Parentage; Foundling Registration ..............................

Regulation 12.  Infants of Unknown Parentage; Foundling Registration .......................
                 (Authorization:  Section 12 of Model Act)
Section 13.  Delayed Registration of Live Birth .............................................................

Regulation 13.  Delayed Registration of Live Birth.......................................................
                 (Authorization:  Section 13 of Model Act)
Section 14.  Judicial Procedures to Register a Live Birth...............................................

Section 15.  Death Registration ...................................................................................

Regulation 15.  Death Registration..............................................................................
                 (Authorization:  Section 15 of Model Act)
Section 16.  Judicial Procedures to Register a Death…………………………………......

2011 Revision- September 7, 2011

Section 17.  Fetal Death Registration ...................................................................

Section 18.  Authorization for Final Disposition .................................................

Regulation 18.  Authorization for Final Disposition .........................................
          (Authorization:  Section 18 of Model Act)
Section 19.  Marriage Registration ......................................................................

Section 20.  Delayed Registration of Marriage………………………………………..

Section 21.  (Divorce, Dissolution of Marriage, or Annulment) Registration.................

Section 22.  Reports of Adoption ........................................................................

Section 23.  Amendment and Correction of Vital Records ...............................

Regulation 23.  Amendment and Correction of Vital Records.........................
          (Authorization:  Section 23 of Model Act)
Section 24.  Establishing Replacement Records of Live Birth .......................

Regulation 24.  Establishing Replacement Records of Live Birth .................
          (Authorization:  Section 24 of Model Act)
 Section 25.  Reports of Induced Termination of Pregnancy ..........................

Section 26.  Preservation of Vital Records........................................................

Regulation 26.  Preservation of Vital Records .................................................
          (Authorization:  Section 26 of Model Act)
Section 27.  Confidentiality and Disclosure of Information from Vital Records or Vital

          Reports…………………………………………………………………………….

Regulation 27. Confidentiality and Disclosure of Information from Vital Records

          or Vital Reports .....................................................................................
          (Authorization:  Section 27 of Model Act)
Section 28.  Certifications from the System of Vital Statistics…… .................

Regulation 28.  Certifications from the System of Vital Statistics..................
          (Authorization:  Section 28 of Model Act)
Section 29.  Fees ...................................................................................................

Regulation 29.  Fees.............................................................................................
          (Authorization:  Section 29 of Model Act)
Section 30.  Penalties ...........................................................................................

Section 31.  Applicability ......................................................................................

Section 32.  Severability .......................................................................................

Section 33.  Repeal................................................................................................

Section 34.  Time of Taking Effect .......................................................................

2011 Revision- September 7, 2011

228
229
230
231
232
233
234
235
236

# MODEL STATE VITAL STATISTICS ACT AND REGULATIONS

237
238
239
240
241
242
243
244
245
246   NOTE:  Where the need for variation was apparent, parentheses, "( )," have been placed
247   around the word or phrase.  In cases where recommendations were considered optional,
248   brackets "[ ]," have been placed around the word or phrase.
249

2011 Revision- September 7, 2011

## Section 1.  Short Title

This Act may be cited as the "Vital Statistics Act."

## Section 2.  Definitions

As used in this Act:

(a) "Amendment" means a change to a certification item on a vital record after a certification has been issued.

(b) "Authorized representative" means an agent designated in a written and witnessed statement signed by the registrant or other qualified applicant.

(c) "Certification" means the document, paper or electronic format, issued by the State Registrar and containing all or a part of the exact information contained on the original vital record, and which, when issued by the State Registrar, has the full force and effect of the original vital record.

(d) "Certification item" means any item of information that appears on certifications, whether paper or electronic, that are issued.

(e) "Certifier" means a person required to attest to the accuracy of the information submitted on a vital event report.

(f) "Correction" means a change to a non-certification item on a vital record, or a change to a certification item provided no certification, whether paper or electronic, has been issued.

(g) "Court of competent jurisdiction" means a court within the United States with jurisdiction over the registrant and such other individuals that the court deems necessary.

(h) "Dead body" means a human body or such parts of such human body from the condition of which it reasonably may be concluded that death occurred.

(i) "Disclosure" means to make available or make known personally identifiable information contained in a vital record, by any means of communication.

(j) "Disposition, final" means the burial, interment, cremation, removal from the State, or other authorized disposition of a dead body or fetus.

(k ) "Electronic signature" means an electronic sound, symbol, or process attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to attest to the accuracy of the facts in the record.

(l) "Facts of live birth" means the child's name, date of birth, place of birth and sex, and the parent'(s) name(s) appearing on the record of live birth.

2011 Revision- September 7, 2011

8

(m) "Fetal death" means death prior to the complete expulsion or extraction from its mother of a product of human conception, irrespective of the duration of pregnancy and which is not an induced termination of pregnancy.  The death is indicated by the fact that after such expulsion or extraction, the fetus does not breathe or show any other evidence of life, such as beating of the heart, pulsation of the umbilical cord, or definite movement of voluntary muscles.  Heartbeats are to be distinguished from transient cardiac contractions; respirations are to be distinguished from fleeting respiratory efforts or gasps.

(n) "Government agency" means a unit of local, state, federal, or tribal government.

(o) "Health research" means a systematic study to gain information and understanding about health with the goal of finding ways to improve human health.  Such study shall conform to or be conducted in accordance with generally accepted scientific standards or principles and be designed to develop or contribute to generalizable scientific knowledge.

(p) "Human Remains" means a dead body, or any part of the body of a human being from the condition of which it reasonably can be concluded that death occurred, but does not include human ashes recovered after cremation.

(q) "Individual" means a natural person.

(r) "Induced termination of pregnancy" means the purposeful interruption of an intrauterine pregnancy with the intention other than to produce a live-born infant, and which does not result in a live birth.  This definition excludes management of prolonged retention of products of conception following fetal death.

(s) "Institution" means any establishment, public or private, which provides:
      (1)  in-patient or out-patient medical, surgical, or diagnostic care or treatment, or
      (2)  nursing, custodial, or domiciliary care, or
      (3)  to which persons are committed by law.

(t) "Inter-jurisdictional exchange" means a process whereby registration areas agree to exchange vital records information with the State Registrars of other States, territories, and neighboring countries.

(u) "Interment" means the disposition of human remains by entombment or burial.

(v) "Legal representative" means a licensed attorney representing the registrant or other qualified applicant.

(w) "Live birth" means the complete expulsion or extraction from its mother of a product of Human conception, irrespective of the duration of pregnancy, which, after such expulsion or extraction, breathes, or shows any other evidence of life, such as beating of the heart, pulsation of the umbilical cord, or definite movement of voluntary muscles, whether or not the umbilical cord has been cut or the placenta is attached.  Heartbeats are to be distinguished from transient

2011 Revision- September 7, 2011

9

343 cardiac contractions; respirations are to be distinguished from fleeting respiratory efforts or
344 gasps.
345
346 (x)  "Personally identifiable information" means information that can be used to distinguish or
347        trace an individual's identity, such as but not limited to his or her name, Social Security
348        number,  biometric records or address, alone, or when combined with other personal or
349        identifying information which is linked or linkable to a specific individual, such as but not
350        limited to  date and place of live birth or mother's name prior to first marriage.
351
352 (y)  "Person in charge of an institution" means the officer or employee who is responsible for
353 administration and includes but is not limited to a person holding the title of chief executive
354 officer, administrator, superintendent, director or executive director.
355
356 (z)  "Physician" means a person authorized or licensed to practice medicine or osteopathy
357   pursuant to the laws of this State.
358
359 (aa)  "Record" means a report of a vital event that has been registered by the State Registrar.
360
361 (bb)  "Record of foreign live birth" means a document registered by the State Registrar for a
362 person born in a foreign country who may or may not be a citizen of the U.S. and who was
363 adopted through a court with competent jurisdiction over the State Agency.
364
365
366 (cc)  "Registration" means the process by which vital records are accepted and incorporated into
367 the official records of the (Office of Vital Statistics).
368
369 (dd)  "Registration, date of" means the month, day, and year a vital record is incorporated into
370        the official records of the (Office of Vital Statistics).
371
372 (ee)  "Report" means a document, paper or electronic, containing information related to a vital
373        event submitted by a person or entity required to submit the information in accordance
374        with this Act to the State Registrar for the purpose of registering a vital event.
375
376 (ff)  "Sealed record" means the original record of a vital event and the evidence submitted to
377        support the change and shall not be subject to inspection except upon order of a court
378        with competent jurisdiction over the State Agency or as provided by regulation.
379
380 (gg)  "State" means a State of the United States, the District of Columbia, New York City,
381        American Samoa, the Commonwealth of the Mariana Islands, the Commonwealth of
382        Puerto Rico, Guam and the U.S. Virgin Islands.
383
384 (hh)  "State agency" means the State public health administrative agency that oversees the
385        (Office of Vital Statistics).
386
387 (ii)  "System of vital statistics" means the collection, registration, preservation, amendment,
388        certification, verification, and the maintenance of the security and integrity of vital

2011 Revision- September 7, 2011

389   records; the collection of other reports required by this Act; and activities related thereto
390   including the tabulation, analysis, publication, and dissemination of vital statistics.
391
392  (jj)   "Verification" means a confirmation of the information on a vital record based on the facts
393   contained in a certification.
394
395  (kk)  "Vital records" means reports of live birth, death, fetal death, marriage, (divorce, dissolution
396   of marriage, or annulment) and data related thereto which have been accepted for
397   registration and incorporated into the official records of the (Office of Vital Statistics).
398
399  (ll)  "Vital statistics" means the aggregated data derived from the records and reports of live
400   birth, death, fetal death, induced termination of pregnancy, marriage, (divorce, dissolution of
401   marriage, or annulment) and supporting documentation and related reports.
402

## Section 3.  Office of Vital Statistics and Statewide System of Vital Statistics

404
405   There is hereby established in the State agency an (Office of Vital Statistics) which shall
406   maintain, operate and advance the only system of vital statistics throughout this State.  [The
407   (Office of Vital Statistics) shall be provided with sufficient staff, suitable offices, and other
408   resources for the proper administration of the system of vital statistics and for the preservation
409   and security of its official records.]
410

## Section 4.  Regulations

412
413   The State Agency is authorized to adopt, amend, and repeal regulations for the purpose of
414   carrying out the provisions of this Act.
415

## Section 5.  Appointment of State Registrar of Vital Statistics

417
418   The (State Health Officer) shall appoint the State Registrar of Vital Statistics, hereinafter
419   referred to as "State Registrar," in accordance with (applicable civil service laws and
420   regulations).
421

## Section 6.  Duties of State Registrar

423
424  (a)   The State Registrar shall:
425
426      (1)  Administer and enforce the provisions of this Act and the regulations issued
427        hereunder, and issue instructions for the efficient administration of the system of
428        vital statistics.
429
430      (2)  Direct and supervise the system of vital statistics and the (Office of Vital Statistics)
431        and be custodian of its records.
432
433      (3)  Provide for the confidentiality and security of the system of vital statistics.
434

2011 Revision- September 7, 2011

(4) Direct, supervise, and control the activities of all persons engaged in activities pertaining to the operation of the system of vital statistics.

(5) Develop and conduct training programs to promote uniformity of policy and procedures throughout the State in matters pertaining to the system of vital statistics.

(6) Prescribe, furnish, and distribute all forms required by this Act and the regulations issued hereunder, and prescribe such other means for transmission of data, including electronic submission, as will accomplish the purpose of complete, accurate, and timely reporting and registration.

(7) Prepare and publish reports of vital statistics of this State and such other reports as may be required by the State Agency.

(8) Provide to local health agencies information derived from vital records and vital reports required under this Act, as he or she shall determine are necessary for local health planning and program activities.  The State Registrar shall establish a schedule with each local health agency for transmittal of the information.  The information shall remain the property of the (Office of Vital Statistics), and the uses which may be made of them shall be governed by the State Registrar.

(9) Prepare a plan to provide for the continuity of operations of the system of vital statistics in the event of an emergency.   The plan shall anticipate to the extent practicable, natural or man-made events that interrupt normal activities of the system of vital statistics, identify essential vital statistics services, and provide guidance for maintaining such services.  Components of the plan shall include alternative locations for operations, identification of essential equipment and document needs and where to obtain them, and identification of essential staff and how to communicate with them in an emergency.  Such plan shall be confidential and shall not be subject to compelled disclosure.  The State Registrar may, however, authorize disclosure of all or part of the plan as the State Registrar may deem necessary for the purpose of implementing the plan.

(b)    The State Registrar may establish, designate or eliminate offices in the State to aid in the efficient administration of the system of vital statistics.

(c)    The State Registrar may delegate such functions and duties vested in him or her to employees of the (Office of Vital Statistics) and to employees of any office established or designated under Section 6(b).

## Regulations 1-5 intentionally left blank.

## Regulation 6.  Duties of State Registrar
(Authorization:  Section 6 of the Model Act)

2011 Revision- September 7, 2011

12

## Regulation 6.1 Forms, Records, Reports, Electronic Data Files

All forms, records, electronic data files, reports, and supporting documentation used in the system of vital statistics are the property of the State Agency - and shall be surrendered to the State Registrar of Vital Statistics - hereinafter referred to as "State Registrar" - upon demand. The forms prescribed and distributed by the State Registrar for reporting vital statistics shall be used only for official purposes. Only those forms, including worksheets used in the preparation of vital records or vital reports, furnished or approved by the State Registrar shall be used for the submission of vital reports or in certifications thereof. Electronic data records will be accepted only when standards set by the State Registrar are met. Only computer programs specified and provided or otherwise authorized by the State Registrar shall be used for the submission of vital records and vital reports.

## Regulation 6.2 Requirements for Preparation of Records and Reports

All individuals preparing or certifying a vital record or vital report shall be trained or approved by the State Registrar. All forms, records, and reports relating to vital statistics must either be computer printed, typewritten or printed legibly in black, unfading ink, or generated using electronic media approved by the State Registrar. All signatures required shall be either electronic or entered in black, unfading ink. Unless otherwise directed by the State Registrar, no vital record or vital report shall be complete and correct and acceptable for registration:

(a)     That does not contain the certifier's name computer printed, typed, or printed legibly [under his or her signature];

(b)     That does not supply all items of information or satisfactorily account for their omission;

(c)     That contains alterations or erasures;

(d)     That interferes with document imaging;

(e)     That does not contain signatures as required;

(f)     That is marked or flagged "copy" or "duplicate";

(g)     That is not an original;

(h)     That is prepared on an improper form;

(i)     That contains improper or inconsistent data;

(j)     That contains an indefinite cause of death which denotes only symptoms of disease or conditions resulting from disease;

(k)     That is not prepared in conformity with regulations or instructions issued by the State Registrar.

