Peter C. Renn (Admitted *Pro Hac Vice*)
prenn@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
4221 Wilshire Blvd., Suite 280
Los Angeles, CA 90010
Telephone:   (213) 382-7600
Facsimile:   (213) 351-6050

Kara N. Ingelhart (Admitted *Pro Hac Vice*)
kingelhart@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
105 W. Adams St., 26th Fl.
Chicago, IL 60603
Telephone:   (312) 663-4413
Facsimile:   (312) 663-4307

Monica G. Cockerille (ISB No. 5532)
monicacockerille@me.com
Cockerille Law Office, PLLC
2291 N. 31st St.
Boise, ID 83703
Telephone:   (208) 343-7676
Facsimile:   (866) 226-2499

Attorneys for Plaintiffs F.V. and Dani Martin

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| F.V. and DANI MARTIN,<br><br>*Plaintiffs*,<br><br>v.<br><br>RUSSELL BARRON, in his official capacity as Director of the Idaho Department of Health and Welfare; ELKE SHAW-TULLOCH, in her official capacity as Administrator of the Division of Public Health for the Idaho Department of Health and Welfare; and JAMES AYDELOTTE, in his official capacity as State Registrar and Chief of the Bureau of Vital Records and Health Statistics,<br><br>*Defendants*. | No. 1:17-cv-00170-CWD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................................. i

INTRODUCTION ................................................................................................................................. 1

ARGUMENT......................................................................................................................................... 1

I.   This Court Should Decide the Correct Level of Scrutiny to Evaluate the Constitutionality of the Policy At Issue and to Fashion Appropriate Relief. ................................................... 1

II.  Defendants Cannot Impose Conditions on Relief Lacking Any Demonstrated Relationship to a Legitimate Government Interest. .............................................................. 5

CONCLUSION...................................................................................................................................... 9

# TABLE OF AUTHORITIES

Page

## CASES

*Am. Foreign Service Ass'n v. Garfinkel*,
   490 U.S. 153 (1989) .................................................................................................... 5

*Baskin v. Bogan*,
   12 F. Supp. 3d 1144 (S.D. Ind. 2014) ......................................................................... 3

*Cty. of Santa Clara v. Trump*,
   250 F. Supp. 3d 497 (N.D. Cal. 2017) ........................................................................ 8

*Doe v. Trump*,
   No. 17-1597, 2017 WL 4873042 (D.D.C. Oct. 30, 2017) ........................................... 2

*Evancho v. Pine-Richland Sch. Dist.*,
   237 F. Supp. 3d 267 (W.D. Pa. 2017) ........................................................................ 2

*Freeman v. City of Santa Ana*,
   68 F.3d 1180 (9th Cir. 1995) ...................................................................................... 2

*Golinski v. U.S. Office of Pers. Mgmt.*,
   824 F. Supp. 2d 968 (N.D. Cal. 2012) ....................................................................... 2

*Hawaii v. Trump*,
   859 F.3d 741 (9th Cir. 2017) ...................................................................................... 5

*Heckler v. Matthews*,
   465 U.S. 728 (1984) .................................................................................................... 6

*Highland Local Sch. Dist. v. U.S. Dep't of Educ.*,
   208 F. Supp. 3d 850 (S.D. Ohio 2016) ....................................................................... 2

*Hooper v. Bernalillo Cty. Assessor*,
   472 U.S. 612 (1985) .................................................................................................... 3

*Koontz v. St. Johns Rivers Water Mgmt. Dist.*,
   133 S. Ct. 2586 (2013) ................................................................................................ 8

*Latta v. Otter*,
   19 F. Supp. 3d 1054 (D. Idaho 2014) .................................................................................. 2, 4, 5

*Love v. Beshear*,
   989 F. Supp. 2d 536 (W.D. Ky. 2014) ........................................................................................ 2

*Love v. Johnson*,
   146 F. Supp. 3d 848 (E.D. Mich. 2015) ..................................................................................... 8

*Lyng v. Northwest Indian Cemetery Protective Ass'n*,
   485 U.S. 439 (1988) ................................................................................................................... 5

*Marbury v. Madison*,
   5 U.S. 137 (1803) ....................................................................................................................... 1

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) ................................................................................................ 5, 9

*Norsworthy v. Beard*,
   87 F. Supp. 3d 1104 (N.D. Cal. 2015) ........................................................................................ 4

