Peter C. Renn (Admitted *Pro Hac Vice*)
prenn@lambdalegal.org
Nora Huppert (Admitted *Pro Hac Vice*)
nhuppert@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
4221 Wilshire Blvd., Suite 280
Los Angeles, CA 90010
Tel: (213) 382-7600 | Fax: (213) 351-6050

Kara N. Ingelhart (Admitted *Pro Hac Vice*)
kingelhart@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
65 E. Wacker Pl., Suite 2000
Chicago, IL 60601
Tel: (312) 663-4413 | Fax: (312) 663-4307

Monica G. Cockerille (ISB No. 5532)
monica@cockerillelaw.com
Cockerille Law Office, PLLC
100 W. Main St., Ste. 204
Boise, ID 83702
Tel: (208) 343-7676 | Fax: (866) 226-2499

Attorneys for Plaintiffs F.V. and Dani Martin

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| F.V. and DANI MARTIN,<br><br>*Plaintiffs*,<br><br>v.<br><br>DAVID JEPPESEN in his official capacity as Director of the Idaho Department of Health and Welfare; ELKE SHAW-TULLOCH, in her official capacity as Administrator of the Division of Public Health for the Idaho Department of Health and Welfare; and JAMES AYDELOTTE, in his official capacity as State Registrar and Chief of the Bureau of Vital Records and Health Statistics,<br><br>*Defendants*. | No. 1:17-cv-00170-CWD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLARIFICATION OF MARCH 5, 2018 ORDER [Dkt. 46]** |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.     Plaintiffs Have the Right to Seek Clarification of the Injunction They Won. ......................2

II.    Enforcement of HB 509 Plainly Violates This Court's Permanent Injunction Forbidding a Categorical Ban and Mandating that Defendants Accept Applications. .........5

III.   No Presumption of Constitutionality Applies to a Categorical Ban Already Adjudicated Unconstitutional and Permanently Enjoined. ................................................10

## INTRODUCTION

HB 509 is an unapologetic frontal assault on this Court's ruling and the permanent injunction that Plaintiffs obtained. There is nothing subtle about the law's attack: it mandates conduct that this Court expressly prohibited (practicing a categorical ban), and it also bars conduct that this Conduct expressly required (accepting applications). These violations of the Court's ruling not only deprive Plaintiffs of the relief they were awarded, they also threaten the very authority of the federal judiciary, while upending the well-established interest of the public, litigants, and courts in the finality of judgments, which is indispensable to our system of justice.

As a threshold matter, Plaintiffs have the right to seek clarification of the ruling they personally obtained. Indeed, because they obtained a judgment, they would also have standing to seek contempt against Defendants. But the only relief sought here is clarification of the scope of this Court's order. There is no basis for delaying that relief: HB 509 is a concrete law that takes effect in a matter of weeks, and without clarity that its enforcement is already enjoined, Defendants will reinstate a categorical ban, needlessly inviting contempt and inflicting harm.

Enforcement of HB 509 violates multiple aspects of this Court's order. First, it violates this Court's mandatory injunction that Defendants must accept applications from transgender people seeking to correct their birth certificates to match their gender identity. Second, it violates this Court's prohibitory injunction banning Defendants from categorically rejecting such applications. Third, it violates this Court's declaratory ruling that Defendants violate the Constitution when they fail to provide an avenue for transgender people to correct their birth certificates. Confirming these points does not "stretch" the injunction, as Defendants claim. HB 509 is a reinstatement of a categorical ban that falls right in the heartland of this Court's order.

In the final analysis, HB 509 may very well have its "day in court"—but only in the

1

context of a properly filed motion to dissolve the injunction, governed by appropriate standards.

## ARGUMENT

**I.        Plaintiffs Have the Right to Seek Clarification of the Injunction They Won.**

As the parties who obtained the permanent injunction at issue, Plaintiffs plainly have the right to obtain clarification of its metes and bounds, including whether Defendants' imminent and otherwise mandated enforcement of HB 509 would violate that injunction.

***Ripeness.***  Contrary to Defendants' ripeness assertions, there is nothing hypothetical or abstract about HB 509, which is a very real law that legislators approved and the Governor signed, and which imposes concrete requirements that Defendants have no choice but to follow unless a court order has directed otherwise.  This is not, for instance, a case involving what-if scenarios that may never come to pass, nor feared prosecution under a criminal law involving enforcement discretion.  HB 509 unequivocally bars Defendants from approving birth certificate corrections sought by transgender people to match their gender identity.  *Infra* at 5-6.

