UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| F.V. and DANI MARTIN,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>DAVID JEPPESEN,[1] in his official capacity as Director of the Idaho Department of Health and Welfare; ELKE SHAW-TULLOCH, in her official capacity as Administrator of the Division of Public Health for the Idaho Department of Health and Welfare; and JAMES AYDELOTTE, in his official capacity as State Registrar and Chief of the Bureau of Vital Records and Health Statistics,<br><br>　　　　　　Defendants. | Case No. 1:17-CV-00170-CWD<br><br>**MEMORANDUM DECISION AND ORDER (DKT. 46)** |

## INTRODUCTION

Before the Court is a motion filed by Plaintiffs seeking clarification of the Court's March 5, 2018 Order. (Dkt. 46.) The parties submitted briefing and the Court heard

---

[1] David Jeppesen is now the Director of the Idaho Department of Health and Welfare. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, David Jeppesen is substituted for Russell Barron as a defendant in this suit.

**MEMORANDUM DECISION AND ORDER - 1**

Case 1:17-cv-00170-CWD  Document 57  Filed 06/01/20  Page 2 of 16

argument on the motion on May 19, 2020. (Dkt. 46, 53, 54, 56.) After carefully considering the submissions, arguments, and the entire record, the Court will grant in part and deny in part the motion to clarify as explained more fully below.

## BACKGROUND

Prior to April 6, 2018, transgender individuals born in Idaho could not obtain an amended birth certificate with the listed sex matching their gender identity.[2] The Idaho Department of Health and Welfare (IDHW) interpreted state law to bar changes to the listed sex on a birth certificate unless an applicant could show there was an error of identification at birth. Based on that interpretation, the IDHW categorically and automatically denied applications to change the listed sex for any other reason.

Plaintiffs, two transgender women born in Idaho, brought this action under 42 U.S.C. § 1983, on behalf of themselves and others similarly situated, challenging whether IDHW's categorical rejection of such applications violated the Equal Protection and Due Process clauses of the Fourteenth Amendment to the Constitution of the United States, and impermissibly compelled speech in violation of the First Amendment. (Dkt. 1.) Defendants admitted, both in their filings and in open court, that the categorical denial of applications from transgender people to amend their birth certificates to change the sex designation to match their gender identity, violated the Equal Protection Clause. (Dkt. 39 at 2-3, 11 n. 9.) Defendants also conceded, that IDHW's ban failed minimum scrutiny review, because "a prohibition against changing the sex designation on the birth

---

[2] At that time, Idaho was one of only four remaining states that did not permit transgender individuals to change the sex listed on their birth certificates. (Dkt. 39 at 6 n. 4.)

**MEMORANDUM DECISION AND ORDER - 2**

certificate of a transgender individual who has undergone clinically appropriate treatment to permanently change his or her sex" bears no rational relationship to a conceivable government interest. (Dkt. 23 at ¶ 5); (Dkt. 39 at 2-3, 11 n. 9.)

On summary judgment, the Court found the categorical and automatic denial of applications submitted by transgender people to change the sex listed on their birth certificates was unconstitutional under the Equal Protection Clause of the Fourteenth Amendment. (Dkt. 39.)[3] The Court further found that any constitutionally sound policy or practice must withstand heightened scrutiny review to fall within the contours of equal protection law, and that any reissued birth certificate must not include the revision history as to sex or name. (Dkt. 39.)

The Court's March 5, 2018 Order permanently enjoined "the IDHW Defendants and their officers, employees, and agents from practicing or enforcing the policy of automatically rejecting applications from transgender people to change the sex listed on their birth certificates." (Dkt. 39.) The Court further ordered:

> IDHW Defendants and their officers, employees, and agents must begin accepting applications made by transgender people to change the sex listed on their birth certificates **on or before April 6, 2018**; such applications must be reviewed and considered through a constitutionally-sound approval process; upon approval, any reissued birth certificate must not include record of amendment to the listed sex; and where a concurrent application for a name change is submitted by a transgender individual, any reissued birth certificate must not include record of the name change.

