Monica G. Cockerille (ISB No. 5532)
monica@cockerillelaw.com
Cockerille Law Office, PLLC
100 W. Main St., Ste. 204
Boise, ID 83702
Tel: (208) 343-7676 | Fax: (866) 226-2499

Peter C. Renn (Admitted *Pro Hac Vice*)
prenn@lambdalegal.org
Nora Huppert (Admitted *Pro Hac Vice*)
nhuppert@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
4221 Wilshire Blvd., Suite 280
Los Angeles, CA 90010
Tel: (213) 382-7600 | Fax: (213) 351-6050

Kara N. Ingelhart (Admitted *Pro Hac Vice*)
kingelhart@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
65 E. Wacker Pl., Suite 2000
Chicago, IL 60601
Tel: (312) 663-4413 | Fax: (312) 663-4307

D. Jean Veta (*Pro Hac Vice* Pending)
jveta@cov.com
Henry Liu (*Pro Hac Vice* Pending)
hliu@cov.com
William Isasi (*Pro Hac Vice* Pending)
wisasi@cov.com
Isaac C. Belfer (*Pro Hac Vice* Pending)
ibelfer@cov.com
Colleen R. Smith (ISB No. 10023)
csmith@cov.com
Covington & Burling LLP
One City Center
850 10th St NW
Washington, DC 20001
Tel: (202) 662-5294

Michael Lanosa (*Pro Hac Vice* Pending)
mlanosa@cov.com
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel: (424) 332-4780

Attorneys for Plaintiffs F.V. and Dani Martin

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| F.V. and DANI MARTIN,<br><br>*Plaintiffs*,<br><br>v.<br><br>DAVID JEPPESEN, in his official capacity as Director of the Idaho Department of Health and Welfare; ELKE SHAW-TULLOCH, in her official capacity as Administrator of the Division of Public Health for the Idaho Department of Health and Welfare; and JAMES AYDELOTTE, in his official capacity as State Registrar and Chief of the Bureau of Vital Records and Health Statistics,<br><br>*Defendants*. | No. 1:17-cv-00170-CWD<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLARIFICATION REGARDING DEFENDANTS' ENFORCEMENT PLAN** |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

FACTUAL DEVELOPMENTS ............................................................................................2

LEGAL STANDARD............................................................................................................4

ARGUMENT.........................................................................................................................4

    I.       Defendants' Enforcement Plan Violates the Permanent Injunction ...................................4

    II.      Whether Defendants' Enforcement Plan Violates the Injunction Presents a Ripe
           Controversy.........................................................................................................................7

CONCLUSION......................................................................................................................13

**INTRODUCTION**

Despite this Court's order clarifying the scope of its permanent injunction—which rejected Defendants' contention that the injunction did not apply to HB 509, and which found that HB 509 was enacted "for the purpose of circumventing the Order and Judgment in this case," Dkt. 58 at 13 n.7—Defendants have now indicated that they plan to proceed with enforcement of HB 509 on July 1, 2020. This Court may have expected that Defendants would permit transgender individuals to change the sex listed on their birth certificates to match their gender identity. It is now clear they will not.

At the center of Defendants' plan is a requirement that is legally impossible for transgender people to meet: they must obtain a court order under HB 509 to change the sex listed on their birth certificate to match their gender identity. Under HB 509, however, "sex" is defined as "the immutable biological and physiological characteristics, specifically the chromosomes and internal and external reproductive anatomy, genetically determined at conception and generally recognizable at birth, that define an individual as male or female." Moreover, a transgender individual may challenge the "sex" listed on their birth certificate in court "only on the basis of fraud, duress, or mistake of material fact, with the burden of proof upon" the transgender individual. Defendants can articulate no explanation for how HB 509's definition of "sex" would permit transgender people to obtain a court order to change their listed sex to match their gender identity. Indeed, preventing such changes was the point of the law. Plaintiffs thus seek clarification that Defendants' enforcement plan violates both the letter and spirit of the permanent injunction by depriving transgender people of birth certificates matching their gender identity.

In light of Defendants' enforcement plan, this controversy has sufficiently ripened to the

point that judicial intervention is now warranted—which this Court had predicted would happen "soon." Dkt. 58 at 14. Indeed, given that this Court correctly recognized that ripeness does *not* require transgender people to be denied amendments to their birth certificates, it is difficult to conceive what more could be required for a ripe controversy, especially with mere days left on the calendar before Defendants' promised enforcement of HB 509 on July 1st. In the alternative, if this Court would like greater factual detail regarding Defendants' enforcement plan, Plaintiffs respectfully request that this Court order Defendants to provide such information on or before July 1, 2020, and schedule a hearing on this motion after Defendants have complied.

