LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
DAYTON P. REED, ISB #10775
Deputy Attorneys General
954 W Jefferson, 2nd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone:     (208) 334-2400
Facsimile:      (208) 854-8073
steven.olsen@ag.idaho.gov
dayton.reed@ag.idaho.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| F.V. and DANI MARTIN,<br><br>     Plaintiffs,<br><br>vs.<br><br>DAVID JEPPESEN, in his official capacity as Director of the Idaho Department of Health and Welfare and ELKE SHAW-TULLOCH, in her official capacity as Administrator of the Division of Public Health the Idaho Department of Health and Welfare, and JAMES AYDELOTTE, in his official capacity as State Registrar and Chief of the Bureau of Vital Records and Health Statistics,<br><br>     Defendants. | Case No. 1:17-cv-000170-CWD<br><br>**OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION REGARDING DEFENDANTS' ENFORCEMENT PLAN [DKT. 66]** |

## INTRODUCTION

   The Court should deny the motion to clarify. Plaintiffs argue that HB 509 does not allow transgender people to change their birth certificates to match their gender identity. Even assuming, *arguendo*, that Plaintiffs' interpretation is correct, this motion must be denied because

**OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION REGARDING DEFENDANTS' ENFORCEMENT PLAN [DKT. 66] – 1**

Plaintiffs' interpretation of the injunction inappropriately expands it to effectively declare HB 509 unconstitutional; because Plaintiffs lack standing to challenge HB 509's constitutionality; because the issue of HB 509's constitutionality is not ripe for adjudication; and because HB 509 is entitled to a presumption of constitutionality until it is declared unconstitutional in a proper lawsuit challenging it.

HB 509 is materially different from the policy the Plaintiffs originally sought to enjoin through this case. That former policy required the Idaho Department of Health & Welfare (IDHW) employees to automatically refuse applications from transgender people to change the sex on their birth certificates to match their gender identity. Thus, the Court's injunction "enjoin[s] IDHW Defendants and their officers, employees, and agents from automatically rejecting applications from transgender people to change the sex listed on their birth certificates." Dkt. 58 at 16. HB 509 does not require IDHW employees to automatically reject applications to change birth certificates.

Contrary to Plaintiffs' characterization, HB 509 is not simply a codification of the previously enjoined automatic refusal of applications. HB 509 revamps vital statistics law regarding birth certificates and impacted many different kinds of information collected at birth, including time of birth, date of birth, birth weight, birth length, and place of birth, in addition to sex. The change most relevant to this lawsuit is the requirement that a court order is required to change any of these items on the birth certificate, including the sex marker.  In their most recent motion to clarify, Plaintiffs take aim at this requirement. They ask the Court to determine that the injunction prohibits IDHW employees from carrying out HB 509's requirement that applicants provide a court order to change the sex on their birth certificates.

**OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION REGARDING DEFENDANTS' ENFORCEMENT PLAN [DKT. 66]** – 2

# ARGUMENT

I. **Plaintiffs' motion asks the Court to expand the injunction to effectively declare HB 509 unconstitutional.**

Plaintiffs are correct that the injunction applies only to the Defendants' conduct. It precludes the Defendants from automatically rejecting applications of transgender people to change the sex listed on their birth certificates, and it requires that Defendants and IDHW employees accept applications submitted in accordance with a constitutionally-sound approval process. The injunction does not prescribe the precise application process that must be used. Further, it does not preclude IDHW from requiring a court order as part of the process—a requirement that already exists for a person seeking a name change[1] and in certain instances involving a change in paternity.[2]

IDHW's instructions to applicants seeking to change their sex marker are virtually the same as before HB 509, except that a court order is now required, as provided in the statute. As indicated in the new instructions posted by Defendants,[3] the only additional document Defendants request from those seeking to change their sex more than a year after birth is a court order.[4] IDHW is still giving special treatment to changes of the sex marker on the birth

---

[1] Idaho Code §§ 7-801, *et seq*.
[2] Idaho Code § 7-1106.
[3] Idaho Dep't of Health & Welfare, Instructions to Change the Indicator of Sex on an Idaho Birth Certificate (Jul. 2020).
https://healthandwelfare.idaho.gov/Portals/0/Health/Vital%20Records/GenderChangePacket-07-02-2020.pdf
[4] Those parents who seek to change the sex of their child indicated on the birth certificate within a year of their birth do not need to provide a court order, but must submit a form signed by them and the physician or other person who certified the facts of birth, declaring that there is an incorrect material fact on the birth certificate.

**OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION REGARDING DEFENDANTS' ENFORCEMENT PLAN [DKT. 66] – 3**

certificate by allowing a contemporaneous name change and keeping both changes confidential, as the injunction required.[5]

Plaintiffs do not argue that requiring a court order is in itself an unconstitutional requirement. Plaintiffs argue that Defendants' plan imposes requirements on applicants that are impossible to meet. But Defendants' "plan" is simply to require a court order as mandated by HB 509. Defendants do not impose any requirement as to what a party seeking a court order must prove or the basis of the court order. Plaintiffs are asking this Court to go beyond what Defendants are enjoined from doing and determine what other parties might do under HB 509. That is not an enforcement of the injunction. That is an expansion of the injunction.

Plaintiffs' argument that Defendants are acting in violation of this Court's order is based on several assertions that are not based in fact. Plaintiffs argue that *Defendants*' "enforcement plan violates the letter and spirit of this Court's injunction" and that somehow *Defendants* have abdicated the "substantive authority it currently exercises to approve corrections" on a birth certificate to match a person's gender identify. Dkt. 66 at 4. Plaintiffs further assert that *Defendants* rely on a third party, "the state court," to issue an order changing a person's birth certificate to match their gender identity. Dkt. 66 at 5.

Plaintiffs' argument ignores reality and illustrates why this Court should not expand its injunctive relief to prevent enforcement of HB 509. Plaintiffs' arguments presuppose that Defendants have the authority to do something other than what a statute requires them to do. They do not. Defendants' authority is bounded by the statutes duly enacted by the Idaho

---

[5] Idaho Dep't of Health & Welfare, Instructions to Change the Indicator of Sex on an Idaho Birth Certificate (Jul. 2020).
https://healthandwelfare.idaho.gov/Portals/0/Health/Vital%20Records/GenderChangePacket-07-02-2020.pdf, at 1.

**OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION REGARDING DEFENDANTS' ENFORCEMENT PLAN [DKT. 66]** – 4

Legislature. Defendants did not create an "enforcement plan." The Idaho Legislature passed HB 509. Defendants did not decide to rely "on a third party—namely, the state court." Dkt. 66 at 5. The Idaho Legislature, not the Defendants, decided to require court orders to change sex markers.

The scope of the injunction this Court issued was not unlimited. Plaintiffs cannot assert within the bounds of this motion that the legislative process violates the Court's injunction, or that the Legislature's requirement for a court order violates the Court's injunction. The injunctive relief that this Court issued bound the Defendants, not the Idaho Legislature and not Idaho courts.

The case Plaintiffs cite to support their argument is not persuasive authority. In *Institute of Cetacean Research v. Sea Shepherd Conservation Society,* 774 F.3d 935 (9th Cir. 2014), the court considered a circumstance where a defendant, after being enjoined from interfering with plaintiff's whaling operations, provided support and assistance to other entities who were engaged in the same activities. Predictably, the court declared that the defendant had violated its injunction by "giving a non-party the means to violate the injunction." *Id*. at 951.

That is not the circumstance here. Defendants did not delegate their compliance to a third party. Nor did they engage in a scheme to achieve a result prohibited by the Court's injunction. The Legislature, acting independently, passed HB 509, which directed individuals who wanted to change the sex designation on their birth certificate to obtain a court order. Whether HB 509 should be enjoined is a decision that can only be made after a justiciable case is brought challenging its constitutionality.

