Monica G. Cockerille (ISB No. 5532)
monica@cockerillelaw.com
Cockerille Law Office, PLLC
100 W. Main St., Ste. 204
Boise, ID 83702
Tel: (208) 343-7676 | Fax: (866) 226-2499

Peter C. Renn (Admitted *Pro Hac Vice*)
prenn@lambdalegal.org
Nora Huppert (Admitted *Pro Hac Vice*)
nhuppert@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
4221 Wilshire Blvd., Suite 280
Los Angeles, CA 90010
Tel: (213) 382-7600 | Fax: (213) 351-6050

Kara N. Ingelhart (Admitted *Pro Hac Vice*)
kingelhart@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
65 E. Wacker Pl., Suite 2000
Chicago, IL 60601
Tel: (312) 663-4413 | Fax: (312) 663-4307

D. Jean Veta (Admitted *Pro Hac Vice*))
jveta@cov.com
Henry Liu (Admitted *Pro Hac Vice*)
hliu@cov.com
William Isasi (Admitted *Pro Hac Vice*)
wisasi@cov.com
Isaac C. Belfer (Admitted *Pro Hac Vice*)
ibelfer@cov.com
Colleen R. Smith (ISB No. 10023)
csmith@cov.com
Covington & Burling LLP
One CityCenter
850 10th St NW
Washington, DC 20001
Tel: (202) 662-5294

Michael Lanosa (Admitted *Pro Hac Vice*)
mlanosa@cov.com
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel: (424) 332-4780

Attorneys for Plaintiffs F.V. and Dani Martin

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| F.V. and DANI MARTIN,<br><br>*Plaintiffs*,<br><br>v.<br><br>DAVID JEPPESEN, in his official capacity as Director of the Idaho Department of Health and Welfare; ELKE SHAW-TULLOCH, in her official capacity as Administrator of the Division of Public Health for the Idaho Department of Health and Welfare; and JAMES AYDELOTTE, in his official capacity as State Registrar and Chief of the Bureau of Vital Records and Health Statistics,<br><br>*Defendants*. | No. 1:17-cv-00170-CWD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLARIFICATION REGARDING DEFENDANTS' ENFORCEMENT PLAN [Dkt. 66]** |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

I.    Defendants' Implementation of HB 509 by Requiring a Court Order that Transgender People Cannot Legally Obtain Violates the Injunction .......................................................2

II.    Defendants Have Implemented their Stated Enforcement Plan, Which Presents a Ripe Controversy..................................................................................................................8

III.    Plaintiffs Have Standing to Ensure Compliance with the Injunction Entered in Their Favor ..........................................................................................................................10

**INTRODUCTION**

In flagrant disregard for this Court's warning that HB 509 did not relieve them of their obligation to accept and meaningfully process applications from transgender people, Defendants have now implemented their plan that prohibits transgender people from changing the sex listed on their birth certificate to match their gender identity. As of July 1, 2020, Defendants require all transgender people seeking to change the sex listed on their birth certificate to first obtain a court order that is *legally impossible* for them to obtain, through a court process that does not exist for them, and under a statute that was designed with the explicit purpose of nullifying this Court's injunction.

Unable to offer even any plausible basis under which a transgender applicant might obtain the court order they require, Defendants instead shift the blame for the policy that they have implemented onto the other two branches of Idaho's government and attack Plaintiffs' vehicle for obtaining clarification. Defendants have no duty to conform their conduct to HB 509 if that conduct has already been enjoined, and they cannot escape responsibility for it by directing transgender applicants to a court that is unambiguously powerless to grant relief. Plaintiffs do not seek to "expand" this Court's injunction—they ask only for the kind of confirmation that this Court indicated it could not yet provide in its prior clarification, because Defendants had not yet settled on their plan to implement the provisions of HB 509.

The clarification Plaintiffs seek can be granted now. Defendants brazenly argue that clarification is premature even as they begin their experimentation with disobedience by embarking on the very course of conduct at the heart of Plaintiffs' motion. This Court does not need to wait until a transgender applicant is denied before it interprets the scope of its own order. Finally, as this Court acknowledged in its prior clarification, Plaintiffs have standing not only to

seek clarification, but also to ensure IDHW's compliance with the injunction, including through contempt, if necessary.

