UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| F.V. and DANI MARTIN,<br><br>                  Plaintiffs,<br><br>    v.<br><br>DAVID JEPPESEN, in his official capacity as Director of the Idaho Department of Health and Welfare; ELKE SHAW-TULLOCH, in her official capacity as Administrator of the Division of Public Health for the Idaho Department of Health and Welfare; and JAMES AYDELOTTE, in his official capacity as State Registrar and Chief of the Bureau of Vital Records and Health Statistics,<br><br>                  Defendants. | Case No. 1:17-cv-00170-CWD<br><br>**MEMORANDUM DECISION AND ORDER (DKT. 66)** |

## INTRODUCTION

Before the Court is a motion filed by Plaintiffs seeking clarification of the Court's March 5, 2018 Order. (Dkt. 66.) The parties submitted briefing and the Court heard argument on the motion on July 22, 2020. (Dkt. 70, 71.) After carefully considering the submissions, arguments, and the entire record, the Court will grant the motion to clarify as explained more fully below.

## BACKGROUND

The Court's March 5, 2018 Order permanently enjoined "the IDHW Defendants and their officers, employees, and agents from practicing or enforcing the policy of automatically rejecting applications from transgender people to change the sex listed on their birth certificates." (Dkt. 39.) The Order further mandated that:

> IDHW Defendants and their officers, employees, and agents must begin accepting applications made by transgender people to change the sex listed on their birth certificates **on or before April 6, 2018**; such applications must be reviewed and considered through a constitutionally-sound approval process; upon approval, any reissued birth certificate must not include record of amendment to the listed sex; and where a concurrent application for a name change is submitted by a transgender individual, any reissued birth certificate must not include record of the name change.

(Dkt. 39) (emphasis in original). In response to the Injunction, Idaho Administrative Procedure Act (IDAPA) 16.02.08.201 was revised to require the IDHW Registrar to issue an amended birth certificate upon submission of a "declaration that the registrant's indicator of sex on the Idaho certificate of live birth does not match the registrant's gender identity." (Dkt. 42.) IDHW began implementing the revised IDAPA Rule through an application form and instructions to "change the indicator of sex on an Idaho birth certificate to reflect gender identity" on April 6, 2018. (Dkt. 42.) The parties stipulated to and the Court entered Judgment on April 20, 2018. (Dkt. 43.)

Almost two years later, in March of 2020, the Idaho Legislature passed and Governor Little signed into law, House Bill 509 (HB 509), codified at Idaho Code § 39-245A, which changed the statutory language applicable to amending a birth certificate, effective July 1, 2020. In the wake of that legislation, on April 16, 2020, Plaintiffs filed a

motion seeking clarification of the Injunction prior to HB 509 taking effect. (Dkt. 46.)

Following briefing and argument on that first motion, the Court issued an order on June 1, 2020, clarifying that the Injunction permanently enjoins IDHW from automatically rejecting applications from transgender individuals to change the sex listed on their birth certificates; and requires IDHW to institute a meaningful and constitutionally-sound process for accepting, reviewing, and considering applications from transgender individuals to amend the gender listed on their birth certificates. (Dkt. 58.)

Thereafter, IDHW revised its application form and instructions for changing the indicator of sex on an Idaho birth certificate beginning on July 1, 2020, to implement HB 509.[1] Relevant here, IDHW's revised instructions require applicants seeking to change the sex listed on their birth certificate after one year to submit a certified copy of a court order pursuant to Idaho Code § 39-245A. Notably omitted from the revised instructions is any reference to the purpose of the requested change as one "to reflect gender identity."

On June 22, 2020, Plaintiffs filed the motion presently before the Court requesting further clarification concerning whether IDHW's revisions implementing Idaho Code § 39-245A violate the Injunction. (Dkt. 66.) Plaintiffs argue the new requirement for a

---

[1] The Court takes judicial notice of the IDHW's instructions effective July 1, 2020, located at: https://healthandwelfare.idaho.gov/Portals/0/Health/Vital%20Records/GenderChangePacket-07-02-2020.pdf. *See* Fed. R. Evid. 201 (Courts may take judicial notice of matters of public record.); *United States v. Basher*, 629 F.3d 1161, 1165 n.2 (9th Cir. 2011) (Court took judicial notice of BOP public records available online.); *United States v. DJO Glob., Inc.*, 114 F.Supp.3d 993, 1008 (C.D. Cal. 2015) (Court can take judicial notice of public records and government documents available from reliable sources on the internet, such as websites run by governmental agencies.).

court order obtained pursuant to Idaho Code § 39-245A violates the Injunction, because it is impossible under the language of the statute for a transgender individual to obtain a court order to change the sex listed on their birth certificate to match to their gender identity.

On July 1, 2020, Idaho Code § 39-245A and IDHW's revised application form and instructions took effect. The Court finds as follows.

