Monica G. Cockerille (ISB No. 5532)
monica@cockerillelaw.com
Cockerille Law Office, PLLC
100 W. Main St., Ste. 204
Boise, ID 83702
Tel: (208) 343-7676 | Fax: (866) 226-2499

Peter C. Renn (Admitted *Pro Hac Vice*)
prenn@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
4221 Wilshire Blvd., Suite 280
Los Angeles, CA 90010
Tel: (213) 382-7600 | Fax: (213) 351-6050

Kara N. Ingelhart (Admitted *Pro Hac Vice*)
kingelhart@lambdalegal.org
Nora Huppert[†] (Admitted *Pro Hac Vice*)
nhuppert@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
65 E. Wacker Pl., Suite 2000
Chicago, IL 60601
Tel: (312) 663-4413 | Fax: (312) 663-4307
[†]*Admitted in CA, Pending Admission in IL*

Attorneys for Plaintiffs F.V. and Dani Martin

Colleen R. Smith (ISB No. 10023)
crsmith@hawleytroxell.com
Hawley Troxell Ennis & Hawley LLP
877 Main Street - Suite 1000
Boise, ID 83701
Tel: (208) 388-4873 | Fax: (208) 954-5278

D. Jean Veta (Admitted *Pro Hac Vice*)
jveta@cov.com
Henry Liu (Admitted *Pro Hac Vice*)
hliu@cov.com
William Isasi (Admitted *Pro Hac Vice*)
wisasi@cov.com
Covington & Burling LLP
One CityCenter
850 10th St NW
Washington, DC 20001
Tel: (202) 662-5294

Michael Lanosa (Admitted *Pro Hac Vice*)
mlanosa@cov.com
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel: (424) 332-4780

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| F.V. and DANI MARTIN,<br><br>*Plaintiffs*,<br><br>v.<br><br>DAVID JEPPESEN, in his official capacity as Director of the Idaho Department of Health and Welfare; ELKE SHAW-TULLOCH, in her official capacity as Administrator of the Division of Public Health for the Idaho Department of Health and Welfare; and JAMES AYDELOTTE, in his official capacity as State Registrar and Chief of the Bureau of Vital Records and Health Statistics,<br><br>*Defendants*. | No. 1:17-cv-00170-CWD<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES** |

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................2

I.     Original Litigation (2017-18) ......................................................................2

II.    Subsequent Litigation Precipitated by HB 509 (2020-21).........................3

LEGAL STANDARD...............................................................................................5

ARGUMENT ...........................................................................................................6

I.     Plaintiffs Are the Prevailing Parties..........................................................6

II.    Plaintiffs Are Entitled to the Requested Fees. ..........................................8

       A.    Plaintiffs Seek Fees for the Number of Hours Reasonably Required Under the Extraordinary Circumstances Created by HB 509................................8

       B.    Plaintiffs' Requested Hourly Rates Are Reasonable, Particularly in Light of the Unique Needs of the Litigation Concerning HB 509............................12

            1.    Counsel Seeking Boise Rates....................................................13

            2.    Counsel Seeking Rates Outside Boise .......................................14

III.   Summary of Requested Fees and Expenses...............................................19

CONCLUSION.......................................................................................................20

CERTIFICATE OF SERVICE ..............................................................................22

**INTRODUCTION**

Amidst the onset of the pandemic last year, the State of Idaho prioritized an unprecedented attack on transgender people to strip them of their identity.  With overwhelming lawmaker support, House Bill 509 ("HB 509") banned transgender people from correcting their birth certificates to match their gender identity—in overt defiance of this Court's permanent injunction entered two years earlier prohibiting that exact practice.  This stunning turn of events conscripted Plaintiffs into a battle they did not choose.  It forced them to mobilize significant resources on an expedited timeframe and to devise and execute a multi-prong legal strategy commensurate to the extraordinary and evolving circumstances created by HB 509.  But for this successful legal work, Defendants would still enforce the law today, transgender people would remain in harm's way, and this Court's injunction would be a nullity.

Injunctions—even when issued to protect constitutional rights—are not self-executing. They depend on the vigilance of those who stand as guardians at the constitutional gates:  the judiciary, the people whose rights hang in the balance, and the lawyers who take on their cause. Congress recognized the economic necessity of attorneys' fee awards, because unless counsel are fully compensated for their work, civil rights violations would go unremedied.  Fee awards also serve an essential deterrent function by imposing real costs for violations.  That concern is paramount where majoritarian disdain for a minority group runs so high that even a federal injunction proves insufficient to stave off an attack on the rights of the minority.

As the prevailing parties, Plaintiffs seek $456,478 in attorneys' fees and expenses for the resources they reasonably expended to uphold the rule of law and prevent this Court's orders from being nullified.  These fees also appropriately reflect out-of-forum rates for a subset of Plaintiffs' counsel based outside Idaho.  Their earlier representation of Plaintiffs made their

participation uniquely necessary in subsequent litigation concerning HB 509, where the central

issue in dispute was whether Defendants' enforcement of the law fell within the scope of relief

that counsel had previously litigated and obtained.  Anything less than the requested fees would

effectively reward—and invite—actions designed to flout federal civil rights injunctions.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.      Original Litigation (2017-18)

Plaintiffs filed this action in 2017 to challenge Defendants' categorical refusal to permit

transgender people to correct the sex listed on their birth certificates to align with their gender

identity.  *F.V. v. Barron*, 286 F. Supp. 3d 1131, 1141 (D. Idaho 2018).  Because Defendants

conceded that this practice was unconstitutional under rational basis review, the ensuing

litigation focused on the remaining issues in dispute.  Specifically, the parties litigated the

appropriate judicial remedy for the constitutional violation—including the proper scope of any

injunctive and declaratory relief—and the level of constitutional scrutiny that any remedial

measure replacing the categorical bar would need to satisfy.  *See generally* Decl. of Peter Renn

¶¶ 6-27 (detailing history of litigation from inception to present).

