LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
DAYTON P. REED, ISB #10775
Deputy Attorneys General
954 W Jefferson, 2nd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone:     (208) 334-2400
Facsimile:      (208) 854-8073
steven.olsen@ag.idaho.gov
dayton.reed@ag.idaho.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| F.V. and DANI MARTIN,<br><br>      Plaintiffs,<br><br>vs.<br><br>DAVID JEPPESEN, in his official capacity as Director of the Idaho Department of Health and Welfare and ELKE SHAW-TULLOCH, in her official capacity as Administrator of the Division of Public Health the Idaho Department of Health and Welfare, and JAMES AYDELOTTE, in his official capacity as State Registrar and Chief of the Bureau of Vital Records and Health Statistics,<br><br>      Defendants. | Case No. 1:17-cv-000170-CWD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** |

  Defendants, by and through their counsel of record, respond to Plaintiffs' Motion for Attorneys' Fees and Expenses (Dkt. 83) filed on September 29, 2021. The Court should reject Plaintiffs' request for close to a half million dollars in attorneys' fees under 42 U.S.C. § 1988 because it is excessive and unreasonable. For the reasons noted below, a reasonable fee award in

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 1

this matter would be no more than $148,000. Thus, Plaintiffs' fee request should be reduced accordingly. This response is supported by the Declaration of Steven L. Olsen ("Olsen Dec.") filed contemporaneously herewith.

## I.   INTRODUCTION

Plaintiffs seek an award of $456,478 in attorneys' fees and expenses under § 1988 as the prevailing party in these post-judgment proceedings. Plaintiffs initiated these post-judgment proceedings in April 2020 in an effort to enforce the terms of an injunctive order this Court entered in March 2018. Their fee request for close to a half million dollars is shocking for a number of reasons, primarily because the amount of fees they currently seek is six times the amount of fees they recovered in the underlying action where they obtained the initial injunction. Applying the guidelines set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983) and its progeny governing the award of fees under § 1988, this Court should significantly reduce Plaintiffs' fee request to ensure that they do not receive a windfall and are only awarded what is reasonable in light of the circumstances of this case.[1]

As a threshold matter, an award of close to half a million in legal fees for post-judgment work that occurred over a less than five-month period of time is excessive on its face. But even considering the specifics of this case, such a large fee request is not justified. In the underlying litigation, Plaintiffs obtained a ruling from this Court that the prior policy under which the Idaho Department of Health and Welfare (IDHW) processed applications to change information on one's birth certificate was unconstitutional where it violated the constitutional rights of transgender people, such as Plaintiffs, protected under the U.S. Constitution's Equal Protection Clause. In so

---

[1] For purposes of Plaintiffs' pending fee petition, Defendants do not dispute that Plaintiffs are the prevailing party here, as that term is defined under applicable law. But the extent to which they prevailed is limited as explained below.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 2

ruling, the Court addressed several constitutional issues of first impression, including determining what level of constitutional scrutiny should apply to IDHW's policy moving forward and what type of injunctive relief was appropriate to prevent any further harm to Plaintiffs. After determining the applicable level of constitutional scrutiny, the Court entered an injunction prohibiting enforcement of IDHW's then-current policy. (3/5/18 Mem. Dec. & Order, Dkt. 39).

Two years after issuance of the Court's March 2018 injunction, the Idaho Legislature passed House Bill 509, which set out a new application process for obtaining changes to one's birth certificate. However, before HB 509 even became law, Plaintiffs immediately filed a motion to clarify, requesting, in expedited fashion, a prompt order declaring that HB 509 violates the March 2018 injunction. The Court refused to provide such a declaration, ruling that it was premature to reach such conclusion where it was unclear at that time what steps, if any, the IDHW would take to enforce HB 509 if and when it did become law. (6/1/20 Mem. Dec. & Order, Dkt. 58).

After the IDHW made it clear that it intended to enforce HB 509 as written once enacted, and that, in doing so, it would only honor requests to change one's birth certificate if the request was accompanied by a court order that contained certain express findings regarding any change, Plaintiffs again returned to this Court to file a second expedited motion to clarify. In their second motion, Plaintiffs sought a declaration that the IDHW's stated enforcement plan for HB 509 violates the injunction. Unlike their first attempt, Plaintiffs succeeded on their second motion. The Court granted the second motion and held that the IDHW's stated enforcement plan for HB 509 must be abandoned where it constituted a direct violation of the injunction. (8/7/20 Memo. Dec. & Order, Dkt. 75).

