Monica G. Cockerille (ISB No. 5532)
monica@cockerillelaw.com
Cockerille Law Office, PLLC
100 W. Main St., Ste. 204
Boise, ID 83702
Tel: (208) 343-7676 | Fax: (866) 226-2499

Peter C. Renn (Admitted *Pro Hac Vice*)
prenn@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
4221 Wilshire Blvd., Suite 280
Los Angeles, CA 90010
Tel: (213) 382-7600 | Fax: (213) 351-6050

Kara N. Ingelhart (Admitted *Pro Hac Vice*)
kingelhart@lambdalegal.org
Nora Huppert (Admitted *Pro Hac Vice*)
nhuppert@lambdalegal.org
Lambda Legal Defense and Education Fund, Inc.
65 E. Wacker Pl., Suite 2000
Chicago, IL 60601
Tel: (312) 663-4413 | Fax: (312) 663-4307

Attorneys for Plaintiffs F.V. and Dani Martin

Colleen R. Smith (ISB No. 10023)
crsmith@hawleytroxell.com
Hawley Troxell Ennis & Hawley LLP
877 Main Street - Suite 1000
Boise, ID 83701
Tel: (208) 388-4873 | Fax: (208) 954-5278

D. Jean Veta (Admitted *Pro Hac Vice*)
jveta@cov.com
Henry Liu (Admitted *Pro Hac Vice*)
hliu@cov.com
William Isasi (Admitted *Pro Hac Vice*)
wisasi@cov.com
Covington & Burling LLP
One CityCenter
850 10th St NW
Washington, DC 20001
Tel: (202) 662-5294

Michael Lanosa (Admitted *Pro Hac Vice*)
mlanosa@cov.com
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel: (424) 332-4780

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| F.V. and DANI MARTIN,<br><br>             *Plaintiffs*,<br><br>    v.<br><br>DAVID JEPPESEN, in his official capacity as Director of the Idaho Department of Health and Welfare; ELKE SHAW-TULLOCH, in her official capacity as Administrator of the Division of Public Health for the Idaho Department of Health and Welfare; and JAMES AYDELOTTE, in his official capacity as State Registrar and Chief of the Bureau of Vital Records and Health Statistics,<br><br>             *Defendants*. | No. 1:17-cv-00170-CWD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES [Dkt. 83]** |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................1

I.      Plaintiffs' Legal Work Was Reasonable and Necessary Under the Circumstances to Prevent Nullification of the Injunction. ...................................................................1

II.     Plaintiffs are Entitled to Out-of-Forum Rates Based on Lambda Legal's Unique Expertise Developed From its Prior Representation. ............................................9

CONCLUSION ....................................................................................................................10

CERTIFICATE OF SERVICE .................................................................................................13

# INTRODUCTION

After forcing Plaintiffs to devise and execute an urgent legal strategy on multiple fronts under exceptional time pressure to ensure that this Court's injunction was not nullified, Defendants now second-guess the number of hours, already heavily discounted, that it took Plaintiffs to keep their legal victory in place. In fact, Defendants take the extraordinary position that Plaintiffs' counsel should not be compensated for more than half of the time spent with their noses to the grindstone. All of the work for which Plaintiffs now seek compensation was necessitated by Defendants' own actions, and the urgency of that work was dictated by Defendants' plan to begin violating the injunction on July 1, 2020. In response to Defendants' decision to move brazenly ahead, Plaintiffs took only reasonable, measured, and careful steps to protect the remedy they had already secured; indeed, it would have been irresponsible to omit any category of work attacked by Defendants, or to cut corners as Defendants seem to imply Plaintiffs should have done. Now, after an unsuccessful attempt to flout a federal court's order, the government effectively seeks to foist the bill for its damage on the very community that it sought to harm. This would disincentivize the vigilance that kept this Court's order in place. Plaintiffs' work to protect the injunction warrants compensation in full.

