UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| F.V. and DANI MARTIN,<br><br>                    Plaintiffs,<br><br>    v.<br><br>DAVID JEPPESEN, in his official capacity as Director of the Idaho Department of Health and Welfare; ELKE SHAW-TULLOCH, in her official capacity as Administrator of the Division of Public Health for the Idaho Department of Health and Welfare; and JAMES AYDELOTTE, in his official capacity as State Registrar and Chief of the Bureau of Vital Records and Health Statistics,<br><br>    Defendants. | Case No. 1:17-cv-00170-CWD<br><br>**MEMORANDUM DECISION AND ORDER (DKT. 83)** |

## INTRODUCTION

Before the Court is Plaintiffs' motion for attorney fees and expenses. (Dkt. 83.) The parties submitted briefing and other materials, and the motion is at issue. (Dkt. 86, 87.) Because the facts and legal arguments are presented in the record and the decisional process would not be significantly aided by oral argument, the motion will be resolved without a hearing. Dist. Idaho Loc. Civ. R. 7.1. After carefully considering the parties' submissions and the entire record, the Court will order Defendants to pay to Plaintiffs $312,529.50 in attorney fees, $7,945.00 in paralegal fees, and $750.00 in expenses, for the reasons explained below.

# BACKGROUND

Filed under 42 U.S.C. § 1983, this lawsuit challenged the Idaho Department of Health and Welfare's (IDHW) interpretation of Idaho law and policy for processing applications by transgender individuals to change the sex listed on their birth certificate. (Dkt. 1.)

On March 5, 2018, the Court found IDHW's policy unconstitutional and entered an Order permanently enjoining "IDHW Defendants and their officers, employees, and agents from practicing or enforcing the policy of automatically rejecting applications from transgender people to change the sex listed on their birth certificates." (Dkt. 39.)[1] In response to the Injunction, Idaho Administrative Procedure Act (IDAPA) 16.02.08.201 was revised and IDHW began implementing the revised IDAPA Rule on April 6, 2018. (Dkt. 42.) Judgment was entered on April 20, 2018, pursuant to a stipulation of the parties. (Dkt. 43.) On April 26, 2018, Plaintiffs were awarded $75,000.00 in attorney fees pursuant to a stipulation of the parties. (Dkt. 44, 45.)

In March of 2020, the Idaho Legislature passed and Governor Little signed into law, House Bill 509 (HB 509), codified at Idaho Code § 39-245A, which changed the statutory language applicable to amending a birth certificate, effective July 1, 2020. In response, on April 16, 2020, Plaintiffs filed their first motion seeking clarification of the Injunction prior to HB 509 taking effect. (Dkt. 46.)

On June 1, 2020, the Court issued an order clarifying that the Injunction

---

[1] *F.V. v. Barron*, 286 F.Supp.3d 1131 (D. Idaho 2018).

permanently enjoins IDHW from automatically rejecting applications from transgender individuals to change the sex listed on their birth certificates; and requires IDHW to institute a meaningful and constitutionally-sound process for accepting, reviewing, and considering applications from transgender individuals to amend the gender listed on their birth certificates. (Dkt. 58.) However, the Court found the apparent questions concerning the constitutional validity and whether enforcement of HB 509 would violate the injunction were not ripe at that time. (Dkt. 58.)

Thereafter, IDHW revised its application form and instructions for changing the indicator of sex on an Idaho birth certificate beginning on July 1, 2020, to implement Idaho Code § 39-245A. On June 22, 2020, Plaintiffs filed a second motion for clarification concerning whether IDHW's revisions implementing Idaho Code § 39-245A violated the Injunction. (Dkt. 66.)

Plaintiffs argued IDHW's new requirement for a court order obtained pursuant to Idaho Code § 39-245A violated the Injunction, because it is impossible under the language of the statute for a transgender individual to obtain a court order to change the sex listed on their birth certificate to match to their gender identity. On July 1, 2020, Idaho Code § 39-245A and IDHW's revised application form and instructions took effect.

On August 7, 2020, the Court issued an order granting Plaintiffs' second motion, concluding IDHW's revised application form and instructions implementing Idaho Code § 39-245A violated the Injunction. (Dkt. 75.) Plaintiffs filed the motion for attorney fees and expenses presently before the Court on September 29, 2021. (Dkt. 83.)

