RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

GADER WREN, ISB #12108
Assistant Solicitor General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
gader.wren@ag.idaho.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| F.V. and DANI MARTIN,<br><br>*Plaintiffs,*<br><br>v.<br><br>JULIET CHARRON[1], in her official capacity as Director of the Idaho Department of Health and Welfare; ELKE SHAW-TULLOCH, in her official capacity as Administrator of the Division of Public Health for the Idaho Department of Health and Welfare; and JAMES AYDELOTTE, in his official capacity as State Registrar and Chief of the Bureau of Vital Records and Health Statistics,<br><br>*Defendants.* | Case No. 1:17-cv-000170-CWD<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISSOLVE PERMANENT INJUNCTION** |

---

[1] Juliet Charron is the current Director of the Idaho Department of Health and Welfare. Per FRCP 25(d), Director Charron is automatically substituted as a party in place of all former IDHW directors.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ iii

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 2

ARGUMENTS .................................................................................................................................. 4

    I.    The Injunction must be Dissolved because Federal Courts Lack the Authority to Issue Universal Injunctions and because the Injunction no Longer Meets Equitable Requirements. ................................................................................................................ 4

    II.   Idaho Code § 39-245A(2) is Nondiscriminatory and is Subject to Rational Basis Review. ........................................................................................................................... 5

        A.   Under *Skrmetti*, Idaho's law does not classify based on transgender status. ............... 5

        B.   Idaho's birth certificate amendment law is rationally related to a legitimate state interest. ........................................................................................................................ 7

        C.   Idaho's birth certificate amendment law survives heightened scrutiny. ...................... 9

CONCLUSION ............................................................................................................................... 13

## TABLE OF AUTHORITIES

**CASES**

*Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022) .................................................................................. 11

*Am. Life League, Inc. v. Reno*,
  47 F.3d 642 (4th Cir. 1995) ....................................................................................... 9

*Arizona v. Shamrock Foods Co.*,
  729 F.2d 1208 (9th Cir. 1984) ................................................................................... 9

*Atonio v. Wards Cove Packing Co.*,
  10 F.3d 1485 (9th Cir. 1993) ..................................................................................... 7

*Ball v. Massanari*,
  254 F.3d 817 (9th Cir. 2001) ..................................................................................... 9

*Becerra v. U.S. Env't Prot. Agency*,
  978 F.3d 708 (9th Cir. 2020) .................................................................................. 3, 4

*City of Los Angeles v. Alameda Books*, Inc.,
  535 U.S. 425 (2002) ................................................................................................ 10

*F.C.C. v. Beach Commc'ns, Inc.*,
  508 U.S. 307 (1993) ............................................................................................ 7, 10

*Fowler v. Stitt*,
  104 F.4th 770 (10th Cir. 2024) .................................................................................. 8

*Geduldig v. Aiello*,
  417 U.S. 484 (1974) .............................................................................................. 5, 6

*Gore v. Lee,*
  107 F.4th 548 (6th Cir. 2024) .......................................................................... 7, 8, 10

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
  505 U.S. 88 (1992) ..................................................................................................... 9

*Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999) ................................................................................................... 4

*Johnson v. California*,
  543 U.S. 499 (2005) ................................................................................................. 11

*Lehnhausen v. Lake Shore Auto Parts Co.*,
  410 U.S. 356 (1973) ................................................................................................... 7

*Lydo Enters., Inc. v. City of Las Vegas*,
  745 F.2d 1211 (9th Cir. 1984) ................................................................................... 5

*MH v. First Judicial Dist. Ct. of Laramie Cnty.*,
  465 P.3d 405 (Wyo. 2020) ......................................................................................... 8

*Nguyen v. INS*,
  533 U.S. 53 (2001) ................................................................................................... 11

*Pierre v. Holder*,
    738 F.3d 39 (2d Cir. 2013) ............................................................................................... 11

*Rufo v. Inmates of Suffolk County Jail*,
    502 U.S. 367 (1992) ........................................................................................................... 3

*Sherbert v. Verner*,
    374 U.S. 398 (1963) ........................................................................................................... 9