2011 Revision- September 7, 2011

13

## Regulation 6.3 Designation of Local or Branch Registration Offices

The State Registrar shall determine whether offices other than the (Office of Vital Statistics) are needed in this State to aid in the efficient administration of the system of vital statistics.

If the State Registrar determines that additional offices are necessary, such offices shall be designated with the approval of the State Agency.  The duties and responsibilities may be assigned to currently existing offices or special branch offices of the (Office of Vital Statistics) may be established in those areas where they are deemed necessary, or a combination of existing offices and branch offices may be used.  The employees of all offices shall be subject to the control of the State Registrar when they are performing functions relating to the system of vital statistics.

Any local registrar shall be appointed by the State Registrar.  The local registrar shall, with the approval of the State Registrar, appoint one or more deputy local registrars of vital statistics. The deputy local registrar shall perform the duties of the local registrar in the absence or incapacity of such local registrar and shall perform such other duties as may be prescribed.  The State Registrar may remove a local registrar or deputy local registrar for cause.

The State Registrar shall delegate such duties and responsibilities to such offices as he or she deems necessary to provide for the efficient operation of the system of vital statistics.

The State Registrar, with the approval of the State Agency, shall determine the responsibilities and duties of each office independently.

## Section 7.  Security of Vital Statistics System

The Vital Statistics System supports civil registration and creates information that is used for public health, statistical, health research, national security, and administrative purposes.  Civil registration of each vital event that occurs within the State is carried out primarily for the purpose of establishing legal documents provided by law.  Due to increased requirements of civil registration in the context of national security and the use of live birth records as primary identity documents, the State Registrar must take measures to prevent the fraudulent use of vital records for purposes such as identity theft or terrorism, the State Registrar must maintain security of personnel, physical environments, electronic systems, and preservation methods.  In addition, the State Registrar must perform data assurance and record matching activities to protect the confidentiality and security of vital records and prevent their fraudulent use.  This section addresses authorities necessary for these purposes.

The State Registrar shall:

    (a) authenticate all users of vital statistics systems and document that such users require access based on their official duties;

2011 Revision- September 7, 2011

14

(b) authorize authenticated users of vital statistics systems to access specific components of the vital statistics systems necessary for their official roles and duties;

(c) establish separation of duties between staff roles that may be susceptible to fraud or misuse and routinely perform audits of staff work for the purposes of identifying fraud or misuse within the vital statistics system;

(d) require that authenticated and authorized users maintain a specified level of training related to security and provide written acknowledgment of security procedures and penalties;

(e) validate data provided in reports submitted for registration through site visits or with independent sources outside the registration system at a frequency specified by the State Registrar to maximize the integrity of the data collected;

(f) protect personally identifiable information and maintain systems that provide for audits of use and include protocols for breach identification and notification;

(g) receive a report of death if the decedent was born in the State or if the decedent was a resident of the State from the United States Department of Defense or the United States Department of State when the death of a United States citizen occurs outside the United States;

(h) match death records registered in their jurisdiction and death records provided in accordance with Section 27 to live birth records in their jurisdiction;

(i) match death records received from the United States Department of Defense or the United States Department of State for deaths of United States citizens occurring outside the United States to live birth records in their jurisdictions;

(j) work with law enforcement to provide evidence for active fraud investigations;

(k) provide secure workplace, storage and technology environments that have limited role-based access;

(l) maintain overt, covert and forensic security measures for certifications, verifications and automated systems that are part of the vital statistics system;

(m) comply with applicable laws and regulations associated with information technology systems and related information security requirements; and

(n) comply with national standards that apply to the vital statistics system and its components.

**Regulation 7: Security of Vital Statistics System**
(Authorization: Section 7 of the Model Act)

2011 Revision- September 7, 2011

15

(a) Certifications issued from vital statistics systems shall have security features.

    (1) All certifications, paper and electronic, must include standard overt, covert, and forensic security features that are designed to prevent tampering, counterfeiting, or otherwise duplicating the certification for fraudulent purposes.

        (i) The overt features enable instant authentication through visual inspection by the user without requiring expert knowledge.  Overt features may include but are not limited to color changing inks, holograms, fibers, latent images, watermarks and security threads.

        (ii) The covert features are detectable with specific tools.  Covert features may include but are not limited to micro printing, fibers, and UV-fluorescent inks.

        (iii) The forensic features are only detectable in a forensic laboratory by an expert examiner or a code known only to the State Registrar.

(b) Matching of death records to live birth records as authorized in Section 7 shall include the following actions:

    (1) Upon matching the death record to the live birth record, the live birth record shall be marked or flagged deceased.

    (2) The date of death and the State or country where death occurred shall be documented with the live birth record.

    (3) The State Registrar shall have documented procedures for performing the match of the death record to the live birth record.

    (4) Initial matching and marking or flagging of records shall occur within (10) calendar days after receipt of records.

    (5) Certifications and verifications issued from live birth records marked or flagged deceased shall be similarly marked or flagged.

(c) The State Registrar shall periodically test and audit the vital statistics system for purposes of detecting fraud.

    (1) Both internal processes and such external processes that interface with internal processes shall be tested and audited on a frequency specified by the State Registrar.

    (2) The State Registrar shall provide copies of relevant findings and documentation to appropriate authorities for further investigation.

    (3) The results of such tests and audits shall be retained by the State Registrar but shall not be subject to inspection or copying except by the State Registrar for purposes of

2011 Revision- September 7, 2011

667     administering the vital statistics program.
668

## Section 8.  Persons Required to Keep Records

670

671     (a) Every person in charge of an institution shall keep a record of personal data concerning
672         each person admitted or confined to such institution.  This record shall include such
673         information as required for the reports of live birth, death, fetal death or induced
674         termination of pregnancy required by this Act.  The record shall be made at the time of
675         admission from information provided by the person being admitted or confined, but when
676         it cannot be so obtained, the information shall be obtained from relatives or other persons
677         acquainted with the facts.  The name and address of the person providing the information
678         shall be a part of the record.
679

680     (b) Any licensed health care provider shall keep a record of personal data concerning each
681         person under the provider's care for a condition that results in a reportable vital event when
682         such documentation is not maintained by an institution described in (a).  The record shall
683         include such information as required for the provider to submit a report of live birth, death,
684         fetal death or induced termination of pregnancy required by this Act.  The record shall
685         include information provided by the person being treated.  If the person being treated cannot
686         provide the information, then the licensed health care provider shall obtain the information
687         from relatives or other persons acquainted with the facts.  The name and address of the
688         person providing the information shall be a part of the record.
689

690     (c)     When a dead body or fetus is released or disposed of by an institution, the person in
691             charge of the institution shall keep a record showing the name of the decedent, date of
692             death, name and address of the person to whom the body or fetus is released, and the
693             date of removal from the institution.  If final disposition is made by the institution, the date,
694             place, and manner of disposition shall also be recorded.
695

696     (d)     A funeral director, embalmer, or other person who removes from the place of death,
697             transports, or makes final disposition of a dead body or fetus, in addition to filing any
698             record or other report required by this Act or regulations promulgated hereunder, shall
699             keep a record which shall identify the body, and such information pertaining to his or her
700             receipt, removal, delivery, burial, or cremation of such body as may be required by
701             regulations adopted by the State Agency.
702

703     (e)     Records maintained under this section shall be retained for a period of not less than (7)
704             years and shall be made available for inspection by the State Registrar or his or her
705             representative upon demand.
706

## Regulation 8.  Persons Required to Keep Records

708     (Authorization:  Section 8 of the Model Act)
709

710     Each funeral director shall keep a record containing, at a minimum, the following information
711     about each dead body or fetus the funeral director handles:
712

2011 Revision- September 7, 2011

17

713　　(a)　The date, place, and time of receipt;

715　　(b)　The date, place, and manner of disposition;

717　　(c)　If the dead body or fetus is delivered to another funeral director, the date of such
718　　　　　delivery and the name and address of the funeral director to whom delivered; and

720　　(d)　The items required by the report of death for those deaths for which the funeral director
721　　　　　was required to register the report.

## Section 9.  Duties to Furnish Information

725　(a)　Any person having knowledge of the facts shall furnish such information as he or she
726　　　　may possess regarding any live birth, death, fetal death, induced termination of
727　　　　pregnancy, marriage, or (divorce, dissolution of marriage, or annulment), upon demand of
728　　　　the State Registrar.  Any person required to report shall provide to the State Registrar
729　　　　information that was required to be reported, but that was not so reported, within five
730　　　　calendar days of that person receiving that information.

732　(b)　Within five calendar days of receipt of any autopsy results or other information that would
733　　　　provide pending or missing information or correct errors in a reported cause of death,  the
734　　　　physician, medical examiner, or coroner required to report the death shall register a
735　　　　supplemental report of the cause of death to amend the record.

737　(c)　Any person or institution that in good faith provides information required by this Act or
738　　　　Regulations shall not be subject to any action for damages resulting from such provision
739　　　　of information.

741　(d)　The State Registrar shall have the authority to require alternative documentation from the
742　　　　data provider of the occurrence of vital events for the purpose of quality assurance.

## Section 10.  Content of Vital Records and Vital Reports

746　(a)　In order to promote and maintain nationwide uniformity in the system of vital statistics,
747　　　　the forms of vital records and vital reports required by this Act, or by regulations adopted
748　　　　hereunder, shall include as a minimum the items recommended by the Federal agency
749　　　　responsible for national vital statistics.

751　(b)　Each vital record, vital report, and other document required by this Act shall be prepared
752　　　　in the format approved by the State Registrar.

754　(c)　All vital records shall contain the date of registration.

756　(d)　Information required in forms, vital records, or vital reports authorized by this Act may be
757　　　　submitted, verified, registered, and stored by photographic, electronic, or other means
758　　　　as prescribed by the State Registrar.

759
760 **Section 11.  Live Birth Registration**
761
762 (a)   A report of live birth for each live birth which occurs in this State shall be submitted to
763       the (Office of Vital Statistics), or as otherwise directed by the State Registrar, within five
764       calendar days after such live birth and shall be registered if it has been completed and
765       submitted in accordance with this section.
766
767 (b)   The physician, institution, or other person providing prenatal care shall provide the
768       prenatal care information required for the report to the institution where the delivery is
769       expected to occur not less than 30 calendar days prior to the expected delivery date.
770
771 (c)   When a live birth occurs in an institution or en route thereto, the person in charge of the
772       institution or his or her authorized designee shall obtain all data required by the State
773       Registrar, prepare the report, certify that the child was born alive at the place and time
774       and on the date stated either by signature or by an approved electronic process, and
775       submit the report as directed in Section 11(a).
776
777 (d)   In obtaining the information required for the report, all institutions shall use information
778       gathering procedures (including worksheets) provided or approved by the State
779       Registrar.  Institutions may establish procedures to transfer, electronically or otherwise,
780       information required for the report from other systems.  Such procedures shall be
781       reviewed and approved by the State Registrar prior to implementation to ensure that the
782       information being transferred is the same as that being requested for the report.
783
784 (e)   When a live birth occurs outside an institution,
785
786       (1)   the information for the report of live birth shall be submitted in the format specified
787             by the State Registrar in the following order of priority within five calendar days of
788             the live birth by:
789
790             (a) the medical facility at which the mother and child are examined within five
791                 calendar days of the live birth; or
792
793             (b) the physician in attendance at the live birth or who examines the mother and the
794                 child within five calendar days of the live birth; or
795
796             (c) any other licensed or certified health care practitioner [authorized to attend the
797                 live birth] in attendance at the live birth or who examines the mother and the
798                 child within five calendar days of the live birth; or
799
800             (d) the father, the mother, or, in the absence of the father and the inability of
801                 the mother, the person in charge of the premises where the live birth occurred.
802
803       (2)   the State Agency shall by regulation determine what evidence may be required to
804             establish the facts of live birth.

2011 Revision- September 7, 2011

19

805
806           (3)  When a report is submitted for an out of institution live birth that does not include the
807           minimum acceptable documentation required in the regulations when the live birth
808           occurred outside an institution or when the State Registrar has cause to question the
809           validity or adequacy of the documentary evidence, and if the deficiencies are not
810           corrected, the State Registrar shall not register the report of live birth.  The State
811           Registrar shall advise the registrant's mother or guardian of the reasons for this action,
812           and shall further advise such person the right to seek an order from a court with
813           competent jurisdiction over the State Agency.

814
815 (f)     When a live birth occurs on a moving conveyance within the United States and the child
816         is first removed from the conveyance in this State, the live birth shall be registered in this
817         State and the place where it is first removed shall be considered the place of live birth.
818         When a live birth occurs on a moving conveyance while in international waters or air
819         space or in a foreign country or its air space and the child is first removed from the
820         conveyance in this State, the live birth shall be registered in this State, but the report
821         shall show the actual place of live birth insofar as can be determined.

822
823 (g)     For purposes of live birth registration, the woman who gives live birth to the child shall be
824         the live birth mother.  The information required by the report of live birth shall be that of
825         the live birth mother and such information shall be reported to and registered by the State
826         Agency pursuant to State law.  Thereafter, a court of competent jurisdiction may
827         determine that a woman other than the live birth mother is the biological or genetic
828         mother and order that the original live birth record be so amended.  The original live birth
829         record shall then be placed under seal.  The information about the father [(spouse,
830         parent, domestic partner, civil partner)] shall be entered as provided in Section 11(h).

831
832 (h)     For the purposes of live birth registration:

833
834         (1)  If the mother was married at the time of either conception or live birth, or between
835         conception and live birth, the name of the husband [spouse] shall be entered on the
836         report as the (father, parent) of the child, unless parentage  has been determined
837         otherwise by a court of competent jurisdiction.

838
839         (2)  If the mother was not married at the time of either conception or live birth or
840         between conception and live birth, the name of the (father, parent) shall not be entered
841         on the report without an acknowledgment of paternity as prescribed by State law and
842         signed by the mother and the person to be named as the (father, parent).

843
844         (3)  In any case in which paternity of a child is determined by a court of competent
845             jurisdiction, the name of the (father, parent) and surname of the child shall be
846             entered on the report of live birth in accordance with the finding and order of the
847             court.

848
849         (4) If the (father, parent) is not named on the report of live birth, non-identifiable
850         information about the (father, parent) may be entered on the report.