*Pedersen v. Office of Pers. Mgmt.*,
   881 F. Supp. 2d 294 (D. Conn. 2012) ......................................................................................... 2

*Perry v. Schwarzenegger*,
   704 F. Supp. 2d 921 (N.D. Cal. 2010) .................................................................................... 2-3

*Plyler v. Doe*,
   457 U.S. 202 (1982) ................................................................................................................... 3

*Saenz v. Roe*,
   526 U.S. 489 (1999) ................................................................................................................... 3

*Schwenk v. Hartford*,
   204 F.3d 1187 (9th Cir. 2000) .................................................................................................... 4

*Trump v. Int'l Refugee Assistance Project*,
   137 S. Ct. 2080 (2017) ............................................................................................................... 8

iv

*Zobel v. Williams*,
    457 U.S. 55 (1982) ........................................................................................................... 3

**OTHER AUTHORITIES**

Cal. S.B. 179 (2017) ............................................................................................................. 8

Nev. Admin. Code § 440.030 ............................................................................................... 8

**INTRODUCTION**

There is no dispute between the parties that judgment for Plaintiffs is warranted. The only disputes that remain are the specific constitutional bases to support that judgment and the precise relief to which Plaintiffs are entitled. First, this Court is well within its constitutional authority to confirm the appropriate level of scrutiny to be applied here, even where the government action at issue concededly fails rational basis review. Indeed, Defendants' expressed desire to impose conditions on relief unrelated to any demonstrated government interest illustrates why deciding the level of scrutiny and degree of tailoring required is particularly appropriate here.

Second, Plaintiffs have satisfied the only factual showing for relief that is linked to a valid government interest on this record—that they seek corrected birth certificates that accurately reflect their sex, as determined by their gender identity. Defendants' refusal to confirm their willingness to provide corrected birth certificates in such a circumstance is troubling. It leaves significant aspects of the appropriate remedy for a constitutional violation at the mercy of the same political and administrative process that produced the constitutional violation in the first instance, necessitating a judicial remedy—even after the government has already agreed it lacks any rational basis for perpetuating a harmful practice that has deprived transgender people of their constitutionally-protected rights.

**ARGUMENT**

**I.    This Court Should Decide the Correct Level of Scrutiny to Evaluate the Constitutionality of the Policy At Issue and to Fashion Appropriate Relief.**

"It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). To evaluate an equal protection claim, the

first step is to identify the discrimination at issue, and "[t]he next step . . . [is] to determine the level of scrutiny."  *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (internal quotation marks omitted); *accord Latta v. Otter*, 19 F. Supp. 3d 1054, 1073 (D. Idaho 2014) (recognizing the court's task to "identify and apply the appropriate level of scrutiny"), *aff'd*, 779 F.3d 902 (9th Cir. 2015).  Defendants' concession that the challenged Birth Certificate Policy discriminates against transgender people and cannot withstand even rational basis review does not alter the fact that this Court can and should determine that heightened scrutiny applies to such discrimination—as many courts have done and continue to do.  *See, e.g.*, Mot. at 9 (citing cases); *accord Doe v. Trump*, No. 17-1597, 2017 WL 4873042, at *27 (D.D.C. Oct. 30, 2017) (holding that discrimination against transgender people requires heightened scrutiny).  The same is true for deciding the appropriate level of scrutiny that applies to Plaintiffs' privacy, liberty, and compelled speech claims.

Courts have not shied away from deciding whether heightened scrutiny is appropriate even when simultaneously concluding that the government cannot prevail under rational basis review.  They have taken that approach in addressing discrimination against transgender people, ruling under both heightened scrutiny and rational basis review.  *See, e.g.*, *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 286-88, 293 (W.D. Pa. 2017) ("Dodging the question" of scrutiny is not an appropriate response to "an issue fairly and squarely presented"); *Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 872-74, 877 (S.D. Ohio 2016).  Courts have also taken the same approach in addressing sexual orientation discrimination.  *See, e.g.*, *Love v. Beshear*, 989 F. Supp. 2d 536, 547 (W.D. Ky. 2014); *Golinski v. U.S. Office of Pers. Mgmt.*, 824 F. Supp. 2d 968, 995-96, 1001-02 (N.D. Cal. 2012); *Pedersen v. Office of Pers. Mgmt.*, 881 F. Supp. 2d 294, 333 (D. Conn. 2012); *Perry v. Schwarzenegger*, 704 F. Supp. 2d

921, 997 (N.D. Cal. 2010); *see also Baskin v. Bogan*, 12 F. Supp. 3d 1144, 1158, 1161 (S.D. Ind. 2014) (applying heightened scrutiny to due process claim, even though law could not withstand even rational basis review), *aff'd*, 766 F.3d 648 (7th Cir. 2014).