Waiting to grant clarification until after the law's effective date of July 1 will not add any clarity to that black-and-white reality.  But it will endanger transgender people, while also needlessly increasing the risk of contempt proceedings that this Court will be forced to adjudicate, undermining the purpose of clarification.  *See Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945) ("courts no less than parties desire to avoid unwitting contempts"); *Inst. of Cetacean Res. v. Shepherd Conservation Soc'y*, 774 F.3d 935, 954 (9th Cir. 2014) (admonishing "experimentation with disobedience" by defendants who relied on self-serving interpretation of an injunction rather than seeking clarification when they had the opportunity).

Defendants also bizarrely suggest that courts cannot restrain unlawful conduct before it occurs.  Opp. at 2, 6, 8 (arguing that no injury will occur until the law's effective date).  But

2

courts do so routinely, just as they should. *See, e.g.*, *Privitera v. Cal. Bd. of Med. Quality Assur*ance, 926 F.2d 890, 897 (9th Cir. 1991) (holding that the district court erred in denying a preliminary injunction on the grounds that injury at issue was three months away and needlessly requiring plaintiff to bring same motion again at a later date). Indeed, the premise of Defendants' position is at war with the very existence of preliminary injunctions, which routinely preserve the status quo in order to prevent harm from occurring in the future. Similarly, by its nature, the purpose of a permanent injunction is to restrain future conduct on an ongoing basis.

To find support for their ripeness argument, Defendants pluck language from this Court's opinion that is egregiously out of context. Opp. at 7. This Court's March 2018 observation that it did "not have a proposed rule before it" was addressing what rule—*other than a categorical ban*—would replace the ban; but it definitively enjoined a categorical ban itself, which is what HB 509 reinstates. *F.V. v. Barron*, 286 F. Supp. 3d 1131, 1141 (D. Idaho 2018). And while the Court did not have even a proposed rule before it in March 2018, it now has an enacted statute, the text of which will not change one iota from now until July 1.

**Standing.** Defendants' generic arguments about standing are oblivious to the procedural posture of this case: this Court entered judgment in favor of Plaintiffs, which became final in 2018. Because that judgment gives Plaintiffs an interest in *enforcing* compliance with the injunction, such as through contempt proceedings, it certainly includes the more modest interest in merely *clarifying* the injunction's scope, which Defendants concede is within this Court's discretion to grant in any event. Opp. at 8. Unsurprisingly, Defendants cite no case holding that a plaintiff lacked standing simply to seek clarification of the ruling that she personally obtained.

A "party that obtains a judgment in its favor acquires a 'judicially cognizable' interest in ensuring compliance with that judgment." *Salazar v. Buono*, 559 U.S. 700, 712 (2010)

3

(plurality).[1]  "Having obtained a final judgment granting relief on his claims," the plaintiff possesses "standing to seek its vindication."  *Id.*; *see also Quine v. Beard*, No. 14-2726, 2017 WL 4551480, at *3 n.5 (N.D. Cal. Oct. 12, 2017) (recognizing that a "plaintiff ha[s] standing to enforce a final judgment").  Otherwise, defendants could refuse to comply with the full scope of an injunction, such as by permitting the same-sex couples named as plaintiffs to marry while refusing to permit other same-sex couples to do the same.  *Cf. Latta v. Otter*, 19 F. Supp. 3d 1054, 1087 (D. Idaho 2014) (enjoining exclusion as to all otherwise-qualified same-sex couples).

As is customary in civil rights cases, Plaintiffs here sought and obtained a judgment protecting both "their constitutional rights and the rights of others similarly situated."  *F.V.*, 286 F. Supp. 3d at 1134.  That is also reflected in the scope of the injunction.  *Id.* at 1146 (ordering Defendants to accept applications by "transgender people" seeking certificates matching their gender identity).  The judgment alone gives them an interest in seeking the clarification sought.

Defendants also argue, at various points and in various ways, that this Court could not have had authority to issue relief that encompasses HB 509.  *See, e.g.*, Opp. at 7 ("If Plaintiffs had no standing to seek a certain remedy, then the Court was without jurisdiction to provide it.").  Apart from being wrong on the merits, that line of argument became completely irrelevant once Defendants' time for appeal elapsed and the judgment became final.  That is true even as to jurisdictional issues.  *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152–53 (2009) ("'[e]ven subject-matter jurisdiction … may not be attacked collaterally'" once an order becomes final).