---

[3] The Court did not address Plaintiffs' Due Process or First Amendment claims. (Dkt. 39 at 3-4.)

**MEMORANDUM DECISION AND ORDER - 3**

(Dkt. 39.) In accordance with the Order, the Board of Health and Welfare revised Idaho Administrative Procedure Act (IDAPA) 16.02.08.201, effective April 6, 2018, to require the IDHW Registrar to issue an amended birth certificate upon submission of a "declaration that the registrant's indicator of sex on the Idaho certificate of live birth does not match the registrant's gender identity." (Dkt. 42.) The parties stipulated to and the Court entered Judgment in favor of Plaintiffs, on April 20, 2018. (Dkt. 42, 43.) Defendants did not file an appeal. The IDHW has implemented the revised rule, IDAPA 16.02.08.201, since April 6, 2018, without any apparent trouble or cause for provocation.

On March 18, 2020, however, the Idaho Legislature passed, and on March 30, 2020, the Idaho Governor signed into law, House Bill 509 (HB 509) which provides that the sex listed on a birth certificate can be amended in only one of two ways: 1) by filing a notarized affidavit within one year of the filing of the certificate, signed by the requisite persons, declaring the information contained on the certificate "incorrectly represents a material fact at the time of birth," and 2) after one year, a party may challenge the qualitative statistics and material facts on the certificate "in court only on the basis of fraud, duress, or material mistake of fact." HB 509 § 2 (to be codified at Idaho Code § 39-245A(4)).[4] The statute becomes effective July 1, 2020.

---

[4] The timing and circumstances surrounding HB 509's enactment are notable. HB 509 was passed and signed into law in the waning days of the 2020 second regular legislative session and just days after the Governor had declared Idaho to be in a state of emergency due to the unprecedented impact of the 2019 novel coronavirus (COVID-19). Also of note, another bill, House Bill 500 banning transgender females from participating in women's sports at publicly sponsored schools, was approved and signed at the same time as HB 509.

**MEMORANDUM DECISION AND ORDER - 4**

On April 16, 2020, Plaintiffs filed the motion presently before the Court, asking for clarification that the March 5, 2018 Order bars any enforcement of HB 509's prohibition against gender marker corrections sought by transgender people to match their gender identity and continues to require IDHW to accept applications for such corrections. (Dkt. 46.) Plaintiffs argue HB 509's process for amending the sex listed on a birth certificate reinstates and mandates the categorical denial of transgender individuals' applications, which the Court found to be unconstitutional and enjoined. (Dkt. 46, 54.)

## STANDARD OF REVIEW

"A district court has discretion to clarify the scope of an injunction." *Smagin v. Yegiazryan*, No. 2:14-CV-09764-RGK-PLA, 2020 WL 1652347, at *3 (C.D. Cal. April 1, 2020). The Supreme Court has long recognized that, "when questions arise as to the interpretation or application of an injunction order, a party should seek clarification or modification from the issuing court, rather than risk disobedience and contempt." *Institute of Cetacean Research v. Sea Shepherd Conservation Soc'y*, No. C11-2043-JLR, 2017 WL 1057644, at *2 (W.D. Wash. March 17, 2017) (quoting *Regents of the Univ. of Cal. v. Atsen*, No. 15-cv-1766-BEN (BLM), 2016 WL 4681177, at *1 (S.D. Cal. Sept. 7, 2016) (citing *McComb v. Jacksonvilled Paper Co.*, 336 U.S. 187, 192 (1949); *Regal Knitwear Co. v. Nat'l Labor Relations Bd.*, 324 U.S. 9, 15 (1945))).

The court issuing an injunctive order retains jurisdiction to clarify and enforce its order. *See e.g. Institute of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 957 (9th Cir. 2014); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991);

**MEMORANDUM DECISION AND ORDER - 5**

*Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.").