## FACTUAL DEVELOPMENTS

Following this Court's June 1, 2020 Order clarifying the scope of the permanent injunction, Plaintiffs sought confirmation from Defendants that, on July 1st, the Idaho Department of Health and Welfare (IDHW) would continue to "accept[], consider[], and process[] applications from individuals … seeking to change the sex listed on their birth certificate to match their gender identity." *See* Email from P. Renn to S. Olsen (June 11, 2020), Renn Decl., Ex. A. In response, Defendants informed Plaintiffs that they planned to enforce HB 509 beginning July 1, 2020. *See* Letter from P. Renn to S. Olsen (June 17, 2020), Renn Decl., Ex. B. Specifically, Defendants indicated that transgender people would need to obtain a court order pursuant to Idaho Code § 39-245A(4), enacted as part of HB 509, to change the sex listed on their birth certificates. *See* Idaho Code § 39-245A(4) (individual may challenge information in a birth certificate "only on the basis of fraud, duress, or material mistake of fact").

Plaintiffs informed Defendants that their enforcement plan violated the letter and spirit of the permanent injunction given the plain language of HB 509. Ex. B. In light of this Court's instruction that when questions arise as to the interpretation of the injunction, "'a party should

seek clarification or modification … rather than risk disobedience and contempt,'" Dkt. 58 at 5, Plaintiffs asked Defendants to confirm they would not implement their enforcement plan unless and until this Court ruled that it did not violate the injunction. Ex. B. Defendants refused to provide such confirmation. *See* Letter from S. Olsen to P. Renn (June 18, 2020), Renn Decl., Ex. C.

Although Defendants claimed on June 18th that they had not settled upon a "precise" course of action, they have *never* wavered from the central element of their enforcement plan: the requirement that transgender people must present a court order under HB 509 to change the sex listed on their birth certificate to match their gender identity. Indeed, Defendants confirmed in writing to Plaintiffs that "HB 509 require[s] that a court order be entered for a person to change their sex." Ex. C. Likewise, Defendants confirmed to the Court that they "will" abide by "their obligation to follow the law in Idaho statutes" and expressly stated that HB 509 requires that "***a court order accompany an application to change a birth certificate***." *See* Email from S. Olsen to L. Thompson (June 19, 2020), Renn Decl., Ex. D (emphasis added). That is consistent with what Defendants stated to Plaintiffs on June 16th. Ex. B. Although Defendants may not yet have decided the typeface and color of paper for applications, they have repeatedly confirmed that they will enforce HB 509's court order requirement that transgender people cannot possibly satisfy—the only legally relevant issue here.

To avoid any conceivable doubt, Plaintiffs requested that Defendants disclose to the Court in detail any intention to enforce HB 509 by two days before any conference scheduled in this case.[1] *Id.* Defendants did not object to that request. *Id.* They should therefore have no

---

[1] Plaintiffs suggested this timing—and proposed that Defendants first disclose their "precise" enforcement plan—to prevent any gamesmanship by Defendants claiming that no final decision had been made regarding enforcement of HB 509, even at the eleventh hour, to obstruct

3

problem making that disclosure when responding to this motion by June 25th as directed by the Court. However, if they refuse to do so, Plaintiffs request that the Court order Defendants to file the requisite disclosure, and schedule a hearing thereafter.

## LEGAL STANDARD

"A district court has discretion to clarify the scope of an injunction." *Smagin v. Yegiazaryan*, No. 14-9764, 2020 WL 1652347, at *3 (C.D. Cal. Apr. 1, 2020). "The Supreme Court has long recognized that, 'when questions arise as to the interpretation or application of an injunction order, a party should seek clarification or modification from the issuing court, rather than risk disobedience and contempt.'" Dkt. 58 at 5.