Finally, Plaintiffs assert that Defendants cannot identify a circumstance in which "a third party" can issue an order allowing a transgender person to change their birth certificate to match

**OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION REGARDING DEFENDANTS' ENFORCEMENT PLAN [DKT. 66]** – 5

their gender identity in light of HB 509's definition of sex. Dkt. 66 at 7. However, Defendants do not control what a third party—an Idaho court—will decide when presented with a request to change the sex marker on a birth certificate. Again, Plaintiffs are asking this Court to enjoin actions beyond the control of Defendants.

Plaintiffs are asking for the Court to do more than clarify the scope of the actions *the Defendants* can take. They are seeking to have the Court opine on the constitutionality of HB 509; have that decision bind other state actors who are not defendants to this proceeding; and then set forth a *new* injunction that covers HB 509. Plaintiffs have cited no authority that would permit the Court to do this. Their supporting memorandum cited for the legal standard to *Smagin v. Yegiazaryan*, No. 2:14-CV-09764-RGK-PLA, 2020 WL 1652347, at *1 (C.D. Cal. April 1, 2020); *Smagin* cited *Robinson v. Delicious Vinyl Records Inc.*, which said "By clarifying the scope of a previously issued preliminary injunction, a court 'add[s] certainty to an implicated party's effort to comply with the order and provide[s] fair warning as to what future conduct may be found contemptuous.'" *Robinson*, No. CV 13-4111-CAS (PLAx), 2013 WL 12119735, at *1 (C.D. Cal. Sep. 24, 2013) (quoting *N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984)). Plaintiffs, however, are not asking for explication from the Court regarding what conduct *the Defendants* can or cannot take under the law in which they litigated their case. They want a new injunction based on the new law. In short, *Smagin* does not provide or recognize authority for what Plaintiffs want the Court to do now: modify a final permanent injunction, after a change in the law,[6] and apply that injunction to the actions of others not under the control of Defendants.

---

[6] Indeed, had this case not yet been final when HB 509 was adopted, Plaintiffs' case would have been moot. *Cf Diffenderfer v. Central Baptist Church of Miami, Fla., Inc.*, 404 U.S. 412 (1972) (per curiam).

**OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION REGARDING DEFENDANTS' ENFORCEMENT PLAN [DKT. 66] – 6**

Under basic separation of powers principles, Defendants cannot direct state courts to issue an order allowing the change. If Idaho courts refuse to issue an order allowing a change, this is not attributable to any of Defendants' conduct. Further, Defendants have no discretion to ignore the Legislature's exercise of its authority to manage vital records by requiring a court order to change any of the six specified facts. And Defendants have no ability to decide whether a court will issue an order. Defendants do, however, have the ability to determine whether an application is complete, and under HB 509, an application is not complete without including a court order.

If an IDHW employee rejects an application because the required court order is missing, that is not an automatic rejection; it is a rejection on the grounds that the application is incomplete. The injunction does not require IDHW to process and grant incomplete applications that fail to comply under a constitutionally-sound process. Plaintiffs ask this Court to go beyond what the enjoined Defendants can control and expand its injunction beyond its current bounds to require either that Idaho state courts issue orders to all applicants or to invalidate the Legislature's actions in legislating a requirement for a court order as part of an application.

Plaintiffs assert that HB 509 will require an Idaho state court (a non-party) to impose requirements for obtaining a court order that will be impossible for transgender people to meet. Plaintiffs ask the Court to find that any implementation of HB 509 violates the injunction. The effect of ruling that implementation of HB 509 violates the injunction—which was issued to enforce the Equal Protection Clause—is functionally equivalent to declaring HB 509 unconstitutional. Such a declaration would not constitute merely interpreting or enforcing the injunction, it would expand it.

**OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION REGARDING DEFENDANTS' ENFORCEMENT PLAN [DKT. 66] – 7**

Plaintiffs' reliance on *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431 (9th Cir. 1996), for the proposition that this Court can "predict" whether an Idaho state court would issue an order allowing a change is misplaced. A federal court can predict the application of federal law because federal courts are the interpreters of federal statutes and regulations. However, Idaho courts have the responsibility to interpret the requirements of HB 509 and apply them to actual facts. Idaho courts must have the opportunity to apply HB 509 to an actual petition before this Court enjoins its implementation as Plaintiffs request.