## ARGUMENT

**I. Defendants' Implementation of HB 509 by Requiring a Court Order that Transgender People Cannot Legally Obtain Violates the Injunction.**

On July 1, 2020, Defendants implemented their plan[1] to reject as incomplete the application of any transgender person seeking to correct the sex listed on their Idaho birth certificate to match their gender identity unless they can first obtain a state court order that is legally impossible for them to obtain. This injunction-nullifying conduct[2] places Defendants squarely in violation of this Court's March 5, 2018 injunction, which this Court clarified requires that IDHW "review and consider such applications through a meaningful and constitutionally-sound approval process irrespective of any policy, rule, or statute." Dkt. 58 at 11.

Defendants deny that this policy amounts to a categorical rejection of applications by transgender people to change the sex listed on their birth certificates, and argue that this new policy "is materially different from the policy" enjoined by this Court in 2018. Dkt. 70 at 2. But this is a distinction truly without a difference: by imposing a requirement that is impossible for transgender applicants to meet—one that was created specifically to prohibit transgender people from changing the sex listed on their birth certificate to match their gender identity—Defendants have reinstated the defining feature of the ban. This requirement falls egregiously short of the

---

[1] As Defendants describe in their opposition, IDHW has replaced its prior application, Dkt. 42-2, with one that is consistent with its stated enforcement plan. Idaho Dep't of Health & Welfare, Instructions to Change the Indicator of Sex on an Idaho Birth Certificate (Jul. 2020). https://healthandwelfare.idaho.gov/Portals/0/Health/Vital%20Records/GenderChangePacket-07-02-2020.pdf

[2] As this Court stated in its June 1, 2020 order, HB 509 was enacted "for the purpose of circumventing the Order and Judgment in this case." Dkt. 58 at 13 n.7.

2

"meaningful" and "sound" process this Court required of Defendants. Dkt. 58 at 11; *cf. One Wisconsin Inst., Inc. v. Thomsen*, 351 F. Supp. 3d 1160, 1162 (W.D. Wisc. 2019) (holding that conduct required by new law that still restricted early voting violated injunction).

Defendants do not offer any conceivable basis under which a transgender applicant might be able to obtain such a court order. Nor could they, because HB 509 expressly *limits* the power of a state court to grant such an order. The sex listed on a birth certificate "may be challenged in court *only* on the basis of fraud, duress, or material mistake of fact," and HB 509 defines "sex" as the "immutable biological and physiological characteristics, specifically the chromosomes and internal and external reproductive anatomy, genetically determined at conception and generally recognizable at birth, that define an individual as male or female." Idaho Code § 39-245A(3)-(4) (emphasis added); *see also* Dkt. 58 at 12-13. This is not the kind of case where some latent ambiguity in the statute is left unresolved. HB 509 contains no ambiguity with respect to whether it permits a transgender person to obtain a correction to match their gender identity. Defendants ask this Court to decline to clarify its injunction on the notion that "only" might not actually mean "only" and that the language of HB 509 might actually mean the opposite of what it says. But "only" means "only." A "federal court may not properly ask a state court if it would care . . . to rewrite a statute." *City of Houston v. Hill*, 482 U.S. 451, 471 (1987).

It is no defense to say that Defendants have merely imposed an additional procedural requirement and not a categorical ban. That is pure sophistry. Imposing a requirement that is, by design, impossible for some people to satisfy is no different than categorically rejecting applications by those people. Courts in other contexts have had no difficulty saying so. When Arizona reconfigured its state employee health benefits program to require that a "dependent" be a "spouse"—a term that the Arizona Constitution limited to "a union of one man and one

3

woman"—the Ninth Circuit did not hesitate to find that "same-sex couples in Arizona [were] prevented by operation of law" from becoming eligible for family health benefits. *Diaz v. Brewer*, 656 F.3d 1008, 1014 (9th Cir. 2011); Ariz. Const. art. 30, § 1.

Unable to offer any explanation for how the court order requirement might conceivably result in a transgender applicant successfully changing the sex listed on their birth certificate to match their gender identity, Defendants instead argue that they cannot be held responsible for the decision to direct transgender applicants to a third party over which they have no control. Defendants also argue that Plaintiffs' request for clarification is an "expansion of the injunction" to bind the Idaho courts. Dkt. 70 at 4. But both of these arguments fundamentally misunderstand the nature of Plaintiffs' request. Plaintiffs seek only confirmation that Defendants' adoption of a requirement that transgender applicants can never satisfy violates this Court's injunction because it operates as a categorical ban, not a determination of the constitutional validity of HB 509. Dkt. 66-1 at 6-7. Defendants cannot avoid responsibility for the adoption of this requirement simply because they "have no ability to decide whether a court will issue an order," because, as Defendants acknowledge, they "do, however, have the ability to determine whether an application is complete." Dkt. 70 at 7. By denying as incomplete the application of any transgender person unless they can first prove, as this Court put it, what "cannot be proven . . . given the statute's definition of 'sex,'" Defendants have violated the injunction. Dkt. 58 at 12-13. Additionally, "a party who acts knowing that his conduct is highly likely to cause a violation of an injunction may not avoid liability simply because another person outside his immediate control actually carried out the violation." *Inst. of Cetacean Res. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 951 (9th Cir. 2014).