## STANDARD OF REVIEW

"A district court has discretion to clarify the scope of an injunction." *Smagin v. Yegiazryan*, No. 2:14-CV-09764-RGK-PLA, 2020 WL 1652347, at *3 (C.D. Cal. April 1, 2020). The Supreme Court has long recognized that, "when questions arise as to the interpretation or application of an injunction order, a party should seek clarification or modification from the issuing court, rather than risk disobedience and contempt." *Institute of Cetacean Research v. Sea Shepherd Conservation Soc'y*, No. C11-2043-JLR, 2017 WL 1057644, at *2 (W.D. Wash. March 17, 2017) (quoting *Regents of the Univ. of Cal. v. Atsen*, No. 15-cv-1766-BEN (BLM), 2016 WL 4681177, at *1 (S.D. Cal. Sept. 7, 2016) (citing *McComb v. Jacksonvilled Paper Co.*, 336 U.S. 187, 192 (1949); *Regal Knitwear Co. v. Nat'l Labor Relations Bd.*, 324 U.S. 9, 15 (1945))).

The court issuing an injunctive order retains jurisdiction to clarify and enforce its order. *See e.g. Institute of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 957 (9th Cir. 2014); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil

contempt.").

## DISCUSSION

On this motion, Plaintiffs ask the Court to clarify that IDHW's requirement that transgender individuals obtain a court order pursuant to Idaho Code § 39-245A to change the sex listed on their birth certificate to match their gender identity violates the Injunction. (Dkt. 66, 71.) Defendants oppose the motion, arguing Plaintiffs lack standing and there is no ripe case or controversy before the Court. (Dkt. 70.) Defendants contend the motion seeks to improperly expand the Injunction to effectively declare Idaho Code § 39-245A unconstitutional and that, regardless, IDHW has complied with the Injunction. (Dkt. 70.) The Court will first take up the jurisdictional issue of standing and ripeness and next address clarification of the Injunction.

### 1. Standing and Ripeness

"[S]tanding consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). "A party that obtains a judgment in its favor acquires a judicially cognizable interest in ensuring compliance with that judgment. Having obtained a final judgment granting relief on [their] claims, [plaintiffs have] standing to seek its vindication." *Salazar v. Buono*, 559 U.S. 700, 712 (2010).

Ripeness is a question of timing, designed to prevent courts from "entangling themselves in abstract disagreements" by avoiding premature adjudication of matters not yet ready for judicial intervention. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1122 (9th

Cir. 2009) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000)). The Court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Id*. A court ordinarily ought not resolve issues "involv[ing] 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (quoting 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3532 (1984)). Instead, a dispute is sufficiently mature for judicial intervention where the party's injury is "real and concrete rather than speculative and hypothetical." *Stormans*, 586 F.3d at 1122.

Plaintiffs' motion presents a narrow question – clarification of whether IDHW's revised application form and instructions for applications to change the indicator of sex on an Idaho birth certificate violate the Injunction. The Court finds Plaintiffs have standing to seek clarification of and ensure compliance with the Injunction entered in their favor, and that the question presented is ripe. *Salazar*, 559 U.S. at 712-13.

As with the prior motion to clarify, Plaintiffs have a protectable interest in ensuring full compliance with the Injunction which is redressable by the Court. *Id.* Plaintiffs, and similarly situated transgender individuals, face a real and certain threat of immediate harm that the Injunction entered in their favor has been, or currently is being, violated by IDHW. The alleged injury is fairly traceable to IDHW on the question presented.

Further, the dispute over whether IDHW's revised instructions violate the

Injunction is real, concrete, and sufficiently mature for adjudication. The revised application form and instructions went into effect on July 1, 2020, presenting a live controversy over the purely legal question presented that is not contingent on future events or hypothetical circumstances. *Stormans*, 586 F.3d at 1122. The Injunction is permanent and applicable irrespective of any particular policy, rule, or statute. (Dkt. 58.) As discussed below, the harm alleged is immediate and certain. It is, therefore, not necessary for Plaintiffs, or any transgender individual, to be denied a change to their Idaho birth certificate under the revised instructions before challenging whether IDHW has violated the Injunction. *Thomas*, 473 U.S. at 580-81. Indeed, withholding judicial consideration would cause hardship to Plaintiffs, and similarly situated transgender individuals, by denying their ability to ensure compliance with the Injunction entered in their favor. The question presented is ripe.

**2.      Clarifying the Injunction**

>   The Court's June 1, 2020, Order clarified that:
>
>   [T]he Injunction prohibits IDHW from categorically denying applications from transgender people to change the sex listed on their birth certificates and requires IDHW to review and consider such applications through a meaningful and constitutionally-sound approval process irrespective of any policy, rule, or statute. The Injunction is permanent and applies to IDHW's processing of applications to amend birth certificates both now and in the future.