In March 2018, this Court granted summary judgment to Plaintiffs.  It found that denying

transgender people access to identity documents in alignment with their gender identity can

expose them to a risk of harassment and even violence.  *F.V.*, 286 F. Supp. 3d at 1137.  This

Court held that discrimination against transgender people requires heightened scrutiny, and

permanently enjoined Defendants from "practicing or enforcing the policy of automatically

rejecting applications from transgender people to change the sex listed on their birth certificates."

*Id.* at 1146.  In April 2018, this Court issued a final judgment, reaffirming the terms of the

permanent injunction, and directed that the case be closed.  Dkt. 43.  Defendants did not appeal.

## II.     Subsequent Litigation Precipitated by HB 509 (2020-21)

On March 30, 2020—long after a final judgment that was never appealed—the State of

Idaho enacted House Bill 509, which sought to reinstate a categorical ban against transgender

people correcting their birth certificates to match their gender identity.  As this Court observed,

HB 509 "was drafted, at least in part, in response to and for the purpose of circumventing the

Order and Judgment in this case."  Dkt. 58 n.7.

The enactment of HB 509 forced Plaintiffs to respond quickly and efficiently, given the

complexity of the legal work that was required to prevent the injunction they had obtained from

being trampled on by Defendants' enforcement of the law, which was set to become effective

just three months later.  Upon that date, previously enjoined constitutional harms would resume.

Plaintiffs once again retained the services of Lambda Legal and Cockerille Law Office, which

had represented them in the 2017-18 litigation, and additionally retained Covington & Burling

("Covington") given the expanded scope of work created by HB 509.  Renn Decl. ¶¶ 15-17.

There was no defined path for how litigation concerning HB 509 should unfold,

particularly before Defendants began enforcement of the law, which introduced considerable

legal complexity and required preparing multiple steps in tandem.  *Id.* ¶¶ 31-37.  As a threshold

matter, Plaintiffs investigated the facts and circumstances surrounding HB 509's enactment.

That work required the collection, review, and analysis of all potentially relevant legislative

proceedings, testimony, and related materials, including more than 12,000 pages of documents

obtained through public record requests.  *Id.* ¶ 20.

Plaintiffs filed a motion for clarification on April 16, 2020, less than three weeks after the

enactment of HB 509.  *Id.* ¶ 39.  The motion sought to confirm that Defendants' enforcement of

the law would violate this Court's permanent injunction.  It also explained that Defendants

would need to file a motion to dissolve the injunction if they sought to enforce HB 509.  Fed. R. Civ. P. 60(b)(5).  After expedited briefing, in which Defendants raised a host of procedural and substantive arguments (including standing, justiciability, and ripeness), and oral argument, this Court granted clarification in part on June 1, 2020.

The Court's June 1st order rejected Defendants' cornerstone argument that the injunction could not apply to HB 509 merely because the law was enacted after the injunction was issued. Dkt. 58 at 11.  It confirmed that the injunction prohibited Defendants from maintaining a categorical ban against the corrections sought by transgender people, irrespective of any statute. But because it was unclear whether Defendants would choose to proceed with enforcement of HB 509 after having the benefit of the clarification ruling, this Court refrained from deciding whether such conduct would violate the injunction.  Nevertheless, the Court specifically cautioned that "a party should seek clarification or modification . . . rather than risk disobedience and contempt."  Dkt. 58 at 5 (quotes omitted).

Following the Court's June 1st order, and shortly before HB 509's effective date of July 1st, Defendants indicated that they nevertheless planned to enforce HB 509 when it took effect, without seeking clarification from the Court that such action was permissible under the injunction.  Renn Decl. ¶ 23.  This development forced Plaintiffs to file a further motion for clarification, this time regarding Defendants' imminent enforcement plan, only a few days before the law was set to take effect.  *Id.* ¶¶ 24, 40.  As before, Plaintiffs briefed and argued this motion on an expedited basis, responding to a host of procedural and substantive arguments raised by Defendants against a factual backdrop that continued to evolve as the law took effect.

On August 7, 2020, this Court granted Plaintiffs' motion.  Dkt. 75.  Building upon its prior clarification order, this Court confirmed that Defendant's enforcement of HB 509

"violate[d] the Injunction's directive prohibiting IDHW from categorically rejecting applications from transgender people to change the sex listed on their birth certificates and its mandate that IDHW allow such applications." *Id.* at 9-10.  As a direct result of Plaintiffs' work, Defendants ceased their enforcement of HB 509.  Renn Decl. ¶ 43.

The significant legal work required by these successive rounds of motion practice relating to clarification, however, does not represent the universe of what was required of Plaintiffs to protect the integrity of this Court's 2018 orders.  Defendants had argued that the Court could not afford relief relating to HB 509 through the existing complaint and injunction in this action, and with only the existing Plaintiffs, which forced Plaintiffs' counsel to undertake time-consuming additional work in the event those arguments were accepted.  *Id.* ¶ 34.