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 3

Admittedly, Plaintiffs are the prevailing party here, as that term is contemplated under § 1988, where they ultimately received the relief they sought concerning HB 509. But being the ultimate victor does not mean that Plaintiffs are automatically entitled to recover all of the fees and expenses requested in their fee petition. The law only permits an award of reasonable fees and expenses, and this Court has the discretion to decide what is reasonable based on the circumstances of this case. As explained below, Plaintiffs' fee request for their post-judgment work is excessive and must be reduced. The reduced award should reflect a reasonable hourly rate for Plaintiffs' counsels' post-judgment work based on Boise's prevailing market rates and should not include any of counsels' out-of-state hourly rates. The reduced award should also not include any hours counsel spent on work that was unnecessary or redundant, including Plaintiffs' first motion for clarification, which was prematurely filed and did not contribute to their ultimate victory in this matter.

## II. LEGAL STANDARD

Under 42 U.S.C. § 1988, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." *Id.* § 1988(b). Courts use the lodestar method to determine a reasonable fee. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Under the lodestar method, "a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* "A 'strong presumption' exists that the lodestar figure represents a 'reasonable' fee, and upward adjustments of the lodestar are proper only in 'rare' and 'exceptional' cases . . . ." *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) and *Blum v. Stenson,* 465 U.S. 886, 898-901 (1984)).

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 4

"In setting a reasonable attorney's fee, the district court should make specific findings as to the rate and hours it has determined to be reasonable." *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000). The fee applicant bears the burden of establishing that the hours it claims are reasonable; and it must submit adequate documentation of those hours and provide documentation that, where appropriate, "enable[s] a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437.

Courts should exclude from their lodestar calculations "hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434. *See also Idaho Conserv. League v. Magar,* 2015 WL 5469603, *3 (D. Idaho Sept. 17, 2015) (recognizing that "[t]he reasonableness inquiry is controlled by the overriding consideration of whether the attorney's hours were '*necessary*' under the circumstances") (emphasis added). Fee-reviewing courts "need not, and indeed should not, become green-eyeshade accountants;" rather, they "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice,* 563 U.S. 826, 838 (2011).

With respect to hourly rates, "[a] district court should calculate [the] reasonable hourly rate 'according to the prevailing market rates in the relevant community,' which typically is the community 'in which the district court sits.'" *Schwarz v. Sec'y of Health & Human Servs.,* 73 F.3d 895, 906 (9th Cir. 1995) (internal quotes and citations omitted). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum,* 465 U.S. at 895 n.11 (1984).

A district court has discretion to make a downward adjustment to the lodestar amount for the ultimate "results obtained" in the case. Indeed, the ultimate results obtained is a "crucial

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 5

[factor]," when assessing a reasonable attorney's fee, "where a plaintiff is deemed 'prevailing' even though [the plaintiff] succeeded on only some of [its] claims for relief," *Hensley*, 461 U.S. at 434, or prevailed only during certain stages of litigation, but not others. *See Cabrales v. County of Los Angeles,* 935 F.2d 1050 (9th Cir. 1991) (acknowledging that prevailing civil rights plaintiff may not recover attorney's fees for unsuccessful stage of litigation that did not contribute to plaintiff's ultimate victory).

When considering whether to make a downward adjustment based on ultimate results obtained in a case, the district court should apply a two-part analysis:

> First, [it should] ask[] whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.' If the plaintiff obtained 'excellent results,' full compensation may be appropriate, *but if only 'partial or limited success' was obtained, full compensation may be excessive.*

*Schwarz,* 73 F.3d at 901-02 (quotation omitted) (emphasis added). In a case that does not involve multiple claims, but has varying stages of litigation, some in which the plaintiff did not prevail, the proper analysis in determining whether to award fees for the unsuccessful stage of litigation is whether the unsuccessful stage can be said to have contributed to the plaintiff's ultimate victory. If it did not, fees incurred for the unsuccessful stage should be deducted from the fee award. *See Cabrales,* 935 F.2d at 1052.