# ARGUMENT

**I.     Plaintiffs' Legal Work Was Reasonable and Necessary Under the Circumstances to Prevent Nullification of the Injunction.**

In the face of extraordinary circumstances, and in every effort to persuade a state government merely to conform its conduct to what it now describes as the "plain and clear language" of a permanent injunction, Plaintiffs fought only the battles initiated by Defendants themselves as part of their attempt to reinstitute a previously-enjoined practice. Dkt. 86 ("Opp.") at 16. Plaintiffs' resources—in particular, the hours of legal work performed—were expended in

1

direct proportion and response to the actions of a state government intent on flouting a federal court's order, and were anything but excessive. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (deferring to prevailing counsel's professional judgment).

*First Motion for Clarification.* After vehemently denying that the injunction could even apply to HB 509, Defendants now ask this Court to write off the hours that Plaintiffs spent obtaining confirmation that it did, because of what they characterize as "limited success." Dkt. 53 at 8-12 (opposing clarification by arguing that the injunction was limited to the prior policy and did not apply to HB 509); Opp. at 9-10. Plaintiffs in this case scored two consecutive victories, and as Defendants acknowledge, won ultimate relief "in full." Opp. at 11. But because certain aspects of this first motion were effectively deferred for adjudication until later in time, Defendants argue that work on that motion should not be compensated, either because it was "unnecessary" or "unrelated" to the cessation of enforcement of HB 509.[1] Opp. at 9-10.

As a threshold matter, both motions were post-judgment, and so the relevant "victory" is not the granting of the second motion, as Defendants claim, but rather the original civil rights injunction entered in Plaintiffs' favor. In light of that original victory, the proper standard provides that post-judgment work is compensable so long as it is "useful and of a type ordinarily necessary to secure *the final result obtained from the litigation*" (e.g., here, to protect the full scope of the injunction). *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 284 F.3d 1163, 1168 (9th Cir. 2002) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,

---

[1] In support, Defendants cite a case that makes exactly the opposite point they seek to prove: "Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war. Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning. [Defendant] would have us scalpel out attorney's fees for every setback, no matter how temporary, regardless of its relationship to the ultimate disposition of the case. This makes little sense." *Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991).

478 U.S. 546, 556 (1986)) (emphasis added). That is also why compliance monitoring, for example, is compensable, even where it does not generate any further court win.

In any event, any claim that the first clarification motion was not work that was "useful" or "of a type ordinarily necessary" is pure fantasy. This Court's grant of that motion in relevant part—namely, the request for clarification that led the Court to confirm that the injunction was not limited "to any particular policy, rule, practice, regulation, or statute"—was an *absolutely* essential component of the ultimate determination that Defendants' plan to enforce HB 509 violated the injunction. Dkt. 58 at 11. Had Plaintiffs failed in their effort to obtain that clarification, the injunction simply would not apply to HB 509, and its commands would have been limited to the prior policy. Moreover, it was specifically because of Defendants' litigation position—that the permanent injunction could not even apply to a statute enacted after its issuance—that the parties and the Court were forced to address this preliminary point before grappling with whether enforcement would actually violate the injunction.

Defendants also cannot escape fee liability by arguing that Plaintiffs should have passively waited to file any motion until the government first violated the injunction a few times, inflicting irreparable damage to the rights of transgender people in the meantime. Especially given that Defendants now confess that they simply intended all along to enforce HB 509 "as written," Opp. at 3, they can hardly claim that Plaintiffs somehow jumped the gun in taking any action. No responsible counsel would have sat idly on their hands doing nothing.

Indeed, if credited, Defendants' "just wait" approach would discourage incremental steps that may be sufficient to address incipient violations before they escalate into full-blown conflicts that require even greater judicial intervention to resolve. Plaintiffs' success with their first motion—which confirmed that HB 509 could not escape the injunction simply because it

came later in time—might have very well been sufficient to dissuade reasonably cautious government officials from engaging in further "experimentation with disobedience of the law." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949). Plaintiffs should not be penalized simply because the government here chose to march ahead unfazed. To punish Plaintiffs to the tune of 230 hours would powerfully disincentivize incremental solutions in future disputes.