## STANDARD OF LAW

In actions under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). Section 1988(b) also provides the Court discretion to award "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation omitted). "Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process." *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986). "In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case." *Id*. at 578.

## DISCUSSION

There is no dispute that Plaintiffs are the prevailing parties and are therefore entitled to an award of reasonable fees and litigation expenses.[2] However, Defendants dispute whether the amount of requested fees and expenses is reasonable.

On this motion, Plaintiffs seek an award of fees in the amount of $455,728.00, and litigation expenses of $750.00, for a total combined award amount of $456,478.00. (Dkt.

---

[2] Defendants do not dispute Plaintiffs are the prevailing party for purposes of this motion, but do contest the extent to which Plaintiffs prevailed. (Dkt. 86 at 2, n. 1.) Defendants argue Plaintiffs did not prevail on the first motion for clarification and, therefore, attorney hours expended on their "unsuccessful" first motion should be excluded. (Dkt. 86 at 9-12.) The Court will address below Defendants' arguments in this regard.

83.) Plaintiffs argue the requested fees and expenses are reasonable and necessary given the unique work performed by Plaintiffs' litigation team on the two motions for clarification and the extraordinary circumstances presented in this case. Defendants contend the attorney hours requested are excessive and the hourly rates for all attorneys should be billed at the prevailing market rates for Boise, Idaho. (Dkt. 86.) Defendants assert the total reasonable fee amount should be $147,192.50. (Dkt. 86-7, Dec. Olsen, Ex. D.)

## 1.    Reasonable Attorney Fees

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The product of this computation—the 'lodestar figure'—is a 'presumptively reasonable' fee under 42 U.S.C. § 1988." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The Court may adjust the loadstar figure upward or downward based on factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975),[3] that are not subsumed in the loadstar calculation.[4]

---

[3] *Kerr* lists the following factors: (1) the time and labor required; (2) the complexity of the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 526 F.2d at 70.

[4] "Among the subsumed factors presumably taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation are: (1) the novelty and

But the critical factor in determining the reasonableness of the fee is "the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citing *Hensley*, 461 U.S. at 436). The lodestar figure may be "an excessive amount" for parties who achieve only limited success. *Id*. On the other hand, a party who achieves "excellent results" is entitled to "a fully compensatory fee." *Hensley*, 461 U.S. at 435.

The prevailing party has the burden of submitting evidence showing the claimed rates and hours expended on the litigation are reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984), *accord Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates*, 987 F.2d at 1397–98. With these principles in mind, the Court considers Plaintiffs' fee request.

## A.    Hours Reasonably Expended

The Court first considers the number of hours each attorney "reasonably expended in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 431. The prevailing party has the burden of submitting time records justifying the hours claimed. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *as amended by* 808 F.2d 1373 (9th Cir. 1987). "Those hours may be reduced by the court where documentation of the hours

---

complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained, and (5) the contingent nature of the fee agreement." *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996) (internal quotations and citations omitted).

is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Id.* (citing *Hensley*, 461 U.S. at 433–34). Put differently, "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (quotation omitted). But the Court's discretion to reduce claimed hours is not unbounded, nor does it provide an opportunity for second-guessing when counsel exercises sound billing judgment. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Here, Plaintiffs seek fees for 1,017.5 attorney hours and 45.4 paralegal hours expended in the post-judgment phase of this litigation. (Dkt. 83 at 8.) Plaintiffs maintain the resources expended were a "direct and proportionate response to the significant and time-sensitive threat posed by Idaho Code § 39-245A to the permanent injunction, Defendants' decision to enforce the statute, and the arguments advanced in defense of that enforcement." (Dkt. 83 at 8.) These extraordinary circumstances, Plaintiffs argue, demanded an "all-fronts legal strategy" to preserve the civil rights protected by the permanent injunction and to ward off future attacks.

Defendants contest the number of hours spent on post-judgment enforcement efforts as excessive and unreasonable for four reasons: 1) the amount requested is more than six times the fee awarded in the initial proceedings; 2) the hours spent on the first motion to clarify were unnecessary and unsuccessful; 3) hiring additional attorneys for

the post-judgment efforts was unnecessary and unreasonable; and 4) the time spent preparing the fee request is excessive. (Dkt. 86.) The Court will address each below.

### i.    Comparison Amount

Defendants argue Plaintiffs' post-judgment request for $455,728.00 in fees is unreasonable when compared to the $75,000.00 in fees awarded during the initial proceedings. The Court respectfully disagrees.