*Stitt v. Fowler*,
    2025 WL 1787695 (U.S. June 30, 2025) ........................................................................... 8

*Sweeton v. Brown*,
    27 F.3d 1162 (6th Cir. 1994) ............................................................................... 3, 4, 5, 13

*Trump v. CASA, Inc.*,
    145 S. Ct. 2540 (2025) .................................................................................................. 1, 4

*United States v. Skrmetti*,
    145 S. Ct. 1816 (2025) ........................................................................................ 1, 5, 6, 11

*United States v. Virginia*,
    518 U.S. 515 (1996) ...................................................................................................... 9, 10

*Varnum v. Brien*,
    763 N.W.2d 862 (Iowa 2009) .......................................................................................... 10

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ........................................................................................................... 7

*Wisconsin v. Yoder*,
    406 U.S. 205 (1972) ........................................................................................................... 9

**STATUTES**

Idaho Code § 39-245A ............................................................................................... *passim*

Idaho Code § 74-114 ........................................................................................................ 10

Tenn. Code § 68-3-203 ....................................................................................................... 8

**RULES**

Fed. R. Civ. P. 60 .................................................................................................... 3, 5, 13

**OTHER AUTHORITIES**

*Children - Traveling to the United States as a Canadian Citizen*,
    U.S. Customs and Border Protection (Jan 28, 2025) ...................................................... 12

*Citizenship Evidence*,
    Bureau of Consular Affairs (July 10, 2025) .................................................................... 12

*Sex is a Biological Trait of Medical Significance*,
    American College of Pediatricians (March 2021), .......................................................... 11

**INTRODUCTION**

The Supreme Court recently clarified that federal courts do not have the authority to issue universal injunctions. *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2558 (2025). Instead, federal courts possess only the power to issue complete relief to the parties in a given case. *Id.* ("Complete relief is . . . the maximum a court can provide."). With this clarification, the Court's injunction in this case must be dissolved.

In 2018, the Court universally enjoined Idaho's birth certificate amendment law. Since then, Plaintiff Martin has obtained the requested birth certificate reflecting Plaintiff Martin's preferred gender identity. As for Plaintiff F.V., based on identifying information provided by Plaintiffs, Defendants have been unable to find an Idaho birth certificate for Plaintiff F.V., meaning either that Idaho has never issued a birth certificate to Plaintiff F.V., or that the identifying information provided to Defendants was inaccurate in some way. Thus, while Defendants do not know whether Plaintiff F.V. was ever provided an amended birth certificate, Plaintiff F.V. has had plenty of time to request an amended birth certificate. Accordingly, Plaintiffs have been afforded complete relief, and the injunction no longer meets the requirements of equity and must be dissolved.

The Court should also dissolve the injunction on other grounds. In *United States v. Skrmetti*, 145 S. Ct. 1816 (2025), the Supreme Court clarified that laws like the one at issue do not discriminate on the basis of transgender status and are therefore subject only to rational basis review. Because the Court granted the injunction on the grounds that it was subject to intermediate scrutiny, and exceedingly persuasive caselaw demonstrates that Idaho's birth certificate amendment law easily passes rational basis review, dissolution of the injunction is required.

For these reasons, the Court should dissolve the permanent injunction.

## BACKGROUND

In April 2017, Plaintiffs filed suit against the senior leadership within the Idaho Department of Health and Welfare (the "Department"), arguing that the Department's policy prohibiting individuals from changing the listed sex on their birth certificate to conform with their gender identity violated the federal constitution. Specifically, Plaintiffs argued that the policy violated the Equal Protection Clause, their substantive due process rights, and amounted to impermissible compelled speech. After the Department elected not to defend the then-existing policy, this Court found that the policy was unconstitutional. *See* Dkt. 39. This Court reasoned that because the Department policy allowed any information except sex to be amended on a birth certificate, the policy discriminated against transgender people. *Id*. at 16. Applying intermediate scrutiny, the Court found that the policy violated equal protection and issued a permanent and universal injunction enjoining the Department from "automatically rejecting applications from transgender people to change the sex listed on their birth certificates." *Id*. at 26.