851

2011 Revision- September 7, 2011

20

852       (5)  Acknowledgments referenced in this section shall be filed with (the State Registrar).

854 (i)     Either of the parents of the child, or other informant, shall verify the accuracy of the
855          personal data to be entered on the report in time to permit the submission of the report
856          within the five calendar days as prescribed in Section 11(a).

858 (j)     Reports of live birth submitted after five calendar days, but within one year from the date
859          of live birth shall be registered in the standard format of live birth reports in the manner
860          prescribed above.  Such reports shall not be marked or flagged "Delayed."

862 (k)    The State Registrar may require additional evidence in support of the facts of live birth.

## Regulations 9-10 intentionally left blank.

## Regulation 11.  Live Birth Registration Out-of-Institution Live Birth - Documentary Evidence

(Authorization:  Section 11 of the Model Act)

When a live birth occurs in this State outside of a hospital or institution, and there is found to be
no live birth registration and the report of live birth is registered before the first birthday,
additional evidence in support of the facts of live birth may be required.

A report for the live birth shall be completed and registered upon acceptance by the State
Registrar of the following evidence by the individual responsible for submitting the report:

(a)    Evidence of pregnancy, such as but not limited to:

      (1)   Prenatal record; or

      (2)   A statement from a physician or other health care provider qualified to determine
           pregnancy; or

      (3)   A home visit by a public health nurse or other health care provider; or

      (4)   Other evidence acceptable to the State Registrar.

(b)    Evidence that the infant was born alive, such as but not limited to:

      (1)   A statement from the physician or other health care provider who saw or examined
           the infant; or

      (2)   An observation of the infant during a home visit by a public health nurse; or

      (3)   Other evidence acceptable to the State Registrar.

(c)   Evidence of the mother's presence in this State on the date of the live birth, such as but not limited to:

(1)   If the live birth occurred in the mother's residence,

(a)   A rent receipt that includes the mother's name and address, or

(b)   Any type of utility, telephone, or other bill that includes the mother's name and address, or

(c)   A credit or debit card receipt that includes the date and location of the transaction, or

(d)   A driver's license, or a State-issued identification card, which includes the mother's current residence on the face of the license/card, or

(e)   Other evidence acceptable to the State Registrar.

(2)   If the live birth occurred outside of the mother's place of residence, and the mother is a resident of this State, such evidence shall consist of:

(a)   An affidavit from the tenant of the premises where the live birth occurred, that the mother was present on those premises at the time of the live birth; and

(b)   Evidence of the affiant's residence similar to that required in paragraph (c)(1) of this regulation; and

(c)   Evidence of the mother's residence in the State similar to that required in paragraph (c)(1) of this regulation; or

(d)   Other evidence acceptable to the State Registrar.

(3)   If the mother is not a resident of this State, such evidence must consist of clear and convincing evidence acceptable to the State Registrar.

## Section 12.  Infants of Unknown Parentage; Foundling Registration

(a)   Whoever assumes the custody of a live born infant of unknown parentage shall report in a manner prescribed by the State Registrar within five calendar days to the (Office of Vital Statistics) the following information:

(1) The date and city and/or county of finding;

(2) Sex and approximate live birth date of child;

(3) Name and address of the person or institution submitting this report;

944    (4)  Name given to the child by the custodian of the child;

946    (5)  Other data required by the State Registrar.

948  (b)    The place where the child was found shall be entered as the place of live birth.

950  (c)    Information submitted under this section shall constitute the basis for the report of live birth for the child.

953  (d)    If the child is identified and a live birth registration is found or obtained, the report submitted under this Section and any live birth registration resulting from that report shall be voided and placed in a sealed file and shall not be subject to inspection except upon order of a court with competent jurisdiction over the State Agency or as provided by regulation.

## Regulation 12.  Infants of Unknown Parentage; Foundling Registration
(Authorization:  Section 12 of the Model Act)

The report for an infant of unknown parentage shall be registered in the current format for live births and shall:

    (a) Have "foundling" plainly marked or flagged on the report;

    (b) Show the required facts as determined by approximation and have parentage data left blank;

    (c) Show the name and title of the person or institution submitting the report under Section 12.

When a report has been placed in a sealed file as provided by Section 12(d) of the Model Act, the State Registrar may inspect such information for purposes of properly administering the vital statistics program.

## Section 13.  Delayed Registration of Live Birth

(a)    When a report of live birth of a person born in this State has not been registered within one year, a delayed report of live birth may be submitted in accordance with regulations of the State Agency.  No delayed report shall be registered until the evidentiary requirements as specified in regulation have been met.

(b)    A certification issued as a result of a report submitted under this section shall indicate it is a delayed registration and show the date of registration.  The delayed record shall contain a summary statement of the evidence submitted in support of the delayed registration.

(c)    All delayed reports of live birth shall be processed and registered only at the State (Office of Vital Statistics).

2011 Revision- September 7, 2011

23

(d)     All certifications of delayed registrations shall be issued from the single statewide database prepared by the State Registrar.

(e)     No delayed report of live birth shall be registered for a deceased person.

(f)     When an applicant as defined by regulation does not submit the minimum documentation required in the regulations for delayed registration or when the State Registrar has cause to question the validity or adequacy of the applicant's (sworn, notarized, witnessed) statement or the documentary evidence, and if the deficiencies are not corrected, the State Registrar shall not register the delayed report of live birth.  The State Registrar shall advise the applicant of the reasons for this action, and shall further advise the applicant of his or her right to seek an order from a court with competent jurisdiction over the State Agency.

(g)     The State Registrar may provide for the dismissal of an application that is not actively pursued.

## Regulation 13.  Delayed Registration of Live Birth
(Authorization:  Section 13 of the Model Act)

## Regulation 13.1  Who May Request the Registration of a Delayed Registration of Live Birth

Any person (18) years of age or older born in this State whose live birth is not recorded in this State may request the registration of a delayed report of live birth, subject to these regulations and instructions issued by the State Registrar.  If a person is under (18) years of age, his or her parent or guardian, or in the absence, inability or refusal of his or her parent or guardian, any next of kin (18) years of age or older who is at least ten years older than the registrant acting  for the registrant and having personal knowledge of the facts of live birth may request the registration of a delayed report of live birth, subject to these regulations and instructions issued by the State Registrar.

Each application for a delayed registration of live birth shall be signed and (sworn, notarized, witnessed)  to before an official authorized to administer oaths by the person whose live birth is to be registered if such person is (18) years of age or over and is competent to sign and (swear, notarize, witness)  to the accuracy of the facts stated therein; otherwise the application shall be signed and (sworn, notarized, witnessed) to by one of the parents of the registrant, his/her guardian, or any other person (18) years of age or older having personal knowledge of the facts of live birth.

## Regulation 13.2  Facts to be Established for a Delayed Registration of Live Birth

The minimum facts which must be established by documentary evidence shall be the following:

2011 Revision- September 7, 2011

(a) The full name of the person at the time of live birth;

(b) The date of live birth;

(c) The State of live birth;

(d) The full name of the mother prior to first marriage.

## Regulation 13.3  Delayed Registration Following a Legal Change of Status

A live birth originally registered as a delayed live birth shall remain in the delayed registration format, regardless of subsequent legal change of status or amendment.

The prior delayed registration and the evidence upon which the delayed registration was based shall be placed in a sealed file.  Such file shall not be subject to inspection except upon order of a court with competent jurisdiction over the State Agency or by the State Registrar for purposes of properly administering the vital statistics program.

Any certification of such record shall contain a summary of the evidence submitted to substantiate the amended delayed registration.

## Regulation 13.4  Documentary Evidence – Requirements

To be acceptable for registration, the name of the person at the time of the live birth and the date and place of live birth entered on a delayed registration of live birth shall be supported by at least:

(a) For persons born before 1965, one piece of acceptable documentary evidence that will establish to the satisfaction of the State Registrar the name of the mother;

(b) For persons born on or after 1965, one piece of acceptable documentary evidence that will establish to the satisfaction of the State Registrar the names of the mother and father;

(c)    Three pieces of acceptable documentary evidence that will establish to the satisfaction of the State Registrar the facts and date of live birth as alleged in the application;

(d)    Facts of parentage shall be supported by at least one document.

## Regulation 13.5  Documentary Evidence – Acceptability

The State Registrar shall determine the acceptability of all documentary evidence submitted.

(a)   Documents must be from independent sources and shall be in the form of the original record or a duly certified copy thereof or a signed statement from the custodian of the record or document.

(b)   Documents may include but are not limited to:

    (1)   census records;

    (2)   hospital records;

    (3)   military records;

    (4)   Social Security records;

    (5)   voter registration records;

    (6)   school records; or

    (7)   other documents as designated by the State Registrar.

(c)   All documents submitted in evidence:

    (1) for persons more than ten years of age must have been established at least ten years prior to the date of application;

    (2) for persons ten years of age or younger must be dated at least one year prior to the date of application or within the first year of life;

    (3) shall not be contradictory.

## Regulation 13.6  Abstraction of Documentary Evidence

The State Registrar or his or her designated representative shall abstract on the delayed registration of live birth a description of each document submitted to support the facts.  This description shall include:

(a) The title or description of the document;

(b) The name and address of the custodial organization, if any;

(c) The creation date of the original document;

(d) All live birth facts required by Regulation 13.2 contained in each document accepted as evidence.

2011 Revision- September 7, 2011

Original documents submitted in support of the delayed live birth registration shall be returned to the applicant after review. Copies of all items submitted shall be maintained and indexed by the State Registrar.

## Regulation 13.7  Verification by the State Registrar

The State Registrar, or his or her designated representative shall verify:

(a)   That no prior report of live birth is registered in this State for the person whose live birth is to be recorded;

(b)   That he or she has reviewed the evidence submitted to establish the facts of live birth;

(c)   That the abstract of the evidence appearing on the delayed record of live birth accurately reflects the nature and content of the document.

## Regulation 13.8  Dismissal After One Year

An application for a delayed registration of live birth that has not been completed within one year from the date of application may be dismissed at the discretion of the State Registrar.  Upon dismissal, the State Registrar shall so advise the applicant and documents submitted in support of such registration shall be returned to the applicant.

## Section 14.  Judicial Procedures to Register a Live Birth

(a)   If the State Registrar refuses to register a report of live birth under the provisions of Section 11 or 13, a petition signed and (sworn, notarized, witnessed) to by the petitioner may be filed with a court with competent jurisdiction over the State Agency for an order establishing a record of the date and place of the live birth and the parentage of the person whose live birth is to be registered.

(b)   Such petition [shall be made on a form prescribed and furnished or approved by the State Registrar and] shall allege:

(1)   That the person for whom a report of live birth is sought was born in this State;

(2)   That no report of live birth of such person can be found in the (Office of Vital Statistics) or (the office of any local custodian of live birth records);

(3)   That diligent efforts by the petitioner have failed to obtain the evidence required in accordance with Sections 11 or 13 of this Act and Regulations adopted pursuant thereto;

(4)   That the State Registrar has refused to register a report of live birth and;

2011 Revision- September 7, 2011

27

1172      (5)  Such other allegations as may be required.

1174 (c)    The petition shall be accompanied by a statement of the State Registrar made in
1175      accordance with Sections 11(e) (3) or 13(f) and all documentary evidence to support
1176      such registration which was submitted to the State Registrar.

1178 (d)    The court shall fix a time and place for hearing the petition and shall give the State
1179      Registrar 30 calendar days notice of said hearing.  The State Registrar or his or her
1180      authorized representative may appear and testify in the proceeding.

1182 (e)    If the court finds, from the evidence presented, that the person for whom a report of live
1183      birth is sought was born in this State, it shall make findings as to the place and date of
1184      live birth, parentage, and such other findings as may be required and shall issue an
1185      order [on a form prescribed and furnished by the State Registrar] to
1186      establish a court-ordered report of live birth.  This order shall include the live birth data to
1187      be registered, a description of the evidence presented, and the date of the court's action.

1189 (f)    The clerk of court shall forward each such order to the State Registrar within three
1190      calendar days of the order being entered.  Such order shall be used to register a report
1191      of live birth for the individual. The record of live birth shall include a statement that it was
1192      registered based on a court order.

## Section 15.  Death Registration

1196 (a)    A report of death for each death which occurs in this State shall be submitted to the
1197      (Office of Vital Statistics), or as otherwise directed by the State Registrar, within five
1198      calendar days after death or the finding of a dead body and prior to final disposition, and
1199      shall be registered if it has been completed and submitted in accordance with this
1200      section.

1202     (1) If the place of death is unknown but the dead body is found in this State, the report
1203       of death shall be completed and submitted in accordance with this section.  The
1204       place where the body is found shall be noted as the place of death.

1206     (2) When death occurs in a moving conveyance within or outside the United States and
1207       the body is first removed from the conveyance in this State, the death shall be
1208       registered in this State and the place where it is first removed shall be deemed the
1209       place of death, and may show the actual location of death insofar as it can be
1210       determined.

1212     (3) In all other cases, the place where death is pronounced shall be considered the
1213       place where death occurred.

1215     (4) If the date of death is unknown, the medical certifier shall determine the date by
1216       approximation.  If the date cannot be determined by approximation, the date found
1217       shall be entered and identified as date found.

(b)   The funeral director or person acting as such who first assumes custody of the dead body shall submit the report of death to the (Office of Vital Statistics).  However, the report of death may be submitted by the funeral director responsible for the disposition of the body.  In cases where there is no funeral director or person acting as such, the (medical examiner/coroner) shall submit the report of death.

(1) He or she shall obtain the personal data from the next of kin or the best qualified person or source available and shall obtain the medical certification from the person responsible therefore.

(2) The funeral director or person acting as such shall provide the report of death containing sufficient information to identify the decedent to the medical certifier within 48 hours after death unless the medical certification has already been submitted.

(c)   The medical certification shall be completed within 48 hours after having access to the report of death by the decedent's primary or attending physician, except when inquiry is required by the (Post-Mortem Examinations Act).  For purposes of this Section, the decedent's primary or attending physician is the physician who has treated the decedent through examination, medical advice, or medications within the 12 months preceding the death. In the absence or inability of said physician or with his or her approval the report may be completed by his or her associate physician, the chief medical officer of the institution in which death occurred, or the physician who performed an autopsy upon the decedent, provided such individual has access to the medical history of the case, and death is due to natural causes.  The person completing the cause of death shall attest to its accuracy either by signature or by an approved electronic process.