An essential reason for having differing levels of scrutiny in the first place is to establish a clear rule of law that can be applied across multiple situations—not merely to resolve a particular case. Indeed, by its nature, heightened scrutiny applies to government conduct that is "more likely . . . to reflect deep-seated prejudice rather than legislative rationality in pursuit of some legitimate objective"—and that conduct may thus also typically lack a rational basis. *Plyler v. Doe*, 457 U.S. 202, 216 n.14 (1982). But heightened scrutiny is not only applied in the minority of instances where the government conduct would fail rational basis review. *See id.* ("we would not be faithful to our obligations under the Fourteenth Amendment if we applied so deferential a standard"). As Plaintiffs have shown, government discrimination against transgender people is pervasive, whether in schools, at the hands of law enforcement, by public employers, or for access to government services. *See* Decl. of Monica Cockerille, Ex. A, Dkt #28-6. The recurring question of what scrutiny attends to such discrimination—and therefore constrains it—is one that courts have the constitutional authority and duty to answer.

Defendants argue that this Court has the opposite duty and must retreat from deciding if heightened scrutiny is the appropriate standard. The authorities they cite for this proposition merely confirm that a court is not *required* to decide the applicability of heightened scrutiny if the government fails rational basis review. *See Hooper v. Bernalillo Cty. Assessor*, 472 U.S. 612, 618 (1985) (declining to decide scrutiny for durational residency requirement); *Zobel v. Williams*, 457 U.S. 55, 60-61 (1982) (same); *but see Saenz v. Roe*, 526 U.S. 489, 507 (1999) (applying strict scrutiny to durational residency requirement, even where the government failed

to show that the restriction at issue had "any relationship" to its asserted interests).  But there is no doubt that a court *can* decide that issue, and Plaintiffs submit that this Court should.

Application of heightened scrutiny is also particularly appropriate in this case.  First, there is no substantive dispute that the conditions for heightened scrutiny are satisfied for each of Plaintiffs' claims.  The government does not deny that every single factor alerting courts to a suspect classification is present with respect to discrimination against transgender people.  Because there is no dispute that the legal standard for strict scrutiny is satisfied, determining the propriety of strict scrutiny here is a straightforward task.  Likewise, because the government does not disagree that it infringes upon the rights to privacy, liberty, and freedom of expression, heightened scrutiny is also appropriate with respect to each of those claims.

Second, settled circuit precedent already confirms that heightened scrutiny is required.  The Ninth Circuit has already held that discrimination against transgender people requires, at a minimum, the intermediate scrutiny applicable to sex discrimination.  *See Schwenk v. Hartford*, 204 F.3d 1187, 1200-02 (9th Cir. 2000); *see also Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1119 (N.D. Cal. 2015).  This Court would not break any new ground in applying that precedent.  Similarly, there are well-established constitutional rights to privacy, liberty, and freedom of expression from which transgender people are not excluded.  Mot. at 14-20.

Third, as discussed below, Defendants ask this Court to narrow the scope of relief requested.  While that narrowing is unjustifiable even under rational basis review, it is particularly indefensible under heightened scrutiny, in which the government bears "the burden of justification."  *Latta*, 19 F. Supp. 3d at 1077 (internal quotes omitted).  Under strict scrutiny, the government must prove its action is narrowly tailored to a compelling government interest, and even under intermediate scrutiny, the government must prove that its action bears a

4

substantial relationship to an important government interest. *Id.* at 1069, 1073. Defendants have met neither burden with respect to their request to narrow and impose conditions on relief here.

Defendants argue that courts should not reach unnecessary constitutional rulings, but they rely upon cases where relief could be supported on statutory or other non-constitutional grounds. *See, e.g.*, *Am. Foreign Service Ass'n v. Garfinkel*, 490 U.S. 153, 161 (1989) (directing the lower court, on remand, to decide if non-constitutional grounds were available and to "turn to the constitutional question" if not); *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 446 (1988) (vacating portions of judgment to determine whether relief could be supported by statutory rather than constitutional claims); *Hawaii v. Trump*, 859 F.3d 741, 761 (9th Cir. 2017) (affirming injunction on statutory grounds), *vacated as moot*, No. 16-1540 (U.S. Oct. 24, 2017). Here, there are only constitutional claims at issue, and thus a constitutional ruling cannot be avoided.