In any event, Defendants' assumption that both Plaintiffs F.V. and Dani Martin have corrected their birth certificates to match their gender identity is incorrect.  While Ms. Martin has

---

[1] While divided on the merits, seven justices agreed that a judgment confers standing to enforce its compliance.  *Salazar*, 559 U.S. at 712 (three-justice plurality); *id.* at 738 (three-justice dissent agreeing plaintiff "had standing to seek enforcement of a decree in his favor"); *id.* at 761 (single-justice dissent agreeing plaintiff "has standing now to seek enforcement of the injunction").

4

done so, F.V. has not.  As Plaintiffs noted, there have been ongoing attempts to roll back the IDHW Rule ever since it was adopted in 2018, *see* Dkt. 46-1 at 7, and these attempts have now culminated in HB 509's extraordinary reinstatement of a categorical ban.  Indeed, the value of even Ms. Martin's corrected birth certificate is greatly diminished by HB 509:  the statute publicly undermines the veracity and trustworthiness of her corrected certificate and declares it a "breach of public trust" that endangers "public health and safety."  HB 509, § 2(1).

## II.  Enforcement of HB 509 Plainly Violates This Court's Permanent Injunction Forbidding a Categorical Ban and Mandating that Defendants Accept Applications.

Defendants' enforcement of HB 509 requires multiple violations of this Court's ruling and permanent injunction—each independently sufficient to justify the clarification sought here.

***Mandatory Injunction.***  First, Defendants fail to respond to the indisputable point that, in addition to its *prohibitory* terms, this Court's order included a crystal-clear affirmative *mandate*: unless the permanent injunction is dissolved, Defendants are required to continue "accepting" applications from transgender people seeking to correct their birth certificates to match their gender identity.  *F.V.*, 286 F. Supp. 3d at 1146.  While this Court set a date by when Defendants were required to begin accepting such applications, it appropriately did not set a date by when they could stop doing so, as that would defeat the point of the permanent injunction.

Defendants also do not deny that, under HB 509, they cannot accept such applications because of how HB 509 defines sex.  Dkt. 46-1 at 12.  Indeed, they concede that the law permits amendments to a birth certificate in "only" certain contexts, Opp. at 5, none of which permit corrections for the purpose of seeking congruence with one's gender identity.  That is reinforced by Defendants' position that HB 509 was "drafted to avoid 'the conflation of sex and gender.'"[2]

---

[2] Accordingly, Defendants' attempts to downplay the relevance of legislators' statements (which simply confirm an intent to reinstate the ban this Court enjoined) are beside the point.  Opp. at 5-

*Id.* In short, enforcement of HB 509 requires Defendants to stop "accepting" the applications at issue, which directly violates this Court's permanent injunction that mandates the opposite.

***Prohibitory Injunction.*** Second, HB 509 violates this Court's permanent injunction forbidding a categorical ban. Defendants agree that, at a minimum, this Court enjoined them from either practicing or enforcing "the policy," which requires asking: the policy *of what?* This Court did not leave that to guesswork, because it repeatedly specified that it was enjoining the policy "of automatically and categorically denying applications made by transgender people to amend the birth-assigned sex on their birth certificates to align with their gender identity." *F.V.*, 286 F. Supp. 3d at 1141; *accord* Dkt. 42 at 2 (Defendants stipulating they are enjoined "from automatically rejecting applications"—without even mentioning "the policy"). Similarly, in *One Wisconsin Institute v. Thomsen*, the injunction barred "the state-imposed limits" on early voting, and "the scope of the injunction relates to *conduct* that the court concluded was unlawful." 351 F. Supp. 3d 1160, 1161-62 (W.D. Wisc. 2019) (emphasis added). Here, HB 509 similarly requires Defendants to again "practice" the policy of categorically denying applications by transgender people, which is squarely forbidden by the plain terms of the injunction.

Indeed, a party also violates an injunction where its conduct violates the objective of the injunction. While the scope of a consent decree is discerned within its four corners because its language has been negotiated by the parties, *see U.S. v. Armour & Co.*, 402 U.S. 681–82 (1971), the Ninth Circuit has confirmed that where a court has issued an injunction, it should consider "the objects for which the relief was granted and to find a breach of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded." *Inst. for*

---

6. But their arguments are also wrong as a legal matter, as they rely on authorities that the Supreme Court distinguished when holding that legislative history is "highly relevant, especially when there are contemporary statements by members of the decisionmaking body." *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 n.10, 268 (1977).

*Cetacean Res.*, 774 F.3d at 949 (quotes omitted).  Thus, Defendants cannot "constru[e] their obligations narrowly to include only refraining from acts specifically enumerated in the injunction, and not acts likely to nullify the injunction." *Id.* at 954–55.