## DISCUSSION

On this motion, Plaintiffs ask the Court to clarify that enforcement of HB 509 violates the permanent Injunction forbidding a categorical ban on transgender individuals' applications to change the gender marker on their birth certificates to match their gender identity and mandating IDHW to accept such applications. (Dkt. 46.) Defendants oppose the motion, arguing Plaintiffs lack standing and there is no ripe case or controversy before the Court. (Dkt. 53.) Defendants contend the Injunction applies only to the policy in effect at the time the Court issued the Injunction, and it should not be expanded to apply to HB 509. Further, Defendants argue HB 509 is entitled to a presumption of constitutionality which cannot be rebutted until a ripe case is brought by parties with proper standing to challenge the statute. The Court will address first the jurisdictional arguments and next discuss the merits of the motion.

**1.    Standing**

"[S]tanding consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). "A party that obtains a judgment in its favor acquires a judicially cognizable interest in ensuring compliance with that judgment. Having

**MEMORANDUM DECISION AND ORDER - 6**

obtained a final judgment granting relief on [their] claims, [plaintiffs have] standing to seek its vindication." *Salazar v. Buono*, 559 U.S. 700, 712 (2010).

Defendants argue the Plaintiffs are without standing, because their injury resulting from IDHW's 2018 policy has been remedied and no injury has been suffered by Plaintiffs, or any Idahoan, from HB 509 which is not effective until July 1, 2020. (Dkt. 53 at 8.) The Court disagrees.

Plaintiffs have standing to seek clarification of and ensure compliance by IDHW with the Injunction and the Judgment entered in their favor. *Salazar*, 559 U.S. at 712. The Defendants' arguments do not pertain to standing but, rather, go to the merits of the motion to clarify itself, which the Court will address below. *Id.* at 713.

**2.      Ripeness**

Ripeness is a question of timing, designed to prevent courts from "entangling themselves in abstract disagreements" by avoiding premature adjudication of matters not yet ready for judicial intervention. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1122 (9th Cir. 2009) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000)). The Court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Id.* A court ordinarily ought not resolve issues "involv[ing] 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (quoting 13A C. Wright, A. Miller, & E. Cooper,

**MEMORANDUM DECISION AND ORDER - 7**

Federal Practice and Procedure § 3532 (1984)). Instead, a dispute is sufficiently mature for judicial intervention where the party's injury is "real and concrete rather than speculative and hypothetical." *Stormans*, 586 F.3d at 1122 (quoting *Thomas*, 220 F.3d at 1139).

The parties agree that clarifying the scope of the Injunction is ripe and properly before the Court. (Dkt. 53 at 8) ("Defendants agree that the Court has discretion to clarify the scope of its injunction."); (Dkt. 54 at 1) (Plaintiffs' reply, stating "the only relief sought here is clarification of the scope of this Court's order."). The parties disagree, however, on whether questions concerning HB 509 are ripe.

For the reasons discussed below, the Court finds clarification of the Injunction is ripe and the motion will be granted in that regard. The apparent questions concerning the constitutional validity and enforcement of HB 509, however, are not ripe and the motion will be denied in that respect.

### 3.      Clarifying the Scope of the Injunction

The scope of an injunction is discerned from the language of the injunction itself, as well as from the objective of the relief granted therein. Parties are expected to comply with both the letter and the spirit of a court's order. *See, e.g., McComb*, 336 U.S. at 191-93; *Inst. of Cetacean Research*, 774 F.3d at 949 ("In deciding whether an injunction has been violated it is proper to observe the objects for which the relief was granted and to find a breach of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded."); *United States v. Armour & Co.*, 402 U.S.

**MEMORANDUM DECISION AND ORDER - 8**

673, 682 (1971) ("[T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it."). In considering the motion before it, the Court has reviewed the language of the Order and Judgment, the relief granted, and the objective of that relief, and finds as follows.