## ARGUMENT

**I.     Defendants' Enforcement Plan Violates the Permanent Injunction.**

Defendants' enforcement plan violates the letter and spirit of this Court's injunction. This Court explained that the injunction prohibits IDHW from categorically denying applications from individuals seeking to change the sex listed on their birth certificate to match their gender identity, and it also requires *IDHW* to "accept[], consider[], and process[] applications from individuals, transgender or otherwise, seeking to change the sex listed on their birth certificate to match their gender identity." Dkt. 58 at 11-12. In other words, transgender people must have a meaningful avenue to change the sex listed on their birth certificate to match their gender identity.

Defendants' enforcement plan does not meet those requirements. Under the enforcement plan, IDHW (1) abdicates the substantive authority it currently exercises to approve corrections

---

meaningful judicial review. Ex. D. These concerns are heightened because Defendants have refused to wait to implement their enforcement plan until the Court has clarified whether it violates the injunction.

4

for the purpose of matching an individual's gender identity, and (2) relies on a third party—namely, the state court—to issue an order to change an individual's birth certificate for the purpose of matching their gender identity, but (3) Defendants fail to explain how that third party can issue such an order to transgender people in light of HB 509's definition of "sex." Defendants' enforcement plan falls far short of the "meaningful" and "sound" process mandated by the injunction, which is required "irrespective" of any rule or statute.  Dkt. 58 at 12.

If a court order imposes an obligation on a party, and that party delegates compliance to a third party, the party must show how that third party has the means of complying with the obligation.  As the Ninth Circuit has explained, relying upon a third party to achieve the same result that is prohibited by an injunction is no less a violation of the injunction.  For example, the Ninth Circuit held that a defendant violated a court order where that order directed the defendant to stop attacking the plaintiffs' vessels, and the defendant "thwarted that objective by furnishing other … entities with the means to do what it could not after the issuance of the injunction." *Inst. of Cetacean Res. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949 (9th Cir. 2014). Thus, "a party may be held in contempt for giving a non-party the means to violate an injunction, if the party knows it is highly likely the non-party will use those means to violate the injunction." *Id.* at 950.  And a party does not "avoid liability simply because another person outside his immediate control actually carried out the violation."  *Id.* at 951.

Defendants cannot show that a state court can lawfully issue an order under HB 509 for a transgender person to change their listed sex to match their gender identity, because the plain language of HB 509 unambiguously prohibits that.  It defines "sex" as "the immutable biological and physiological characteristics, specifically the chromosomes and internal and external reproductive anatomy, genetically determined at conception and generally recognizable at birth,

that define an individual as male or female." Idaho Code § 39-245A(3). HB 509 also states: "There is a compelling interest in maintaining … biology-based material facts on Idaho certificates of birth." Idaho Code § 39-245A(1)(a)(i). It asserts that "biological sex is an objectively defined category." Idaho Code § 39-245A(1)(a)(iii). It continues that "[i]dentification of biological sex on a birth certificate impacts the health and safety of all individuals" and cautions that "the conflation of sex and gender" is "alarming." Idaho Code § 39-245A(1)(a)(iv). After one year of the filing of a birth certificate, "the quantitative statistics and material facts … may be challenged in court *only* on the basis of fraud, duress, or material mistake of fact." Idaho Code § 39-245A(4)(D) (emphasis added). Defendants cannot show how HB 509 would permit a transgender person to change the sex listed on their birth certificate to match their gender identity under any of these provisions in light of the statute's definition of "sex." *See also* Dkt. 46-1 at 5-6, 10-11; Dkt. 54 at 5-6. This result is consistent with the Court's finding that HB 509 was enacted "for the purpose of circumventing the Order and Judgment in this case." Dkt. 58 at 13 n.7.

To be clear, the clarification that Plaintiffs seek would simply confirm whether Defendants' planned enforcement of HB 509 encompasses conduct that violates the injunction. That does not require a determination regarding "the constitutional validity … of HB 509," Dkt. 58 at 8, for a simple reason: if Defendants plan to undertake *conduct* that has already been enjoined—even if their reason is that they believe such conduct is required by a new statute—then, by necessity, there has *already been a determination* of the constitutional validity of that *conduct*.

To illustrate, suppose a federal court orders public schools to be desegregated, but a state nonetheless enacts a new statute requiring segregation. If the plaintiffs filed a motion to clarify

6

that the conduct required by the statute is prohibited by the injunction, the state could not oppose the motion for clarification on the grounds that the court must first determine the "constitutional validity" of the statute.  The court already determined the constitutionality of the *conduct* at issue—that is why the conduct was enjoined.  The plaintiff need not show (again) that the conduct is unconstitutional simply to obtain clarification that the conduct falls within the scope of the injunction.