This concept is analogous to the principle of exhaustion of administrative remedies. There are reasons a court does not simply "predict" how an administrative action would play out without requiring the litigant to exhaust those procedures. Exhaustion of administrative remedies protects agency authority and promotes efficiency; it allows the agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it allows for creation of a record for later judicial review. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). These same concerns are present with regard to allowing a state court the opportunity to interpret and apply HB 509 to an actual set of facts before enjoining its implementation. While an agency has authority that must be respected, state courts likewise have authority that this Court should recognize as a matter of comity and respect for federalism. In some contexts, abstention doctrines animated by these very principles call for federal courts to abstain from exercising jurisdiction over a matter. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996) ("Federal courts abstain out of deference to the paramount interests of another sovereign, and the concern is with principles of comity and federalism."). At the very least, these principles weigh in favor of requiring a plaintiff to attempt the procedure set out in HB 509 before challenging its constitutionality in federal court.

**OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION REGARDING DEFENDANTS' ENFORCEMENT PLAN [DKT. 66]** – 8

Plaintiffs ask the Court to guess that the outcome of any conceivable petition in Idaho court to change the sex on a birth certificate would be a denial—instead of allowing an Idaho court the opportunity to apply HB 509 to an actual set of real-world facts in an actual controversy brought by an actual applicant. By asking the Court to hold that a state court (a non-party) could never interpret or apply HB 509 to a petition without violating the injunction—which was issued to enforce the Equal Protection Clause—Plaintiffs are asking this Court to effectively declare HB 509 *facially* unconstitutional under the Equal Protection Clause. And they ask the Court to rule that HB 509 is facially inconsistent with the Equal Protection Clause without providing a plaintiff with standing to contest the statute, without discovery, without even a chance for full litigation.

## II.     Plaintiffs lack standing to challenge HB 509's constitutionality.

Before the Court can enjoin implementation of HB 509—and thereby declare HB 509 unconstitutional—there must be a justiciable controversy. Justiciability requires standing. However, Plaintiffs lack standing to challenge the constitutionality of HB 509. In the memorandum decision and order, the Court explained:

> Standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. A party that obtains a judgment in its favor acquires a judicially cognizable interest in ensuring compliance with that judgment. Having obtained a final judgment granting relief on their claims, plaintiffs have standing to seek its vindication.

Dkt. 58 at 6–7 (internal citations, quotation marks, and alterations omitted).

Although the Court found that Plaintiffs have standing to ask for clarification of the injunction, which was based upon now former law, what Plaintiffs are asking for goes beyond the injunction. They are effectively seeking a declaration that the provisions of HB 509 relating to the method for changing sex on a birth certificate are unconstitutional. For such relief, a

**OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION REGARDING DEFENDANTS' ENFORCEMENT PLAN [DKT. 66] – 9**

Plaintiff needs standing to challenge HB 509. And because HB 509 was not in existence at the time the Plaintiffs filed this lawsuit, they do not have standing to have its implementation enjoined through this lawsuit. Neither Plaintiff has attempted to change the sex marker on their birth certificate under HB 509, and neither has been injured by HB 509. As explained below, one Plaintiff has already successfully changed their sex on their birth certificate, and the other has chosen not to apply for a change for years, even after that Plaintiff obtained an injunction allowing that change. That second Plaintiff's injury is traceable to their own conduct, not to HB 509. Neither Plaintiff has standing to challenge the constitutionality of HB 509.

### III.     The question of HB 509's constitutionality is not ripe.

Justiciability also requires ripeness, which Plaintiffs cannot satisfy either, because they cannot show that they will apply for and be denied a benefit as a result of HB 509. As this Court explained:

> Ripeness is a question of timing, designed to prevent courts from entangling themselves in abstract disagreements by avoiding premature adjudication of matters not yet ready for judicial intervention. The Court's role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate **live cases or controversies** consistent with the powers granted the judiciary in Article III of the Constitution. A court ordinarily ought not resolve issues involving contingent future events that **may not occur as anticipated, or indeed may not occur at all**. Instead, a dispute is sufficiently mature for judicial intervention where the party's injury is **real and concrete rather than speculative and hypothetical**.