4

Nor can Defendants claim that they simply have no choice but to follow the Idaho legislature's command to institute this requirement. *See* Dkt. 58 at 12. Under the Supremacy Clause, a state agency subject to a federal injunction has no duty to—and cannot lawfully—conform its conduct to a state statute if that conduct would result in a violation of the injunction. *See Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1402 (9th Cir. 1997) (holding Supremacy Clause precluded state agency's application of state law to avoid its obligations under a federal remedial order); *Stone v. City & Cty. of San Francisco*, 968 F.2d 850, 862 (9th Cir. 1992) ("otherwise valid state laws . . . cannot stand in the way of a federal court's remedial scheme if the action is essential to enforce the scheme."); *N.C. State Bd. of Ed. v. Swann*, 402 U.S. 43, 45 (1971) ("state policy must give way when it operates to hinder vindication of federal constitutional guarantees.").

There is no question that this Court can clarify its 2018 injunction now that Defendants have implemented their enforcement plan. It does not need to wait until a transgender applicant is inevitably denied a court order under a process governed by a state law that flatly prohibits them from receiving such an order. Defendants argue that a federal court cannot predict how Idaho courts will interpret HB 509, but there is nothing to interpret: HB 509 *precludes* Idaho courts from entertaining any challenge to the sex listed on a birth certificate by transgender applicants by limiting challenges to three grounds which "cannot be proven by a transgender individual." Dkt. 58 at 12.[3] Defendants have not offered any reason to believe otherwise, and this Court is not required to "ignore the practical reality of these statutory mandates" nor "accept

---

[3] Given the statute's definition of "sex," HB 509 effectively provides that Idaho courts are *required* to deny transgender individuals seeking to change their birth certificate to match their gender identity. It is patently unreasonable for Defendants to argue that they are not violating the injunction because they are not responsible for the subsequent decisions of Idaho courts denying changes to birth certificates.

5

what is obviously untrue." *Buono v. Kempthorne*, 527 F.3d 758, 777 (9th Cir. 2008), *rev'd on other grounds sub nom., Salazar v. Buono*, 559 U.S. 700 (2010) (quoting *Santa Fe Indep. Sch. Dist. v. Doe,* 530 U.S. 290, 315 (2000)). "Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974).

Defendants' analogy to administrative exhaustion ignores this Court's holding that transgender individuals are not required to "wait until they have been denied amendments to their birth certificates before" challenging "IDHW's implementation of HB 509." Dkt. 58 at 14. As Plaintiffs have emphasized, the Ninth Circuit "does not require Damocles's sword to fall before we recognize the realistic danger of sustaining a direct injury." *Chang v. United States,* 327 F.3d 911, 921 (9th Cir. 2003) (quotes omitted). Defendants point to the policy rationale underlying the doctrine of exhaustion, but those policy interests are not remotely implicated here, where the plain language of HB 509 deprives a state court of the power to grant an order to a transgender person seeking to amend the sex listed on their birth certificate for the purpose of matching their gender identity. *See McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187*, 373 U.S. 668, 675 (1963) (finding exhaustion futile where a state agency lacks power under state law to grant relief); *see also Desert Outdoor Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996) (appellant could challenge a city's permit requirement without applying for a permit where the ordinance at issue "flatly prohibited appellants' off-site signs"). Nor does the relief Plaintiffs seek here—mere clarification of the injunction—impinge on the authority of Idaho courts to "apply HB 509 to an actual set of real-world facts." Dkt. 70 at 9. The *relevant*

question—whether enforcement of a new statute violates this Court's injunction—is legal, as it calls for interpretation of the scope of this Court's own order. *See Buono*, 527 F.3d at 776.