(Dkt. 57.) The Court declined, however, to reach the question of whether IDHW's implementation of Idaho Code § 39-245A violated the Injunction, because it was not known at that time how the IDHW would apply the new statute. (Dkt. 57.) That is no longer the situation.

IDHW's revised application form and instructions implementing Idaho Code § 39-245A went into effect July 1, 2020. Under these instructions, applicants seeking to change the indicator of sex on their birth certificate are required to submit a certified copy of a court order pursuant to Idaho Code § 39-245A. That requirement violates the Injunction.

Put simply, a transgender individual cannot obtain a court order pursuant to Idaho Code § 39-245A to change the indicator of sex on their birth certificate to reflect their gender identity. Instead, Idaho Code § 39-245A(4) provides that, after one year of birth, the sex listed on an Idaho birth certificate "may be challenged in court only on the basis of fraud, duress, or material mistake of fact…." The statute defines "sex" as "the immutable biological and physiological characteristics, specifically the chromosomes and internal and external reproductive anatomy, genetically determined at conception and generally recognizable at birth, that define an individual as male or female." Idaho Code § 39-245A(3). The plain language of the statute, as quoted, forecloses any avenue for a transgender individual to successfully challenge the sex listed on their Idaho birth certificate to reflect their gender identity.[2]

The hollow examples offered by IDHW during the hearing on Plaintiffs' motion

---

[2] The Court respectfully disagrees with IDHW's speculative argument to the contrary: "perhaps a state court could reach a conclusion which would allow someone who wanted to change their sex identity to reflect their gender identity" under one of the three reasons provided in the statute. (TR at 56:06-56:33) ("perhaps a state court could look at the three reasons for changing somebody's… sex designation and conclude that there was a way that a person could change their sex designation to match their gender identity even though it wasn't their biological sex, perhaps that could happen.").

do not apply to transgender individuals and, instead, only further demonstrate that no transgender individual can obtain the requisite court order. (TR at 25:18-27:05, 57:44-1:01:45.)[3] IDHW's examples each contemplate an individual seeking to reinstate the sex listed on their birth certificate to reflect their biological sex, which Idaho Code § 39-245A allows for. The examples, however, apply to cisgender individuals who identify with their biological sex, not transgender individuals, who identify with a gender *different* from their biological sex.[4] Transgender individuals are, therefore, not encompassed in either of IDHW's examples.

Indeed, there is no scenario under which a transgender individual can obtain a court order pursuant to Idaho Code § 39-245A to have the indicator of sex on their Idaho birth certificate reflect their gender identity. That is, in fact, the very intent of Idaho Code § 39-245A - that only an individual's biological sex will be recorded on an Idaho birth certificate. *See* Idaho Code § 39-245A.[5]

IDHW's revised instructions requiring applicants to submit "a court order pursuant to Idaho Code [§] 39-245A" effectively denies transgender individuals a meaningful process for changing the sex listed on their birth certificate to reflect their gender identity. This violates the Injunction's directive prohibiting IDHW from categorically rejecting

---

[3] Citations to the audio transcript from the July 22, 2020 hearing will be cited as "TR" followed by the time on the audio recording where the particular portion of the transcript is referenced.

[4] IDHW's examples are limited to individuals who changed the indicator of sex on their birth certificate during the period of time between April 2018 and July 2020.

[5] The constitutionality of Idaho Code § 39-245A and questions related thereto are not decided here.

applications from transgender people to change the sex listed on their birth certificates and its mandate that IDHW allow such applications. (Dkt. 39.)

IDHW conceded as much during the hearing when it agreed that the intent of the Injunction is to provide a process whereby transgender individuals can change the sex listed on their Idaho birth certificate to reflect their gender identity. (TR at 51:24-52:15) (agreeing the directive of the injunction is that there needs to be a process whereby transgender individuals can apply to change the indicator of sex on an Idaho birth certificate to reflect their gender identity.). This concession belays IDHW's very argument that it has acted in compliance with the Injunction when, in fact, it has not. The Court will, therefore, grant the motion to clarify.

The fact that the statute is directly at odds with the clear intent and mandate of the Injunction places IDHW in a difficult predicament over how to comply with both the Injunction and Idaho Code § 39-245A. However, neither the constitutionality of the statute or actions of any person or agency other than the IDHW are adjudicated here. The narrow question before the Court that is decided today is whether IDHW's revised application form and instructions violate the Injunction. For the reasons stated above, the Court finds that they do.

## ORDER

THEREFORE IT IS HEREBY ORDERED that Plaintiffs' Motion to Clarify (Dkt. 66) is **GRANTED** as stated herein.

DATED: August 7, 2020

Honorable Candy W. Dale
United States Magistrate Judge