Furthermore, as Plaintiffs had identified from the very outset of litigation concerning HB 509, Defendants could file a motion to dissolve the injunction if they sought to enforce the law, which, in reality, was the only procedural option available to them.  *Id.* ¶ 35.  Shortly after this Court's August 7th order, Defendants confirmed to Plaintiffs that they intended to take further action in district court.  *Id.* ¶ 26.  Defendants subsequently reiterated in a joint filing that they "anticipate filing a motion relating to HB 509 in January, 2021," and Plaintiffs noted that they anticipated a need for discovery.  Dkt. 76.  Although Defendants did not ultimately file their motion, Plaintiffs' counsel did what any reasonably prudent attorney would do:  they undertook the preparation necessary to preserve their hard-fought protections from being undone.

In sum, notwithstanding the enactment of HB 509, and because of Plaintiffs' efforts, this Court's injunction protecting the rights of transgender people remains in full force and effect.

## LEGAL STANDARD

In an action brought under 42 U.S.C. § 1983, the court is authorized to award reasonable

attorneys' fees to the prevailing party.  42 U.S.C. § 1988(b).  Where a party demonstrates

prevailing party status, a district court's discretion to deny attorney's fees is "very narrow[]."

*Abu-Sahyun v. Palo Alto Unified Sch. Dist.*, 843 F.2d 1250, 1252 (9th Cir. 1988) (quotes

omitted).  A prevailing party is entitled to reasonable attorneys' fees unless special circumstances

would render such an award unjust.  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  The reason

is because "[i]f successful plaintiffs were routinely forced to bear their own attorneys' fees, few

aggrieved parties would be in a position to advance the public interest."  *Jankey v. Poop Deck*,

537 F.3d 1122, 1131 (9th Cir. 2008) (quotes omitted).

In calculating the fee award, courts begin by determining the "lodestar" amount, which is

"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly

rate."  *Hensley*, 461 U.S. at 433.  The relevant legal community from which hourly rates are

drawn may vary depending on the case.  Rates outside the forum may be used where the

experience, expertise, or specialization needed to handle the litigation "properly" under the

circumstances is not available within the forum.  *Parsons v. Ryan*, 949 F.3d 443, 466 (9th Cir.

2020) (quotes omitted).  The lodestar amount is presumed to reflect a reasonable fee, although

courts may also make enhancements or other adjustments based on factors not already subsumed

within the calculation.  *Fischer v. SJB-P.D.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000).

## ARGUMENT

### I.    Plaintiffs Are the Prevailing Parties.

There is no question that Plaintiffs are the prevailing parties with respect to the litigation

precipitated by HB 509:  they successfully preserved the protections that they had obtained for

transgender people from being rendered a nullity by Defendants' enforcement of the statute.

For purposes of fees, a prevailing party is one who achieves some material alteration of

the legal relationship between the parties that is judicially sanctioned. *Carbonell v. I.N.S.*, 429 F.3d 894, 898 (9th Cir. 2005). A permanent injunction, for example, "qualifies as an enforceable judgment on the merits of the case that materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiffs." *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929, 944 (C.D. Cal. 2010) (quotes omitted).

Plaintiffs' status as prevailing parties here extends to their work in protecting the full scope of the permanent injunction and obtaining relief to stop Defendants' enforcement of HB 509 in violation of that injunction. The Ninth Circuit has held that fees can be awarded for post-judgment work so long as it is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *San Francisco NAACP. v. San Francisco Unified Sch. Dist.*, 284 F.3d 1163, 1168 (9th Cir. 2002) (quotes omitted); *see also Keith v. Volpe*, 833 F.2d 850, 856 (9th Cir. 1987) (upholding a fee award for a wide variety of post-judgment monitoring and implementation work, including a motion to enjoin state court proceedings that threatened to delay enforcement of the decree). That is precisely the work that Plaintiffs performed here.

A party who fights off an attempt to nullify, disregard, or narrow an injunction entered in its favor is a prevailing party. *See Orantes-Hernandez*, 713 F. Supp. 2d at 943; *see also Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986) (holding that work to enforce a remedy was intertwined with work to obtain the remedy). After all, it is "only because plaintiffs successfully defended the injunction that the government is now forced to do something directly benefitting the plaintiffs," which it would not otherwise have done. *Orantes-Hernandez*, 713 F. Supp. 2d at 943 (quotes omitted). Indeed, a plaintiff's work to secure the fruits of their labor can be compensable even where the work "never ripened into courtroom activity." *Keith*, 844 F.2d at 857 (quotes and alterations omitted).

7

Here, Defendants sought to disregard the permanent injunction by simply proceeding as though enforcement of HB 509 was outside its reach.  Had Plaintiffs not obtained judicial relief as to HB 509, there is no doubt that, to this day, Defendants would still bar transgender people from correcting their birth certificates to match their gender identity.  In that event, the relief that Plaintiffs obtained in 2018 would have been rendered largely meaningless after July 1, 2020.  Because of Plaintiffs' work, however, this Court's protections remain fully intact.

## II.   Plaintiffs Are Entitled to the Requested Fees.

### A.   Plaintiffs Seek Fees for the Number of Hours Reasonably Required Under the Extraordinary Circumstances Created by HB 509.

Where "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.  Here, that includes at least 1,017.5 attorney hours and 45.4 paralegal hours, which in actuality reflects an undercount of the time reasonably expended.

The resources expended by Plaintiffs' counsel were a direct and proportionate response to the significant and time-sensitive threat posed by HB 509 to the permanent injunction, Defendants' decision to enforce the statute, and the arguments advanced in defense of that enforcement.  These considerations left Plaintiffs' counsel with no choice but to formulate and execute an all-fronts legal strategy demanded by the circumstances.  *See generally* Renn Decl. ¶¶ 30-44.  "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008).