When making a downward adjustment to the lodestar amount in those cases when the prevailing plaintiff has achieved only limited success, the preferred approach is to identify the specific hours spent on the unsuccessful claims, or unsuccessful stages of litigation, and eliminate those hours from the lodestar calculation. When this cannot be done for whatever reason, the district court may exercise its discretion and apply whatever mathematical calculation it believes

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 6

is appropriate under the circumstances to reduce the lodestar amount to account for the limited success achieved. *Hensley*, 461 U.S. at 436-37; *Schwarz,* 73 F.3d at 904.

Once the presumptively reasonable lodestar amount has been determined, the district court should then consider whether it is necessary to adjust this figure further based on the factors enumerated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), that are not already subsumed in the initial lodestar calculation. *Morales v. City of San Rafael,* 96 F.3d 359, 363–64 (9th Cir. 1996).[2] All in all, when considering an award of reasonable attorney's fees, the court should keep in mind that the purpose of § 1988 is "not to provide 'a form of economic relief to improve the financial lot of attorneys.'" *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552 (2010) (quoting *Delaware Valley*, 478 U.S. at 565). Fee awards should "'not produce windfalls to attorneys.'" *Id.* (quoting *Blum*, 465 U.S. at 897).

### III. ARGUMENT

**A. The Number of Hours Plaintiffs' Counsel Spent On Post-Judgment Enforcement Efforts Is Excessive and Unreasonable Under The Circumstances**

**1. Plaintiffs' claim for post-judgment fees is excessive where it is more than six times the fees they recovered for securing the initial injunction**

The Ninth Circuit Court of Appeals in *Webb v. Ada County, Idaho,* 195 F.3d 524, 526 (9th Cir. 1999), affirmed this Court's reduction of hours expended and the hourly rate sought by the prevailing civil rights plaintiff in that case when calculating the lodestar amount for an award of

---

[2] The twelve *Kerr* factors include: 1) the time and labor required; 2) the novelty and difficulty of the questions involved; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr*, 526 F.2d at 70. "Among the subsumed factors presumably taken into account in … the lodestar calculation are: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation . . .(4) the results obtained, and (5) the contingent nature of the fee agreement." *Morales,* 96 F.3d at 364 n. 9 (internal quotations and citations omitted).

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 7

attorney fees for plaintiff's post-judgment work primarily because the issues raised in the post-judgment proceedings were not as "complex or risky" as the issues raised in the initial, underlying action. The same is true in the present case. Thus, a result similar to that reached in *Webb* should be reached here.

Here, the primary issue raised in the post-judgment proceedings was the proper scope of the Court's March 2018 injunction. In determining the scope of the injunction, there was no need for the parties to brief, or for the Court to decide or clarify, any ambiguous terms in the injunction. Instead, the Court was required to address a number of other issues, including primarily the threshold questions of ripeness and standing. (6/1/20 Memo. Decision at 6-8). Ripeness and standing are bedrock legal principles, and their general application constitutes well-established law. Ultimately, Plaintiffs' post-judgment enforcement efforts (despite their argument to the contrary) were not legally complex. Indeed, their post-judgment enforcement efforts were no more complicated, and were arguably much less complicated, than the weighty constitutional issues the parties had to grapple with in the initial proceedings leading up to issuance of the injunction.

In the initial proceedings, Plaintiffs were awarded, pursuant to a stipulation of the parties, approximately $75,000 in attorney fees for litigating what level of constitutional scrutiny should apply to the IDHW's policy governing efforts made by transgender people to change the sex identification on their Idaho birth certificates. This issue was very complex and involved constitutional issues of first impression. The Court and the parties were also required to address what associated injunctive relief was appropriate. Plaintiffs presumably would not have agreed to accept an award of fees in the initial proceedings that did not fairly and reasonably compensate their counsel for the complex legal work their counsel performed to secure the Court's decision addressing the important constitutional issues involved and the injunctive relief Plaintiffs sought.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 8

Thus, presumably, a fee award of $75,000 in the initial proceedings was a reasonable fee award given the complexity of those proceedings.