Alternatively, Defendants argue that the first motion should not be compensated because it was "unrelated" to the "ultimate victory." Opp. at 9-10. For one, the Ninth Circuit has held that it is inappropriate to apply a relatedness analysis for post-judgment work where a party "merely seeks to preserve the . . . decree it won . . . from attack."[2] *San Francisco NAACP*, 284 F.3d at 1168 n.5. For another, Defendants' attempts to distinguish the first motion from the second—claiming that one concerned "HB 509 itself," while the other concerned its "enforcement"—fall short. Opp. at 11. In both motions, Plaintiffs sought clarification that *enforcement* of HB 509 violated the injunction. *Compare* Dkt. 46-1 at 1 (seeking confirmation "that enforcement of HB 509 is already barred by this Court's 2018 ruling") *with* Dkt. 66-1 at 6 (seeking confirmation that "enforcement of HB 509 encompasses conduct that violates the injunction"). In any event, given that Defendants admit that they sought to enforce HB 509 "as written," Opp. at 3, there is no daylight between the statute and their enforcement of the statute.

***Covington & Burling.*** Defendants also second-guess Plaintiffs' retention of counsel from Covington & Burling ("Covington")—going so far as to ask the Court to award *zero* hours for their work—even though Plaintiffs have only sought fees for half of the Covington lawyers who worked on this case. Opp. at 13. Notably, Defendants do not dispute the Boise rates sought

---

[2] A relatedness inquiry only applies where the plaintiff brings post-judgment motions seeking *additional relief*, in the form of unrelated motions or claims. *San Francisco NAACP*, 284 F.3d at 1168 n.5; *see also Bullfrog Films, Inc. v. Wick*, 959 F.2d 782, 786 (9th Cir. 1992).

4

for the Covington lawyers. *Id.* at 18. And, crucially, Defendants make no specific objections to any of their time entries. Defendants broadly assert that all of their time was unnecessary and redundant, but they fail to explain why that is true as to even a single time entry. Whether performed by Covington or other members of the legal team, the work needed to be performed.

The addition of Covington to the legal team was needed in large part because Defendants' plan to violate the injunction required Plaintiffs to battle on multiple fronts, and their plan to begin violating it on July 1, 2020 required Plaintiffs to fight those battles all at once under enormous time pressure. Renn Decl. ¶¶ 31-41. The unique posture of the 2020 proceedings required specific experience for certain categories of work performed by Lambda Legal, including litigation concerning the scope of prior rulings. *See* Dkt. 83-1 ("Mot.") at 14-17. But a multitude of other looming risks—including Defendants' argument that a new complaint would need to be filed, Defendants' ability to seek dissolution or other relief regarding the injunction, and Defendants' insistence that the constitutional justifications for HB 509 would need to be litigated afresh—meant that Plaintiffs had several *other* battles to fight, simultaneously, under the time pressure imposed by Defendants. Renn Decl. ¶¶ 34-35. In order to responsibly respond to every serious threat to the injunction, Plaintiffs needed *both* counsel with specific expertise to vindicate the injunction, *and* additional staffing to increase the legal team's capacity to attend to competing time-sensitive work on other fronts.[3]

***Motion for Attorneys' Fees.*** Next, Defendants attack the fees that Plaintiffs request as compensation for preparing the fee motion itself, which required nearly 100 pages of supporting

---

[3] The Ninth Circuit has recently upheld a fee award involving precisely this kind of division of labor: out-of-forum rates for some, but not all, counsel. *Parsons v. Ryan*, 949 F.3d 443, 466 (9th Cir. 2020), *cert. denied sub nom. Shinn v. Jensen*, 141 S. Ct. 1054 (2021).

materials including four declarations.[4]  Opp. at 14.  In support, Defendants cite this Court's decision in *Latta v. Otter,* 1:13-cv-00482-CWD, 2014 WL 7245631 (D. Idaho Dec. 19, 2014) reducing the request for fees-on-fees in that case to 40 hours.  But in doing so, Defendants omit the key phrase: "The Court finds that 40 hours at most is a reasonable amount of time for a fee motion *of this complexity.*"  *Id.* at *10 (emphasis added).