Generally, evidence of an offer or acceptance of an offer of settlement is inadmissible and irrelevant to prove liability or invalidity of the claim or the amount settled. Fed. R. Evid. 408. This is so because different motivations exist during settlement negotiations than are present during litigation. *See* Fed. R. Evid. 408 advisory committee's notes, 1972 Proposed Rules (Rule 408's exclusion of compromise offers and negotiation is based on two grounds: (1) "[t]he evidence is irrelevant, since the offer may be motivated by desire for peace rather than from any concession of weakness of position;" (2) "[a] more consistently impressive ground is promotion of the public policy favoring the compromise and settlement of disputes."). Such was the case here when the parties stipulated to the amount of attorney fees to be awarded during the initial proceedings. (Dkt. 44 at ¶ 2) ("In the interest of resolving this matter without further litigation and the further accumulation of attorneys' fees and costs, the parties have reached an agreement for an award of attorneys' fees and costs….").

Moreover, the circumstances and considerations present during each phase of this litigation were vastly different. Comparing the two does not inform the Court's reasonableness determination of Plaintiffs' post-judgment fee request. Even if the Court

were to engage in such a comparison, the Court would find an award of post-judgment fees higher than the amount stipulated to during the pre-judgment phase is reasonable for the reasons discussed more fully below.

### ii.     First Motion for Clarification

Defendants argue the 218.2 attorney hours and 12.4 paralegal hours expended on the first motion for clarification were unnecessary, because Plaintiffs were unsuccessful on the motion. Therefore, Defendants contend, $119,011.50 in requested fees should be excluded from any fee award. (Dkt. 86.) The Court finds otherwise.

Plaintiffs unquestionably prevailed on the first motion for clarification. While the Court did not grant all of the relief sought by Plaintiffs in the first motion, most notably declining to address the constitutional validity and enforcement of HB 509, the Court granted Plaintiffs request for clarification of the Injunction. (Dkt. 58.) The Court explained the scope and reach of the Injunction and, in doing so, definitively rebutted Defendants' contention that the Injunction did not apply to IDHW's impending implementation of HB 509. (Dkt. 58 at 11) ("The Injunction is not constrained to any particular policy, rule, or statute as Defendants argue. The plain terms and clear objective of the Injunction permanently prohibit IDHW from implementing or enforcing *any* policy, rule, or the like that automatically rejects applications from transgender people to change the sex listed on their birth certificates.[] Nothing in the language or purpose of the Injunction, or in the Court's discussion of the facts and circumstances as they existed in 2018, limit the Injunction to any particular policy, rule, practice, regulation, or statute as Defendants argue here.") (emphasis in original).

MEMORANDUM DECISION AND ORDER - 9

The clarification obtained by Plaintiffs in their first motion laid the essential groundwork for the second motion, upon which Plaintiffs undisputedly prevailed. Both motions were necessary for Plaintiffs to obtain the full relief requested. Indeed, the second motion for clarification may not have been necessary had Defendants heeded the Court's strong guidance on the first motion for clarification. Accordingly, the Court finds the attorney and paralegal hours expended working on the first motion for clarification were necessary and reasonable, and will be included in the fee award.

### iii.   Additional Attorneys

Defendants argue $51,645.00 should be deducted from any fee award for the hours billed by the three additional attorneys hired for the post-judgment proceedings – Isaac Belfer, Michael Lanosa, and Colleen Smith. (Dkt. 86 at 13, n. 8.) Defendants argue the three new attorneys were unnecessary and redundant to the work of the attorneys from the initial proceedings. (Dkt. 86.) Plaintiffs maintain the additional attorneys were needed because of the multifaceted attacks to the Injunction asserted by Defendants that Plaintiffs were forced to respond to simultaneously and in a short timeframe. (Dkt. 87.)[5]

The Court finds the additional attorneys hired to assist with the post-judgment proceedings were necessary and reasonable under the circumstances presented here. Plaintiffs were confronted with an extremely short window of time to respond to the passing of HB 509 before its effective date. That, coupled with the multitude of

---

[5] Plaintiffs hired a total of six additional attorneys to assist with post-judgment motions, but request an award of fees for only three of these attorneys. (Dkt. 83-2 at ¶ 67); (Dkt. 83-2, Dec. Renn at ¶ 67-68); (Dkt. 87 at 4, n. 2.)

arguments and positions taken by Defendants contesting, among other things, the application of the Injunction on IDHW's implementation of the new legislation, necessitated the use of additional resources to effectively represent Plaintiffs and to ensure the important constitutional rights secured by the Injunction remain protected.