In 2020, the Idaho Legislature changed the laws governing birth certificate amendments. Idaho Code § 39-245A. Following the amendment, the Court clarified that the injunction extended to the 2020 law. Dkt. 75.

In 2024, the Idaho Legislature again amended the laws governing birth certificate amendments. Idaho Code § 39-245A. Under the 2024 amended law, individuals seeking to amend any quantitative statistic or material fact specific to birth on a given birth certificate must, if the amendment is sought within one year of the birth certificate being filed, provide a notarized affidavit declaring that the information contained in the certificate "incorrectly represents a material fact at the time of birth." *Id.* § 39-245A(4)(d). After one year, a party may challenge a quantitative statistic or material fact on a birth certificate "in court only on the basis of fraud,

duress, or material mistake of fact." *Id.* Qualitative statistics and material facts include time of birth, date of birth, birth weight, birth length, and sex. *Id.* § 39-245A(2).

Since the Court issued its injunction, significant changes in fact and law have occurred. First, the Supreme Court has held that federal courts do not have the authority to issue universal injunctions, as was done here, and Plaintiffs have almost certainly obtained complete relief. Unsworth Declaration ¶¶ 3–4. Second, the Supreme Court clarified that laws like the one at issue do not discriminate on the basis of transgender status, undercutting the ground upon which the injunction was granted. And third, in 2024, the Idaho Legislature changed the laws governing birth certificate amendments, Idaho Code § 39-245A, curing the constitutional defects outlined in the Court's injunction.

As a result of these significant factual and legal changes, the Department now moves to dissolve the permanent injunction, enjoining it from enforcing a policy that is now superseded by statute.

### LEGAL STANDARD

A party may request to modify or dissolve an injunction when the injunction no longer meets equitable requirements. Fed. R. Civ. P. 60(b)(5); *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992). The party may "meet its initial burden by showing either a significant change either in factual conditions or in law." *Rufo*, 502 U.S. at 384. When the moving party demonstrates that changes in fact or law undermine the grounds upon which the injunction was granted, or that the injunction no longer meets equitable requirements, the injunction must be dissolved. *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994) (en banc); *accord Becerra v. U.S. Env't Prot. Agency*, 978 F.3d 708, 715 (9th Cir. 2020).

**ARGUMENTS**

Since this Court issued its injunction in 2018, significant changes in fact and law have occurred. These changes require the Court to dissolve the injunction.

**I.  The Injunction must be Dissolved because Federal Courts Lack the Authority to Issue Universal Injunctions and because the Injunction no Longer Meets Equitable Requirements.**

Federal courts do not possess the authority to issue universal injunctions. *CASA, Inc.*, 145 S. Ct. at 2551. "The Judiciary Act of 1789 endowed federal courts with jurisdiction over 'all suits . . . in equity'" *Id*. (quoting § 11, 1 Stat. 78). "Though flexible," courts' "equitable authority is not freewheeling." *Id*. Indeed, federal courts may only grant "equitable remedies 'traditionally accorded by courts of equity' at our country's inception." *Id*. (quoting *Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)). At the time of our country's inception, courts did not have the equitable authority to issue universal injunctions. *Id*. at 2551–52. Rather, federal courts only have equitable authority to provide "complete relief between the parties." *Id*. at 2557. Consistent with this history, federal courts lack the equitable authority to issue universal injunctions, *id*. at 2551–52, and once complete relief has been granted to the parties, "[o]ngoing injunctions should be dissolved [as] they no longer meet the requirements of equity." *Sweeton*, 27 F.3d at 1166; *accord*, *Becerra*, 978 F.3d at 715.

Here, the Court universally enjoined the Department's once-existing policy prohibiting individuals from changing the listed sex on their birth certificates. Dkt. 39. But since the injunction was issued, *CASA* clarified that federal courts lack the equitable authority to issue universal injunctions. Moreover, Plaintiff Martin has obtained the requested amended birth certificate. *See* Unsworth Decl. ¶ 3. And, while it is unknown whether Plaintiff F.V. was ever issued an Idaho birth certificate, Plaintiff F.V. has had seven years to obtain an amended birth certificate. *Id*. ¶ 4. If Plaintiff F.V. has not obtained an amended birth certificate after seven years since the injunction

was issued, it would raise serious questions as to whether Plaintiff F.V. is irreparably harmed by not possessing the desired birth certificate. *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213–14 (9th Cir. 1984) (explaining that failure to act timely suggests a lack of irreparable harm).