(d)   When inquiry is required by the (Post-Mortem Examinations Act), the (medical examiner/ coroner) in the jurisdiction where death occurred or the body was found shall determine the cause and manner of death and shall complete and sign the medical certification within 48 hours after taking charge of the case.

(e)   When death occurs in an institution and the person responsible for the completion of the medical certification is not available to pronounce death, another physician at the institution who views the body may pronounce death, attest to the pronouncement by signature or an approved electronic process, and, with the permission of the person responsible for the medical certification, release the body to the funeral director or person acting as such.

(f)   When a death occurs in an institution and the death is not under the jurisdiction of the medical examiner or coroner, the person in charge of the institution or his or her designated representative, shall enter the following information on the report of death within 48 hours of death:

(1)  The name of the decedent and the date of death shall be completed if not already done so;

(2)  The medical certification of death and the (electronic signature) of the physician

2011 Revision- September 7, 2011

29

1266
1267
1268
1269
1270
1271
1272
1273
1274
1275
1276
1277
1278
1279
1280
1281
1282
1283
1284
1285
1286
1287
1288
1289
1290
1291
1292
1293
1294
1295
1296
1297
1298
1299
1300
1301
1302
1303
1304
1305
1306
1307
1308
1309

shall be completed by the person's primary or attending physician or as set forth in subsection 15(c) hereof;

   (3)  The partially completed report of death shall be made available to the funeral director [or person acting as such] within 48 hours of death.

g)    If the cause or manner of death is unknown or pending investigation, the cause or manner of death shall be noted as such on the report and reported within 48 hours after death.

(h)    Upon receipt of autopsy results or other information that would change the information in the cause-of-death section of the report of death from that originally reported, the medical certifier shall within five days submit to the (Office of Vital Statistics) a supplemental report to amend the report of death.

(i)    When a death which has not been or is not the subject of a presumptive death proceeding in any court of this or any other State is presumed to have occurred within this State as a result of a known event in this State, but no remains of the presumed deceased can be located, a report of death may be prepared by the State Registrar only upon receipt of an order of court with competent jurisdiction over the State Agency, which shall include the finding of facts required to complete the report of death.[1] Such a report of death shall be marked or flagged "Presumptive" and shall show on its face the date of death as determined by the court, the date of registration, and the identity of the court and the date of the order.

(j)    When a death of a missing person domiciled in this State, and which has not been or is not the subject of a presumptive death proceeding in any court of this or any other State, has been determined by a court with competent jurisdiction over the State Agency in accordance with the laws of this State to have presumptively occurred in another State, a report of death may be prepared by the State Registrar only upon receipt of an order of such court, which shall include the finding of facts required to complete the report of death.  Such a report of death shall be marked or flagged "Presumptive" and shall show on its face the date of death as determined by the said court, the date of registration, and the identity of such court and the date of the order.

(k)    When a death occurring in this State has not been registered as prescribed by this Section, a report of death may be submitted to the State Registrar using the current format of the report of death provided the physician at the time of death or the county medical examiner, State medical examiner or coroner and the funeral director or person acting as such are available to complete the report of death.  If the report of death is submitted more than one year after the date of death or date the body was found, the medical certifier and funeral director shall state in accompanying notarized statements that the information submitted is based on records kept in their files.  If the physician at the time of death, county coroner, county medical examiner, or State medical examiner

---

1 Deaths of persons who are presumed to have died in this State outside of a known event where the remains cannot be located, generally fall under the law of this State governing probate.

2011 Revision- September 7, 2011

and funeral director or person acting as such are unavailable or decline then the death shall not be registered except upon receipt of an order from a court with competent jurisdiction over the State Agency.

## Regulation 14 intentionally left blank.

## Regulation 15.  Death Registration
(Authorization:  Section 15 of the Model Act)

## Regulation  15.1 Registration of Incomplete Reports of Death

(a)     If all the information necessary to complete a report of death is not available within the time prescribed for submitting the report of death, the funeral director or person acting as such, or the (medical examiner/coroner) shall submit the report of death with the information that is available and indicate the items that are unknown.

(b)     Supplemental information providing the unknown non-medical information omitted shall be submitted by the funeral director or person acting as such or the (medical examiner/coroner) with the State Registrar within five calendar days after such information is obtained.  The supplemental information shall be incorporated into the existing death record in accordance with Regulation 23.

(c)     Supplemental information providing the unknown medical information omitted from the report shall be submitted by the medical certifier with the State Registrar within five calendar days after such information is obtained.  The supplemental information shall be incorporated into the existing report of death in accordance with Regulation 23.

## Section 16.  Judicial Procedures to Register a Death

A death may be registered by the State Registrar as specified in Section 15(i), (j) or (k), upon receipt of an order of a court with competent jurisdiction over the State Agency.

(a)     The court order to establish a death record shall include all of the following information:

          (1)  Decedent's legal name (first, middle, last and suffix, if any);

          (2) Date of death as determined from the evidence presented;

          (3) City, county and place of death as determined from the evidence presented;

          (4)  Decedent's date of live birth, city and State or country of live birth, race(s), ethnicity, sex, social security number, and parent(s) name(s) prior to first marriage;

          (5) Decedent's address including street address, city, county, State, and zip code at time of death;

2011 Revision- September 7, 2011

31

(6) Decedent's marital status at time of death;

(7) Name, prior to first marriage, of surviving spouse (if any); and

(8) The information necessary to complete the medical certification including the cause and manner of death.  If the death occurred from an injury, information on how and when the injury occurred. If such information is unknown, the order shall indicate such.

(b)  The death report shall be prepared by the (State Registrar, medical examiner/ coroner) and be submitted to the State Registrar for registration.  This report shall be prepared from the information in the court order.

(c)  All certifications issued shall show the date of the court order and the name of the court issuing that order.

(d)  If the death was registered pursuant to Section 15 (i) or (j) the record shall be marked or flagged "Presumptive."

## Section 17.  Fetal Death Registration

A report of each fetal death of 350 grams or more, or if weight is unknown, of 20 completed weeks gestation or more, calculated from the date last normal menstrual period began to the date of delivery, which occurs in this State shall be submitted within five calendar days after delivery to the (Office of Vital Statistics) or as otherwise directed by the State Registrar and shall be registered if it has been completed and submitted in accordance with this Section.  All induced terminations of pregnancy shall be reported in the manner prescribed in Section 25 and shall not be reported as fetal deaths.

(a)     When a fetus is delivered in an institution or en route thereto, the person in charge of the institution or his or her designated representative shall obtain all data required by the State Registrar to prepare and submit the report.  In obtaining the information required by the fetal death report, all institutions shall use information gathering procedures (including worksheets) provided or approved by the State Registrar.  Institutions may establish procedures to transfer, electronically or otherwise, information required by the fetal death report from other systems.  Such procedures shall be reviewed and approved by the State Registrar prior to implementation to ensure that the information being transferred is the same as that being requested on the fetal death report.

(b)     When a fetus is delivered outside an institution, the physician in attendance at or immediately after delivery shall prepare and submit the report.

(c)     When a fetal death required to be reported by this Section occurs without medical attendance at or immediately after the delivery or when inquiry is required by the (Post-Mortem Examinations Act), the (medical examiner/coroner) shall investigate the cause of fetal death and shall prepare and submit the report within five calendar days.

1401     (d)     If the cause of fetal death is unknown or pending investigation, the cause of fetal death
1402              shall be noted as such on the report.
1403

1404     (e)      A notation indicating the record was amended shall be shown on certifications of the
1405              record.  The date of the change and what item was changed shall also be shown on
1406              certifications of the record.
1407

1408     (f)      When a fetal death occurs in a moving conveyance and the fetus is first removed from the
1409              conveyance in this State or when a fetus is found in this State and the place of fetal death
1410              is unknown, the fetal death shall be reported in this State.  The place where the fetus was
1411              first removed from the conveyance or the fetus was found shall be considered the place of
1412              fetal death.
1413

## 1414    Section 18.  Authorization for Final Disposition

1415

1416     (a)     Human remains shall be disposed of in accordance with State law.[2]
1417

1418     (b)     No person shall dispose of human remains unless all of the following have occurred prior
1419              to final disposition of the body:
1420

1421            1) The report of death or fetal death has been registered with the State Registrar as
1422            provided in Sections 15 or 17;
1423

1424            2) The funeral director or person acting as such has obtained from the State Registrar a
1425            Disposition Permit authorizing final disposition;
1426

1427            3) If final disposition is to be cremation, resomation or burial at sea, additional
1428            authorization must be obtained from the (medical examiner/coroner) in a format
1429            prescribed by the State Registrar.
1430

1431     (c)     For purposes of this Section, upon request of the parent or their authorized representative,
1432              a disposition permit may be issued for a fetus that is the result of a fetal death or induced
1433              termination of pregnancy.
1434

1435     (d)     A Disposition Permit issued under the law of another State which accompanies human
1436              remains brought into this State shall be authority for final disposition of the human remains
1437              in this State.
1438

1439     (e)     No person in charge of any place in which interment or other disposition of human
1440              remains is made shall inter or allow interment or other disposition of human remains
1441              unless the human remains are accompanied by a disposition permit.
1442

1443     (f)      Each person in charge of any place of final disposition shall indicate on the disposition
1444              permit the date of disposition and shall return all completed disposition permits to the

---

2  If disposition requirements are not otherwise specified in State law, then such provisions should be set forth in
this Section.
2011 Revision- September 7, 2011

1445    State Registrar after disposition.  When there is no person in charge of the place of final
1446    disposition, the funeral director or person acting as such shall complete the disposition
1447    permit and return it to the State Registrar after disposition.
1448
1449    [(g)    Authorization for disinterment and reinterment shall be required prior to disinterment of
1450    human remains. Such authorization shall be issued by the State Registrar to a licensed
1451    funeral director or person acting as such, upon proper application.]
1452

1453 **Regulations 16 and 17 intentionally left blank.**

1454

1455 **[Regulation 18.  Authorization for Disinterment and Reinterment**
1456 (Authorization:  Section 18 of the Model Act)
1457

1458 An authorization for disinterment and reinterment of human remains shall be issued by the State
1459 Registrar upon receipt of a written application signed by the next of kin and the person who is in
1460 charge of the disinterment or upon receipt of an order of a court with competent jurisdiction over
1461 the State Agency directing such disinterment.
1462

1463 Upon receipt of such a court order or signed permission of the next of kin, the State Registrar
1464 may issue one authorization to permit disinterment and reinterment of all human remains in a
1465 mass disinterment provided that, insofar as possible, the remains of each body be identified and
1466 the place of disinterment and reinterment specified.  The authorization shall be permission for
1467 disinterment, transportation, and reinterment.
1468

1469 Human remains deposited in a receiving vault shall not be considered a disinterment when
1470 removed from the vault for final disposition. ]
1471

1472 **[Section 19.  Marriage Registration**
1473

1474 (a)    A report of each marriage performed in this State shall be submitted to the (Office of Vital
1475    Statistics) and shall be registered if it has been completed in accordance with this Section
1476    and regulations pursuant to this Act.
1477

1478 (b)    The (official) who issues the marriage license shall prepare the report in the format
1479    prescribed by the State Registrar upon the basis of information obtained from the parties
1480    to be married.
1481

1482 (c)    Each person who performs a marriage shall certify the fact of marriage and submit the
1483    report to the (official) who issued the license within five calendar days after the ceremony.
1484

1485 (d)    Every (official) issuing marriage licenses shall complete and submit such licenses to the
1486    (Office of Vital Statistics) within fifteen calendar days after the ceremony.]
1487

1488 **[Section 20.  Delayed Registration of Marriage**

2011 Revision- September 7, 2011

1489 ((a) The registration of a marriage after one year from the date of marriage shall be made on the
1490 current report of marriage and shall be registered if it is submitted by the official responsible for
1491 issuing marriage licenses.
1492
1493 (b) The report of marriage shall indicate it is a delayed registration and show the date of
1494 registration.]
1495

## [Section 21.  (Divorce, Dissolution of Marriage, or Annulment) Registration

1496
1497
1498 (a)    A report of each (divorce, dissolution of marriage, or annulment) (decreed, ordered) by
1499        any court in this State shall be submitted by the (clerk of court) to the (Office of Vital
1500        Statistics) and shall be registered if it has been completed and submitted in accordance
1501        with this Section. The report shall be prepared by the petitioner or his or her legal
1502        representative in the form prescribed by the State Registrar and shall be submitted to the
1503        (clerk of court) with the petition.  In all cases the report shall be completed and submitted
1504        to the (clerk of court) prior to the granting of the (decree, order).
1505
1506 (b)    The (clerk of court) shall complete and submit the report of each (divorce, dissolution of
1507        marriage, or annulment) to the (Office of Vital Statistics) within five calendar days of
1508        granting the (divorce, dissolution of marriage, or annulment).]
1509

## Section 22.  Reports of Adoption

1510
1511
1512 (a)    For each adoption decreed by a court of competent jurisdiction in this State, the court
1513        shall require the preparation of a report of adoption on a form prescribed and furnished
1514        by the State Registrar. The report of adoption shall include such facts as are necessary
1515        to locate and identify the report of live birth of the person adopted. In the case of a
1516        person who was born in a foreign country, the report of adoption shall provide evidence
1517        from sources determined to be reliable by the court as to the date and place of live birth
1518        of such person. The report of adoption shall include information necessary to establish a
1519        replacement report of live birth of the person adopted; shall identify the order of
1520        adoption; and shall be certified by the clerk of the court.
1521
1522 (b)    Information necessary to prepare the report of adoption shall be furnished by each
1523        petitioner for adoption or by his or her attorney.  The (social service agency) or any
1524        person having knowledge of the facts shall supply the court with such additional
1525        information as may be necessary to complete the report of adoption.  The provision of
1526        such information shall be required prior to the issuance of a final decree in the matter by
1527        the court.
1528
1529 (c)    Whenever an adoption decree is amended or annulled the clerk of the court shall
1530        prepare a report thereof which shall include such facts as are necessary to identify the
1531        original report of adoption and the facts amended in the adoption decree as shall be
1532        necessary to properly amend the report of live birth.
1533

2011 Revision- September 7, 2011

1534 (d)   The clerk of the court shall forward to the State Registrar reports of adoption, reports of
1535       annulment of adoption and amendments of decrees of adoption within five calendar
1536       days of the order being entered.
1537

1538 (e)   When the State Registrar receives a report of adoption, report of annulment of adoption,
1539       or amendment of a decree of adoption for a person born outside this State, he or she
1540       shall forward such report to the State Registrar in the State of live birth.
1541