## II. Defendants Cannot Impose Conditions on Relief Lacking Any Demonstrated Relationship to a Legitimate Government Interest.

"[T]he district court has broad discretion in fashioning a remedy" for a constitutional violation. *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015). Here, Plaintiffs have sought relief specific to the constitutional violation at issue: the government's refusal to correct a birth certificate to accurately reflect a transgender person's sex, as determined by their gender identity. The requested injunction would simply enjoin that practice, consistent with the requirement that "injunctive relief must be tailored to remedy the specific harm alleged." *Id.* at 1265.

Defendants, however, effectively seek to reserve to themselves the power to decide what remedy is appropriate for their own constitutional violations, which is uniquely the province of this Court. They agree that their current policy is unconstitutional—but contend that they can

5

employ other "factors" in addition to an individual's gender identity to evaluate a birth certificate correction request. Defs.' Resp. at 5 (arguing that it would be sufficient "for the Court to order Defendants to cease *automatically* rejecting transgender persons' applications to amend their birth certificates") (emphasis added). That argument fares no better than if the government had agreed that an *automatic* refusal to issue marriage licenses to all same-sex couples was unconstitutional, but insisted that it could retain the authority to deny licenses to otherwise qualified same-sex couples based on "factors" left entirely to their discretion.[1]

The typical remedy for an equal protection violation illustrates the flaw in the government's suggested approach. "[W]hen the right invoked is that of equal treatment, the appropriate remedy is a mandate of *equal* treatment," which can be accomplished by "extension of the benefits to the excluded class." *Heckler v. Matthews*, 465 U.S. 728, 740 (1984) (emphasis in original; internal quotes omitted). Having denied transgender people of accurate birth certificates reflecting their gender identity, the appropriate remedy is simply to extend to them the benefit denied—not to impose additional requirements on access to it.

It is undisputed on this record that, with respect to any valid government interest to be served by birth certificates, what makes Plaintiffs similarly situated to non-transgender women is their gender identity—not, as Defendants suggest, whether they have "undergone clinically appropriate treatment to permanently change [their] sex." Pls.' Statement of Material Facts ("SOF") ¶¶ 5, 16, 21. To illustrate, a name change may be undertaken for gender transition; but a name change is not permanent, and its permanence has no bearing on one's need for a corrected birth certificate. As the undisputed testimony of Dr. Randi Ettner explains, "there is no

---

[1] For example, the government certainly could not require same-sex couples to affirm that they had obtained premarital counseling from a therapist as a condition for a marriage license.

basis for refusing to acknowledge a transgender person's sex, as determined by their gender identity . . . based on the permanence of any particular transition-related treatment." Decl. of Randi Ettner ¶ 46. "Transition may or may not include medical treatment (or interventions) such as taking hormones or having surgeries." *Id.* ¶ 33. Moreover, "[t]hese treatments do not change a transgender person's sex, which is already determined by their gender identity." *Id.* ¶ 32. Defendants seek to retain authority to deny birth certificate corrections for transgender people based on criteria in addition to their gender identity, but they have failed to demonstrate any factual basis for doing so.

The government's position has troubling implications: it suggests that being transgender is not sufficient to obtain a corrected birth certificate and that some transgender men and women may not be entitled to that relief. But, based upon the record here, that denial of relief is no less a violation of the right to equal protection, the right to privacy, and the right to live in accordance with one's gender identity protected by liberty and freedom of expression. Crucially, the government does not dispute that gender identity is the critical determinant of sex. SOF ¶ 5. The government must therefore treat *all* women as women and *all* men as men—including those who are transgender.

Contrary to Defendants' assertion that this issue is "not ripe" for adjudication (despite repeatedly raising it in their answer, Answer ¶¶ 5, 43, 44, 75), it is presented by Plaintiffs' claims. The Court can address why the government lacks a rational basis for denying corrected birth certificates to transgender people: whether it is because of their gender identity, which their birth certificates fail to reflect, as Plaintiffs have shown, or because they have "undergone clinically appropriate treatment to permanently change [their] sex," as Defendants contend. Defs.' Resp. at 5. That issue is presented by Plaintiffs' request for declaratory relief. It is also

7

raised by Plaintiffs' requested facial injunction, given that "the scope of injunctive relief is dictated by the extent of the violation established." *Cty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 539 (N.D. Cal. 2017) (internal quotes omitted). Because injunctive relief for a constitutional violation appropriately protects "not just [plaintiffs], but parties similarly situated to them," *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017), it is appropriate to identify what makes transgender people similarly situated to others of the same sex for purposes here. On this record, Plaintiffs have indisputably shown it is their gender identity.