Defendants' professed compliance with the injunction here is unavailing.  First, Defendants claim that the prior policy was "extinguished" by the Rule adopted in 2018; but they concede that this Rule, which on its face was only temporary, "will be superseded by HB 509" in weeks.  Opp. at 4, 14; Dkt. 42-1.  Permitting transgender people to correct their birth certificates to match their gender identity for only two years does not comply with a *permanent* injunction.

Second, Defendants split hairs in trying to claim that this Court's injunction only permanently barred the categorical ban that existed in 2018 but not the categorical ban that exists in 2020.  A ban is a ban.  To illustrate, a transgender man who seeks to correct his birth certificate to match his male gender identity is categorically banned from doing so after July 1, 2020—just as he was categorically banned from doing so before April 6, 2018.  Defendants' position would justify an endless Groundhog Day in which the legislature reenacts an enjoined policy under a new bill number, which triggers another cycle of litigation, which is undone with legislation under yet another bill number.  That would destroy the finality of judgments.

Defendants' asserted distinction—that the prior policy was supposedly created by the executive branch,[3] while HB 509 was mandated by the legislative branch—is immaterial to whether HB 509 falls within the scope of the injunction.  Nowhere does the injunction make an exception permitting Defendants to enforce a categorical ban so long as the Idaho Legislature blesses it.[4]  The same is true for Defendants' argument that "the directly-elected representatives

---

[3] Elsewhere, Defendants admit that this policy was "merely interpret[ing] existing law"—enacted by the Idaho Legislature—"to prohibit changing the sex designation."  Opp. at 3.

[4] Contrary to Defendants' insinuation, Opp. at 8, Plaintiffs' motion never argued that legislators

7

of the citizens of Idaho" have now spoken. *Compare* Opp. at 12, *with Obergefell v. Hodges*, 135 S. Ct. 2584, 2605–06 (2015) ("The idea of the Constitution was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts.") (quotes omitted).

To be clear, Defendants can attempt to argue that their purported distinctions constitute a significant change of facts that warrant *dissolving* the injunction, as discussed below; but they do not change its scope. *See, e.g.*, *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1404 (9th Cir. 1997) (analyzing whether enactment of new state statute barring payment of special master fees was a significant change of fact that justified dissolution of injunction requiring such payment).

*One Wisconsin* illustrates that injunctions can and do enjoin the enforcement of new legislation that falls within their scope, and Defendants' attempts to distinguish it are unavailing. First, Defendants claim that the new law in Wisconsin made only "immaterial changes to the old law," whereas here they deny "any similar policy or practice" to what this Court enjoined. Opp. at 4, 11. But the delta between the old and new laws in *One Wisconsin* (which was an enlarged window of time for early voting) was more significant than any conceivable difference between the prior policy here and HB 509. Second, Defendants posit that the plaintiffs in *One Wisconsin* could have been harmed again by the new law. But that is a different issue from whether the new law violated the injunction. Indeed, a permanent injunction can survive even without the party who obtained it. *See Tory v. Cochran*, 544 U.S. 734, 736 (2005) ("Despite [Plaintiff's] death, the injunction remains in effect. Nothing in its language says to the contrary."); *Cooper v. Tex. Alcoholic Beverage Comm'n*, 820 F.3d 730, 736 (5th Cir. 2016).

---

or even the Governor are bound by the injunction. But they do rely on officials to enforce the laws they enact. *Ex Parte Young*, 209 U.S. 123, 161 (1908). Here, Plaintiffs have only sought clarification of the obligations of Defendants and their officers, employees, and agents.

8

Defendants' reliance on *Shepard v. Madigan*, 734 F.3d 748 (7th Cir. 2013), is misplaced. The Seventh Circuit had previously struck down an Illinois state law which banned the carrying of a loaded gun outside one's property, and it gave the state a deadline by which to enact a new law. The state complied by timely enacting a new law that permitted the carrying of such guns. Plaintiffs nonetheless protested that the new law did not permit *immediate* licenses (e.g., applications could take 90 days), but the court held that this did not violate its mandate.

*Shepard* and this case are like night and day. First, Illinois did not reenact the prohibited ban, as Idaho has done here. Instead, Illinois enacted a law that *permitted* the carrying of a loaded gun outside one's property. Nothing in the opinion suggests that if Illinois had simply reenacted its ban, "the court could not address concerns regarding the new statute without a new lawsuit to challenge it," as Defendants claim. Opp. at 9; *Shepard*, 734 F.3d at 751 (agreeing that if new law had violated mandate, relief would have been appropriate "without a new lawsuit").