    A.    **The Language of the Injunction**

The March 5, 2018 Order states:

1) The Court **PERMANENTLY ENJOINS** the IDHW Defendants and their officers, employees, and agents from practicing or enforcing the policy of automatically rejecting applications from transgender people to change the sex listed on their birth certificates.

2) IDHW Defendants and their officers, employees, and agents must begin accepting applications made by transgender people to change the sex listed on their birth certificates **on or before April 6, 2018**; such applications must be reviewed and considered through a constitutionally-sound approval process; upon approval, any reissued birth certificate must not include record of amendment to the listed sex; and where a concurrent application for a name change is submitted by a transgender individual, any reissued birth certificate must not include record of the name change.

(Dkt. 39) (emphasis in original). The relevant portion of the corresponding stipulated Judgment states:

1) Judgment is entered in favor of Plaintiffs;

2) The policy of automatically rejecting applications from transgender people to change the sex listed on their birth certificates violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

3) Defendants and their officers, employees, and agents are permanently enjoined from practicing or enforcing the policy of

**MEMORANDUM DECISION AND ORDER - 9**

          automatically rejecting applications from transgender people to change the sex listed on their birth certificates;

4)      Such applications must be reviewed and considered through a constitutionally-sound approval process; upon approval, any reissued birth certificate must not include record of amendment to the listed sex; and where a concurrent application for a name change is submitted by a transgender individual, any reissued birth certificate must not include record of the name change;

5)      On March 20, 2018, the Board of Health and Welfare convened a special session where it considered and approved revisions to IDAPA 16.02.08.201 through a temporary and proposed rule ("Rule"), Dkt. 42-1. The Rule requires the Registrar to issue an amended birth certificate upon submission of, inter alia, "[a] declaration that the registrant's indicator of sex on the Idaho certificate of live birth does not match the registrant's gender identity." The Rule went into effect on April 6, 2018, and Defendants have implemented it through a form and instructions, Dkt. 42-2;

6)      The Rule complies with the Court's holding that "there is no rational basis for denying transgender individuals birth certificates that reflect their gender identity" and with the Court's instruction that any rule remedying the constitutional violation found must "withstand heightened scrutiny review" and must avoid imposing burdens lacking constitutionally-appropriate justification, Dkt. 39 at 18, 25….

(Dkt. 43.)

### B.     The Scope of the Injunction

Under the express language quoted above, Defendants and their officers, employees, and agents are permanently enjoined from automatically rejecting applications from transgender people to change the sex listed on their birth certificates. (Dkt. 39, 43.) The Injunction's clear objective is to permanently ban the IDHW from categorically denying such applications. The unconstitutional, categorical rejection of

**MEMORANDUM DECISION AND ORDER - 10**

applications from transgender individuals is the harm the Injunction was entered to remedy.

Defendants argue the Injunction is limited to the policy in place in 2018 and, further, that the Injunction does not apply to HB 509 because the new statutory section supersedes the current rule being applied by the IDHW. (Dkt. 53); (Oral Argument at 55:30-42, *F.V. v. Jeppesen et al.*, No. 1:17-CV-00170-CWD (May 19, 2020) (Defendants argue IDAPA 16.02.08.201.06 expires on its own terms on July 1, 2020, when HB 509 takes effect.). However, the Court finds both arguments are unavailing in light of the unequivocal language and objective of the Injunction.

The Injunction is not constrained to any particular policy, rule, or statute as Defendants argue. The plain terms and clear objective of the Injunction permanently prohibit IDHW from implementing or enforcing *any* policy, rule, or the like that automatically rejects applications from transgender people to change the sex listed on their birth certificates. (Dkt. 39, 43.) Nothing in the language or purpose of the Injunction, or in the Court's discussion of the facts and circumstances as they existed in 2018, limit the Injunction to any particular policy, rule, practice, regulation, or statute as Defendants argue here. (Dkt. 39, 43.)