At most, the state could argue there has been a significant change in law or fact to justify dissolving the injunction.  But that is a much narrower inquiry than a fresh determination regarding the "constitutional validity" of the statute, which would impermissibly circumvent the standards that limit when an injunction can be dissolved.  Defendants do not get two bites at the same apple.  *See Gon v. First State Ins. Co.*, 871 F.2d 863, 866 (9th Cir. 1989) (a party that fails to appeal an injunction "cannot regain its lost opportunity" simply by filing a motion to dissolve the injunction, because a motion to dissolve the injunction must be limited to the "new matter" properly presented).  Here, of course, Defendants have not moved to modify or dissolve the Court's permanent injunction.  Thus, their only option is to argue that their enforcement plan is consistent with the permanent injunction, which it plainly is not.

## II. Whether Defendants' Enforcement Plan Violates the Injunction Presents a Ripe Controversy.

Defendants plan to enforce HB 509 on July 1, 2020, by requiring transgender individuals to obtain what the law does not permit:  a court order pursuant to Idaho Code § 39-245A(4) to change the sex listed on their birth certificates to match their gender identity.  That plan violates this Court's permanent injunction and presents a ripe controversy for the Court's review.

Previously, this Court stated that it did not know "at this time" what actions IDHW would take in response to HB 509.  Dkt. 58 at 14.  That made sense because, before this Court's order

7

was issued on June 1st, Defendants took the position that "the Injunction applies only to the policy in effect at the time the Court issued the Injunction." *Id.* at 6. Similarly, Defendants argued that the injunction "does not apply to HB 509." *Id.* at 11. This Court may have anticipated that, after Defendants reviewed the Court's order holding otherwise, they would no longer proceed with immediate enforcement of HB 509 and would instead move to dissolve the injunction. That was certainly Plaintiffs' expectation.

But even after this Court rejected Defendants' narrow reading of the injunction, Defendants remain undeterred. This Court recognized that it could "soon" need to decide issues presented by HB 509. *Id.* at 14. Significantly, this Court also held that transgender individuals need not "wait until they have been denied amendments to their birth certificates" before further judicial relief could be granted. *Id.* The Ninth Circuit has agreed that it "'does not require Damocles's sword to fall before we recognize the realistic danger of sustaining a direct injury.'" *Chang v. United States*, 327 F.3d 911, 921 (9th Cir. 2003) (finding ripeness); *see also Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (recognizing that a plaintiff "'does not have to await the consummation of threatened injury to obtain preventive relief'").

At this point, there is no ripeness barrier to the Court deciding whether Defendants' anticipated enforcement plan violates the terms of the permanent injunction. **First**, as this Court and others have recognized, it is well established that courts should grant clarification of an injunction *before* a party engages in future conduct that may violate the injunction. Dkt. 58 at 5 ("'a party should seek clarification or modification … rather than risk disobedience and contempt'"); *Inst. of Cetacean Res.*, 774 F.3d at 954 (holding that defendants should have sought clarification *before* engaging in conduct that violated injunction). "The rule against advisory opinions … does not prevent a court from clarifying an injunction." *Cointreau Corp. v. Pura*

8

*Vida Tequila Co., LLC*, No. 3:12-CV-02257-N, 2013 WL 12125990, at *1 (N.D. Tex. Jan. 9, 2013) (rejecting argument that "the Court lacks authority to clarify its injunction because the matter is not ripe"). The Supreme Court has made clear that "a person subject to an injunction always has the right to ask the court that is administering it whether it applies to conduct in which the person proposes to engage. If this looks like a request for an 'advisory opinion,' it is one that even a federal court can grant, in order to prevent unwitting contempts." *In re Hendrix*, 986 F.2d 195, 200 (7th Cir. 1993) (analyzing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9 (1945)).