Dkt. 58 at 7–8 (emphasis added) (internal citations, quotation marks, and alterations omitted).

Further, the Ninth Circuit Court of Appeals adopted the following rule with regard to ripeness:

> If it is "inevitable" that the challenged rule will "operat[e]" to the plaintiff's disadvantage—if the court can make **a firm prediction that the plaintiff will apply for the benefit**, and that the agency will deny the application by virtue of the rule—then there may be a justiciable controversy that the court may find prudent to resolve.

**OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION REGARDING DEFENDANTS' ENFORCEMENT PLAN [DKT. 66] – 10**

*Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1436 (9th Cir. 1996) (emphasis added) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 69 (1993)).

One Plaintiff in this case cannot be deprived a change to the birth certificate under HB 509 because that Plaintiff already took advantage of the Court's injunction and received the requested change. The other Plaintiff was likewise awarded the injunction two years ago, and could have changed their birth certificate, but elected not to. In fact, in the period of time before HB 509 came into effect, this second Plaintiff, rather than filing two motions to clarify the injunction, could have simply submitted an application, and no court order would have been required. By choosing not to file an application under the injunction before HB 509 was passed, and then by choosing not to file an application in the time between HB 509's passage and its effective date, this second Plaintiff has created their own injury. Those actions preclude any actual, concrete, live controversy.

Further, in light of the failure to take advantage of an injunction they obtained, this second Plaintiff cannot show that the Court can firmly predict that they will apply for the benefit, and cannot show that harm under HB 509 will occur in the future. This is not a circumstance where "the court can make a firm prediction that the plaintiff will apply for the benefit, and that the agency will deny the application by virtue of the rule." *Freedom to Travel Campaign*, 82 F.3d at 1436. Therefore, the question of HB 509's constitutionality is not ripe.

## IV.     HB 509 is afforded a presumption of constitutionality.

Defendants incorporate the argument in their opposition to the first motion to clarify: that HB 509 is entitled to a presumption of constitutionality that precludes the Court from enjoining it until it is judicially invalidated through an appropriate challenge. Dkt. 53 at 12–14.

**OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION REGARDING DEFENDANTS' ENFORCEMENT PLAN [DKT. 66] – 11**

## CONCLUSION

The Court should deny this second motion to clarify the injunction. The "clarification" Plaintiffs seek is actually an expansion of the injunction, to reach not only the Defendants' actions, but also those of Idaho state courts and the Idaho Legislature, over which the Defendants have no authority. This attempt to expand the injunction to enjoin all implementation of HB 509 is, for all practical purposes, an attempt to have the Court declare HB 509 facially unconstitutional. However, neither Plaintiff has standing to challenge HB 509, and the issue of HB 509's constitutionality is not ripe. The Court should defer deciding whether to enjoin implementation of a state statute that is presumptively constitutional until a justiciable case is brought before it.

DATED this 2nd day of July, 2020.

                                        STATE OF IDAHO
                                        OFFICE OF THE ATTORNEY GENERAL

                            By:  /s/  *Steven L. Olsen*
                                        STEVEN L. OLSEN
                                        Deputy Attorney General

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of July, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following Persons:

Kara N. Ingelhart
kingelhart@lambdalegal.org
Peter C. Renn
Prenn@lambdalegal.org
Nora Huppert
nhuppert@lambdalegal.org
Dara N. Ingelhart
kingelhart@lambdalegal.com
Monica G. Cockerille
monicacockerille@me.com
Colleen R. Smith
csmith@cov.com
D. Jean Veta
jveta@cov.com
Henry Liu
hliu@cov.com
Isaac C Belfer
ibelfer@cov.com
Michael J. Lanossa
mlanosa@cov.com
William Isasi
wisasi@cov.com

By:  /s/   Steven L. Olsen
      STEVEN L. OLSEN