Furthermore, if a "statute is not obviously susceptible of a limiting construction, then even if the statute has 'never [been] interpreted by a state tribunal . . . it is the duty of the federal court to exercise its properly invoked jurisdiction.'" *City of Houston*, 482 U.S. at 468 (quoting *Harman v. Forssenius*, 380 U.S. 528, 535 (1965)) (holding that abstention was improper). "Where there is no ambiguity in the state statute, the federal court should not abstain." *Wisconsin v. Constantineau*, 400 U.S. 433, 439 (1971). Defendants have pointed to no "provision in the legislation which leaves reasonable room for a construction by the [state] courts which might avoid in whole or in part the necessity" for clarification, and "it is doubtful that even a remarkable job of plastic surgery upon the face of the" statute could reconcile it with the injunction. *Harman*, 380 U.S. at 536 (quotes omitted); *City of Houston*, 482 U.S. at 468-9 (quotes omitted). Federal courts routinely analyze state law in determining whether it violates federal law. For example, this Court interpreted a state constitutional amendment and held that it "effectively precludes a state court from finding that Idaho law requires the State to recognize any type of same-sex union." *Latta v. Otter*, 19 F. Supp. 3d 1054, 1062 (D. Idaho).

Plaintiffs have not asked for a declaration that HB 509 is "facially unconstitutional," as Defendants claim. Dkt. 70 at 9. Plaintiffs have *already obtained* an injunction in their favor, from which no appeal was taken, that "prohibits IDHW from categorically denying applications from transgender people to change the sex listed on their birth certificate." Dkt. 58 at 11. That necessarily includes conduct that would nullify the objective of the injunction. *Id.* at 10-12. Plaintiffs ask only for confirmation that IDHW's decision to deny such applications as incomplete if they are not accompanied by a document that transgender people cannot obtain

falls short of this Court's command. The existence of HB 509 "does not absolve IDHW from accepting, considering, and processing applications from individuals . . . seeking to change the sex listed on their birth certificate to match their gender identity." Dkt. 58 at 12. Nor does the existence of HB 509 provide Defendants a fresh opportunity to litigate the constitutionality of conduct that has already been permanently enjoined. Otherwise, a state legislature could simply suspend a federal court's injunction by continuously imposing new insurmountable barriers with each new legislative session. If IDHW believes that HB 509 introduces a significant change in the factual landscape, it must attempt to show that those facts justify dissolution of the injunction in a properly filed motion to dissolve. IDHW is not free to ignore this Court's injunction.

## II. Defendants Have Implemented their Stated Enforcement Plan, Which Presents a Ripe Controversy.

On July 1, 2020, Defendants implemented their stated enforcement plan to deny as incomplete any application not accompanied by a court order that transgender people cannot legally obtain. Whatever tenuous arguments Defendants may have offered that this plan did not present a ripe controversy before July 1 are now foreclosed by their decision to engage in "experimentation with disobedience of the law." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949). By completely closing off the existing avenue for a transgender person seeking to correct their listed sex and replacing it with an application process that is legally impossible for any such applicant to complete, IDHW committed itself to the very course of conduct at the heart of Plaintiffs' motion for clarification. This presents a controversy that is ripe for review.

Defendants do not rebut three of the four ripeness grounds offered by Plaintiffs: first, that "courts should grant clarification . . . *before* a party engages in future conduct that may violate the injunction"; second, that Defendants' policy "presents more than a 'substantial risk' of harm to Plaintiffs' right to ensure IDHW's full compliance with" the injunction; and third, that the

8

issues are fit for judicial review because clarification "is quintessentially legal in nature" and that "denying judicial review would cause hardship." Dkt. 66-1 at 8-12. This is not surprising, as IDHW's decision to require a court order that is impossible for transgender applicants to obtain is now in place, meaning that what was merely a "substantial risk" and "credible threat" of harm is now an active, ongoing injury to Plaintiffs' "judicially cognizable interest in ensuring compliance with [their] judgment." *Salazar*, 559 U.S. at 712 (quotes omitted). That IDHW took this step *before* receiving clarification underlines the urgency of Plaintiffs' motion.

Instead, Defendants dispute that this Court can recognize that transgender people are denied access to corrections under the enforcement plan that they have now implemented.[4] Defendants' argument, however, wrongly focuses on whether the court could predict that one of the *Plaintiffs* in this case will apply and be denied.[5] As explained above, the proper inquiry is not whether either Plaintiff will be denied a correction, but whether Defendants' chosen implementation of HB 509 will result in "transgender people," Dkt. 58 at 11, being denied corrections such that Plaintiffs' "judicially cognizable interest" in IDHW's *full* compliance with the injunction is impaired. *Buono,* 559 U.S. at 712 (quotes omitted). That injunction protects not merely two transgender people but "others similarly situated." Dkt. 58 at 2.