Plaintiffs' work spanned interrelated and overlapping categories, including the following:

***Fact Investigation of HB 509.***  First, as noted above, Plaintiffs appropriately devoted time towards investigating and reviewing all potentially relevant facts and documents related to

HB 509, including a detailed analysis of its legislative history and purported justifications.  This work continued in parallel even after Plaintiffs filed their initial motion regarding HB 509.  Plaintiffs' counsel also appropriately spent time identifying and communicating with additional individuals who stood to be harmed by the law's enforcement.  Renn Decl. ¶ 34.

Time spent monitoring compliance with the injunction is compensable, along with a wide variety of other legal work geared towards enforcement and implementation of a remedy.  As the Ninth Circuit has explained, court-ordered relief may "occur more speedily and reliably if [plaintiffs] engaged in these monitoring activities, and this post-judgment monitoring by [plaintiffs] was, therefore, a necessary aspect of plaintiffs' 'prevailing' in the case."  *Keith*, 833 F.2d at 857 (quotes omitted); *see also Pennsylvania*, 478 U.S. at 559.  Such activities may also include "informal discovery," *Keith*, 833 F.2d at 856, and communicating with individuals affected by potential violations of court-ordered relief, *Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 453 (9th Cir. 2010).  Given that HB 509 was enacted for "the purpose of circumventing the Order and Judgment in this case," Dkt. 58 at 13, the time spent by Plaintiffs investigating the law and its effects is plainly compensable.

***Initial Motion for Clarification.***  Second, Plaintiffs marshaled significant resources in order to fully brief, argue, and obtain a ruling on their initial motion for clarification on a compressed timeframe in light of HB 509's looming effective date.  That work required intensive legal analysis to determine the appropriate vehicle for seeking relief related to HB 509 in a post-judgment but pre-enforcement posture, which in turn required Plaintiffs to navigate complex legal considerations of standing, justiciability, and ripeness.  The significance of this motion cannot be overstated:  acceptance of Defendants' position—that any law enacted after the injunction was necessarily outside its reach—would have defeated the relief that Plaintiffs sought

regarding HB 509.  Plaintiffs' counsel approached this work with the care that it deserved.

Plaintiffs' work on the motion is fully compensable.  For example, courts have awarded fees for legal work to sort out "differing interpretations" of what was required under a decree, as well as motion practice to enjoin actions that threatened to delay relief.  *Keith*, 833 F.2d at 856. Indeed, the Ninth Circuit has held that fees can be awarded for defensive work in circumstances much more attenuated than those here to the original relief ordered.  *See San Francisco NAACP*, 284 F.3d at 1167 (holding that plaintiffs could recover fees "for defending a decree from collateral attack by third parties" in separate suit).

**Subsequent Motion for Clarification.**  Third, because Defendants ultimately decided to march forward with enforcement of HB 509—notwithstanding this Court's caution, Dkt. 58 at 5, that parties should seek clarification rather than risk disobedience and contempt—Plaintiffs were forced to move quickly to file a further motion regarding their enforcement plans.  As before, this was a complex endeavor.  Particularly given that this subsequent motion clenched the relief sought by Plaintiffs relating to HB 509, and successfully halted Defendants' enforcement of the law, the careful work required of Plaintiffs' counsel to attain this result is similarly compensable. *See Orantes-Hernandez*, 713 F. Supp. 2d at 945 ("had plaintiffs not prevailed . . . the government would have ceased to provide the substantial protections of the injunction").

**Protection of Injunction.**  Fourth, Plaintiffs also undertook a range of other work to protect the injunction—and thus "to secure the final result obtained from the litigation"—that was reasonably required under the circumstances.  *San Francisco NAACP*, 284 F.3d at 1168 (quotes omitted).  This work often served multiple purposes, including those described above, but it was also independently justified to defend against the injunction being dissolved or modified.  This was not a hypothetical threat.  For one, that was the only procedural option

available to Defendants from the outset.  Renn Decl. ¶ 35.  Moreover, Defendants subsequently confirmed to Plaintiffs, and then to the Court, that they intended to file a further motion relating to HB 509.  *Id.*  In proportionate response to the threat posed, Plaintiffs spent time to prepare legal and factual support in defense of the injunction, taking into account the various government justifications invoked by HB 509.  *Id.* ¶ 36 (explaining the necessity and time-sensitive nature of such work, which included readying discovery and identifying fact and expert testimony).

The fact that legal work "never ripened into courtroom activity" does not mean that it is not compensable.  *Keith*, 844 F.2d at 857 (quotes and alterations omitted).  Courts have awarded fees in a variety of different contexts for work that did not culminate in a final filing where "a reasonable attorney with [their] client's interests in mind would have" worked on the task. *Roberts v. City of Honolulu*, 938 F.3d 1020, 1026 (9th Cir. 2019) (vacating a denial of fees for work on unfiled motions and instructing district court on remand to consider whether work on unfiled motions was reasonable); *see also United States v. Haw. Student Suites, Inc.*, No. 19-CV-00528, 2021 WL 3134925, at *10 (D. Haw. May 28, 2021), *report and recommendation adopted*, 2021 WL 3131672 (D. Haw. July 23, 2021) (finding hours expended on unfiled motion reasonable).  This rationale is particularly compelling where, as here, one party "flip-flops" about a promised future filing of substantial importance, inducing the other side to reasonably spend attorney time preparing to oppose it.  *See, e.g.*, *Marcus v. ABC Signature Studios, Inc.*, No. 17-CV-00148, 2017 WL 5592470, at *6 (C.D. Cal. Nov. 20, 2017).