For Plaintiffs to now request over six times the amount of reasonable attorneys' fees they obtained in the initial proceedings as legal fees they claim they are entitled to recover in the instant proceedings is flat-out unreasonable. This is especially so where, as explained above, the instant proceedings were far less complex and more stream-lined than the initial proceedings.[3] Consistent with the analysis and result reached in *Webb*, any fee award granted to Plaintiffs in the instant matter should be reduced to reflect the less complex and short-lived nature of these post-judgment proceedings. *See Newman v. City of Payette,* 2016 WL 1611430, *3-4 (D. Id. 4/21/16) (reducing prevailing plaintiff's fee request to reflect fact that the facts and legal issues in that case were less complex than those presented in other similar civil rights cases relied upon by plaintiff in plaintiff's fee petition).

2. **Because their first motion to clarify was unnecessary and did not contribute to the ultimate victory they obtained in these proceedings, Plaintiffs are not entitled to recover fees for prosecution of this motion**

This Court has the discretion to reduce Plaintiffs' fee award based on the limited success that Plaintiffs obtained in these proceedings. *See Hensley,* 461 U.S. at 436-37. It can reduce Plaintiffs' fee award in one of two ways. It can either exclude the hours Plaintiffs spent on their unsuccessful claim, or unsuccessful stage of litigation, from its lodestar calculation, or it can apply whatever mathematical calculation it believes is warranted under the circumstances to reduce the lodestar amount to account for Plaintiffs' limited success. *Id.*; *Schwarz,* 73 F.3d at 904. The former

---

[3] The duration of the initial proceedings in this matter was twice as long as the post-judgment proceedings. *See* Plfs' Complaint (Dkt. 1) filed April 2017 and Court's resultant injunctive order entered almost a year later in March 2018 (Dkt. 39). Compare this to the less than five-month period spent by counsel litigating the scope of the March 2018 injunction in the instant post-judgment proceedings. *See* Plfs' first motion to clarify filed April 2020 (Dkt. 46) and the Court's resulting (final) decision (Dkt. 75) clarifying the scope of the injunction entered in August 2020.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 9

method should be used if the Court concludes that Plaintiffs' unsuccessful claims are unrelated to their successful claims and if the time Plaintiffs' counsel expended on the unsuccessful claims is easy to identify or isolate. If such is not the case—in other words, if the Court concludes that Plaintiffs' unsuccessful claims are related to their successful claims, or if Plaintiffs' billing records filed in support of their fee petition fail to distinguish between work spent on successful and unsuccessful claims—this Court may use the second method. *Webb v. Sloan,* 330 F.3d 1158, 1169 (9th Cir. 2003).

Long-standing Ninth Circuit precedent exists to support reducing Plaintiffs' fee award in either of these two ways. *See, e.g., Toussaint v. McCarthy*, 826 F.2d 901 (9th Cir. 1987) (in case where prison inmates brought class action challenging certain prison conditions and segregation procedures, but only a portion of district court's injunctive relief granted was upheld on appeal, Ninth Circuit held prisoners only achieved limited success on appeal, thus entitling them to only 37.5% of total lodestar amount of fees); *Schwarz*, 73 F.3d at 903-04 (affirming lower court's reduction of lodestar amount to account for deduction of time spent on plaintiff's unsuccessful claims, noting that plaintiff's unsuccessful claims were different from her one successful claim, where the claims arose from different facts and sought distinctly different relief); *Webb v. Ada County, Idaho,* 195 F.3d 524, 526-27 (9th Cir. 1999) (affirming lower court's partial award of fees to civil rights plaintiff in post-judgment proceedings, where plaintiff only partially prevailed on post-judgment issues raised, effecting a 19 to 64% reduction in legal hours requested in plaintiff's fee petition). This Court's prior fee awards are in accord. *See, e.g., United States ex rel. Madsen v. St. Luke's Health System, Ltd.,* 2020 WL 873911, *4 (D. Id. 2/21/20) (reducing lodestar amount for prevailing plaintiff's fee award by 17% to account for time plaintiff's counsel spent litigating plaintiff's unsuccessful claims); *Newman v. City of Payette,* 2016 WL 1611430, *4 (D. Id. 4/21/16)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 10

(reducing prevailing plaintiff's fee award by 20% to account for fact that some of plaintiffs' claims were dismissed for lack of standing).