Given that the time required to litigate fees may vary widely depending on the specific situation at hand, it is unsurprising that courts have awarded fees for an even greater number of hours spent litigating fees than those requested here.  *See, e.g.*, *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 450 (9th Cir. 2010) (affirming award of 223.7 hours for fees work, which exceeded time spent on merits); *Hum. Rts. Def. Ctr. v. Cnty. of Napa*, No. 20-cv-01296, 2021 WL 1176640, at *13 (N.D. Cal. Mar. 28, 2021) (holding that 218.9 hours spent on fees work was reasonable); *Lucas v. White*, 63 F. Supp. 2d 1046, 1060 (N.D. Cal. 1999) (awarding fees, after adjustment, for 394.7 hours spent on fees motion alone).

This was no ordinary case, and neither was Plaintiffs' fee motion.  For one, even Defendants acknowledge "this case's unique circumstances," which necessitated research and mastery over the niche legal landscape of post-judgment fee awards and application of that landscape to the 2017-18 and 2020-21 proceedings.  Opp. at 17.  As well, Plaintiffs' entitlement to out-of-forum rates meant not only briefing a complex point of law regarding the unique posture of this case, but also developing the evidentiary record to substantiate that entitlement

---

[4] Defendants also argue that Plaintiffs' entitlement to out-of-forum rates should not extend to their "fees-on-fees."  But "[p]rivate practitioners do not generally charge varying rates for the different lawyerly tasks they undertake."  *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1543-48 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993).  And, as demonstrated by this motion practice, specialized knowledge regarding the prior litigation that led to issuance of the injunction is, in fact, of central relevance to establishing appropriate rates.

and the reasonable rates Plaintiffs' counsel could command based on three separate legal markets. Similarly unusual briefing was also required to seek compensation for "unfiled" work required by the circumstances or induced by an adverse party, which Defendants do not contest.

Plaintiffs have already massively discounted the time spent on preparing the fee motion (by at least 53.9 attorney hours, Dkt. 86-4), and they are willing to forgo compensation for the 67 attorney hours spent preparing this reply, which collectively comprise a discount of more than one-third of the time spent litigating fees. Defendants' proposed further reduction (by more than three-quarters of what Plaintiffs request) is immense, and completely disregards the complex, multifaceted nature of the fee dispute in this case. When plaintiffs' counsel are deprived of full compensation for their work, there can be profound trickle-down damage to the vindication of civil rights that Congress sought to promote, from deterring counsel from undertaking representation to encouraging sloppy legal work to save time (itself leading to lower fee awards that further discourage representation). Quality work takes time. Plaintiffs should be fully compensated for the time and effort required to recover attorneys' fees here.

***Comparison to Prior Settlement.*** Defendants compare the fees requested here with the amount they previously paid as part of an earlier settlement in this case. Opp. at 8. As a threshold matter, the federal rules forbid the use of prior settlements to prove the amount of a claim, for good reason: the compromise "may be motivated by desire for peace rather than from any concession of weakness."[5] *Hudspeth v. Comm'r of IRS*, 914 F.2d 1207, 1213 (9th Cir. 1990)

---

[5] True to the nature of a settlement, Plaintiffs opted to *forgo* their full entitlement to attorneys' fees in 2018, a fact that is confirmed in the associated filings. Dkt. 44 at 2 (reserving Plaintiffs' ability to "seek the full amount to which they may be entitled under the law"). And a party's underlying motivations for settlement—such as a desire to not discourage government officials in other states from admitting the absence of a rational basis for a similar policy—may significantly obscure the actual financial value of a claim.

(quoting Fed. R. Evid. 408 advisory committee's note). But even still, the comparison is wholly inappropriate, both in light of the differing scope of the work required and the differing rates that apply in each circumstance (as addressed further below).

In making this comparison, Defendants claim that the work here was not as "complex or risky" as the prior proceedings. Opp. at 8. But that difference runs exactly the other way. In that earlier chapter of litigation, Defendants "[did] not defend the constitutionality of the policy," but rather, "*admit[ted]* it is unconstitutional." Dkt. 39 at 2. And even that more focused chapter of litigation, which grappled with the appropriate remedy for the constitutional violation, still consumed several hundred attorney hours.[6] Renn Decl. ¶ 7. It should come as no surprise that litigation where the government *disputes* that it is acting unlawfully can consume substantially more hours than litigation where the government *admits* it is acting unlawfully.