As evidenced by the docket, the post-judgment proceedings were extensive, complex, and occurred over a very compressed timeframe. This necessitated employing additional resources to effectively respond to the new legislation and Defendants' arguments, and to ensure the Injunction's protections remain secure. The additional attorneys were not duplicative or redundant to the attorneys from the initial proceedings, who were necessary to the post-judgment proceedings.[6] Rather, the billing records reflect that the attorneys divided the labor among the various legal challenges presented. (Dkt. 83-4, Dec. Renn, Ex. B.) For these reasons, the Court finds the hours claimed by the three

---

[6] Defendants contest below the outside of forum rates requested by the attorneys working the case during the initial and post-judgment phases from Lambda Legal Defense and Education Fund, Inc. (Lambda Legal). (Dkt. 86.) Defendants argue the higher out of forum rates sought by these attorneys are unreasonable given the legal expertise of the attorneys relevant to litigating the constitutional rights of transgender individuals was not necessary for the post-judgment proceedings. To the extent Defendants challenge the necessity and reasonableness of the hours requested for work performed by the Lambda Legal attorneys during the post-judgment phase, the Court disagrees. The specialized expertise of the attorneys from Lambda Legal as well as their knowledge and familiarity with this particular litigation made their participation necessary and valuable during both phases. This is especially true given Defendants' contention during the post-judgment phase that the Injunction did not apply to the IDHW's implementation of the new legislation, which implicated both the nature of the protections for transgender individuals secured by the Injunction and the impact of the IDHW's regulations implementing new legislation on transgender individuals. For these reasons, the Court finds both that the Lambda Legal attorneys were necessary to the post-judgment phase and the hours claimed are reasonable except with respect to the hours requested for preparing the fee motion as discussed in the following section.

additional attorneys are reasonable and will be included in the award.

    **iv.**    **Fees on Fees Request**

    Plaintiffs request a total of $86,815.50 in fees attributable to work spent preparing the present motion. *See* (Dkt. 83-4, Dec. Renn, Ex. B); (Dkt. 86-4, 86-5, Dec. Olsen, Exs. B-1 and B-2.)[7] Defendants claim the number of hours expended on the fee petition, 197.3 hours, is unreasonable and excessive. Instead, Defendants maintain an award of no more than $11,800.00, for forty hours of work on the fee request would be reasonable. (Dkt. 86 at 14-15.)[8] Plaintiffs assert the requested time spent preparing the fee motion has already been discounted and maintain the fees sought are reasonable given the complexity of the fee request, including the unique post-judgment posture of the case and the need to develop the evidentiary record substantiating the request for rates in three separate legal markets. (Dkt. 87 at 6-7.)[9]

    Having carefully reviewed the parties' arguments and submissions, and the record, the Court finds certain of the hours claimed for work on the motion for fees to be

---

[7] This total does not include time spent by Plaintiffs' counsel reviewing Defendants' response or preparing the reply brief, which Plaintiffs represent amounts to a total of 67 attorney hours. (Dkt. 87 at 7.) Plaintiffs have agreed to forego compensation for those attorney hours. *Id.*

[8] Defendants' proposed calculation includes a total of forty attorney and paralegal hours at varying rates consistent with the Boise market hourly rates for a total fee award of $11,776.40. The total number of hours is calculated based on a proportional reduction of the hours claimed assuming the total number of hours to be forty. (Dkt. 86-6, Dec. Olsen, Ex. C.)

[9] Plaintiffs do not dispute Defendants' calculations of the number of hours, rates, and total fees requested related to the work spent preparing the motion for fees. (Dkt. 86-5, Dec. Olsen, Ex. B-2); (Dkt. 87). Nor do Plaintiffs contest the Boise market rates assigned to the attorneys by Defendants. (Dkt. 86-6, Dec. Olsen, Ex. C); (Dkt. 87).

excessive. While the fee motion presents some niche legal issues relating to outside of forum rates and the post-judgment posture of the proceeding, the issues were not novel or overly complex as Plaintiffs contend. (Dkt. 87 at 6-7.) Indeed, the applicable law governing fees under § 1988 is well-settled and undisputed.