Given *CASA*'s holding that federal courts lack the authority to issue universal injunctions and since complete relief has been afforded to the Plaintiffs, the injunction must be dissolved as it "no longer meet[s] the requirements of equity." *Sweeton*, 27 F.3d at 1166–67.

## II.   Idaho Code § 39-245A(2) is Nondiscriminatory and is Subject to Rational Basis Review.

Idaho Code § 39-245A does not classify based on transgender status as it creates two groups of people that both include transgender individuals. Accordingly, it is subject only to rational basis review, which it easily passes. And because it passes constitutional muster, the universal injunction no longer meets equitable requirements and should be dissolved. Fed. R. Civ. P. 60(b)(5); *Sweeton*, 27 F.3d 1166.

### A.   Under *Skrmetti*, Idaho's law does not classify based on transgender status.

Regarding people who wish to amend their birth certificates, Idaho law creates two groups of people, both containing transgender individuals. Thus, under *Skrmetti*, the law does not classify based on transgender status and is therefore subject only to rational basis review.

In *Skrmetti*, a Tennessee statute prohibited the use of puberty blockers and hormone therapy for treating gender dysphoria, gender identity disorder, or gender incongruence in minors. 145 S. Ct. at 1831. Based on an earlier decision, *Skrmetti* concluded that the statute did not classify based on transgender status. *Id*. at 1833–34 (citing *Geduldig v. Aiello*, 417 U.S. 484 (1974)). In *Geduldig,* the earlier decision, a California insurance program excluded from coverage certain disabilities resulting from pregnancy. 417 U.S. at 486. In doing so, the insurance program separated potential recipients into two groups: "pregnant women and nonpregnant persons." *Id*. at 496 n.20. "Because women fell into both groups," there was a "lack of identity" between sex and the

program's exclusion of certain pregnancy-related disabilities. *Skrmetti*, 145 S. Ct. at 1833 (first quote); *Geduldig* 417 U.S. at 496 & n.20 (second quote). Thus, "the program did not discriminate against women as a class." *Skrmetti*, 145 S. Ct. at 1833.

*Skrmetti* concluded that the Tennessee statute was no different than the California insurance program. Like the program in *Geduldig*, the Tennessee statute "divides minors into two groups: those who might seek puberty blockers or hormones to treat the excluded diagnoses, and those who might seek puberty blockers or hormones to treat other conditions." *Id*. The first group contained only transgender individuals, but the second included transgender and nontransgender individuals. *Id.* "Thus, although only transgender individuals seek treatment for gender dysphoria, gender identity disorder, and gender incongruence—just as only biological women can become pregnant—there is a 'lack of identity' between transgender status and the excluded medical diagnoses." *Id*.

Here, Idaho Code § 39-245A(2) requires that any person seeking to amend any "quantitative statistic[] [or] material fact[] specific to that birth" on a birth certificate must, regardless of transgender status, abide by the same process. If an individual seeks to amend a quantitative statistic or material fact on a birth certificate, that individual must follow one of two procedures. First, if the amendment is sought within one year of the birth certificate being filed, the individual must affirm by affidavit that the quantitative or material fact was incorrectly recorded at the time of birth. Idaho Code § 39-245A(4)(d). Or second, if the amendment is sought after one year of the certificate being filed, the individual must file suit in court and demonstrate that the quantitative statistic or material fact was incorrectly recorded based on fraud, duress, or mistake of fact. *Id*.

Idaho's birth certificate amendment law therefore creates two groups: those seeking to amend a birth certificate because a quantitative statistic or material fact was incorrectly recorded based on fraud, duress, or material mistake of act and those who seek to amend a quantitative statistic or material fact for any other reason. Both groups undoubtedly contain transgender individuals. Transgender individuals may seek to amend their birth certificate due to fraud, duress, or mistake of fact. Transgender individuals may also seek to amend their birth certificate for another reason. Accordingly, because transgender individuals fall into both groups, Idaho Code § 39-245A does not classify based on transgender status and is subject only to rational basis review.