1542 (f)   If the live birth occurred in a foreign country and the child was not a citizen of the United
1543       States at the time of live birth, the State Registrar shall prepare a "Record of Foreign
1544       Live Birth" as provided by Section 24(j).  If the child was born in a neighboring country,
1545       the State Registrar shall also send a copy of the report of adoption, report of annulment
1546       of adoption, or amendment of a decree of adoption to the appropriate registration
1547       authority.
1548

1549 (g)   If the child was born in a foreign country and through parentage is a citizen of the United
1550       States, the State Registrar shall not prepare a "Record of Foreign Live Birth" and shall
1551       notify the adoptive parents of the procedures for obtaining a revised live birth record for
1552       their child through the United States Department of State.
1553

## Section 23.  Amendment and Correction of Vital Records

1555

1556 (a)   A vital record registered under this Act may be amended or corrected only in accordance
1557       with this Act and regulations adopted by the State Agency to protect the integrity and
1558       accuracy of vital records.
1559

1560 (b)   (1) A vital record that is amended under this section shall indicate that it has been
1561       amended, except as otherwise provided in this Section or by regulation.
1562

1563       (2) Documentation shall be maintained by the State Registrar that identifies the evidence
1564       upon which the amendment or correction was based, the date of the amendment or
1565       correction, and the identity of the authorized vital statistics employee making the
1566       amendment or correction.
1567

1568 (c)   Upon receipt of a certified copy of an order of a court of competent jurisdiction changing
1569       the name of a person born in this State and upon request of such person if (18) years of
1570       age or older, [or person has the status of emancipated minor,] or if less than (18) years of
1571       age, his or her parents, guardian, or legal representative, the State Registrar shall amend
1572       the live birth record to show the new name.
1573

1574 (d)   When an applicant does not submit the minimum documentation required for amending a
1575       vital record or when the State Registrar has cause to question the validity or adequacy of
1576       the applicant's (notarized) statements or the documentary evidence, and the deficiencies
1577       are not corrected, the State Registrar shall not amend the vital record.  The State
1578       Registrar shall advise the applicant of the reason for this action and shall further advise
1579       the applicant of the right of appeal to a court with competent jurisdiction over the State
1580       Agency.

2011 Revision- September 7, 2011

[(e)   When an amendment is made to a marriage record or to information contained on a record of (divorce, dissolution of marriage, or annulment) by the local official issuing the marriage license or the court which entered the decree of (divorce, dissolution of marriage, or annulment), copies of such amendment shall be forwarded to the State Registrar.

If a record of (divorce, dissolution of marriage, or annulment) is set aside by the court which entered the decree of (divorce, dissolution of marriage, or annulment), a copy of the notice of set aside shall be forwarded to the State Registrar and the State Registrar shall void the original divorce record.]

## Regulations 19-22 intentionally left blank.

## Regulation 23.  Amendment and Correction of Vital Records
(Authorization:  Section 23 of the Model Act)

Amendments to vital records are changes made to certification items after a certification has been issued and that do not result in a seal and replace record.  Documentary evidence supporting the amendment is required and some amendments may require a court order.

Corrections to vital records are changes made to non certification items, including information collected for medical and statistical purposes, within a year of the event.  A correction may be made to a certification item provided no certification, whether paper or electronic, has been issued.  Documentary evidence supporting the correction may be required.

(a) Live birth records are presumed to contain accurate information on the facts of live birth when they are registered.  Live birth records will be amended or corrected only to rectify errors in the facts of live birth, except as provided for in Sections 23(c) and 24.

(b) A delayed record of live birth placed on file with supporting documentation or by judicial procedure shall not be amended except to reflect changes as provided by Section 24.

## Regulation 23.1 Correction of  Vital Records

(a) Correction of items that do not appear on certifications may be made by the State Registrar upon identification, query, or request of a person as defined in Regulation 23.4.

(b) Correction of items that appear on certifications may be made by the State Registrar if no certification has been issued and a request is submitted by the licensed facility, licensed provider, health care provider, medical examiner/coroner or other person knowledgeable about the facts who originally provided the information to the State Registrar.  The submission shall include supporting documentation as defined in Regulation 23.5.

2011 Revision- September 7, 2011

(c) Only the medical certifier or (medical examiner/coroner) may correct the medical certifier section of the death record, including the manner, cause and date of death.

(d) When such corrections are made by the State Registrar, a notation as to the source of the information, the date the change was made, and the identity of the authorized vital statistics employee making the change shall be made on the record in such a way as not to become a part of any certification issued.

## Regulation 23.2 Amendment of Vital Records

(a) Once a certification has been issued, changes to items that appear on certifications may only be made by the State Registrar upon request of a person as defined in Regulation 23.4. Such request shall include supporting documentation as defined in 23.5.

(b) Upon acceptance of the requested amendment by the State Registrar, records of live birth, death, fetal death, [marriage, (divorce, dissolution of marriage, annulment)] shall be amended by the State Registrar by changing the new information to the record in a manner that preserves the existing information in the record for audit purposes.

(c) A notation indicating the record was amended shall be shown on certifications of the record. The date of the change and what item was changed shall also be shown on certifications of the record.

## Regulation 23.3 Application for Amendments to Vital Records

(a) Unless otherwise provided in these regulations or in the statute, all amendments to live birth and death records shall be supported by a notarized affidavit setting forth:

    (a)   Information to identify the record;

    (b)   The items to be amended;

    (c)   The incorrect information as it appears; and

    (d)   The correct information as it should appear.

## Regulation 23.4 Who May Apply to Amend or Correct Vital Records

(a) To amend a live birth record, application may be made by the parents if the registrant is under (18) years of age, the guardian, the registrant if (18) years of age or over, [or person who has the status of emancipated minor,] or the legal representative acting on behalf of the registrant.

(b) The licensed facility, licensed provider, or health care provider responsible for submitting a report of live birth may request an amendment or correction within one year of the date of the event.

(c) To amend the personal information on a death record, application may be made by the next of kin as specified in State (probate or other) law. The informant listed on the death record or the funeral director or person acting as such who submitted the report of death may apply to amend the personal information on the death record.

(d) The medical certification of cause of death may only be amended upon receipt of a signed statement or approved electronic notification from the physician or (medical examiner, coroner) who originally certified the cause of death. In the absence or inability of the physician, the cause of death may be amended upon receipt of a signed statement or an approved electronic notification from his or her duly authorized medical associate, or the chief medical officer of the institution in which death occurred, or a (medical examiner, coroner) who assumes jurisdiction of the case provided such individual has access to the medical history of the case. The State Registrar may require documentary evidence to substantiate the requested amendment.

(e) The State Registrar may initiate a correction to a live birth, death, or fetal death record if the State Registrar becomes aware of incorrect information on a record. The State Registrar may contact any facility or individual responsible for the original submission of data to assist in the collection of evidence of the error and correct information.

## Regulation 23.5 Documentary Evidence Required to Amend or Correct Vital Records

(a) With the exception of corrections as outlined in Regulation 23.1, or an amendment to the medical certification, one or more items of documentary evidence must be presented that support the alleged facts. All documents presented must contain sufficient information to clearly indicate that they pertain to the registrant on the record for which the amendment or correction has been requested.

   (1) Acceptable documents include, but are not limited to:

      (a) Certified copy of a marriage record;

      (b) Certified copy of a live birth record of the registrant's child;

      (c) School records;

      (d) Social Security records;

      (e) Passports or visas;

      (f) Military records;

      (g) Federal government census records;

      (h) Government agency records for benefit establishment such as social services, Medicaid, clinical services, or similar services;

2011 Revision- September 7, 2011

(i) Court orders clearly establishing the facts to be amended;

(j) Medical records; or

(k) Other documents deemed to be valid and adequate by the State Registrar to support the requested change.

(2) Documents presented must be from independent sources.  Family documents such as records from bibles or genealogical records are not acceptable.

(3) Documents must be in the form of the original record or must be a duly certified copy or excerpt thereof from the original custodian of the record.

(4) Only one document of each type listed in (a)(1)(a) through (j) above may be used in cases where more than one document is required to support the facts.

(5) For live birth records, the documents submitted must have been established prior to the registrants (18th) birthday or at least ten years prior to the date of application for the amendment or correction. The State Registrar may make exceptions for other documents such as court orders, passports, or other evidence that clearly support the facts of live birth.

(b) The State Registrar shall evaluate the evidence submitted in support of any amendment, and when he or she finds reason to doubt its validity or adequacy, the amendment may be rejected and the applicant advised of the reasons for this action.

## Regulation 23.6 Amendment or Addition of Registrant's First or Middle Names on Live Birth Records

(a) Until the registrant's first birthday, first or middle names may be amended or added upon receipt of an affidavit signed by the parents named on the record or the legal guardian of the registrant.

(b) After one year from the date of live birth, a legal change of name order must be submitted from a court of competent jurisdiction to amend a first or middle name.

(c) After one year from the date of live birth, first or middle names may be added pursuant to Regulations 23.2, 23.3, and 23.4.

## Regulation 23.7 Amendments to Live Birth Records

(a) Amendment or correction of date of live birth

(1) The date of live birth cannot be changed to a date that is after the date the live birth record was registered.

2011 Revision- September 7, 2011

(2) The date of live birth may be changed up to 30 calendar days with two supporting documents provided that date is not after the date the live birth record was registered.   At least one of the documents must have been created within 90 calendar days of the alleged date of live birth.

(3) Other changes not described in Regulation 23.7(a)(2) to the date of live birth may be made at the discretion of the State Registrar provided that a minimum of three documents adequately support that the registrant has consistently used the date from childhood and the change does not make the live birth date after the date the certificate was registered. At least one of the documents must have been created within seven years of the alleged date of live birth.  The change cannot be made if that change would be in conflict with any live birth record registered in the (Office of Vital Statistics) for other children of the same mother.

(b) Signatures may not be amended.

## Regulation 23.8 Amendments to Death Records

(a) When the marital/partnership status is shown as married/partnered and a surviving spouse/partner is listed on the death record of the decedent then the marital/partnership status shall be changed to:

(1) widowed and the spouse/partner removed if a death certification for the spouse/partner documenting that the spouse/partner died prior to the death of the decedent is submitted.

(2) divorced or never married and the spouse/partner removed if a certification of divorce/dissolution/annulment documenting that the event occurred prior to the death of the decedent is submitted.

(b) If the marital/partnership status is shown as married/partnered and surviving spouse/partner is listed as unknown or is blank on the death record, then a marriage/partnership certification must be provided to add the name of the surviving spouse/partner.

(c) If the marital/partnership status is shown as married/partnered and the surviving spouse/partner is listed on the death record then an order from a court of competent jurisdiction will be needed to change that spouse/partner to a different person.

(d) When the marital/partnership status is shown as divorced, widowed, or never married and no surviving spouse/partner is listed on the death record of the decedent then the marital/partnership status shall be amended to married/partnered and the surviving spouse/partner added upon receipt of:

(1) Notarized affidavits from the informant and from the alleged surviving spouse/partner stating that an error was made and stating the correct information, and a certification of the marriage/partnership record showing that the person to be listed as the surviving

2011 Revision- September 7, 2011

41

1803  spouse/partner was married to/partnered with the decedent prior to death are submitted;
1804  or
1805
1806  (2) An order from a court of competent jurisdiction issued in a legal action indicating that
1807  the person was in a common-law marriage with the decedent at the time of the
1808  decedent's death.
1809
1810  (e) Other changes to marital/partnership status and surviving spouse/partner will be made only
1811  upon the finding of a court of competent jurisdiction in an order that determined the
1812  marital/partnership status of the decedent and identifies the surviving spouse/partner, if
1813  appropriate.
1814
1815  (f)  For sections (a) through (d) above, in addition to documentation required, the informant
1816  listed on the death record shall be notified of the requested change and given the opportunity to
1817  respond prior to the State Registrar amending the death record. If the informant disagrees with
1818  the change, marital status and surviving spouse can only be changed upon receipt of an order
1819  from a court of competent jurisdiction.
1820
1821  (g) Amendment to other items on the death record:
1822
1823  (1) Signatures shall not be amended.
1824
1825  (2) Other personal and statistical items on the death record shall be amended with
1826  supporting documentary evidence that is acceptable to the State Registrar.
1827
1828  (3) An order from a court of competent jurisdiction may be used to amend any item except
1829  signatures, the date of registration, or to amend the date of death to a date that is after
1830  the date of registration.
1831
1832  (h) Notwithstanding (a) through (f) of this Section, any item may be amended except signatures
1833  if evidence is submitted that the amendment is required because of clerical error by the facility,
1834  institution or individual responsible for submitting the report.
1835

## Regulation 23.9 Amendment of the Same Item More than Once

1837
1838  Once an amendment of an item is made on a vital record, except for cause and manner of death
1839  to be amended by the (physician, medical examiner, coroner) or clerical error on the part of the
1840  State Registrar, that item shall not be amended again except upon receipt of an appropriate
1841  order which, depending on the nature of the order, shall be from either a court of competent
1842  jurisdiction or a court with competent jurisdiction over the State Agency.
1843

## Section 24.  Establishing Replacement Records of Live Birth

1845
1846  (a)   The State Registrar shall amend a record of live birth and establish a replacement
1847  record of live birth for a person born in this State upon receipt of the following:
1848

2011 Revision- September 7, 2011

(1) A report of adoption as provided in Section 22 or a certified copy of the decree of adoption, together with the information necessary to identify the original record of live birth and to establish a replacement record of live birth, except that a replacement record of live birth shall not be established if so requested by the court decreeing the adoption; or

(2) A request that a replacement record of live birth be prepared as prescribed by regulation establishing parentage or that a court of competent jurisdiction  has determined the paternity of such a person or that both parents have acknowledged the paternity of such person; or

. (3) A written request of both parents and a (sworn, notarized, witnessed) acknowledgment of paternity signed by both parents; or

(4) A certified copy of an order of a court of competent jurisdiction indicating that an individual born in this State has undergone the necessary course of treatment to transition permanently from one sex to the other and that the sex on the live birth record shall be changed.

(b) If the individual's name has been changed pursuant to Section 24(a), the order or request shall include the name that currently appears on the live birth record and the new name to be designated on the replacement record of live birth.  The new name of the individual shall be shown on the replacement record.

(c) Upon receipt of a certified copy of an order of a court with competent jurisdiction over the State Agency changing the name of a person born in this State as authorized by  18 USC 3521 et.seq. or comparable provision of State law, the State Registrar may create a replacement record of live birth to show the new information as specified in the court order.