The fact that some proposed legislation and certain other states' laws may employ differing criteria for correcting gender markers on birth certificates—including, for example, requiring that transgender people undergo surgery—does not set the constitutional floor for the appropriate remedy here.[2] *See, e.g.*, *Love v. Johnson*, 146 F. Supp. 3d 848, 857 (E.D. Mich. 2015) (holding that a surgical requirement for correcting identity documents was not narrowly tailored to an important government interest); *see also Koontz v. St. Johns Rivers Water Mgmt. Dist.*, 133 S. Ct. 2586, 2594 (2013) (recognizing that the government may not impose unconstitutional conditions on the exercise of a constitutional right). The permissibility of those schemes, if tested, would depend on the government interests offered in their defense. Here,

---

[2] Indeed, the existence of other state laws employing substantive criteria for correcting birth certificates that mirror the relief requested here or that, at a minimum, refrain from any requirement linked to the "permanence" of transition only underscores the lack of any demonstrated government interest to support Defendants' position. *See, e.g.*, Nev. Admin. Code § 440.030 (permitting corrected gender marker upon receipt of affidavits reflecting an individual's gender pursuant to instructions available at http://dpbh.nv.gov/uploadedFiles/dpbhnvgov/content/Programs/BirthDeath/Docs/Packet%20-%20Transgender.pdf); Cal. S.B. 179, § 11 (2017) (permitting corrected gender marker upon receipt of affidavit that purpose of correction is to conform legal gender to applicant's gender identity); Defs.' Resp. at 6 n.2 (listing various states' requirements, almost none of which incorporate a permanence requirement).

Defendants have not offered, let alone shown, any such interest. Moreover, a district court is empowered to order relief "that the Constitution would not of its own force require initially if such relief is necessary to remedy a constitutional violation." *Melendres*, 784 F.3d at 1265 (internal quotes omitted). Having maintained a concededly irrational policy, the government cannot now force transgender people to jump through needless hoops to attain the relief that they have been denied.

The relief Plaintiffs seek would not prescribe the administrative details of *how* the government chooses to come into compliance with whatever relief this Court orders. The government remains free to specify the form and manner of a birth certificate correction request, for example. That domain remains the prerogative of state officials who manage vital records. But what the government cannot do is to narrow the relief granted based on substantive criteria that they have not shown to be constitutionally permissible on this record.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for summary judgment, apply heightened scrutiny to the challenged policy, and issue declaratory and injunctive relief that Defendants may not refuse to provide birth certificates to transgender people that accurately reflect their sex, consistent with their gender identity.

DATED: November 3, 2017         By:     /s/ Monica G. Cockerille

                                                            Monica G. Cockerille (ISB No. 5532)
                                                            monicacockerille@me.com
                                                            Cockerille Law Office, PLLC
                                                            2291 N. 31st St.
                                                            Boise, ID 83703
                                                            Telephone:    (208) 343-7676
                                                            Facsimile:     (866) 226-2499

                                                            Peter C. Renn*

prenn@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
4221 Wilshire Blvd., Suite 280
Los Angeles, CA 90010
Telephone:   (213) 382-7600
Facsimile:    (213) 351-6050

Kara Ingelhart*
kingelhart@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
105 W. Adams St., 26th Fl.
Chicago, IL 60603
Telephone:   (312) 663-4413
Facsimile:    (312) 663-4307

*Admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 3rd day of November, 2017, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Russell Barron
Office of the Director
Idaho Department of Health and Welfare
10th Floor, Pete T. Cenarrusa Building
450 W. State Street
Boise, ID 83720-0036

Elke Shaw-Tulloch
Administrator, Division of Public Health
Idaho Department of Health and Welfare
4th Floor, Pete T. Cenarrusa Building
450 W. State Street
Boise, ID 83720-0036

James Aydelotte
Chief and State Registrar
Bureau of Vital Records and Health Statistics
1st Floor, Pete T. Cenarrusa Building
450 West State Street
Boise, ID 83720-0036

/s/ Monica G. Cockerille
Monica G. Cockerille
Attorney for Plaintiffs