Second, the court scrutinized the language of its earlier opinion but found no "explicit or implicit directive" that had been violated, because it had "fixed no timetable for the implementation of a superseding law." *Id.* This holding illustrates that whether a given law violates a given order is necessarily case-specific. Here, this Court's order was explicit that whatever remedial scheme Idaho subsequently adopted, one option that was permanently off the table was a categorical ban. HB 509 nevertheless proceeded to adopt that prohibited option.

Similarly, Defendants' reliance on state-court litigation in *City of Toledo v. State*, 110 N.E.3d 1257 (Ohio 2018), fares no better. Just as in *Shepard*, the state did not simply reinstate what the court had previously struck down. The prior state law imposed a *mandate* of compliance on municipalities, which violated the state constitution's home rule provision; but the new state law abandoned that mandate in favor of relying on the legislature's *spending power*

9

to create financial incentives for municipalities. *Id.* at 1260. Furthermore, the lower court had held the state *itself* in contempt for simply *passing* the new law, raising issues that are quite different from merely confirming that an official is already enjoined from enforcing a law.

***Declaratory Relief.*** Finally, enforcement of HB 509 independently violates this Court's declaration that Defendants "violate the Equal Protection Clause by failing to provide an avenue for transgender people to amend the sex listed on their birth certificates." *F.V.,* 286 F. Supp. 3d at 1145. By design, HB 509 shuts down any avenue for transgender people to do so. Moreover, the Court's clear declaration that a categorical ban violates the Equal Protection Clause is plainly not limited only to "the policy" as it existed in 2018.

### III.   No Presumption of Constitutionality Applies to a Categorical Ban Already Adjudicated Unconstitutional and Permanently Enjoined.

Defendants assert that HB 509 is presumed constitutional,[5] and entitled to adjudication, but this assertion ignores that this Court already adjudicated that a categorical ban on transgender people seeking to correct their birth certificates to match their gender identity—which is what HB 509 indisputably requires—is unconstitutional, and permanently enjoined its enforcement. Any complaint about the fulsomeness of that litigation expired when no appeal was taken.

To the extent that Defendants still seek to enforce HB 509, they are free to file a motion to dissolve the permanent injunction. There is a rule for that: Federal Rule of Civil Procedure 60(b)(5). Defendants can obtain adjudication of the claimed relevance of HB 509 through showing that (1) there has been a significant change in facts, and (2) dissolution of the injunction is therefore constitutionally warranted on those grounds. But they cannot leapfrog past the first requirement, which preserves paramount interests in the finality of judgments.

---

[5] In fact, this presumption is inverted under heightened scrutiny, because the government bears the burden of justification. *See, e.g.*, *United States v. Virginia*, 518 U.S. 515, 533 (1996).

DATED: May 11, 2020 By: /s/ Monica G. Cockerille

Monica G. Cockerille (ISB No. 5532)
monica@cockerillelaw.com
Cockerille Law Office, PLLC
100 W. Main St., Ste. 204
Boise, ID 83702
Tel: (208) 343-7676 | Fax: (866) 226-2499

Peter C. Renn (Admitted *Pro Hac Vice*)
prenn@lambdalegal.org
Nora Huppert (Admitted *Pro Hac Vice*)
nhuppert@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
4221 Wilshire Blvd., Suite 280
Los Angeles, CA 90010
Tel: (213) 382-7600 | Fax: (213) 351-6050

Kara N. Ingelhart (Admitted *Pro Hac Vice*)
kingelhart@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
65 E. Wacker Pl., Suite 2000
Chicago, IL 60601
Tel: (312) 663-4413 | Fax: (312) 663-4307

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of May, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

David Jeppesen
Office of the Director
Idaho Department of Health and Welfare
10th Floor, Pete T. Cenarrusa Building
450 W. State Street
Boise, ID 83720-0036

Elke Shaw-Tulloch
Administrator, Division of Public Health
Idaho Department of Health and Welfare
4th Floor, Pete T. Cenarrusa Building
450 W. State Street
Boise, ID 83720-0036

James Aydelotte
Chief and State Registrar
Bureau of Vital Records and Health Statistics
1st Floor, Pete T. Cenarrusa Building
450 West State Street
Boise, ID 83720-0036

                                                /s/ Monica G. Cockerille
                                                Monica G. Cockerille
                                                Attorney for Plaintiffs