To clarify, the Injunction prohibits IDHW from categorically denying applications from transgender people to change the sex listed on their birth certificates and requires IDHW to review and consider such applications through a meaningful and constitutionally-sound approval process irrespective of any policy, rule, or statute. The

**MEMORANDUM DECISION AND ORDER - 11**

Injunction is permanent and applies to IDHW's processing of applications to amend birth certificates both now and in the future.

Defendants cannot avoid the Injunction's permanent prohibition on automatic denials of transgender individuals' applications by arguing the new law, HB 509, was not specifically enjoined by the Court's March 5, 2018 Order. *Cetacean Research*, 774 F.3d at 949 (finding breach of an injunction where the conduct violated the spirit of the injunction, even if not the strict letter of the injunction). Put another way, HB 509 does not absolve IDHW from accepting, considering, and processing applications from individuals, transgender or otherwise, seeking to change the sex listed on their birth certificate to match their gender identity. To conclude otherwise invites "experimentation with disobedience of the law." *See McComb*, 336 U.S. at 192–93 (The party subject to an injunction cannot implement a new policy that was not specifically enjoined to avoid contempt.).

Plaintiffs request the Court to further conclude that enforcement of HB 509 violates the Injunction, arguing HB 509 reinstates the categorical ban on applications by transgender individuals to change the gender listed on their birth certificates to conform to their gender identity. (Dkt. 46, 54.) The only bases allowed by HB 509 to amend the sex listed on a birth certificate after one year are "fraud, duress, or material mistake of fact" which, Plaintiffs point out, cannot be proven by a transgender individual given the

**MEMORANDUM DECISION AND ORDER - 12**

statute's definition of "sex."[5] Thus, Plaintiffs contend, HB 509 provides no avenue for transgender individuals to amend the sex listed on their birth certificate to conform to their gender identity.

The Court cannot make the determinations Plaintiffs seek at this time. While serious and formidable questions exist over the constitutionality of HB 509, whether HB 509 can pass constitutional muster is not yet before the Court and not decided here.[6] Likewise, whether enforcement of HB 509 violates the Injunction is not ripe.[7]

IDHW is the agency charged with implementing HB 509.[8] (Oral Argument at 52:06-53:44, *F.V. v. Jeppesen et al.*, No. 1:17-CV-00170-CWD (May 19, 2020)

---

[5] The stated purpose of HB 509 is to maintain accurate vital records purportedly to protect the health and safety of the citizens of Idaho and for national security. *See* HB 509 § 1 (to be codified at Idaho Code §§ 39-240(2)(a)-(h)) and HB 509 § 2 (to be codified at Idaho Code § 39-245A(1)). It is difficult to square how the accuracy of vital records is placed in jeopardy by certain amendments, when the records of such changes are retained by IDHW. It is also hard to reconcile how some amendments to vital records, e.g., changes to name or paternity, apparently pose no threat to the accuracy of records. HB 509 did not modify IDHW's authority to make certain other birth certificate changes, such as when there is a voluntary acknowledgment of paternity or nonpaternity. *See* Idaho Code § 39-250.

[6] For this reason, Defendants' arguments regarding the presumption of constitutionality and separation of powers need not be addressed.

[7] It is not lost on the Court that HB 509 was drafted, at least in part, in response to and for the purpose of circumventing the Order and Judgment in this case. The legislators statements during discussion of HB 509 speak for themselves. *See e.g.*, (Dkt. 46 at 7-8.) The constitutional validity of HB 509 is not, however, before the Court or decided at this time.

[8] IDHW is responsible for interpreting the Idaho Vital Statistics Act, Title 39, Chapter 2 of the Idaho Code, and the Vital Statistics Rules, and for developing temporary and final proposed rules to carry out its provisions. (Dkt. 39 at 4-6); Idaho Code §§ 39-242, 244. The Idaho Board of Health and Welfare proposes rules to carry out the provisions related to vital statistics. IDAPA 16.02.08.000. State legislative approval is necessary to enact final proposed rules into law.