**Second**, as this Court recognized, "a dispute is sufficiently mature for judicial intervention where the party's injury is 'real and concrete rather than speculative and hypothetical.'" Dkt. 58 at 8 (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1122 (9th Cir. 2009)). A plaintiff has standing based on a future injury either where the harm is certainly impending or, alternatively, where there is a "substantial risk that the harm will occur." *In re Zappos.com, Inc.*, 888 F.3d 1020, 1026 (9th Cir. 2018) (analyzing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) (quotes omitted). Here, Defendants' enforcement plan presents more than a "substantial risk" of harm to Plaintiffs' right to ensure IDHW's full compliance with this Court's judgment and injunction, which this Court correctly held Plaintiffs have standing to enforce. Dkt. 58 at 7. At this point, Defendants' enforcement plan is not a "hypothetical restriction[]" by IDHW. *Id.* at 14. It is here. As the Ninth Circuit has confirmed: "It is no legal leap to conclude that pre-enforcement review is [] appropriate where the purpose of a statute is to evade an injunction." *Buono v. Kempthorne*, 527 F.3d 758, 774 (9th Cir. 2008) (finding ripeness), *rev'd on other grounds sub nom.*, *Salazar v. Buono*, 559 U.S. 700 (2010).

**Third**, Defendants claim there is a different ripeness barrier: no transgender person "has tested and been harmed in any way by the statute." Ex. D. But this Court already rejected that

argument in holding that ripeness does not require transgender people to "wait until they have been denied amendments to their birth certificates." Dkt. 58 at 14. That conclusion is reinforced by *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431 (9th Cir. 1996), where the court held that plaintiffs had presented a ripe controversy challenging restrictions on travel to Cuba, even though they had not applied for a license for their educational travel plans. The court held that it could "firmly predict" that the plaintiffs' application would be denied, because there were only two educational activities for which an application could be granted—one involving a meeting or conference, and another involving undergraduate or graduate studies—and plaintiffs' educational travel plans did not qualify under either provision. *Id.* at 1436. Here, similarly, Defendants' enforcement plan requires a court order, but the only permitted bases for obtaining such an order are "fraud, duress, or material mistake of fact." Idaho Code § 39-245A(4)(D). Just like the situation in *Freedom to Travel Campaign*, none of these bases permits transgender people to obtain a court order to change the sex listed on their birth certificates to match their gender identity. *See supra* at 4-7; *see also Immigrant Assistance Project of the Los Angeles Cty. Fed'n of Labor v. INS*, 306 F.3d 842, 861-62 (9th Cir. 2002) (applying "firm prediction" rule and holding that the remote "possibility" that harm would not occur could not defeat ripeness).

The foregoing reasons are more than sufficient bases for this Court to find ripeness satisfied. Alternately, if this Court were to apply the ripeness standards developed in the line of cases that assess a "credible threat" of enforcement in contexts implicating constitutional interests, that analysis would yield the same conclusion. *Susan B. Anthony List*, 573 U.S. at 159. These cases have considered factors such as "'[1] whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past

prosecution or enforcement under the challenged statute.'" *Stormans*, 586 F.3d at 1122.

Applying these factors, there is more than a "credible threat" that Defendants' enforcement plan will violate the Court's judgment and injunction. Here, it is Defendants, rather than Plaintiffs, who have formulated a concrete plan to enforce HB 509's court order requirement—which transgender people cannot satisfy—in violation of the Court's injunction. *See San Luis & Delta-Mendota Water Auth. v. Salazar*, 638 F.3d 1163, 1173 (9th Cir. 2011) (recognizing that focusing on plaintiffs may not be appropriate where they "are not [the] potential violators"). Defendants also communicated this specific plan to Plaintiffs on June 16th and June 18th, and to this Court on June 18th, affirming that they "will" abide by "their obligation to follow the law in Idaho statutes" including with respect to HB 509's requirement that "a court order accompany an application to change a birth certificate." *See* Exs. B, C, D; *cf. NIFLA v. Harris*, 839 F.3d 823, 833 (9th Cir. 2016) (finding ripeness where "[t]he AG … has not stated that she will not enforce the Act"), *rev'd in part and aff'd in part sub nom.*, *NIFLA v. Beccera*, 138 S. Ct. 2361, 2370 n.1 (2018) (agreeing with ripeness); *Virginia v Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) ("The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise."). And before this Court's ruling in 2018, Defendants had long denied transgender people birth certificates matching their gender identity under the Idaho Vital Statistics Act, which is the practice that Defendants' enforcement of HB 509 would restore. *Cf. Wolfson*, 616 F.3d at 1060 (recognizing that even the absence of past prosecution would carry "little weight" where the law at issue is new). Under these factors, there is more than a "credible threat" that Defendants' actions will impair the judgment that Plaintiffs obtained.