Tellingly, Defendants offer no substantive reason why this Court cannot recognize the plain language of HB 509 and its consequences. This is because there is no plausible legal basis for a state court to grant a court order to a transgender person seeking to change the sex listed on

---

[4] Defendants' other "firm prediction" rule arguments are discussed *supra* at 5-8.
[5] Defendants' characterization of one Plaintiff as having "created their own injury" by "choosing not to file an application under the injunction before HB 509 was passed" is particularly ironic in light of the "ongoing attempts to roll back the IDHW Rule ever since it was adopted in 2018." Dkt. 70 at 11; Dkt. 54 at 5. Under Defendants' own theory of standing in this case, an application by that Plaintiff would have purportedly precluded her from enforcing the injunction.

their birth certificate to match their gender identity. HB 509 painstakingly defines "sex" to leave no room for doubt as to whether it might conceivably accommodate a transgender person. *See* Idaho Code § 39-245A(3). It provides no affirmative court process for correcting one's listed sex to match one's gender identity—it only *limits* court challenges to "fraud, duress, and material mistake of fact," which "cannot be proven by a transgender individual given the statute's definition of 'sex.'" Idaho Code § 39-245A(4)(d); Dkt. 58 at 12-13. To say that a court could not recognize that this process would be unavailing to a transgender individual would be to ask that court to "accept what is obviously untrue . . . [and] to turn a blind eye to the context in which this policy arose." *Santa Fe Indep. Sch. Dist.*, 530 U.S. at 315.

### III. Plaintiffs Have Standing to Ensure Compliance with the Injunction Entered in Their Favor

Plaintiffs have standing to seek clarification and vindication of the injunction they won in 2018. Defendants' arguments to the contrary are attempts to re-litigate what was already decided: that "Plaintiffs have standing to seek clarification of and ensure compliance by IDHW with the Injunction and the Judgment entered in their favor." Dkt. 58 at 7.

At this juncture, Plaintiffs seek only clarification of the 2018 injunction. But to the extent that Defendants attack Plaintiffs' standing to more broadly ensure compliance with that injunction, they are mistaken. "A party that obtains a judgment in its favor acquires a judicially cognizable interest in ensuring compliance with that judgment. Having obtained a final judgment granting relief on [their] claims, [plaintiffs have] standing to seek its vindication." *Buono*, 559 U.S. at 712 (citation omitted). The proper focus of the standing inquiry is not, as Defendants claim, whether individual Plaintiffs have been denied a correction, but whether the judgment in Plaintiffs' favor—which protects *all* transgender people with an Idaho birth certificate—has been impaired by Defendants' actions.

10

| | |
|---|---|
| DATED: July 7, 2020 | By: /s/ Nora Huppert |

| | |
|---|---|
| D. Jean Veta (Admitted *Pro Hac Vice*) | Peter C. Renn (Admitted *Pro Hac Vice*) |
| jveta@cov.com | prenn@lambdalegal.org |
| Henry Liu (Admitted *Pro Hac Vice*) | Nora Huppert (Admitted *Pro Hac Vice*) |
| hliu@cov.com | nhuppert@lambdalegal.org |
| William Isasi (Admitted *Pro Hac Vice*) | Lambda Legal Defense and Education Fund, Inc. |
| wisasi@cov.com | 4221 Wilshire Blvd., Suite 280 |
| Isaac C. Belfer (Admitted *Pro Hac Vice*) | Los Angeles, CA 90010 |
| ibelfer@cov.com | Tel: (213) 382-7600 | Fax: (213) 351-6050 |
| Colleen R. Smith (ISB No. 10023) | |
| csmith@cov.com | Kara N. Ingelhart (Admitted *Pro Hac Vice*) |
| Covington & Burling LLP | kingelhart@lambdalegal.org |
| One CityCenter | Lambda Legal Defense and Education Fund, Inc. |
| 850 10th St NW | 65 E. Wacker Pl., Suite 2000 |
| Washington, DC 20001 | Chicago, IL 60601 |
| Tel: (202) 662-5294 | Tel: (312) 663-4413 | Fax: (312) 663-4307 |
| | |
| Michael Lanosa (Admitted *Pro Hac Vice*) | Monica G. Cockerille (ISB No. 5532) |
| mlanosa@cov.com | monica@cockerillelaw.com |
| Covington & Burling LLP | Cockerille Law Office, PLLC |
| 1999 Avenue of the Stars | 100 W. Main St., Ste. 204 |
| Los Angeles, CA 90067 | Boise, ID 83702 |
| Tel: (424) 332-4780 | Tel: (208) 343-7676 | Fax: (866) 226-2499 |

Attorneys for Plaintiffs F.V. and Dani Martin

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of July, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Steven Olsen
steven.olsen@ag.idaho.gov

Dayton Reed
dayton.reed@ag.idaho.gov

/s/ Nora Huppert
Nora Huppert
Attorney for Plaintiffs