**Motion for Attorneys' Fees.**  Finally, Plaintiffs are also entitled to compensation for the time expended in seeking attorneys' fees, because the value of a fee award would otherwise be diluted, undermining the original objective of shifting fees.  *Easley v. Collection Serv. of Nev.*, 910 F.3d 1286, 1291-92 (9th Cir. 2018).  That is particularly true here, where even the issue of

attorneys' fees is not garden-variety but, rather, requires the parties to grapple with the unusual circumstances created by Defendants' post-judgment defiance of a permanent injunction.

In sum, as compensation for their prudent and proportionate response to Defendants' conduct and litigation position, Plaintiffs ultimately request fees for 1,017.5 attorney hours and 45.4 paralegal hours.  As reflected in the task-based time entries that Plaintiffs have submitted, these hours are justified for each of the identified tasks.  Renn Decl., Ex. B.  To ensure the reasonableness of the hours claimed here, Plaintiffs' counsel reviewed and approved the itemized charges for each task.  *Id.* ¶ 28.  Counsel exercised billing judgment in reviewing those entries, and as appropriate, discounted or eliminated any potentially unnecessary, duplicative, and excessive time.  *Id.*  Indeed, counsel discounted or eliminated time entries for which fees could appropriately be sought.  *Id.*  Plaintiffs also eliminated all entries for three experienced attorneys, even though Plaintiffs could reasonably seek fees for their contributions.  *Id.* ¶ 29; Lloyd Decl., ¶ 25.  These discounts underscore the reasonableness of the fees sought for the remaining attorneys, who were necessary to implement legal work demanded by the moment across multiple fronts.  In light of the work cut out for them, the number of hours for which Plaintiffs seek fees is reasonable, and in reality, a conservative representation of the actual time spent responding to the uniquely challenging circumstances unleashed by HB 509.

## B.    Plaintiffs' Requested Hourly Rates Are Reasonable, Particularly in Light of the Unique Needs of the Litigation Concerning HB 509.

Calculating the lodestar amount also requires determining reasonable hourly rates.  The "prevailing market rates in the relevant community set the reasonable hourly rate for purposes of computing the lodestar amount."  *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1205 (9th Cir. 2013) (quotes omitted).  While the "relevant legal community" is often where the district court sits, rates outside the forum are warranted where special circumstances exist, including where

12

non-local counsel's experience or expertise is reasonably necessary.  *Parsons*, 949 F.3d at 466.

### 1.     Counsel Seeking Boise Rates

Plaintiffs seek Boise, Idaho market rates for all counsel except those from Lambda Legal.

The rates sought are well within the range of Boise market rates for attorneys with their

backgrounds, expertise, and years of experience, as confirmed by the declaration of a Boise

attorney not involved in the case.  Decl. of Thomas Lloyd III.

Monica Cockerille graduated from the University of Wyoming College of Law in 1996,

and brings extensive experience in litigation in the District of Idaho as well as in the legal

process of amending Idaho birth certificates.  *Id.* ¶17.  Plaintiffs' requested rate of $410 per hour

for Ms. Cockerille based on her 25 years of experience is lower than the $455 awarded in 2015

to an attorney with one year less of experience.  *Lakeview Cheese Co., LLC v. Nelson-Ricks

Creamery Co.*, No. 4:13-cv-00361, 2015 WL 769960, at *1 (D. Idaho Feb. 23, 2015); Lloyd

Decl. ¶ 15.  It is also on par with the rate that this Court awarded to an attorney with three more

years of experience in 2014.  *Latta v. Otter*, No. 1:13-cv-00482, 2014 WL 7245631, at *3 (D.

Idaho Dec. 19, 2014); Lloyd Decl. ¶ 12.

Isaac Belfer, a former Covington associate who departed the firm during this case,

graduated from Harvard Law School in 2011, bringing ten years of experience.  Lloyd Decl. ¶

21.  Plaintiffs' requested hourly rates for Mr. Belfer of $280 and $290 for 2020 and 2021 are

appreciably less than the $330 awarded to an attorney with one more year of experience this

June. *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, No. 1:17-cv-00519, 2021

WL 2444157, at *15 (D. Idaho June 15, 2021); Lloyd Decl. ¶ 15.  They are also on par with the

$285 awarded to attorneys with 12-15 years of experience last year, *Idaho Conservation League

v. Atlanta Gold Corp.*, No. 1:11-CV-161, 2020 WL 5848339, at *9 (D. Idaho Sept. 30, 2020);

Lloyd Decl. ¶ 15, as well as with the $275 awarded to an attorney with 14 years of experience for work completed as early as 2009. *Cmty. House, Inc. v. City of Boise*, No. 1:05-CV-00283, 2014 WL 1247758, at *7 (D. Idaho Mar. 25, 2014); Lloyd Decl. ¶ 13.

Michael Lanosa is an associate at Covington's Los Angeles office, and he graduated from the University of Southern California Gould School of Law in 2014, bringing seven years of experience. Lloyd Decl. ¶ 22. In addition to his complex commercial litigation practice, he also regularly represents LGBT people in pro bono matters. *Id.* Plaintiffs' requested hourly rates for Mr. Lanosa of $250 and $260 for 2020 and 2021 are on par with the rate of $250 awarded to an attorney with two fewer years of experience. *Dickinson*, 2021 WL 2444157, at *15; Lloyd Decl. ¶ 15. They are also on par with the equivalent rate awarded to attorneys with 6-7 years of experience last year. *Idaho Conservation League*, 2020 WL 5848339, at *7; Lloyd Decl. ¶ 15.