In the present matter, the relief sought in Plaintiffs' first motion to clarify—a motion they did not prevail on (their unsuccessful motion)—is different from the relief sought in their second motion to clarify, where they did prevail (their successful motion). In Plaintiffs' first motion, they effectively sought a ruling that the proposed HB 509 violated the Court's March 2018 injunction. *See* Dec. of P. Renn in Supp. of Plfs' Mot. For Fees (Dkt. #83-2) ("Renn Dec."), ¶ 21 (describing relief sought in Plaintiffs' first motion). Plaintiffs also sought a declaration that, if Defendants intended to enforce HB 509, they must first file a motion to dissolve the injunction. *Id.* The Court refused to issue either of these two rulings, ultimately concluding that the issues raised by Plaintiffs regarding HB 509 were not ripe for review. (6/1/20 Memo. Dec. at 8).[4] Surely it would be unreasonable to require Defendants to pay for a motion that the Court denied as prematurely filed.

Unlike their first motion to clarify, in Plaintiffs' second motion, they sought a ruling that the IDHW's plans for enforcing or implementing proposed HB 509 once it became law violated the injunction. The Court agreed with Plaintiffs and granted their second motion in full. In doing so, the Court expressly concluded that the issue raised in Plaintiffs' second motion, unlike those raised in their first motion, was ripe for review. (8/7/20 Memo. Dec. at 6).

Because Plaintiffs' two motions focused on a different set of facts or course of conduct (*i.e.,* HB 509 itself vs. the IDHW's specific enforcement plan for HB 509) and each sought distinctly different relief, the two motions should be deemed unrelated for purposes of this Court's lodestar calculation. Further, because the primary issue framed in Plaintiffs' first motion to clarify was an issue the Court concluded was not ripe for review at the time that motion was filed, it can

---

[4] Defendants raised the ripeness argument in their opposition to Plaintiffs' first motion to clarify, (Defs' Opp. Br. (Dkt. 70) at 10-11), and prevailed on that argument.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 11

hardly be said that Plaintiffs' first motion was a "necessary" step to Plaintiffs achieving the success they eventually obtained with their second motion. Because Plaintiffs' first unsuccessful motion was not a necessary step to achieving the success they obtained with their second motion, pursuant to the foregoing authority, this Court should exclude from its lodestar calculation any hours spent by Plaintiffs' counsel prosecuting Plaintiffs' first motion to clarify. *Compare Cabrales,* 935 F.2d at 1052-53 (concluding that prevailing plaintiff was entitled to recover fees for unsuccessfully opposing defendant's first petition for writ of certiorari only because that stage of litigation was "a necessary step" to helping plaintiff obtain the ultimate victory it achieved in that case).

A review of the billing statements submitted by Plaintiffs in support of their fee petition reveals that their counsel spent 218.2 attorney hours and 12.4 paralegal hours (for a total of 230.6 hours) prosecuting Plaintiffs' first motion to clarify. *See* **Exhibits A-1 and A-2** to Olsen Dec.[5] These hours equate to $119,011.50 in requested fees.[6] For the foregoing reasons, when engaging in its lodestar calculation, the Court should deduct from its reasonable hour calculation all of the hours spent by Plaintiffs' counsel (and paralegal) in prosecuting Plaintiffs' unsuccessful first motion to clarify. *See* **Exhibit D** to Olsen Dec. for Defendants' overall re-calculation in this regard.

### 3. Plaintiffs' post-judgment efforts did not require hiring more attorneys than those utilized to secure the injunction

In their moving papers, Plaintiffs acknowledge that several lawyers from the Covington & Burling law firm—a law firm not involved in the underlying litigation—were retained to assist with Plaintiffs' post-judgment enforcement efforts. *See* Renn Dec., ¶ 67. Although six (6) lawyers

---

[5] Exhibit A-1 to the Olsen Declaration is a copy of the billing entries Plaintiffs submitted in support of their fee petition with those entries relating to Plaintiffs' first motion to clarify highlighted in red. Exhibit A-2 is a tally of the hours spent by each attorney and related fees concerning Plaintiffs' counsel' work on the first motion to clarify.