In the 2020 proceedings, Defendants twice resisted clarification; insisted that HB 509 was presumptively constitutional; argued that Plaintiffs should be required to initiate an entirely new lawsuit; asserted various standing and ripeness arguments; and then—even when faced with this Court's warning that the injunction prohibited them from implementing a categorical ban irrespective of HB 509's enactment—marched ahead unfazed with their plan to implement such a ban.[7] *See* Dkt. 53, 58. All the while, Plaintiffs were also forced to prepare a defense against any request to dissolve the injunction. Renn Decl. ¶¶ 35-36. At every step of the proceedings concerning HB 509, the "basic human rights" of transgender people hung in the balance, *cf.*

---

[6] Naturally, Plaintiffs also did not seek compensation for fees related to bringing a motion for attorneys' fees in 2018, as fees were resolved without the need for further litigation.
[7] Defendants also point to the difference in duration between the two chapters of litigation, without acknowledging that the exceedingly short deadline imposed on Plaintiffs to avoid nullification of the injunction was wholly dictated by Defendants' enforcement plans, and that short timeline only *added* to the complexity of the work, as Plaintiffs had to execute an all-fronts legal strategy on short notice and under considerable time pressure. *See* Renn Decl. ¶ 47.

8

*Newman v. City of Payette*, No. 1:15-cv-00145, 2016 WL 1611430, at *3 (D. Idaho Apr. 21, 2016), and the stakes warranted a commensurate investment of time by Plaintiffs.

**II.  Plaintiffs are Entitled to Out-of-Forum Rates Based on Lambda Legal's Unique Expertise Developed From its Prior Representation.**

For work performed by Lambda Legal, Plaintiffs are entitled to out-of-forum rates. Lambda Legal's expertise acquired through their prior representation was critical following HB 509's enactment because of the need to adjudicate what, precisely, was litigated earlier and what, precisely, was required of the government as a result.  In opposition, Defendants cite exactly zero cases to rebut Plaintiffs' showing that they are entitled to out-of-forum rates, which was supported by a plethora of authorities.  Mot. at 15-17; *accord Melendres v. Penzone*, No. 2:07-cv-2513, 2019 WL 1586877, at *3 (D. Ariz. Apr. 12, 2019).  Instead, Defendants focus on disputing the need for retaining counsel with any experience in litigating the constitutional rights of transgender people (despite arguing last year that any constitutional issues required further litigation), but they address Plaintiffs' "prior involvement" expertise only in a footnote—in which they concede it is valuable. Opp. at 15-18, n.11; *see also* Mot. at 14-17.

Defendants now sing a strikingly different tune about the purported simplicity of Plaintiffs' victories—which, in their retelling, any lawyer could have clenched—as compared to what they told this Court last year, when they insisted that the relief Plaintiffs sought could be found "[n]owhere within the four corners of the injunction." Dkt. 53 at 9.  The reality is that an intimate familiarity with the twists and turns of the 2017-18 litigation was critical to properly handling litigation concerning HB 509.  Renn Decl. ¶¶ 16, 52.  Disproving Defendants' claim that the injunction was limited to a particular "policy" then in existence, for example, required a deep understanding of the prior proceedings.  Moreover, Defendants' obligations ran to "both the letter and the spirit" of this Court's prior rulings and thus also required understanding the

9

"objective" of the original litigation. Dkt. 58 at 8-9. And their contention that the injunction was too clear (and its enforcement too simple) to require any special expertise—despite that it took two clarification motions to obtain their compliance with its prohibition on adopting a categorical ban—rings especially hollow given that, all the while, they argued that the injunction could not apply to the newly enacted statute, maintained that Plaintiffs should have to initiate a new lawsuit, and insisted that HB 509 furthered compelling interests not litigated in the 2017-18 proceedings. *See generally* Dkt. 53 at 5, 12; Dkt. 66. Defendants provide no other arguments to oppose the bases for out-of-forum rates based on prior expertise that Plaintiffs articulate, nor do they dispute that the fees are also independently justified as a lodestar enhancement. Mot. at 19.