Nevertheless, the billing records report almost two hundred hours of work performed by five attorneys and one paralegal during the course of approximately four months, compiling and finalizing the motion for fees and supporting documents. (Dkt. 83-4, Dec. Renn, Ex. B.)[10] Hours claimed include conferences with co-counsel; reviewing billing records; and researching and preparing the fee motion, briefing, and supporting materials. (Dkt. 83-4, Dec. Renn, Ex. B.) The Court finds reasonable the minimal amount of duplication in the billing records allowing for necessary collaboration among the attorneys. *See Latta v. Otter*, No. 1:13-cv-00482-CWD, 2014 WL 7245631, at *8 (D. Idaho Dec. 19, 2014) ("[T]he Court does not find anything per se unreasonable about a team of attorneys regularly communicating over the course of such a complex, fast-moving case."). However, the experience of Plaintiffs' litigation team should have reduced the time necessary to research and prepare the motion for fees. Moreover, many of the supporting documents—billing records and statements of counsel's experience— should have been readily available.

The Court finds the hours claimed for work on the fee motion by Kara Ingelhart,

---

[10] The four months of legal work is exclusive to the time following the Court's order on the second motion for clarification  – August 7, 2021 to December 20, 2021 - during which the parties considered payment of fees and costs.

Monica Cockerille, Colleen Smith, and Jamie Farnsworth to be reasonable and will include the hours in the fee award. However, the hours claimed for work performed on the motion by Peter Renn and Nora Huppert are excessive. While the records reflect Renn and Huppert shouldered a majority of the legal work on the fee motion, the number of hours billed by Renn and Huppert is more than three times higher than that of the other three attorneys. Indeed, the combined hours billed on the fee motion by Renn and Huppert accounts for almost seventy-five percent of the total number of hours billed for work on the motion.

The Court finds a twenty-five percent reduction in the hours claimed by Renn and Huppert reflects a reasonable amount of time for a fee motion of this complexity. The motion involved researching and substantiating the request for legal fees from three different markets and compiling billing records from seven attorneys and one paralegal. Because Renn and Huppert performed most of the legal research and the drafting of the memoranda and other submissions supporting the fee motion, it is reasonable that the number of hours they billed is somewhat higher than the other attorneys. Reducing Renn and Huppert's hours by twenty-five percent yields hours reflective of the greater share of the work they performed and the complexity of the motion, while still being reasonable.

Accordingly, the Court finds the following are the reasonable hours expended on the attorney fee motion.

| Attorney/Paralegal | Hours Claimed (Dkt. 83-4) | Reduction for Fee Motion | Hours Reasonably Expended on Fee Motion |
|---|---|---|---|
| Peter Renn | 77 | 25% | 57.75 |
| Nora Huppert | 69.2 | 25% | 51.9 |
| Kara Ingelhart | 14.9 | 0% | 14.9 |
| Monica Cockerille | 3.8 | 0% | 3.8 |
| Colleen Smith | 24.9 | 0% | 24.9 |
| Jamie Farnsworth | 7.5 | 0% | 7.5 |

The fees awarded for work on the fees motion will be calculated using the hours reasonably claimed as reflected in the chart above.

### B.    Reasonable Hourly Rates

The next step in the lodestar analysis is to determine the reasonable hourly rate. An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). "[N]ormally the relevant legal community for determining the prevailing market rates for attorneys' fees is the community in which the forum is situated." *Gates*, 987 F.2d at 1405. The Court may look to prevailing rates outside the forum in certain circumstances. *Gates*, 987 F.2d at 1405.

Attorneys practicing from outside the forum district may be awarded the outside-forum hourly rates if local counsel was unavailable. *Barjon v. Dalton*, 132 F.3d 496, 500

(9th Cir.1997). Unavailability may be found where local counsel is unwilling or unable to litigate the case due to a lack of experience, expertise, or specialization required to properly handle the case. *Gates*, 987 F.2d at 1405.

To meet this burden of proof, the fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits" that the requested rates are prevailing market rates under this standard. *Blum*, 465 U.S. at 895 n. 11. In addition to considering affidavits and evidence submitted by the parties, the court may "rely on its own familiarity with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Here, Plaintiffs request fees for the work of seven attorneys at varying market rates.[11] The attorneys seeking fees at Boise market rates are: Monica Cockerille, Isaac Belfer, Michael Lanosa, and Colleen Smith. The attorneys seeking fees at rates consistent with outside the forum markets are: Peter Renn, Kara Ingelhart, and Nora Huppert.