**B. Idaho's birth certificate amendment law is rationally related to a legitimate state interest.**

A state law survives rational basis review if it is "rationally related to legitimate government interests." *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997). The "rational basis need not be one that actually motivated [the legislature]." *Atonio v. Wards Cove Packing Co.*, 10 F.3d 1485, 1494 (9th Cir. 1993). Giving color to this "highly deferential" standard of review, *Raidoo v. Moylan*, 75 F.4th 1115, 1118 (9th Cir. 2023), plaintiffs have the burden "to negative *every conceivable basis* which might support" the challenged law, *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973). "[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights *must be upheld* against equal protection challenge if there is *any reasonably conceivable state of facts that could provide a rational basis for the classification*." *Id.* (emphases added).

Recently, the Sixth Circuit addressed whether a Tennessee law disallowing individuals from changing the listed sex on their birth certificate violated equal protection. *Gore v. Lee,* 107

F.4th 548, 551 (6th Cir. 2024). Tennessee law provided that birth certificate amendments were limited to "protect the integrity and accuracy of vital records." Tenn. Code § 68-3-203(a). To achieve this goal, "[t]he sex of an individual shall not be changed on the original certificate of birth as a result of sex change surgery." *Id.* § 68-3-203(d). *Gore* determined that the statute did not discriminate on the basis of sex and applied rational basis review and concluded that Tennessee had "ample legitimate explanations" supporting its birth certificate amendment laws and explained that states have an interest in maintaining birth certificates with accurate and consistent definitions of biological sex. 107 F.4th at 560; *see also MH v. First Judicial Dist. Ct. of Laramie Cnty.*, 465 P.3d 405, 412 (Wyo. 2020) (Kautz, J., concurring) ("[C]hanges to a birth certificate which seek to alter 'the facts of the birth' undermine the integrity and the accuracy of the birth certificate."). This is because birth certificates are used to promote "the public health of the state" and to "assist in 'preparing . . . published[] reports of vital statistics,' and those reports [aid] state and federal officials to track important medical and sociological trends." *Gore*, 107 F.4th at 561. Accordingly, *Gore* held that prohibiting individuals from changing the listed sex on their birth certificate was rationally related to the aforementioned state interests and did not violate equal protection. *Id*.

The Tenth Circuit has also addressed this issue. *Fowler v. Stitt*, 104 F.4th 770, 794 (10th Cir. 2024) cert. granted, judgment vacated, No. 24-801, 2025 WL 1787695 (U.S. June 30, 2025). *Fowler* disagreed with the district court and held that Oklahoma's policy prohibiting amendments to birth certificates to change sex did not survive rational basis review. *Id*. at 797. But the Supreme Court vacated the judgment and remanded the case to the Tenth Circuit for reconsideration in light of *Skrmetti*. *Stitt v. Fowler*, No. 24-801, 2025 WL 1787695, at *1 (U.S. June 30, 2025); *see also Gore*, 107 F.4th at 561 (explaining that *Fowler*'s reasoning was flawed).

Here, Idaho Code § 39-245A, like the more restrictive Tennessee law, advances "a compelling [state] interest in maintaining accurate, quantitative, biology-based material facts on Idaho certificates of birth." To achieve this interest, Idaho only allows quantitative statistics and material facts at birth to be amended if a person can show a mistake of fact. As *Gore* found, this law is rationally related to Idaho's legitimate state interest.[2]

### C. Idaho's birth certificate amendment law survives heightened scrutiny.

Even if this Court applies intermediate scrutiny, which it should not, Idaho Code § 39-245A survives. A sex classification, or any classification that discriminates against a quasi-suspect class, will be upheld if the classification is "substantially related to an important governmental interest." *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001) (citing *United States v. Virginia*, 518 U.S. 515, 567–68 (1996)).