(d) When a replacement record of live birth is prepared, the city and/or county and date of live birth shall be included.  The replacement record of live birth shall be substituted for the original record of live birth.  The original record of live birth and the evidence submitted for Sections 24(a) and 24(c) shall be placed under seal and not be subject to inspection except upon order of a court with competent jurisdiction over the State Agency or as provided by regulation.

(e) Upon receipt of a report of an amended decree of adoption, the record of live birth shall be amended as provided by regulation.

(f) Upon receipt of a report or decree of annulment of adoption, the original record of live birth shall be restored.  The annulled record of live birth and evidence shall not be subject to inspection except upon order of a court with competent jurisdiction over the agency or as provided by regulation.

(g) If the date and place of live birth have not been determined in the adoption or paternity proceedings then a replacement record of live birth will not be created.

2011 Revision- September 7, 2011

(h)   If no record of live birth is found for the person for whom a replacement record of live birth is to be prepared under this Section, and the court order indicates a date of live birth more than one year from the date submitted to the (Office of Vital Statistics), the replacement record of live birth shall be prepared in the format of a delayed record of live birth.

(i)   When a replacement record of live birth is registered by the State Registrar, all copies of the original record of live birth in the custody of any other custodian of vital records in this State shall be forwarded to the State Registrar.

(j)   The State Registrar shall prepare and register a record of foreign live birth for a person born in a foreign country who is not a citizen of the United States and who was adopted through a court with competent jurisdiction over the State Agency upon request by the court, the adopting parents, or the adopted person if (18) years of age or over.  The court order shall include the date and place of the child's live birth.  Such record shall be labeled "Record of Foreign Live birth" and shall show the actual country of live birth. [A statement shall also be included on any certification indicating that it is not evidence of United States citizenship for the person named.]  After registration of the record of foreign live birth in the new name of the adopted person, the State Registrar shall seal the report of adoption which shall not be subject to inspection except upon order of a court with competent jurisdiction over the State Agency or as provided by regulation.

## Regulation 24.  Establishing Replacement Records of Live Birth
(Authorization:  Section 24 of the Model Act)

## Regulation 24.1 Court Determination of Parentage

A replacement record of live birth shall be prepared by the State Registrar for a child born in this State upon receipt of a certification of an order from a court of competent jurisdiction determining parentage.  If the surname of the child is not decreed by the court, a request from both parents or, if only one parent appears on the replacement record of live birth, the sole parent, shall specify the surname to be placed on the replacement record of live birth.

## Regulation  24.2  Establishment of Parentage

(a)   If the live birth mother and father marry after the live birth of a child, a replacement record of live birth shall be prepared by the State Registrar for a child born in this State upon receipt of a (sworn, notarized, witnessed) acknowledgment of paternity signed by the biological parents of said child together with a certification of the parents' marriage record.  However, if another man is noted as the father of the child on the original record of live birth, a replacement record of live birth may be prepared only when a determination of paternity is made by a court of competent jurisdiction, or following adoption.

2011 Revision- September 7, 2011

44

(b)    A replacement record of live birth shall be prepared by the State Registrar for a child born in this State to unmarried parents upon receipt of a (sworn, notarized, witnessed) acknowledgment of paternity signed by both parents and a written request by both parents that the child's surname be changed on the record of live birth.  However, if another man is noted as the father of the child on the original record of live birth, a replacement record of live birth may be prepared only when a determination of paternity is made by a court of competent jurisdiction, or following adoption.

(c)    In lieu of preparing a replacement record of live birth under the provisions of Regulations 24.1, 24.2, and 24.3, the original record may be altered provided that the fact of alteration is not obvious on the record.

## Regulation 24.3 Contents of Replacement Record of Live Birth

The replacement record of live birth prepared pursuant to Regulation 24.1 or 24.2 shall be on the form in use at the time of its preparation and shall include the following items and such other information necessary to complete the record of live birth:

(a) The name of the child;

(b) The date and (city and county) of live birth as transcribed from the original report of live birth;

(c) The names and personal particulars of the  parents after establishment of parentage ;

(d) [The name of the attendant;]

(e) The  State file number assigned to the original record of live birth;

(f) The original date of registration.

The information necessary to locate the existing report of live birth and to complete the replacement report of live birth shall be submitted to the State Registrar on forms prescribed or approved by him or her.

## Regulation 24.4   Prior Record of Live Birth to Be Placed in a Restricted File

After preparation of the replacement record of live birth, the prior record of live birth and the evidence upon which the replacement record of live birth was based are to be placed in a restricted file.  Such file shall not be subject to inspection except upon order of a court with competent jurisdiction over the State Agency or by the State Registrar for purposes of properly administering the vital statistics program or as otherwise provided by State law.

## Section 25.  Reports of Induced Termination of Pregnancy

2011 Revision- September 7, 2011

45

1987 (a) Each induced termination of pregnancy which occurs in this State, regardless of the length of
1988 gestation, shall be reported to the (Office of Vital Statistics) within five calendar days by the
1989 person in charge of the institution in which the induced termination of pregnancy was performed.
1990 If the induced termination of pregnancy was performed outside an institution, it shall be reported
1991 by the attending medical provider.
1992

1993 (b) (Reports, Summaries) of induced termination of pregnancy are statistical reports to be used
1994 only for public health purposes.  The State Registrar shall dispose of such reports when all
1995 statistical processing of the reports has been accomplished.  However, the State Registrar may
1996 establish a data file of such reports so they will be available for future research and such file
1997 may be retained for as long as the State Registrar deems necessary.  All disposals of reports
1998 and data files shall maintain confidentiality and security of information.
1999

## Section 26.  Preservation of Vital Records

2001
2002 The State Registrar shall develop and implement a preservation management program to
2003 preserve vital record documents and information and meet generally accepted standards for
2004 permanent preservation.
2005

2006 (a) The State Registrar shall prepare typewritten, photographic, electronic, or other
2007 reproductions of records or reports in the (Office of Vital Statistics).  Such reproductions
2008 when verified and approved by the State Registrar shall be accepted as the original vital
2009 record documents.  The original vital record documents from which permanent
2010 reproductions have been made may be disposed of as provided by regulation.
2011

2012 (b) The State Registrar shall provide for the continued availability and integrity of vital event
2013 information.  Mechanisms may include redundant copies of information in multiple
2014 locations and formats such as microfilm/microfiche, imaging and electronic databases.
2015

2016 (c) The preservation management program shall provide for the continued availability of
2017 historic vital record documents and information for research and related purposes.  Vital
2018 records will be considered historic when 125 years have elapsed after the date of live
2019 birth, or 75 years have elapsed after the date of death or fetal death, or 100 years after
2020 the date of marriage, or (divorce, dissolution of marriage, or annulment). Supporting
2021 documents, including but not limited to corrections and acknowledgments of paternity,
2022 may also be included with historic vital records.  Sealed records will not be classified as
2023 historic unless unsealed by a court with competent jurisdiction over the State Agency.
2024 Historic vital records may be transferred to the State Archives in accordance with archival
2025 procedures which shall provide for the continued safekeeping of the records.  There shall
2026 be no cost to the (Office of Vital Statistics) for such transfer or maintenance.  Prior to
2027 transferring live birth and death records to the State Archives, the State Registrar shall
2028 redact all information identified in the U.S. Standard Certificates of Live Birth, Death, and
2029 Report of Fetal Death, or as identified by the State (in regulation) as medical or health
2030 use only .
2031

2032 Regulation 25 intentionally left blank.

2011 Revision- September 7, 2011

## Regulation 26.  Preservation of Vital Records
(Authorization:  Section 26 of the Model Act)

(a)     Notwithstanding the requirements of any other record retention laws or regulations, when an authorized reproduction of a vital record has been properly prepared by the State Registrar and when all steps have been taken to provide for the continued preservation of the information, the record from which such authorized reproduction was made may be disposed of by the State Registrar. Such record may not be disposed of, however, until the quality of the authorized reproduction has been tested to ensure that acceptable certifications can be issued and until a permanent copy of such record has been placed in a secure location removed from the building where the authorized reproduction is housed. Such permanent copy shall be maintained in such a manner to ensure that it can replace the authorized reproduction should the authorized reproduction be lost or destroyed.

(b)     The State Registrar may offer the original documents from which the authorized reproductions are made to the State Archives.  The State Archives shall retain permanently such records and shall adhere to the restrictions in the vital statistics law related to access to such records.  If the State Archives declines to place such records in its files the State Registrar shall be authorized to destroy the documents.  Such destruction shall be in accordance with generally accepted methods for disposition of confidential or sensitive documents.

(c)      Microfilm used for preservation shall be manufactured to the ISO and ANSI standards for Life Expectancy of 500 years (LE-500).  The master copy shall be silver halide.  It shall be processed according to ISO 18901:2002 (or its equivalent) specifications for stability.  It shall be stored according to ISO 18911:2000 (or its equivalent) environmental practices. Redundant copies shall be stored at one or more sites distant from the master copies. Mechanisms for retrieving copies from distant sites shall be documented and periodically tested.

(d)     Electronic images of vital record documents shall be indexed for ease of retrieval.  Long-term archiving of electronic documents shall follow ISO 19005-1; 2005 specifications or its equivalent.  The index shall allow for linking of amended or corrected images to the original image.  The images shall be stored in a tamper resistant manner and media.  The preservation management program shall include the refreshment of storage media to assure integrity and prevent obsolescence on a periodic basis into new formats as they become accepted.

(e)     Vital event information stored as electronic data shall be stored in a manner that is both tamper resistant and tamper evident.  All changes to information shall be tracked, including the item changed, the user who made the change, the date of the change, and the justification for the change.  Backups of electronic data shall be made at regular intervals, and copies shall be stored at one or more sites distant from the master copy. Mechanisms and procedures for retrieving copies from distant sites shall be documented and periodically tested.

2011 Revision- September 7, 2011

2080   (f)   The preservation management program shall provide for the periodic refreshment of
2081       electronic data, to include hardware, software, and coding standards.  The program will
2082       include documentation of changes in coding structures, provide for testing of converted
2083       files to assure data quality, and address associated costs.
2084

## 2085 Section 27.  Confidentiality and Disclosure of Information from Vital Records
2086       or Vital Reports
2087

2088   (a)   Vital records, vital reports, indices, related documents, and data or information contained
2089       therein shall be confidential and shall not be considered public records under the Federal
2090       Freedom of Information Act or this State's (public records laws).   It shall be unlawful for
2091       any person to permit inspection of, or to disclose data or information contained in vital
2092       records, vital records related documents or in vital reports or to copy or issue a copy of all
2093       or part of any such record or report unless authorized by this Act.   No person shall violate
2094       the provisions of this Act, the regulations promulgated hereunder, or of any agreement
2095       entered into in accordance with this Act or such regulations.  The State Registrar may
2096       adopt regulations consistent with this Section of the Act.
2097

2098   (b)   Personally identifiable information which may identify any natural person named in any
2099       vital record or report may be disclosed for health research purposes only after submission
2100       of written requests for information by researchers and the approval of the State Registrar
2101       through the execution of written research agreements that describe the research project,
2102       document applicable Institutional Review Board approvals, if necessary, and protect the
2103       confidentiality and security of the information provided.  Such agreements shall prohibit
2104       the re-release by the researcher of any personally identifiable information without explicit
2105       permission from the State Registrar.  Such agreements shall also set forth the payment, if
2106       any, to be provided by the researcher to the State Registrar to use the data for the
2107       specified research project(s).  Ownership of vital records data provided under such
2108       agreements shall remain with the State Registrar, not the researcher or the research
2109       project.
2110

2111   (c)   Government entities, including Federal, State, local and Tribal agencies may, upon written
2112       request, and the approval of the State Registrar or his/her designee be furnished copies of
2113       records or data from the system of vital statistics, provided that such copies or data shall
2114       be used solely in the conduct of the government agency's official duties.  Written data
2115       sharing agreements that clearly specify the intended uses and protect the confidentiality
2116       and security of the information provided shall be executed prior to the release of
2117       personally identifiable information for government agency official use.  Such agreements
2118       shall prohibit the re-release by the government agency of any personally identifiable
2119       information other than re-release that may be provided for in the agreement.  Such
2120       agreements shall also set forth the payment, if any, to be provided by the government
2121       agency to the State Registrar to use the data for the specified purpose.  Ownership of vital
2122       records data provided under such agreements shall remain with the State Registrar, not
2123       the government agency authorized by the agreement to use the data.
2124

2125   (d)   The National Center for Health Statistics or its successor agency may be furnished such
2126       copies of records, reports, or data from the system of vital statistics as it may require for

2011 Revision- September 7, 2011

national statistics, provided the National Center for Health Statistics or its successor agency shares in the cost of collecting, processing, and transmitting such data, and provided further that such data shall not be used for other than statistical purposes by the National Center for Health Statistics or its successor agency unless so authorized by the State Registrar.  In order for the State Registrar to furnish such records, reports, or data the National Center for Health Statistics or its successor agency shall enter into an agreement with the State Registrar indicating the statistical purposes for which the records, reports, or data may be used.  Such agreement shall prohibit the re-release by the National Center for Health Statistics or its successor agency without explicit permission from the State Registrar.  Ownership of vital records data provided under such agreements shall remain with the State Registrar, not the National Center for Health Statistics or its successor agency.

(e)   The State Registrar may, by the inter-jurisdictional exchange agreement, transmit vital records data or copies of records and other reports required by this Act to State offices of vital statistics outside this State or in a neighboring country when such data, records or other reports relate to residents of those States or neighboring countries or persons born or who die in those States or neighboring countries.  This exchange agreement shall specify the purposes for which the data or records may be used by each State or neighboring country, and the agreement shall further provide instructions for the proper retention and disposition of such data or copies of records. Any vital records data or copies of such records received by the (Office of Vital Statistics) from another State or neighboring country as a result of this exchange shall be deemed confidential and ownership shall be retained by the State or neighboring country where the event occurred. Such data or records may be used by the recipient State or neighboring country only for the purposes specified in the agreement and the recipient State or neighboring country may not otherwise disclose other States' or neighboring countries' records.[3]

(f)   When the death of a United States citizen occurs outside the United States, the State Registrar in the State where the decedent was born and the State Registrar in the State where the decedent was a resident shall each receive a report of death from the United States Department of Defense (for military and related personnel) and the United States Department of State (for non-military personnel).