**MEMORANDUM DECISION AND ORDER - 13**

(Defendants confirmed that IDHW is only agency with the authority to reissue an amended birth certificate and that "IDHW will be in a position to develop rules that will follow [HB 509]" and that "implement the provisions of [HB 509]."). It is not known at this time, however, how IDHW will interpret and implement HB 509. (Oral Argument at 56:13-57:51, *F.V. v. Jeppesen et al.*, No. 1:17-CV-00170-CWD, May 19, 2020) (Defendants state it is currently unknown what rules will be adopted to implement HB 509 and that, after July 1, 2020, IDHW will direct a person seeking to change the sex listed on their birth certificate to match their gender identity to the statute, HB 509, for the new process to make that change.).

The Court must refrain from speculating or commenting on the potential legal ramifications of the hypothetical restrictions and limits the IDHW may or may not place on the ability of transgender people to apply for and receive approval of applications to change the sex listed on their birth certificates when it implements HB 509. (Dkt. 39 at 17.) This is not to say transgender individuals must wait until they have been denied amendments to their birth certificates before raising such challenges to HB 509 or IDHW's implementation of HB 509. Only that, at this time, such questions are contingent on future events that may or may not occur and, therefore, are not ripe for judicial intervention or interpretation. *Thomas*, 473 U.S. at 580-81.

Because such questions may soon become ripe, the Court retains jurisdiction to clarify, modify, and enforce its Order, Injunction, and Judgment in this case. *See One Wisconsin Inst., Inc. v. Thomsen*, 351 F.Supp.3d 1160 (W.D. Wisc. 2019) (the court

**MEMORANDUM DECISION AND ORDER - 14**

retains jurisdiction to enforce its own orders and monitor compliance with its injunction to the extent the challenged provisions fall within the scope of the injunction issued in this case); *Campaign for Southern Equality v. Bryant*, 197 F.Supp.3d 905 (N.D. Miss. 2016) (Courts retain the authority to modify or set aside their injunctive decrees in the light of a factually or legally significant change in circumstances.).

**4.     Conclusion**

The Court clarifies that the plain language and objective of the Order and Judgment entered in this case permanently enjoin IDHW from infringing on the constitutional rights of transgender individuals by automatically rejecting applications to change the sex listed on their birth certificates to match their gender identity. The Injunction requires IDHW to institute a meaningful and constitutionally-sound process for accepting, reviewing, and considering applications from transgender individuals to amend the gender listed on their birth certificates. The Injunction is permanent and applies now and on July 1, 2020. The Court makes no finding at this time as to whether HB 509 or the IDHW's interpretation and implementation of HB 509 violates the Constitution or the Injunction.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiffs' Motion to Clarify (Dkt. 46) is **GRANTED IN PART AND DENIED IN PART** as stated herein and as follows:

**MEMORANDUM DECISION AND ORDER - 15**

1) The motion is granted as to Plaintiffs' request for clarification of the Court's Memorandum Decision and Order (Dkt. 39) and Judgment (Dkt. 43). The Court clarifies that the Order and Judgment (Dkt. 39, 43) permanently:

a) enjoin IDHW Defendants and their officers, employees, and agents from automatically rejecting applications from transgender people to change the sex listed on their birth certificates; and

b) require that IDHW Defendants and their officers, employees, and agents accept applications made by transgender people to change the sex listed on their birth certificates; such applications must be reviewed and considered through a constitutionally-sound approval process; upon approval, any reissued birth certificate must not include record of amendment to the listed sex; and where a concurrent application for a name change is submitted by a transgender individual, any reissued birth certificate must not include record of the name change.

2) The motion is denied as to Plaintiffs' request for a determination that enforcement of House Bill 509 is barred by the Court's permanent Injunction.

IT IS FURTHER ORDERED that the Court retains jurisdiction to clarify, modify, and enforce the Order, Injunction, and Judgment entered in this case as necessary.

DATED: June 1, 2020

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 16**