*Fourth*, both aspects of prudential ripeness—the fitness of the issues for judicial review,

and hardship from the denial of judicial review—are satisfied here. Issues are fit for judicial review when they are "primarily legal" rather than factual. *Stormans*, 586 F.3d at 1126. The question of whether Defendants' enforcement plan—and specifically its implementation of HB 509's court order requirement—violates this Court's injunction is quintessentially legal in nature, because it requires this Court to interpret the scope of its own order. *See Buono*, 527 F.3d at 776 (analysis of whether enforcement of new statute violated permanent injunction was primarily legal and thus ripe). Meanwhile, denying judicial review would cause hardship, because Defendants' enforcement of HB 509 on July 1st will immediately impair the judgment and injunction that Plaintiffs obtained. That judgment and injunction stand as the only bulwark protecting transgender people from imminent state action that will strip them of legal recognition of their gender. This Court already recognized that transgender people suffer irreparable injury when they are denied access to birth certificates matching their gender identity, and that this hardship required a permanent injunction. Dkt. 39 at 25; *see Buono*, 527 F.3d at 776 (recognizing that "hardship resulting from the continuation of … [the violation] enjoined by the court is sufficient" to "easily" satisfy prudential ripeness).

Defendants also cannot defeat ripeness by demanding that transgender people file suit in state court and embark on a wild goose chase to obtain orders under HB 509 to change their listed sex to match their gender identity. Such orders are squarely precluded by HB 509 and its definition of sex. *See supra* at 4-7. The Ninth Circuit has warned that "gamesmanship is not sanctioned by our prudential ripeness doctrine." *Buono*, 527 F.3d at 777. "To suggest that we do not yet know enough facts to decide this dispute ignores the practical reality of these statutory mandates. … '*We refuse to turn a blind eye to the context in which this policy arose*.'" *Id.* (quoting *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 315 (2000); emphasis in *Buono*).

Courts should not credit "'what is obviously untrue.'" *Buono*, 527 F.3d at 777. "Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974). Defendants' plan to enforce HB 509 is ripe for review.

## CONCLUSION

Despite the clear import of this Court's permanent injunction, and its recent order clarifying that injunction and cautioning that Defendants and their agents must follow both the injunction's letter and spirit, Defendants' choices have now necessitated a third order from this Court. Unless this Court grants that order, the civil rights of transgender people will be at substantial risk.

Plaintiffs respectfully request that this Court issue an order clarifying that Defendants' plan to enforce HB 509 by requiring transgender people to obtain a court order pursuant to Idaho Code § 39-245A(4) to change the sex listed on their birth certificates to match their gender identity, which they cannot obtain under HB 509, violates the permanent injunction. In the alternative, to the extent this Court desires greater factual detail regarding Defendants' enforcement plan, Plaintiffs respectfully request that it order Defendants to disclose that information, and conduct a hearing on this motion after such information is provided.

DATED: June 22, 2020

By:     /s/ Peter C. Renn

D. Jean Veta (*Pro Hac Vice* Pending)
jveta@cov.com
Henry Liu (*Pro Hac Vice* Pending)
hliu@cov.com
William Isasi (*Pro Hac Vice* Pending)
wisasi@cov.com
Isaac C. Belfer (*Pro Hac Vice* Pending)
ibelfer@cov.com

Peter C. Renn (Admitted *Pro Hac Vice*)
prenn@lambdalegal.org
Nora Huppert (Admitted *Pro Hac Vice*)
nhuppert@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
4221 Wilshire Blvd., Suite 280
Los Angeles, CA 90010
Tel: (213) 382-7600 | Fax: (213) 351-6050

Colleen R. Smith (ISB No. 10023)
csmith@cov.com
Covington & Burling LLP
One City Center
850 10th St NW
Washington, DC 20001
Tel: (202) 662-5294

Michael Lanosa (*Pro Hac Vice* Pending)
mlanosa@cov.com
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel: (424) 332-4780

Kara N. Ingelhart (Admitted *Pro Hac Vice*)
kingelhart@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
65 E. Wacker Pl., Suite 2000
Chicago, IL 60601
Tel: (312) 663-4413 | Fax: (312) 663-4307

Monica G. Cockerille (ISB No. 5532)
monica@cockerillelaw.com
Cockerille Law Office, PLLC
100 W. Main St., Ste. 204
Boise, ID 83702
Tel: (208) 343-7676 | Fax: (866) 226-2499

Attorneys for Plaintiffs F.V. and Dani Martin