Colleen Smith is a 2015 graduate of William & Mary Law School, bringing six years of experience. She was an associate at Covington until March of 2021, at which point she became an associate at Hawley Troxell Ennis & Hawley's Boise office, and continued to work on this case. Lloyd Decl. ¶ 23. She brings deep knowledge of the District, as she clerked for Judge Nye, worked as an extern for Judge Winmill, and clerked for Ninth Circuit Judge N. Randy Smith. *Id.* Plaintiffs' requested hourly rates for Ms. Smith of $240 and $250 for 2020 and 2021 are, like Mr. Lanosa's above, on par with the $250 awarded to an attorney with one fewer year of experience in *Dickinson,* 2021 WL 2444157, at *15, and the same rate awarded to attorneys with 6-7 years of experience in *Idaho Conservation League,* 2020 WL 5848339, at *7.

### 2.    Counsel Seeking Rates Outside Boise

For work performed by Lambda Legal, Plaintiffs seek out-of-forum rates because their participation was uniquely necessary here, having previously litigated and obtained the very

2018 rulings disputed in the litigation over HB 509.

District courts possess "a great deal of discretion" in determining what hourly rates are appropriate in a given case. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). Rates outside the forum are appropriate where the experience, expertise, or specialization that is reasonably necessary to handle the litigation "properly" is unavailable within the forum. *Parsons*, 949 F.3d at 466 (quotes omitted). That includes situations where the relevant expertise needed in litigation comes from an earlier period of representation. Courts have awarded out-of-forum rates due to counsel's prior involvement in the dispute at a different stage. *See, e.g.*, *Herrman v. LifeMap Assurance Co.*, 497 F. Supp. 3d 970, 975 (D. Or. 2020) (awarding out-of-forum rate where attorney had already become "intimately familiar" with the case by virtue of prior involvement in earlier stage of dispute); *Yenidunya Invs., Ltd. v. Magnum Seeds, Inc.*, No. 2:11-1787, 2012 WL 538263, at *7 (E.D. Cal. Feb. 17, 2012) (same). Of particular relevance here, counsel may possess "unique experience" needed in post-judgment proceedings because of their involvement in earlier phases of the litigation—including critical knowledge of what "led to issuance of the permanent injunction." *Orantes-Hernandez*, 713 F. Supp. 2d at 960.

For example, where counsel's prior involvement gives them "first hand familiarity with the dispute between the parties," clients will "naturally" turn to counsel who "already had developed experience and expertise on the facts underlying this specific case." *Yenidunya Invs.*, 2012 WL 538263 at *7. Indeed, it is often impracticable to proceed without prior counsel in such contexts. *Instrumentation Lab. Co. v. Binder*, No. 11cv965, 2013 WL 12049072, at *3 (S.D. Cal. Sept. 18, 2013) (awarding out-of-forum rate for attorney based on prior involvement in handling transaction subject to litigation). These concerns are even more acute where the work at issue arises out of an earlier legal proceeding handled by the same counsel. In that

situation, a party "could not be expected to hire new counsel," and "it is appropriate to apply the prevailing rates for the community in which [existing] counsel is located." *Shany Co. v. Crain Walnut Shelling, Inc.*, No. 2:11-cv-01112, 2015 WL 351660, at *6 (E.D. Cal. Jan. 23, 2015).

If there were ever a case in which this rationale applies, it is this case. Lambda Legal represented Plaintiffs in the litigation that culminated in the 2018 injunction. Lambda Legal was intimately familiar with what was actually litigated and thus uniquely positioned to tackle the dispositive and time-sensitive issue presented by HB 509: whether enforcement of the law fell within the scope and objective of this Court's rulings. Renn Decl. ¶ 52. In addition to possessing specialized experience in litigating the constitutional rights of transgender people, which was a necessary (but not sufficient) foundation for representation here, Lambda Legal had developed "experience and expertise on the facts underlying this specific case" that was the lynchpin to success in litigation concerning HB 509. *Yenidunya Invs.*, 2012 WL 538263, at *7.

Moreover, out-of-forum rates can be especially warranted where legal work was required because of a "special need [that] was largely fomented by" the other side. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 351 (6th Cir. 2000). Here, it was Defendants' actions that thrust Plaintiffs back into a fight they did not seek out. Plaintiffs' out-of-state counsel at Lambda Legal were, in essence, called back to Idaho. Proceeding without Lambda Legal would have meant abandoning the team that obtained the injunction in the first place, at the eleventh hour, in favor of a team stacked with newcomers who would need to spend additional time getting up to speed, all while Defendants trampled on the rights of transgender people protected by the injunction.

Furthermore, when a case requires "special expertise on complex" issues, it is reasonable to "obtain[] specialized counsel to assist . . . with [those] issues." *Paolini v. Alberton's Inc.*, No. CV-02-41, 2005 WL 1459640, at *4 (D. Idaho June 21, 2005). This consideration is

compounded by the fact that "[t]he District of Idaho has a far smaller pool of attorneys from which to choose for specialized matters." *Hash v. United States*, No. 1:99-cv-00324, 2012 WL 1252624, at *6-7 (D. Idaho Apr. 13, 2012) (awarding out-of-forum rates where "the action could not have been prosecuted successfully but for the specialized expertise" that "was unavailable among Idaho attorneys"). Lambda Legal has significant and unique expertise in not only litigating constitutional discrimination claims on behalf of LGBT people but in challenging birth certificate policies that discriminate against transgender people in particular. Renn Decl. ¶ 50.