[6] This figure was arrived at by taking the hours billed by each of Plaintiffs' counsel and their paralegal and multiplying those hours by each counsel's respective hourly rate as identified in Plaintiffs' fee petition.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 12

from the Covington law firm assisted with Plaintiffs' enforcement efforts, Plaintiffs only seek to recover fees, utilizing corresponding Boise rates, for the hours spent by three of these six lawyers: Isaac Belfer, Michael Lanosa and Colleen Smith. *Id.* at ¶¶ 67-68.

Plaintiffs' retention of the Covington lawyers to assist with preparing their two motions to clarify and with Plaintiffs' other related post-judgment efforts unnecessarily increased the attorney fees in this case.[7] Hiring additional attorneys with LGBT litigation experience to assist with Plaintiffs' post-judgment efforts was unnecessary given that the instant proceedings were not about LGBT constitutional rights, as was the case in the initial proceedings. Rather, the instant proceedings involved only enforcement of what was otherwise an unambiguously-worded injunction. Further, the retention of additional attorneys in this matter contradicts Plaintiffs' argument that they needed to use those out-of-state attorneys who represented them in the initial proceedings to assist in the post-judgment proceedings because of the familiarity those attorneys had with the underlying constitutional issues. If that were, in fact, the case, it makes little sense why the new Covington attorneys were needed to assist in the post-judgment proceedings, when those attorneys had no special familiarity with any of the underlying facts or issues. Because hiring the Covington attorneys was unnecessary and redundant, all of Plaintiffs' requested fees for the Covington attorneys should be deducted from the Court's lodestar calculation.[8]

/ / /

/ / /

---

[7] By focusing only on certain specific time entries offered in support of Plaintiffs' fee petition, Defendants are not conceding to the reasonableness of any of Plaintiffs' requested fees that are not specifically mentioned in this brief. Rather, Defendants have simply chosen to focus on the more egregious excesses contained in Plaintiffs' fee petition.

[8] According to the table on pages 19 and 20 of Plaintiffs' fee petition, the total fees associated with the time expended by the three Covington attorneys is $51,645. This amount should be deducted from any fee award made.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 13

### 4. The hours spent preparing Plaintiffs' fee petition are excessive

A review of Plaintiffs' billing statements reveals that Plaintiffs' counsel spent a total of 189.8 attorney hours and 7.5 paralegal hours—a whopping total of $86,815.50 in requested legal fees—preparing Plaintiffs' fee petition. *See* **Exhibit B-1 and B-2** to Olsen Dec.[9] These hours and associated fees are excessive and unwarranted and should be reduced.

The Ninth Circuit has routinely held that, if a prevailing party's fee request related to work on the merits of the case is reduced to account for the prevailing party's limited success on the merits, a corresponding reduction should also be made to the prevailing party's fees-on-fees request (*i.e.,* those incurred in preparing the fee petition). *See Schwarz*, 73 F.3d at 909 ("A district court does not abuse its discretion by applying the same percentage of merits fees ultimately recovered to determine the proper amount of the fees-on-fees award"). When this happens, no further explanation for the fees-on-fees reduction is needed, as long as the district court explains its reduction for the merits fee award. *Id.*

That principle should be applied here. This Court should reduce Plaintiffs' fees-on-fees request by the same percentage reduction it applies to Plaintiffs' merit-based fee request. *See Webb*, 195 F.3d at 526 n.2 (encouraging lower court to apply *Schwarz*'s merit fees versus fees-on-fees methodology on remand).

There are other, independent reasons for substantially reducing Plaintiffs' enormous fees-on-fees request. This Court in *Latta v. Otter*, 2014 WL 7245631 (D. Idaho Dec. 19, 2014), recognized that preparing a fee petition and related documents is not "complex legal work;" indeed, as this Court noted, such work "barely qualifies as legal work." *Id.* at *9. In *Latta*, which

---

[9] Exhibit B-1 to the Olsen Declaration is a copy of the billing entries Plaintiffs submitted in support of their fee petition with those entries relating to Plaintiffs' fee petition highlighted in red. Exhibit B-2 is a tally of the hours spent by each attorney and related requested fees concerning Plaintiffs' counsel' work on the fee petition.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 14

was a case involving weighty constitutional issues of first impression concerning the issue of same sex marriage, this Court held that 77.7 hours spent preparing the plaintiffs' fee petition was excessive. *Id.* The Court, therefore, reduced plaintiffs' fees-on-fees award to reflect 40 hours for work on the fee petition, which the Court deemed was reasonable given the nature of that case and related fee petition. *Id.* at *10.