Finally, Defendants argue that if there is any relevant expertise, it is "so unique that no lawyer could be said to [possess it]." Opp. at 17. In every situation where specialized expertise is necessary—whether patent litigation, maritime law, or knowledge from prior representation—counsel must invariably perform legal work specific to the case. But none of that negates that expertise was still a *necessary* foundation for proper representation. Where such expertise is unavailable within the local forum, which was precisely the situation here, counsel are entitled to rates outside the forum. *Barjon v. Dalton*, 132 F.3d 496, 501 (9th Cir. 1997).

## CONCLUSION

Civil rights injunctions that are under threat depend on careful and zealous legal work to survive. Plaintiffs' work vindicated the rights of transgender people protected by the injunction, but it also served to uphold this Court's authority and ward off an attack by a state legislature on its prior constitutional ruling. Defendants would have this Court slash the dollar amount of fees to less than one-third of Plaintiffs' already-discounted request. This would incentivize nullification of injunctions and disincentivize vigilant legal work in service of the rule of law.

| | | |
|---|---|---|
| DATED: December 20, 2021 | By: | /s/ Nora Huppert |

Monica G. Cockerille (ISB No. 5532)  
monica@cockerillelaw.com  
Cockerille Law Office, PLLC  
100 W. Main St., Ste. 204  
Boise, ID 83702  
Tel: (208) 343-7676 | Fax: (866) 226-2499

Peter C. Renn (Admitted *Pro Hac Vice*)  
prenn@lambdalegal.org  
Lambda Legal Defense and Education Fund, Inc.  
4221 Wilshire Blvd., Suite 280  
Los Angeles, CA 90010  
Tel: (213) 382-7600 | Fax: (213) 351-6050

Kara N. Ingelhart (Admitted *Pro Hac Vice*)  
kingelhart@lambdalegal.org  
Nora Huppert (Admitted *Pro Hac Vice*)  
nhuppert@lambdalegal.org  
Lambda Legal Defense and Education Fund, Inc.  
65 E. Wacker Pl., Suite 2000  
Chicago, IL 60601  
Tel: (312) 663-4413 | Fax: (312) 663-4307

Colleen R. Smith (ISB No. 10023)  
crsmith@hawleytroxell.com  
Hawley Troxell Ennis & Hawley LLP  
877 Main Street - Suite 1000  
Boise, ID 83701  
Tel: (208) 388-4873 | Fax: (208) 954-5278

D. Jean Veta (Admitted *Pro Hac Vice*)  
jveta@cov.com  
Henry Liu (Admitted *Pro Hac Vice*)  
hliu@cov.com  
William Isasi (Admitted *Pro Hac Vice*)  
wisasi@cov.com  
Covington & Burling LLP  
One CityCenter  
850 10th St NW  
Washington, DC 20001  
Tel: (202) 662-5294

Michael Lanosa (Admitted *Pro Hac Vice*)  
mlanosa@cov.com  
Covington & Burling LLP  
1999 Avenue of the Stars  
Los Angeles, CA 90067  
Tel: (424) 332-4780

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 20th day of December, 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

David Jeppesen
Office of the Director
Idaho Department of Health and Welfare
10th Floor, Pete T. Cenarrusa Building
450 W. State Street
Boise, ID 83720-0036

Elke Shaw-Tulloch
Administrator, Division of Public Health
Idaho Department of Health and Welfare
4th Floor, Pete T. Cenarrusa Building
450 W. State Street
Boise, ID 83720-0036

James Aydelotte
Chief and State Registrar
Bureau of Vital Records and Health Statistics
1st Floor, Pete T. Cenarrusa Building
450 West State Street
Boise, ID 83720-0036

                                                /s/ Nora Huppert
                                                Nora Huppert
                                                Attorney for Plaintiffs