### i. Rates for Boise, Idaho Market

Boise, Idaho is the forum for this litigation and, thus, the presumptive relevant legal community for determining the prevailing market rates for attorney fees. *Gates*, 987 F.2d at 1405. Defendants do not contest the reasonableness of the Boise market hourly rates for 2020 and 2021, as identified in the Declaration of Idaho counsel Thomas Lloyd, filed by Plaintiffs in support of their motion. (Dkt. 86 at 18.) The Court agrees and will

---

[11] Additionally, Plaintiffs seek fees for paralegal, Jamie Farnsworth, at a rate comparable to paralegal fees in both Boise and out-of-state. Defendants do not contest the requested rate for the paralegal. (Dkt. 86.) The Court finds the hourly rate of $175.00 for paralegal services is reasonable and will be used to calculate Farnsworth's fees.

apply the market rates for Boise as stated in Lloyd's Declaration when calculating fees

for Cockerille ($410), Belfer ($280-$290), Lanosa ($250-$260), and Smith ($240-$250).

(Dkt. 83-5, Dec. Lloyd at ¶ 19) (stating the respective rates for the attorneys' work

performed in each of the relevant years - 2020 and 2021).

### ii.    Rates for Outside the Forum Markets

Defendants contest the outside the forum market rates sought for attorneys Renn,

Ingelhart, and Huppert, maintaining the Boise market rates should be applied to all

attorney hours awarded. Plaintiffs maintain the work performed by counsel located in

other forums was uniquely necessary because of their involvement in the earlier phases of

the litigation, specialized expertise in the field of LGBT civil rights impact litigation, and

the circumstances of this litigation. (Dkt. 83, 87.)

The comparisons between the requested hourly rates for outside of forum markets

and the Boise market rates are as follows:

| Attorney | Experience | Locality | Out of forum Rates[12] | Boise Market Rates[13] |
|---|---|---|---|---|
| Peter Renn | 15 years | Los Angeles, CA | $650-$675 | $360-$370 |
| Kara Ingelhart | 6 years | Chicago, IL | $320-$330 | $270-$280 |
| Nora Huppert | 2 years | Los Angeles, CA

Chicago, IL | $325-$350 (thru 8/31/2021)
$270 (after 9/1/2021) | $210-$220 |

---

[12] (Dkt. 83-2, Dec. Renn.)

[13] (Dkt. 83-5, Dec. Lloyd) (identifying rates in the Boise legal market that Renn, Ingelhart, and Huppert could reasonably seek to be at least the amounts listed in the chart).

The Court finds the reasonable rates for attorneys Renn, Ingelhart, and Huppert are slightly higher than the prevailing Boise market rates identified in the chart above, based on their specialized expertise and unique familiarity with this litigation. As previously mentioned, the work performed by Renn, Ingelhart, and Huppert was necessary to Plaintiffs' success in the post-judgment phase of the litigation.

These attorneys possess particularized knowledge and experience of this lawsuit based on their representation of Plaintiffs during the pre-judgment phase. (Dkt. 83-2, Dec. Renn); (Dkt. 83-5, Dec. Lloyd.) That knowledge was critical to the post-judgment proceedings given the number and nature of the challenges raised by Defendants, including challenges to whether the Injunction applied to the new legislation. New counsel, unfamiliar with the initial proceedings, would have been far less equipped to address the issues presented in the short time frame, and would have undoubtedly demanded more time and resources attempting to do so, without Renn, Ingelhart, and Huppert.

Further, Renn, Ingelhart, and Huppert possess specialized expertise with LGBT impact litigation in general and, more specifically, with litigating the constitutionality of government discrimination against transgender people. (Dkt. 83-2, Dec. Renn); (Dkt. 83-5, Dec. Lloyd.) Particularly relevant here, Renn and Ingelhart are experienced with contesting the constitutionally of government restrictions against allowing transgender people to access identity documents consistent with their gender identity. (Dkt. 83-5, Dec. Lloyd.) The specialized expertise and knowledge of these attorneys was apparent during the proceedings and essential to the Plaintiffs' the favorable outcome at both

phases.