It is well-established that states have not just an important interest to promote public health and safety, but a compelling interest. *Am. Life League, Inc. v. Reno*, 47 F.3d 642, 655 (4th Cir. 1995) (explaining that a compelling interest "implicates the government's paramount interest in protecting physical or mental health, public safety, or public welfare.") (citing *Sherbert v. Verner*, 374 U.S. 398, 403 (1963); *Wisconsin v. Yoder*, 406 U.S. 205, 230 (1972)); *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) (reaffirming that states have a compelling interest in regulating professional practice to "protect . . . public health, safety, and other valid interests.").

---

[2] The Department acknowledges that it previously took the position that there was no rational basis for its 2017 policy that this Court enjoined. Dkt. 29. However, since then, the enjoined policy has been dissolved, new legislation governing birth certificate amendments has been passed, and intervening caselaw has altered how courts handle equal protection issues involving transgender status. For all these reasons, the Department has changed its position. *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir. 1984) (judicial estoppel is inapplicable when a party shifts its position in response to a change in the law).

MEMORANDUM IN SUPPORT OF MOTION TO DISSOLVE PERMANENT INJUNCTION—9

Accordingly, laws aimed at promoting and protecting public health and welfare are sufficiently important to satisfy intermediate scrutiny.

The critical difference between rational basis review and intermediate scrutiny, with respect to how related a law must be to an important government interest is this: Under rational basis review the justification for a discriminatory law may be based on rational legislative "speculation unsupported by evidence or empirical data." *Beach Commc'ns, Inc.*, 508 U.S. at 315; under intermediate scrutiny, the justification for such a law must be "genuine and must not depend on broad generalizations." *Varnum v. Brien*, 763 N.W.2d 862, 880 (Iowa 2009) (citing *United States v. Virginia*, 518 U.S. 515, 533 (1996)). Thus, a discriminatory law passes intermediate scrutiny where the law is supported by more than "shoddy data or reasoning." *City of Los Angeles v. Alameda Books*, Inc., 535 U.S. 425, 438 (2002).

Here, Idaho undisputably has an important interest in promoting public health and safety. Consequently, the only remaining question before this Court is whether Idaho Code § 39-245A is substantially related to that interest.

Idaho's birth certificate amendment law is substantially related to promoting and protecting public health and safety. Idaho birth certificates are "prima facie evidence of the facts recited therein." Idaho Code § 39-245A(1)(a)(vi). As birth certificates are used in a variety of settings, including medical treatment and research, it is important that birth certificates accurately bear an individual's biological sex, as defined in Idaho Code § 74-114. *See Gore*, 107 F.4th at 551 (explaining that birth certificates are used by states and federal government entities to track important medical trends).

The importance of birth certificates bearing biological facts is supported by medical evidence, not just mere speculation. The American College of Pediatricians has indicated that sex

and gender cannot be conflated because denying the reality of biological sex poses serious risks to individuals and to society at large. *Sex is a Biological Trait of Medical Significance*, American College of Pediatricians (March 2021), https://acpeds.org/position-statements/sex-is-a-biological-trait-of-medical-significance; *see also* Idaho Code § 39-245A(1)(a)(iv) (citing the Society for Evidence-based Gender Medicine) ("the conflation of sex and gender in health care is alarming, subjects hundreds of thousands of individuals to the risk of unintended medical harm, and will greatly impede medical research."); *see also Skrmetti*, 145 S. Ct. at 1830 (due to biological differences between the sexes, the Food and Drug Administration "frequently approves drugs for use by only one sex"). Idaho's birth certificate amendment law removes impediments to medical treatment and research by ensuring that Idaho birth certificates, as documents of "evidentiary character," Idaho Code § 39-245A(1)(a)(vi), bear true and accurate statistics and material facts specific to an individual's birth, including an individual's sex at birth. Without biologically accurate records like birth certificates, medical advancements and research will be hindered, causing serious risks to public health and safety.