(g)  When 125 years have elapsed after the date of live birth, or 75 years have elapsed after the date of death or fetal death, or 100 years after the date of marriage, or (divorce, dissolution of marriage, or annulment), the live birth, death, fetal death, marriage, and (divorce, dissolution of marriage, annulment) records available for issuance under Section 28, whether paper, electronic or other media in the custody of the State Registrar may be transferred to the State Archives in accordance with archival procedures which shall provide for the continued safekeeping of the records.  There shall be no cost to the (Office of Vital Statistics) for such transfer or maintenance.  Prior to transferring live birth, death and fetal death records to the State Archives, the State Registrar shall redact all information identified in the

---

3 Agreements with foreign countries may not be enforceable by a State against an offending foreign country.  The only practical remedy for a breach of the agreement may be termination.

2011 Revision- September 7, 2011

2170     U.S. Standard Certificates of Live Birth, Death, and Report of Fetal Death, or as identified by
2171     the State (in regulation) as medical or health use only.
2172
2173 (h) A decision of the State Registrar with regard to the inspection or disclosure of data or
2174     information contained in a vital record or vital report shall constitute a final agency
2175     determination.
2176

## Regulation 27. Confidentiality and Disclosure of Information from Vital Records or Vital Reports

2177
2178
2179 (Authorization: Section 27 of the Model Act)
2180
2181 To protect the confidentiality and security of vital records and vital reports:
2182
2183     (a) The State Registrar shall not permit access to or disclosure of personally identifiable
2184     information contained in vital records, or issue a copy of all or part of any such record
2185     unless the applicant is authorized to obtain such record for a proper purpose under
2186     Section 27, or is authorized to obtain such record under Section 28.  Access to or
2187     disclosure of information contained in vital records for sale or release to the public, for
2188     direct or indirect marketing of goods or services, for other non-research solicitation of
2189     registrants or families of registrants, or for other commercial or speculative purposes
2190     shall not be deemed a proper purpose.  The State Registrar may impose reasonable
2191     conditions as to the use and re-disclosure of information, and may limit access to the
2192     minimum necessary to fulfill the purpose for which information is requested.
2193
2194     (b) Requests for personally identifiable information contained in vital records for health
2195     research purposes shall be submitted in writing to the State Registrar.
2196
2197       (1) Each request shall contain at a minimum:
2198
2199         (a) name, title, organizational affiliation and contact information (mailing
2200         address, telephone number, and email address) of the requestor and the
2201         organizational official authorized to execute agreements;
2202
2203         (b) title, objectives and description of the proposed research study;
2204
2205         (c) Institutional Review Board approval of study protocol if any contact with
2206         study subjects including children or parents listed on live birth records or
2207         next-of-kin or informants of decedents is proposed;
2208
2209         (d) physical and electronic storage and security measures to be taken to
2210         assure confidentiality and security of identifying information, and provision
2211         for return or destruction of the information at the conclusion of the research
2212         study;
2213
2214         (e) time frame of the research study;
2215

2011 Revision- September 7, 2011

(f)  names of all persons on the research study team who will have access to the personally identifiable information; and

(g)  plan for dissemination of the results.

(2)  Each request for personally identifiable information from vital records to be used for health research purposes shall be reviewed to determine compliance with at least the following:

(a) contains all required elements;

(b) adequately justifies the need for the requested information;

(c) compliance with past data use agreements;

(d) the requested information can be provided within the time frame set forth in the request; and

(e) the State Registrar has adequate resources with which to comply with the request;

(c) Requests by government agencies for any identifiable information contained in the State's vital records maintained pursuant to this Act, or for verifications thereof, shall specify in writing the official use to which the requested information will be put and why the information is necessary in accordance with Section 27(c).  The request may be granted only if the State Registrar agrees that the requested information is necessary for a proper purpose.

(1) Each request shall contain at a minimum:

(a) name, title, agency, and contact information (mailing address, telephone number, and email address) of the requestor and the agency official authorized to execute agreements;

(b) purpose or intended use of the data or vital records being requested;

(c) physical and electronic storage and security measures to be taken to assure confidentiality and security of identifying information, and provision for return or destruction of the information at the conclusion of the intended use;

(d) time frame of intended use; and

(e) names of all persons who will have access to the personally identifiable information being requested.

(2) Each request from a government agency for personally identifiable information from vital records shall be reviewed to determine compliance with at least the following:

2011 Revision- September 7, 2011

(a) contains all required elements;

(b) adequately justifies the need for the requested information;

(c) compliance with past data use agreements;

(d) the requested information can be provided within the time frame set forth in the request; and

(e) the State Registrar has adequate resources with which to comply with the request.

(d) The State Registrar shall enter into data use agreements for all approved health research and government agency requests for personally identifiable information from vital records.  Each data use agreement shall include but not be limited to:

(1) specification of exactly what information will be disclosed to the requestor, the purpose for which it is provided, and the manner in which the data will be used;

(2) the charges or fees, if any, to be paid by the requestor to the State Registrar for use of the data;

(3) a prohibition of re-release by the requestor of any information that may identify any person or any individual case record, whether identifiable or not, without the prior written approval of the State Registrar;

(4) the requestor's acknowledgment and agreement that ownership of all information provided by the State Registrar shall remain exclusively that of the State Registrar and that the data use agreement constitutes a license to use the data provided only for the purpose and in the manner set forth in the agreement;

(5) the requestor's agreement neither to attempt to link nor to permit others to attempt to link the data set with individually identifiable records from any other data set without the prior written approval of the State Registrar;

(6) the requestor's agreement neither to use nor to allow anyone else to use the information to attempt to learn the identity of any person included from the information provided without the prior written approval of the State Registrar;

(7) agreement that if the identity of any person is discovered inadvertently, the recipient will not make use of this knowledge; will immediately notify the State

2011 Revision- September 7, 2011

52

2309          Registrar; and will safeguard or destroy the information which led to the
2310          identification of the individual as requested by the State Registrar; and
2311

2312          (8) acknowledgment and agreement that the requestor shall be responsible for
2313          any breach of security, including but not limited to any notifications to affected
2314          persons required by law or by the State Registrar, and any fines, penalties or
2315          other sanctions that may be imposed pursuant to applicable law.
2316

2317          (9) agreement to prohibit the use of data provided for any purpose not explicitly
2318          identified and approved in the signed data use agreement.
2319

## Section 28.  Certifications from the System of Vital Statistics

2320

2321

2322 In accordance with Section 27 of this Act and the regulations adopted pursuant thereto:
2323

2324 (a)    (1) A certification of a live birth record or any part thereof, issued in accordance with this
2325       Section, shall be considered for all purposes the same as the original and shall be prima
2326       facie evidence of the facts stated therein.  However, the evidentiary value of a record
2327       submitted more than one year after the event, a record which has been amended, or a
2328       record of foreign live birth shall be determined by the judicial or administrative body or
2329       official before whom the certification is offered as evidence.
2330

2331       (2) A certification of a death, fetal death, [marriage/partnership or (divorce, dissolution,
2332       annulment)] record or any part thereof, issued in accordance with this section, shall be
2333       considered for all purposes the same as the original and shall be prima facie evidence of
2334       the facts stated therein.
2335

2336 (b)    The State Registrar shall require the applicant for a certification to submit a signed
2337       application, identity documentation, and evidence of eligibility. Upon receipt of an
2338       application and before issuing a certification:
2339

2340    (1)  The State Registrar shall review the identity documents provided by the applicant.
2341      (A) Such documentation must be acceptable to the State Registrar and shall include:
2342

2343      (i) government issued identification that includes a photograph; or
2344

2345      (ii) at least two alternate forms of identification; or
2346

2347      (iii) an alternative electronic process.
2348

2349      (B) Alternate forms of identification may include but are not limited to (letters from
2350      government or social agencies, pay statements, utility bills, student identification with
2351      photo) or other items acceptable to the State Registrar.
2352

2353    (2) The State Registrar shall review the evidence of eligibility provided by the applicant for a
2354      certification.   Such documentation shall consist of copies of vital records establishing
2355      eligibility, court documents establishing eligibility, or alternative methods identified and

2011 Revision- September 7, 2011

accepted by the State Registrar.  Evidence of eligibility shall demonstrate that the applicant is qualified to receive a certification.

(A)  A qualified applicant must have reached (18) years, of age, the age of majority or any age if the applicant has the status of emancipated minor.

(B) A qualified applicant for a certification of live birth shall be limited to the registrant, his or her (spouse, domestic partner, civil partner), child, parent, [sibling, grandparent, grandchild,] legal guardian, legal representative, the qualified applicant's authorized representative, or a government agency in the conduct of its official duties.

(C) A qualified applicant for a certification of death shall be limited to the decedent's (spouse, domestic partner, civil partner), child, parent, next of kin as specified by (probate or other) law, [sibling, grandparent, grandchild, person in charge of disposition,] legal guardian immediately prior to death, legal representative, the qualified applicant's authorized representative, or a government agency in the conduct of its official duties.  A funeral director from the funeral home or a person acting as the funeral director named on the death record is a qualified applicant for a period not to exceed 12 months after the date of death.  Others may be authorized to obtain a certification when they demonstrate that the record is needed for the determination or protection of the applicant's personal or property right.

(D) A qualified applicant for a certification of fetal death shall be limited to the parent, [sibling, grandparent,] guardian of a parent with legal documentation, legal representative, the qualified applicant's authorized representative, or government agency in the conduct of its official duties.  A funeral director from the funeral home or a person acting as the funeral director named on the fetal death record is a qualified applicant for a period not to exceed 12 months after the date of delivery.

[(E)  A qualified applicant for a certification of (marriage, domestic partnership, civil partner), (divorce, dissolution of marriage, annulment, dissolution of domestic partnership, dissolution of civil union) shall be limited to the registrants, either registrant's current (spouse, domestic partner, or civil partner), child, parent, [sibling, grandparent, grandchild,] legal guardian, legal representative, the qualified applicant's authorized representative, or government agency in the conduct of its official duties.]

(3) The State Registrar may verify with originating agencies the identity documents and evidence of eligibility submitted in support of an application.

(c)   The State Registrar shall, upon receipt and approval of an application, issue a certification of a vital record in the form of a physical image or abstract to the qualified applicant.

(d)   The State Registrar shall require all certifications of vital records registered in the State system to be issued from the State's central database.

(e)   The State Registrar may issue certifications directly to entities upon receipt of an application from a qualified applicant as set forth in (b) of this Section.

2011 Revision- September 7, 2011

(1) A certification may be issued in electronic form if requested by the qualified applicant to a government agency or other institution approved by the State Registrar.

(2) The State Registrar may authorize a government agency or other institution to receive certifications in electronic form through an automated system approved by the State Registrar.

(3) The State Registrar, in approving a government agency or other institution for receipt of certifications in electronic form, shall consider proposed use, frequency of need, security after receipt and other criteria as determined.

(f)   The State Registrar shall establish minimum information to be included in a certification. No certification shall be issued without the minimum information necessary with the exception that live birth records without a first name for the registrant may be issued to government agencies for adoption [or custody] purposes only.

(g)   A death certification containing the manner or cause of death information shall not be issued except as follows:

(1)   Upon specific request of the spouse, domestic partner, child, parent, next of kin as specified by (probate or other) law, [person in charge of disposition,] or an authorized representative of any of the above; or

(2)   When a documented need for the manner or cause of death to establish a legal right or claim has been demonstrated; or

(3)   Upon receipt of an order from a court with competent jurisdiction over the State Agency ordering such release.

(h)   Each certification issued for a record registered after (date) shall indicate the date of registration. Each certification issued from a record registered after (date) and marked or flagged as "Amended" shall be similarly marked or flagged and shall indicate the effective date(s) of the amendment(s). A certification issued from a record marked or flagged as "Delayed" shall be similarly marked or flagged and shall include the date of registration and a description of the evidence used to establish the delayed record. Any certification issued of a "Record of Foreign Live Birth" shall indicate this fact and shall show the actual place of live birth [and the fact that the certification is not proof of United States citizenship]. A certification issued from a live birth record that has been matched to a death record shall be marked or flagged "Deceased".

(i)   Information identified in the U.S. Standard Certificates of Live Birth, Death, and Report of Fetal Death, or as identified by the State (in regulation) as medical or health use only from any vital record shall not be subject to subpoena or court order and shall not be admissible before any court, tribunal, or judicial body. Information so identified as administrative, statistical, medical, or health use only shall not be included in a certification of the vital record.

2011 Revision- September 7, 2011

(j)     After acceptance of an application by a qualified applicant, if no record is identified as matching the application criteria, the State Registrar shall issue a document indicating that no matching record was identified and the specific criteria used in the attempt to identify the record, including type of event, name of registrant, date or range of dates of event, and other criteria used.  This document shall be issued with security features as specified in Section 7 that deter altering, counterfeiting, or duplicating.

(k)     Verification of the facts contained in a certification may be furnished by the State Registrar to any government agency in the conduct of its official duties.  The request for verification must:

        (1) include a copy of the certification and be in a format prescribed or approved by the State Registrar; or

        (2) be submitted electronically through an automated system approved by the State Registrar if the requester attests to having the certification and can provide the State file number or date of registration.

(l)     Any certification issued from the centralized system shall meet the requirements for (apostille, authentication, exemplification), by (a State's designated competent authority) to facilitate use of the certification outside of the United States.

(m)     All forms and procedures used in the issuance of certifications of vital records in the State shall be uniform and provided or approved by the State Registrar.  Any certification issued shall have security features as specified in Section 7 that deter altering, counterfeiting, or duplicating.

(n)     The State Registrar shall maintain a searchable file, either physical or electronic, of all accepted applications for a minimum of (three) years.

(o)     When the State Registrar receives information that a record may have been registered, corrected or amended through fraud or misrepresentation, he or she may withhold issuance of any certification of that record pending inquiry by appropriate authorities to determine whether fraud or misrepresentation has occurred.

        (1) If upon conclusion of the inquiry no fraud or misrepresentation is found, certifications shall be issued upon the request of a qualified applicant.

        (2)  If upon conclusion of the inquiry there is reasonable cause to suspect fraud or misrepresentation, the State Registrar shall provide copies of the record and evidence to appropriate authorities for further investigation.

        (3)  If upon conclusion of the investigation by appropriate authorities, fraud or misrepresentation is found, the State Registrar shall provide an opportunity to the registrant or the registrant's representative to respond to the findings prior to voiding [and sealing] the record.

2011 Revision- September 7, 2011

(4) The voided record and evidence shall be retained but shall not be subject to inspection or copying except upon order of a court with competent jurisdiction over the State Agency or by the State Registrar for purposes of administering the vital statistics program.