Lambda Legal is a non-profit organization focused on LGBT impact litigation, and all three of its attorneys here (Peter Renn, Kara Ingelhart, and Nora Huppert) are specialists in the field. Mr. Renn is an attorney at Lambda Legal's Los Angeles office and graduated from Harvard Law School in 2006, bringing 15 years of experience. Renn Decl. ¶ 4. He clerked for the Honorable Lawrence Karlton in the Eastern District of California, and joined Lambda Legal in 2010, where he has specialized exclusively in LGBT rights litigation. *Id.* For Mr. Renn, Plaintiffs seek hourly rates of $650 and $675 for work performed in 2020 and 2021, respectively. As confirmed by the supporting declaration of an experienced Los Angeles attorney not connected to this case, these rates are justified by, if not lower than, prevailing market rates. Decl. of Dan Stormer ¶¶ 16-18. The reasonableness of these rates is also confirmed by other fee decisions. *Id.* ¶¶ 20-22; *see, e.g.*, *McKibben v. McMahon*, No. 14-2171 JGB (SPx), 2019 WL 1109683, at *14 (C.D. Cal. Feb. 28, 2019) ("attorneys practicing civil rights litigation with 9-15 years of experience bill adjusted lodestar rates of $606-$855 per hour").

Kara Ingelhart is an attorney at Lambda Legal's Chicago office and a 2015 graduate of the University of Chicago Law School, bringing six years of experience. Renn Decl. ¶ 57. She has similarly focused on impact litigation advancing the civil rights of LGBT people, and she

was awarded a Skadden Fellowship to pursue this work.  *Id.*  She has extensive experience

litigating policies that restrict the ability of transgender people to correct their birth certificates.

*Id.*  For Ms. Ingelhart, Plaintiffs seek hourly rates of $320 and $330 for work performed in 2020

and 2021, respectively.  Plaintiffs have submitted the declaration of an experienced Chicago

attorney not connected to this case to support these rates, which are well within the range of

reasonable market rates in Chicago.  Decl. of Charlie Wysong ¶¶ 13-16.  They are also supported

by comparison to case law.  *Id.* ¶¶ 16-17; *see, e.g.*, *Lloyd v. Credit Services Int'l, Inc.*, No. 18-C-

4267, 2019 WL 5311843, at *1 (N.D. Ill. Oct. 21, 2019).

  Nora Huppert is an attorney at Lambda Legal and a 2019 graduate of Columbia Law

School, bringing two years of experience.  Renn Decl. ¶ 60.  She has also exclusively practiced

LGBT impact litigation.  Ms. Huppert worked closely with Mr. Renn and Ms. Ingelhart as a team

on time-sensitive work relating to HB 509, including during the period when lawmakers were

considering its adoption, which enabled Plaintiffs to move swiftly when it was enacted.  *Id.* ¶¶

56, 61.  She also conducted the oral argument on Plaintiffs' second clarification motion.  For Ms.

Huppert, Plaintiffs seek hourly rates of $325 and $350 for work performed in 2020 and 2021,

respectively.[1]  These are justified by prevailing market rates.  Stormer Decl. ¶¶ 18-20;

*McKibben*, 2019 WL 1109683, at *14 ("attorneys practicing civil rights litigation with 1-6 years

of experience billed adjusted lodestar rates of $336-$671 per hour").

---

[1] Ms. Huppert was based out of Lambda Legal's Los Angeles office throughout most of the
relevant time period but transferred to Lambda Legal's Chicago office on September 1, 2021,
less than a month before the filing of this motion.  Due to the timing, and to avoid any dispute
over the rates sought during the month of September, Plaintiffs are seeking the lower of the two
possible out-of-forum rates for Ms. Huppert for all work after September 1st, which represents
43.4 hours.  The lower, Chicago rate sought for Ms. Huppert after September 1, 2021 is $270,
which is justified by market rates.  Wysong Decl. ¶¶ 14-19; *see also Awalt v. Marketti*, No. 11-
C-6142, 2018 WL 2332072, at *2 (N.D. Ill. May 23, 2018).

Jamie Farnsworth is a paralegal in Lambda Legal's Los Angeles office with 14 years of legal experience. Renn Decl. ¶ 64. Plaintiffs seek $175 per hour for Ms. Farnsworth, which falls within, if not below, the prevailing market rates for a comparable paralegal in either Los Angeles or Boise. Stormer Decl. ¶ 17; Lloyd Decl. ¶ 33; *see, e.g.*, *Dickinson Frozen Foods*, 2021 WL 2444157, at *16 (finding that $190 per hour is the Boise market rate for experienced paralegals).

Finally, in the alternative to out-of-forum rates, Plaintiffs note that the fees attributable to usage of such rates would be independently justified as an enhancement based on factors not already subsumed within the lodestar amount. *Pennsylvania*, 478 U.S. at 562 n.7 (noting factors such as time limitations, nature and length of professional relationship with client, preclusion of other work, and "undesirability" of case); *Fischer*, 214 F.3d at 1119. While the lodestar amount is presumptively reasonable, and enhancements are thus rare, this was a rare case. Plaintiffs' counsel faced a Herculean task of seeking relief on an exceedingly short timeframe, which also necessarily precluded other work. Renn Decl. ¶ 47. It was their prior representation of Plaintiffs in earlier litigation that enabled them to secure relief, the profound value of which transcends monetary calculation. And counsel took on the cause in the face of extraordinary legislative backlash against transgender people. Whether the Court considers these and other factors on the front end of the fee analysis in setting rates—or, alternately, only on the back end of the fee analysis as an enhancement to the lodestar figure—the ultimate fee liability remains the same.[2]