Here, as previously noted, Plaintiffs' counsel spent over 197 legal hours preparing Plaintiffs' fee petition and supporting documents. Plaintiffs also intend to add to their fee request the hours they will spend preparing a reply brief in support of their fee petition. For the same reasons noted in *Latta*, this Court should conclude that over 197 legal hours spent to date prosecuting a fee petition in a case such as this one—involving just two post-judgment proceedings over a five-month period that did not involve the litigation of any complex legal issues—is excessive. As in *Latta*, Plaintiffs' fees-on-fees request should be reduced to no more than 40 total hours, and these hours should be billed at the corresponding Boise rates for each of Plaintiffs' counsel as explained below.[10] Under this method, Plaintiffs' total fees-on-fees award should be reduced to a reasonable amount of no more than $11,800. *See* **Exhibit C** to Olsen Dec. (setting forth Defendants' adjusted fees-on-fees calculation).

### B. The Hourly Rates Of Out-Of-State Counsel Are Not Warranted, Where Counsel Contributed No Special Expertise To The Post-Judgment Proceedings

#### 1. The relevant legal expertise is expertise in post-judgment enforcement of an injunctive order, which out-of-state counsel does not appear to have

Plaintiffs concede that the relevant legal community for determining the prevailing market hourly rate for counsel's time usually is where the district court sits (which here is Boise, Idaho).

---

[10] Plaintiffs cannot reasonably argue that their out-of-state counsel brought any special expertise to preparing their fee petition. Thus, time spent by out-of-state counsel preparing Plaintiffs' fee petition should be billed using forum rates, not out-of-state rates.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 15

However, they argue that a recognized exception to this rule applies, which is that rates outside the forum may be utilized in calculating the lodestar amount when special circumstances exist, such as when out-of-state counsel's expertise is reasonably necessary to litigate the unique claims or issue in the case, or, in other words, when a case requires specialized legal expertise that is not available in the forum state. Plaintiffs argue that the post-judgment motions in this case involved special circumstances justifying the need to retain out-of-state counsel who have unique and extensive experience litigating the constitutional rights of transgender people. Consequently, they argue that out-of-state counsel's home rates should be applied to the time expended in this matter by out-of-state counsel, specifically, those attorneys employed by Lambda Legal in Los Angeles and Chicago, including Peter Renn, Kara Ingelhart and Nora Huppert.

The fatal flaw in Plaintiffs' argument here is that the legal expertise relevant to the post-judgment proceedings is not expertise in litigating the constitutional rights of transgender people. Rather, the relevant legal expertise is expertise in post-judgment enforcement of an injunctive order and application of that order to potential new law. There is no evidence in the record, however, suggesting that any of the three Lambda Legal attorneys who billed time in this matter have any unique experience litigating post-judgment enforcement of an injunctive order and, in particular, litigating how such an injunction might apply to a new statute. As previously noted, unlike the underlying proceedings where the constitutional rights of transgender people were front and center, the primary issues in the instant proceedings involved application of an unambiguous injunction to new law. These issues are not unique to litigating the constitutional rights of transgender people, which is the special legal expertise out-of-state counsel claims to have here.