For these reasons, the Court finds the reasonable rates for Renn, Ingelhart, and Huppert to be as follows: Renn ($410), Inglehart ($280-$290), and Huppert ($250-$260). The rates are consistent with the Boise market rates for the attorneys with more years of experience to reflect the particular knowledge and specialized expertise of these attorneys. (Dkt. 83-5, Dec. Lloyd.)

## C.    Lodestar

As shown in the table below, the lodestar figure for attorney and paralegal fees based on hours reasonably expended and reasonable hourly rates is $320,474.50.

| Attorney/Paralegal | Hours Reasonably Expended 2020 | Reasonable Rate 2020 | Hours Reasonably Expended 2021 | Reasonable Rate 2021 | Lodestar |
|---|---|---|---|---|---|
| Monica Cockerille | 24.9 | $410 | 4.8 | $410 | $12,177.00 |
| Peter Renn | 312 | $410 | 65.35 | $410 | $154,713.50 |
| Kara Ingelhart | 94.5 | $280 | 15.1 | $290 | $30,839.00 |
| Isaac Belfer | 37.4 | $280 | 5 | $290 | $11,922.00 |
| Michael Lanosa | 51.3 | $250 | 6.5 | $260 | $14,515.00 |
| Colleen Smith | 69.2 | $240 | 34.4 | $250 | $25,208.00 |
| Nora Huppert | 197 | $240 | 63.5 | $250 | $63,155.00 |
| Jamie Farnsworth | 37.9 | $175 | 7.5 | $175 | $7,945.00 |
| **Total:** | | | | | **$320,474.50** |

MEMORANDUM DECISION AND ORDER - 19

The Court finds Plaintiffs achieved excellent results during the post-judgment phase of this litigation, entitling them to a fee equal to this presumptively reasonable lodestar amount calculated in the table above. *See Hensley*, 461 U.S. at 435. The Court does not find this case to be one that requires the lodestar figured found herein to be adjusted based on the *Kerr* factors or any other basis. *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996).

## 2.    Litigation Expenses

Section 1988 authorizes the Court to award "out-of-pocket expenses incurred by an attorney which would normally be charged to a fee paying client . . . ." *Chalmers v. Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986) *as amended by* 808 F.2d 1373 (9th Cir. 1987). Here, Plaintiffs seek $750.00 in litigation expenses comprised of the *pro hac vice* fees. (Dkt. 83, Dec. Renn at ¶ 69.) Defendants do not object to the requested expenses.

The Court finds the requested expenses are the kind which normally would be charged to a fee-paying client. Defendants offer no evidence to the contrary. Accordingly, the Court will award Plaintiffs the requested $750.00 in litigation expenses.

## 3.    Post-Judgment Interest

Plaintiffs request the Court apply the prevailing post-judgment interest rate on any award of fees and expenses "from the date of its issuance." (Dkt. 83 at 20.)  Under 28 U.S.C. § 1961(a), post-judgment interest is allowed on money judgments in civil cases "from the date of the entry of the judgment." This statute applies to attorney fee awards

under § 1988, and the interest accrues "from the date that entitlement to fees is secured . . . ." *Friend v. Kolodzieczak*, 72 F.3d 1386, 1391–92 (9th Cir. 1995). In *Friend*, the Ninth Circuit affirmed an award of post-judgment interest from the date on which the district court first entered its order on attorney fees related to the litigation on the merits. *Id*. Thus, interest on the award of fees and expenses here accrues from the date of this Order. Accordingly, the Court will grant Plaintiffs' request and award post-judgment interest calculated at the federal rate set forth in 28 U.S.C. § 1961(a), accruing from the date of the entry of this Order. *Id*.

## ORDER

THEREFORE IT IS HEREBY ORDERED that Plaintiffs' Motion for Attorney Fees and Expenses (Dkt. 86) is **GRANTED IN PART AND DENIED IN PART** as follows:

1) Plaintiffs are awarded $312,529.50 in attorney fees, $7,945.00 in paralegal fees, and $750.00 in non-taxable litigation expenses pursuant to 42 U.S.C. § 1988.

2) The foregoing amount shall be paid with interest based on the statutory rate as stated in 28 U.S.C. § 1961(a), accruing from the date of the entry of this Order.

DATED: June 8, 2022

Honorable Candy W. Dale
United States Magistrate Judge