Further, it does not matter whether Idaho could achieve the same goal through less restrictive means. Contrary to the test for strict scrutiny, to pass intermediate scrutiny, a law need not be "perfect," *Pierre v. Holder*, 738 F.3d 39, 53 (2d Cir. 2013), nor must the fit between the discriminatory law and the government interest be "perfect." *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 801 (11th Cir. 2022) (citing *Nguyen v. INS*, 533 U.S. 53 (2001)). Rather, the subject law must be reasonable and supported by some facts. *See Nguyen,* 533 U.S. at 66 (upholding a discriminatory law because "facts demonstrate the critical importance of the Government's interest"); *cf. Johnson v. California*, 543 U.S. 499, 505 (2005) (holding that a law must be "narrowly tailored" to the government's interest to pass strict scrutiny).

MEMORANDUM IN SUPPORT OF MOTION TO DISSOLVE PERMANENT INJUNCTION—11

Here, Idaho has provided evidence demonstrating the need for birth certificates to bear true and accurate statistics and material facts specific to a person's birth, including a person's sex at birth. Medical experts and organizations have stated that sex is critical in both medical treatment and research. Idaho birth certificates serve as prima facia evidence of one's sex and are used by federal, state, and other entities for medical tracking and research. Even if Idaho's birth certificate law is not perfectly related to its important interest in promoting public health and welfare, those laws are still substantially related to that interest.

Idaho also has an important security interest in issuing accurate birth certificates. This is because birth certificates are sometimes used as forms of identification. For instance, individuals under the age of 16 may use a birth certificate as a form of identification when they travel by land or sea to and from Canada. *Children - Traveling to the United States as a Canadian Citizen*, U.S. Customs and Border Protection (Jan 28, 2025), https://tinyurl.com/5bjrhh7z. Birth certificates are also used to obtain other forms of identification, such as passports. *Citizenship Evidence*, Bureau of Consular Affairs (July 10, 2025), https://tinyurl.com/yc7em6m7. As birth certificates are used for identification purposes, there is an inherent security interest in ensuring that they bear accurate quantitative statistics and material facts. The amendment procedures outlined in Idaho Code § 39-245A are substantially related to Idaho's important security interest as they ensure Idaho birth certificates bear only accurate quantitative statistics and material facts.

As Idaho has at least two important interests in ensuring that its birth certificates contain only accurate quantitative statistics and material facts, and the amendment procedures outlined in Idaho Code § 39-245A are substantially related to those interests, even if subjected to intermediate scrutiny, Idaho Code § 39-245A passes constitutional muster. Thus, because Idaho Code § 39-

245A is constitutional, the injunction should be dissolved as it no longer meets equitable requirements. Fed. R. Civ. P. 60(b)(5); *Sweeton*, 27 F.3d 1166.

## CONCLUSION

Plaintiff Martin has received complete relief and Plaintiff F.V. almost certainly has, too. In light of recent U.S. Supreme Court caselaw holding that federal courts cannot issue universal injunctions and may only provide complete relief to the parties, the universal injunction must be dissolved. Moreover, given *Skrmetti*, Idaho Code § 39-245A is subject only to rational basis review, not intermediate scrutiny as the Court applied in 2018. And given *Gore*, it is clear that it passes constitutional muster. For the foregoing reasons, the injunction no longer meets equitable requirements, and the Court should dissolve it.

DATED: October 3, 2025

        STATE OF IDAHO
        OFFICE OF THE ATTORNEY GENERAL

        /s/ *James E. M. Craig*
        JAMES E. M. CRAIG
        Chief, Civil Litigation and
        Constitutional Defense

        *Attorney for Defendants*

        STATE OF IDAHO
        OFFICE OF THE SOLICITOR GENERAL

        /s/ *Gader Wren*
        GADER WREN
        Assistant Solicitor General

        *Attorney for Defendants*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 3, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Monica G. Cockerille
monicacockerille@me.com

Peter C. Renn
Prenn@lamdalegal.org

Kara N. Ingelhart
kingelhart@lamdalegal.org

Nora Huppert
nhuppert@lambdalegal.org

Michael L. Lanosa
mlanosa@cov.com

Colleen R. Smith
csmith@cov.com

D. Jean Veta
jveta@cov.com

Henry Liu
hliu@cov.com

William Isasi
wisasi@cov.com

Isaac C Belfer
ibelfer@cov.com

*Attorneys for Plaintiffs*

/s/ *James E. M. Craig*
JAMES E. M. CRAIG