(p)   When the State Registrar receives information that an application for a certification may have been submitted for purposes of fraud or misrepresentation, he or she may withhold issuance of the certification requested pending inquiry by appropriate authorities to determine whether fraud or misrepresentation has occurred.

(1)  If upon conclusion of the inquiry no fraud or misrepresentation is found, certification shall be issued.

(2) If upon conclusion of the inquiry there is reasonable cause to suspect fraud or misrepresentation, the requested certification shall not be issued and the State Registrar shall provide copies of the application and evidence to appropriate authorities for further investigation.

(3) The application and evidence shall be retained but shall not be subject to inspection or copying except upon order of a court with competent jurisdiction over the State Agency or by the State Registrar for purposes of administering the vital statistics program.

(q)   The State Registrar shall periodically test and audit vital statistics systems for purposes of detecting fraud.  If fraud is detected, the State Registrar shall provide copies of the evidence to proper authorities for further investigation and implement the provisions of (p) and (q).  The results of such tests and audits shall be retained but shall not be subject to inspection or copying except by the State Registrar for purposes of administering the vital statistics program.

(r)   No person shall prepare or issue any paper or electronic document which purports to be an original vital record, a certification or a verification of a vital record, or a copy of a vital record except as authorized in this Act or regulations adopted hereunder.

(s)    All applications and supporting documentation submitted for the purpose of issuing certifications of vital records shall be confidential and shall not be released except upon receipt of an order from a court with competent jurisdiction over the State Agency ordering such release.

## Regulation 28.  Certifications from the System of Vital Statistics
(Authorization:  Section 28 of the Model Act)

(a)   Certifications of vital records may be made by mechanical, electronic, or other reproductive processes.

(b)   Each certification issued shall be certified as a true representation by the officer in whose custody the record is entrusted and shall include the name of the issuing officer,

2011 Revision- September 7, 2011

the registrar's signature or an authorized facsimile thereof, and the seal of the issuing office.

(1) In addition, each certification of a live birth record shall include at a minimum the following information:

(a) State file number;

(b) first name(s);

(c) middle name(s) (if any);

(d) last name, suffix (if any);

(e) date of live birth;

(f)  State of live birth;

(g) city or county of live birth;

(h) sex;

(i) name(s) of parent(s) prior to first marriage;

(j) date of registration;

(k) if matched to a death record, indicate "Deceased";

(l) if any amendments have been made, amendment history of field(s) shown; and

(m) date of issuance.

(2) In addition, all certifications of a death record shall include at a minimum the following information:

(a) State file number;

(b) first name(s);

(c) middle name(s) (if any);

(d) last name, suffix (if any);

(e) date and time of death;

(f)  State of death;

2011 Revision- September 7, 2011

58

(g) city or county of death;

(h) date of live birth;

(i) State or foreign country of live birth;

(j) sex;

[(k) name(s) of parent(s) prior to first marriage;]

(l) surviving (spouse's, civil or domestic partner's) name prior to first marriage;

(m) date of registration;

(n) if any amendments have been made, amendment history of field(s) shown; and

(o) date of issuance.

(3) In addition, all certifications of a fetal death record shall include at a minimum the following information:

(a) State file number;

(b) first name(s), (if any);

(c) middle name(s), (if any);

(d) last name;

(e) suffix, (if any);

(f) date and time of delivery;

(g)  State of delivery;

(h) city or county of delivery;

(i) sex;

(j) name(s) of parent(s) prior to first marriage;

(k) date of registration;

(l) if any amendments have been made, amendment history of field(s) shown; and

(m) date of issuance.

2011 Revision- September 7, 2011

[(4) In addition, all certifications of a marriage or domestic partnership record shall include at a minimum the following information for each registrant:

(a) State file number;

(b) first name(s);

(c) middle name(s) (if any) prior to this marriage/partnership;

(d) last name, suffix (if any) prior to this marriage/partnership;

(e) date of live birth;

(f) date of this marriage/partnership;

(g) State of this marriage/partnership;

(h) city or county where ceremony occurred;

(i) names taken after this marriage/partnership;

[(j) date of registration;]

(k) if any amendments have been made, amendment history of field(s) shown; and

(l) date of issuance.]

[(5) In addition, all certifications of a divorce, dissolution or annulment record shall include at a minimum the following information for each registrant:

(a) State file number;

(b) first name(s);

(c) middle name(s) (if any) prior to this divorce, dissolution or annulment;

(d) last name, suffix (if any) prior to this divorce, dissolution or annulment;

(e) date of live birth;

(f) date of this marriage/partnership;

(e) date of this divorce, dissolution or annulment;

(f) State of this divorce, dissolution or annulment;

(g)  city or county where this divorce, dissolution or annulment occurred;

2011 Revision- September 7, 2011

60

(h) names taken after this divorce, dissolution or annulment;

[(i) date or registration;]

(j)  if any amendments have been made, amendment history of field(s) shown; and

(k) date of issuance

(c)  The State Registrar may include in a certification any other item from the vital record that is not restricted pursuant to Subsection 28(i).

## Section 29.  Fees[4]

(a)  The State Agency shall prescribe [by regulation] the fee to be paid for the following services:

(1) Certifications of records, whether paper or electronic; or for a search of the files  when no certification is made; or for copies or information provided for health research, statistical, or administrative purposes, or in response to subpoena or court order;

(2) Verifications of information contained on live birth, death, [fetal death, marriage and divorce] records when such information is provided.  The (Office of Vital Statistics) may issue such verifications for a negotiated and agreed-upon fee to government agencies, whether foreign or domestic;

(3)  The replacement of a live birth record subsequent to adoption, establishment of parentage, paternity determination or acknowledgment, [change to an acquired sex] or court order;

(4)  The submission of an application to register a delayed report of a vital event;[5]

(5)  The submission of an application to amend a vital record, provided that no fee shall be charged for an amendment completed within one year after the registration of the record;

(6) Maintenance of electronic vital event registration systems by authorized users;[6]

---

4 The implications of establishing a fee by regulation or by statute may differ from State to State. In some States a fee established in a regulation promulgated by an administrative agency would be limited to recovering the cost of providing the specific service in question. On the other hand, in some other States a fee established in a statute enacted by a legislative body could exceed the cost of the service. A State should consider this distinction when deciding how to establish a particular fee.
5 State law may not permit charging a fee for a delayed report, as there may be a prohibition against charging a fee to register a vital event.
6  Where utilization of an electronic vital events registration system is mandated, charging mandated users a fee for the maintenance of the system may be problematic, particularly if the fee is established by regulation.

2011 Revision- September 7, 2011

(7) Providing personally identifiable information from vital records data to health researchers or government agencies;

(8) Providing programming and analytic services in response to statistical data requests;

(9) Issuing permits required by law;

(10) Other services as determined by the State Registrar.

(b)    The (Office of Vital Statistics) shall make searches and issue certifications, transcripts, corrections or disposition permits without charge when:

(1) Requested in connection with a pending application for benefits from the Department of Veterans Affairs, if written proof of the application is first submitted;

(2) Completed in response to administrative errors as determined by the State Registrar.

(c)    In addition to the fees prescribed for the issuance of a certification of a vital record, the State Registrar shall collect a fee of $_____ for each copy requested to be deposited in the State Vital Statistics Improvement Fund.  Funds collected pursuant to this section shall be used to improve the system of vital statistics in this State.  Such funds shall not be used to supplant existing funding which is necessary for the daily operation of the system of vital statistics.

(d)    Fees collected under this section by the State Registrar shall be deposited in the (general fund, dedicated vital statistics fund) of this State, according to the procedures established by (the laws governing collection, the State Treasurer).  Fees for the State Vital Statistics Improvement Fund shall be retained in a non lapsing fund for the improvement of the system of vital statistics.

# Regulation 29.  Fees
(Authorization:  Section 29 of the Model Act)

(a)    No certification shall be issued until the fee for such certification is received unless specific approval has been obtained from the State Registrar or otherwise provided for by statute or regulation.

(b)    Fee for services:

(1)    (a)    For a ( ) year search of the vital record files and issuance of a certification, whether paper or electronic, of a vital record if found..................$_____

(b)    For each additional certification, whether paper or electronic, of the same vital record issued at the same time............................................................$_____

2011 Revision- September 7, 2011

(2) For a ( ) year search of the vital record files when no record is found and issuance of a certification of Failure to Find, whether paper or electronic ...........................$_____

(3) For a verification of the facts contained in a vital record:

    (a) Individual requests, whether paper or electronic .........................................$_____

    (b) Automated standardized requests, a negotiated and agreed-upon fee based on volume of requests..............................................................................$_____

(4) For submitting an application to prepare a replacement record of live birth by adoption, establishment of parentage, paternity determination, [change to acquired sex] or court order which does not include one certification......................................$_____

(5) For submitting an application to prepare a record of foreign live birth which does [not] include one certification ................................................................................$_____

(6) For submitting an application to amend a vital record one year or more after the event which does not include one certification..........................................................$_____

[(7) For submitting an application to register a delayed report of a vital event ...............................................................................................$_____ ][7]

(8) Additional charges for expedited certification services that require special attention..................................................................................................$_____

(9) Additional charges for expedited correction and amendment services............$_____

(10) Additional charges for expedited programming and analysis in response to statistical data requests..............................................................................................$_____.

(11) For issuing disposition permits.................................................................$_____

(12) For issuing disinterment and re-interment permits......................................$_____

(13) For adding a first and middle name more than 60 calendar days after the registration of the record..................................................................................................$_____

(14) For correcting live birth and death record errors and omissions after 12 months from the date of the event...........................................................................................$_____

(15) For providing vital events data files to researchers or government agencies, the fee per year per event type is........................................................................................$_____

---

[7] State law may not permit charging a fee for a delayed report because there may be a prohibition against charging a fee to register a vital event.

2011 Revision- September 7, 2011

2814     (16) For providing programming and analytic services in response to statistical data
2815         requests, the fee (per hour, with a minimum of _____ (hours) is ................$_____ )
2816

2817     (17) A fee may be charged for special services not specified above.  The fee shall be the
2818         actual cost for providing the service as determined by the State Registrar.
2819

2820 (c) Fees charged to the State Registrar by outside entities to deliver services in this section
2821     shall be charged at cost to the customer.  Examples include but are not limited to credit card
2822     fees, bank fees, and mailing fees.
2823

## Section 30.  Penalties

2824

2826 (a)    For each instance of an occurrence set forth in this subsection a fine of not more than
2827        $50,000, or imprisonment of not more than five years, or both, shall be imposed on:
2828

2829     (1)    Any person who willfully and knowingly makes any false statement to the State
2830           Registrar or designee when submitting information required by this Act, including:
2831

2832         (a) reports;
2833

2834         (b) applications for amendments or corrections, including associated
2835         evidence;
2836

2837         (c) applications for certifications and verifications;
2838

2839         (d) applications for access to information in vital records;
2840

2841         (e) applications for creation of a vital record, including delayed records; or
2842

2843     (2)    Any person who without lawful authority and with the intent to deceive, makes,
2844           counterfeits, alters, amends, or mutilates any record, report, application or
2845           supporting documentation required by this Act, a certification or verification of such
2846           record, or security paper; or
2847

2848     (3)    Any person who willfully and knowingly obtains, possesses, uses, sells, furnishes, or
2849           attempts to obtain, possess, use, sell, or furnish vital record documents, whether
2850           physical or electronic, which have been counterfeited, altered, amended, or
2851           mutilated, or which are false in whole or in part, for purposes other than specified in
2852           this Act, including:
2853

2854         (a) State vital records security paper;
2855

2856         (b) any record or report required by this Act;
2857

2858         (c) certification or verification; or
2859

(d) information in vital records.

    (4)    Any person who without lawful authority possesses any record, report or application required by this Act or a certification, verification or security paper, knowing same to have been stolen or otherwise unlawfully obtained; or

    (5)    Any employee of the (Office of Vital Statistics) or any office designated under Section 6(b)) who willfully and knowingly furnishes security paper, certifications or verifications with the knowledge or intention that they will be used for purposes other than those specified in this Act.

(b)    For each instance of an occurrence set forth in this subsection a fine of not more than $10,000, or imprisonment of not more than one year, or both, shall be imposed on:

    (1)    Any person who willfully and knowingly refuses to provide information required by this Act or regulations adopted hereunder; or

    (2)    Any person who willfully and knowingly transports or accepts for transportation, interment, or other disposition human remains without an accompanying permit as provided in this Act; or

    (3)    Any person who willfully and knowingly neglects or violates any of the provisions of this Act or the regulations promulgated hereunder, or of any agreement entered into in accordance with this Act, or who refuses to perform any of the duties required by this Act or by such regulations or agreements.

(c)    For each instance of an occurrence set forth in this subsection, and in addition or as an alternative to the sanctions set forth in subsections (a) and (b) above, a civil penalty of not more than $10,000 shall be imposed on any person who violates any of the provisions of this Act, the regulations promulgated hereunder, or of any agreement entered into in accordance with this Act, or who fails to perform any of the duties required by this Act or by such regulations or agreements.  Any such civil penalties shall be credited to the State's Vital Statistics Improvement Fund.

## Section 31.  Applicability

The provisions of this Act apply to the maintenance, operation and advancement of the system of vital statistics, and shall also apply to all vital records and vital reports previously received by the (Office of Vital Statistics) and in the custody of the State Registrar or any other (custodian of vital records).

## Section 32.  Severability

If any provision of this Act (or the application thereof to any person or circumstances) is held invalid, such invalidity shall not affect other provisions or applications of the Act which can be

2011 Revision- September 7, 2011

given effect without the invalid provision or application, and to this end the provisions of the Act are declared to be severable.

## Section 33.  Repeal

(Section _____ and Section _____,_____ Laws of _____ are hereby repealed; and) all other laws or parts of laws which are inconsistent with the provisions of this Act are hereby repealed.

## Section 34.  Time of Taking Effect

This Act shall take effect. . . . . . .

2011 Revision- September 7, 2011

Appendix I

## New Work Flow Terminology:

A **Report** is submitted to the **Registrar.**

The **Registrar** accepts the **Report** and it becomes a **Record.**

The **Record** is used for:
- **Certification** – subset of the **Record** necessary for civil purposes.
- **Verification** – performed based on matching a **Certification** against the Registrar's **Records.**
- **Data File Provision** – subset of the **Records** used for research, governmental purposes, etc.

2011 Revision- September 7, 2011