## III.    Summary of Requested Fees and Expenses

Plaintiffs' requested fees are summarized in the chart below:

| Attorney | 2020 Rate | 2021 Rate | 2020 Hours | 2021 Hours | Amount |
|---|---|---|---|---|---|
| Monica Cockerille | $410 | $410 | 24.9 | 4.8 | $12,177 |

---

[2] Should this Court decline to award fees attributable to out-of-forum rates, whether in calculating or enhancing the lodestar figure, Plaintiffs have also provided the rates that the Lambda Legal attorneys could obtain based on the Boise market. Lloyd Decl. ¶¶ 29-32.

| | | | | |
|---|---|---|---|---|
| Isaac Belfer | $280 | $290 | 37.4 | 5 | $11,922 |
| Michael Lanosa | $250 | $260 | 51.3 | 6.5 | $14,515 |
| Colleen Smith | $240 | $250 | 69.2 | 34.4 | $25,208 |
| Peter Renn | $650 | $675 | 312 | 84.6 | $259,905 |
| Kara Ingelhart | $320 | $330 | 94.5 | 15.1 | $35,223 |
| Nora Huppert | $325 | $350 / $270[3] | 197 | 37.4 / 43.4 | $88,833 |
| **Paralegal** | **2020 Rate** | **2021 Rate** | **2020 Hours** | **2021 Hours** | **Amount** |
| Jamie Farnsworth | $175 | $175 | 37.9 | 7.5 | $7,945 |

In sum, Plaintiffs request reasonable fees in the amount of $455,728.  Plaintiffs reserve the right to update the amount requested based on the time spent after the filing of the motion, including on any reply.  Additionally, Plaintiffs seek recovery for $750 in out-of-pocket litigation expenses that would normally be charged to a fee-paying client.  *Woods v. Carey*, 722 F.3d 1177, 1180 n.1 (9th Cir. 2013); Renn Decl. ¶ 69 (pro hac vice fees).

The combined amount of both fees and expenses is $456,478.  Plaintiffs also request that the Court apply the prevailing post-judgment interest on any fee award from the date of its issuance.  *Friend v. Kolodzieczak*, 72 F.3d 1386, 1391-92 (9th Cir. 1995).

## CONCLUSION

The unique work performed by Plaintiffs' counsel was a momentous undertaking, initiated on short notice and fought on multiple fronts, to remedy willful state defiance of an injunction protecting the rights of transgender people.  Counsel acted quickly, responsibly, and proportionately to the extraordinary circumstances created by the government.  Without adequate compensation, the economic reality is that the appropriate counsel necessary to vindicate a civil rights violation may not be available when the next violation occurs, nor should that burden be shouldered by the very community whose rights are under attack.  The government knowingly flouted its obligations, and it bears full responsibility for the consequences of its actions.

---

[3] For the reasons noted above, the second figure here represents a lower, Chicago rate for hours spent on or after September 1, 2021.  The number of such hours is also segregated on this row.

DATED: September 29, 2021                    By:      /s/ Nora Huppert

Monica G. Cockerille (ISB No. 5532)                 Colleen R. Smith (ISB No. 10023)
monica@cockerillelaw.com                            crsmith@hawleytroxell.com
Cockerille Law Office, PLLC                         Hawley Troxell Ennis & Hawley LLP
100 W. Main St., Ste. 204                           877 Main Street - Suite 1000
Boise, ID 83702                                     Boise, ID 83701
Tel: (208) 343-7676 | Fax: (866) 226-2499           Tel: (208) 388-4873 | Fax: (208) 954-5278

Peter C. Renn (Admitted *Pro Hac Vice*)             D. Jean Veta (Admitted *Pro Hac Vice*)
prenn@lambdalegal.org                               jveta@cov.com
Lambda Legal Defense and Education Fund, Inc.       Henry Liu (Admitted *Pro Hac Vice*)
4221 Wilshire Blvd., Suite 280                      hliu@cov.com
Los Angeles, CA 90010                               William Isasi (Admitted *Pro Hac Vice*)
Tel: (213) 382-7600 | Fax: (213) 351-6050           wisasi@cov.com
                                                    Covington & Burling LLP
Kara N. Ingelhart (Admitted *Pro Hac Vice*)         One CityCenter
kingelhart@lambdalegal.org                          850 10th St NW
Nora Huppert[†] (Admitted *Pro Hac Vice*)           Washington, DC 20001
nhuppert@lambdalegal.org                            Tel: (202) 662-5294
Lambda Legal Defense and Education Fund, Inc.
65 E. Wacker Pl., Suite 2000                        Michael Lanosa (Admitted *Pro Hac Vice*)
Chicago, IL 60601                                   mlanosa@cov.com
Tel: (312) 663-4413 | Fax: (312) 663-4307           Covington & Burling LLP
[†]*Admitted in CA, Pending Admission in IL*        1999 Avenue of the Stars
                                                    Los Angeles, CA 90067
                                                    Tel: (424) 332-4780


*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 29th day of September, 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

    David Jeppesen
    Office of the Director
    Idaho Department of Health and Welfare
    10th Floor, Pete T. Cenarrusa Building
    450 W. State Street
    Boise, ID 83720-0036

    Elke Shaw-Tulloch
    Administrator, Division of Public Health
    Idaho Department of Health and Welfare
    4th Floor, Pete T. Cenarrusa Building
    450 W. State Street
    Boise, ID 83720-0036

    James Aydelotte
    Chief and State Registrar
    Bureau of Vital Records and Health Statistics
    1st Floor, Pete T. Cenarrusa Building
    450 West State Street
    Boise, ID 83720-0036

/s/ Nora Huppert
Nora Huppert
Attorney for Plaintiffs