Where no evidence exists that the legal expertise relevant to the post-judgment enforcement proceedings was unavailable in the relevant forum (Boise, Idaho), no basis exists to

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 16

deviate from the general rule, which requires this Court to utilize forum rates (Boise rates) when calculating the lodestar amount for Plaintiffs' fee award. Simply put, Plaintiffs have not met their burden of establishing that the use of out-of-state hourly rates would be reasonable or justified in this case.[11]

### 2. The post-judgment circumstances here were so unique that no lawyer could be said to have special expertise dealing with these circumstances

Alternatively, assuming some specialized legal expertise was, in fact, reasonably required to litigate the issues raised in the instant proceedings, there is no evidence before this Court that any of the out-of-state Lambda Legal attorneys have that specialized legal expertise. Plaintiffs themselves argued in their moving papers that these post-judgment proceedings involved "extraordinary" circumstances where there simply was "no defined path" for how this post-judgment litigation should unfold. (Memo. in Supp. of Plfs' Mot. for Fees at 1, 3). Essentially, they argue that there is no precedent for litigating the type of unique circumstances present in this case. Assuming *arguendo* that that is true, by the very nature of this argument, no attorney can be said to have the special expertise needed to handle this case's unique circumstances.

Absent any evidence that out-of-state counsel had any specialized legal expertise that was relevant to these proceedings, the Court should reject Plaintiffs' argument that utilizing out-of-state counsel's higher hourly rates is reasonable when calculating the lodestar amount for Plaintiffs' fee award.

---

[11] Defendants acknowledge that there was likely some benefit to hiring the Lambda Legal attorneys who handled the initial proceedings to pursue Plaintiffs' post-judgment enforcement efforts because of their familiarity with the issues raised in the underlying matter. But out-of-state counsels' familiarity with the issues from the initial proceedings was not necessary to adequately represent Plaintiffs in the post-judgment enforcement proceedings, where the subject injunctive order contained plain and clear language and did not require any specialized knowledge, or background understanding by counsel to help the Court decipher, for example, any ambiguity in the order. In short, where out-of-state counsel brought no specialized expertise to these proceedings, their time expended in this matter should be billed at forum rates.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 17

### 3. Because Lambda Legal's counsel offered no unique expertise, their time should be billed at Boise's prevailing market rates

For the reasons stated above, the Court, when calculating the lodestar amount, should apply Boise's prevailing market rates to all of Plaintiffs' counsels' time reasonably expended in this matter, including time expended by Plaintiffs' out-of-state Lambda Legal counsel. In terms of what rates are reasonable and accurately represent Boise's prevailing market rates, Defendants will agree, for purposes of Plaintiffs' pending fee petition only, that the Boise hourly rates identified in the Declaration of Idaho counsel, Thomas Lloyd, (Dkt. 83-5), represent reasonable rates to be applied by the Court in its lodestar calculation. Even though a close review of the Boise hourly rates identified in Mr. Lloyd's declaration suggest that those rates actually fall more in the very high end of what Defendants believe constitute the true prevailing market rates in Boise, in the interest of compromise and to avoid wasting the Court's precious time and resources, Defendants will accept these rates as the relevant rates to be applied when calculating Plaintiffs' ultimate fee award.

For Defendants' overall calculation and summary of what constitutes a reasonable amount of time expended in this matter by Plaintiffs' counsel multiplied by the corresponding Boise rates for each of Plaintiffs' lawyers, and what Defendants believe represents a reasonable award of attorney's fees in this matter, see **Exhibit D** to the Olsen Declaration. As noted in Defendants' **Exhibit D**, a reasonable award of attorney's fees in this matter should not exceed $148,000.

### IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reduce Plaintiffs' fee request accordingly, as set forth above.

DATED this 19th day of November, 2021.

                            STATE OF IDAHO
                            OFFICE OF THE ATTORNEY GENERAL


By: /s/ *Steven L. Olsen*
      STEVEN L. OLSEN
      Deputy Attorney General

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES [DKT.83]** – 19

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of November, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following Persons:

| | |
|---|---|
| Monica G. Cockerille<br>monicacockerille@me.com | Colleen R. Smith<br>csmith@cov.com |
| Peter C. Renn<br>Prenn@lambdalegal.org | D. Jean Veta<br>jveta@cov.com |
| Kara N. Ingelhart<br>kingelhart@lambdalegal.com | Henry Liu<br>hliu@cov.com |
| Nora Huppert<br>nhuppert@lambdalegal.org | William Isasi<br>wisasi@cov.com |
| *Attorneys for Plaintiffs F.V. and Dani Martin* | Michael J. Lanosa<br>mlanosa@cov.com |

By:  */s/ Steven L. Olsen*
      STEVEN L. OLSEN